UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARC BAIN RASELLA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ELON R. MUSK,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>Jury Trial Demanded |

Plaintiff Marc Bain Rasella ("Plaintiff"), by and through his attorneys, alleges upon personal knowledge as to his own acts, and upon information and belief as to all other matters, based upon the investigation conducted by and through his attorneys, which included, among other things, a review of documents filed by Defendant Elon R. Musk ("Musk") with the United States Securities and Exchange Commission (the "SEC"), news reports, and other publicly available documents, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a federal securities class action on behalf of all investors who sold or otherwise disposed of Twitter, Inc. ("Twitter" or the "Company") securities between March 24, 2022, and April 1, 2022, inclusive (the "Class Period"). This action is brought on behalf of the Class for violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

2. Elon Musk is the founder of Tesla and SpaceX, and according to Forbes, is the richest person in the world.

3. Beginning in January 2022, Musk started to acquire shares of Twitter. By March 14, 2022, Musk had acquired more than a 5% ownership stake in Twitter.

4. Pursuant to Section 13(d) of the Exchange Act and SEC Rule 13d-1 promulgated thereunder, 17 C.F.R. § 240.13d-1(a), Musk was required to file a Schedule 13 with the SEC within 10 days of passing the 5% ownership threshold in Twitter, or March 24, 2022.

5. Musk did not file a Schedule 13 with the SEC within the required time and instead continued to amass Twitter shares, eventually acquiring a 9.1% stake in the Company before finally filing a Schedule 13 on April 4, 2022.

6. When Musk finally filed the required Schedule 13, thereby revealing his ownership stake in Twitter, the Company's shares rose from a closing price of $39.31 per share on April 1, 2022, to close at $49.97 per share on April 4, 2022 – an increase of approximately 27%.

7. Investors who sold shares of Twitter stock between March 24, 2022, when Musk was required to have disclosed his Twitter ownership, and before the actual April 4, 2022 disclosure, missed the resulting share price increase as the market reacted to Musk's purchases and were damaged thereby.

8. By failing to disclose his ownership stake via Schedule 13, Musk was able to acquire shares of Twitter less expensively during the Class Period.

9. Throughout the Class Period, Defendant made materially false and misleading statements and omissions by failing to disclose to investors that he had acquired a 5% ownership stake in Twitter as required by Section 13(d) of the Exchange Act and SEC Rule 13d-1 promulgated thereunder, 17 C.F.R. § 240.13d-1.

## JURISDICTION AND VENUE

10. The federal law claims asserted herein arise under § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, as well as under the common law.

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and § 27 of the Exchange Act, 15 U.S.C. § 78aa.

12. This Court has jurisdiction over Defendant Musk because Musk is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice. Furthermore, many of the acts and omissions complained of herein occurred in this District.

13. Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b), as Twitter's securities trade on the New York Stock Exchange (the "NYSE"), which is located in this District. Moreover, Musk was required to file a Schedule 13 with the SEC to disclose his investment in Twitter, which trades on the NYSE.

14. In connection with the acts, omissions, conduct and other wrongs in this Complaint, Defendant, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

15. Plaintiff Marc Bain Rasella ("Plaintiff") sold shares of Twitter at artificially deflated prices during the class period, and has been damaged by the revelation of the Musk's material misrepresentations and material omissions.

16. Defendant Elon R. Musk ("Musk") is the founder of Tesla and SpaceX, and according to Forbes, is the richest person in the world.

3

17. Defendant Musk, because of his position as a 5% owner in Twitter, had an obligation to file a Schedule 13 with the SEC. Defendant had the obligation, ability, and opportunity to prevent the issuance of the false statements and omissions alleged herein. Because of his position as a 5% owner in Twitter, and access to material non-public information available to himself but not to the public, Defendant Musk knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the omissions being made were false and misleading. Defendant Musk is liable for the false statements pleaded herein.

### RELEVANT NON-PARTY

18. Twitter, Inc. ("Twitter" or the "Company") is a social media platform that trades on the NYSE under the ticker "TWTR."

### SUBSTANTIVE ALLEGATIONS

19. Beginning in January 2022, Musk started to acquire shares of Twitter. By March 14, 2022, Musk had acquired more than a 5% ownership stake in Twitter.

20. Pursuant to Section 13(d) of the Exchange Act and SEC Rule 13d-1 promulgated thereunder, 17 C.F.R. § 240.13d-1(a), Musk was required to file a Schedule 13 with the SEC within ten days of passing the 5% ownership threshold in Twitter, *i.e.*, on March 24, 2022.

21. Musk did not file a Schedule 13 with the SEC within the required time and instead continued to amass Twitter shares, eventually acquiring a 9.1% stake in the Company before finally filing a Schedule 13 on April 4, 2022.

22. When Musk finally filed the required Schedule 13, thereby revealing his ownership stake in Twitter, the Company's shares rose from a closing price of $39.31 per share on April 1, 2022, to close at $49.97 per share on April 4, 2022 – an increase of approximately 27%.

23. Investors who sold shares of Twitter stock between March 24, 2022, when Musk should have disclosed his Twitter ownership, and before the actual April 4, 2022 disclosure missed

the resulting share price increase as the market reacted to Musk's purchases and were damaged thereby.

24. Musk was motivated to delay his Schedule 13 filing. By failing to disclose his ownership stake via Schedule 13, Musk was able to acquire shares of Twitter less expensively during the Class Period.

25. As a result of the foregoing, throughout the Class Period, Defendant Musk made materially false and misleading statements by failing to disclose to investors that he had acquired a 5% ownership stake in Twitter as required by Section 13(d) of the Exchange Act and SEC Rule 13d-1 promulgated thereunder, 17 C.F.R. § 240.13d-1.

## CLASS ACTION ALLEGATIONS

26. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who sold Twitter securities between March 24, 2022, and April 4, 2022, inclusive. Excluded from the Class is Defendant Musk, as well as his family and affiliates.

27. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Throughout the Class Period, Twitter's shares actively traded on the NYSE. Although the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Twitter shares were publicly traded during the Class Period on the NYSE.  Record owners and other members of the Class may be identified from records maintained by Twitter or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

28. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

    a. Whether Defendant violated the Exchange Act;

    b. Whether Defendant omitted and/or misrepresented material facts;

    c. Whether Defendant's statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

    d. Whether Defendant knew or recklessly disregarded that his statements were false and misleading;

    e. Whether the price of Twitter's securities was artificially deflated; and

    f. The extent of damage sustained by Class members and the appropriate measure of damages.

29. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendant's wrongful conduct alleged herein.

30. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

31. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**FRAUD ON THE MARKET**

32. Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine that, among other things:

    a. Defendant made public misrepresentations or failed to disclose material facts during the Class Period;

    b. The omissions and misrepresentations were material;

      c. Twitter's securities traded in efficient markets;

      d. The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Twitter's securities; and

      e. Plaintiff and other members of the class sold Twitter's securities between the time Defendant misrepresented or failed to disclose material facts and the time that the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

33. At all relevant times, the markets for Twitter's securities were efficient for the following reasons, among others: (i) Twitter filed periodic public reports with the SEC; and (ii) Twitter regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures such as communications with the financial press, securities analysts, and other similar reporting services. Plaintiff and the Class relied on the price of the Twitter securities, which reflected all information in the market, including the misstatements and/or omissions by Defendant.

## NO SAFE HARBOR

34. The statutory safe harbor provided for forward-looking statements under certain conditions does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as forward-looking statements when made.

35. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

## LOSS CAUSATION

36. Prior to the market opening on April 4, 2022, Defendant Musk filed the required Schedule 13 with the SEC, which disclosed his ownership stake in Twitter. On this news, the price

of Twitter shares increased from a closing price of $39.31 per share on April 1, 2022, to close at $49.97 per share on April 4, 2022 – an increase of approximately 27%.

37. As a result, individuals who sold shares of Twitter between March 24, 2022 – when Musk should have filed the Schedule 13 and April 4, 2022, when Musk actually filed the Schedule 13 – did so at artificially deflated prices and were damaged thereby.

## SCIENTER ALLEGATIONS

38. As alleged herein, Defendant acted with scienter since Defendant Musk knew or recklessly disregarded that he had an obligation to file a Schedule 13G/D to disclose his ownership stake in Twitter. Furthermore, Defendant Musk saved approximately $143 million on his Twitter purchases by delaying the filing of the required Schedule 13G/D and purchasing additional shares at deflated prices.

## Count One
## Violations of § 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder

39. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

40. During the Class Period, Defendant Musk disseminated or approved the false statements specified above, which he knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

41. Defendant Musk violated § 10(b) of the Exchange Act and Rule 10b-5 in that he (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who sold Twitter's securities during the class period.

42. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they sold Twitter's Securities at artificially deflated prices. Plaintiff and the Class would not have sold Twitter's securities at the price sold, or at all, if they had been aware that the market prices had been artificially and falsely deflated by Defendant's misleading statements.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Lead Counsel;

(b) awarding compensatory and punitive damages in favor of Plaintiff and the other class members against Defendant, jointly and severally, for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon.

(c) awarding Plaintiff and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

(d) awarding Plaintiff and the other Class members such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

April 12, 2022                                   Respectfully submitted,

*/s/ Jeffrey C. Block*
Jeffrey C. Block
Jacob A. Walker, *pro hac vice to be filed*
Nathaniel Silver
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
(617) 507-6020 fax
jeff@blockleviton.com
jake@blockleviton.com
nate@blockleviton.com

*Attorneys for Plaintiff and Proposed Lead Counsel*