UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MARC BAIN RASELLA, :
*individually and on behalf of all others similarly
situated*, : OPINION AND ORDER

              Plaintiff, :

              22 Civ. 3026 (ALC) (GWG)

  -v.- :

ELON R. MUSK, :

             Defendant. :
-------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

      Plaintiff Marc Bain Rasella has sued defendant Elon R. Musk for securities fraud under 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5 in connection with Musk's alleged failure to timely disclose his acquisition of shares in Twitter, Inc. ("Twitter") in early 2022. See Complaint, filed Apr. 12, 2022 (Docket # 1) ("Comp."). Amalgamated Bank, as Trustee for the LongView LargeCap 500 Index VEBA Fund, LongView LargeCap 500 Index Fund, LongView Large Cap 1000 Index Value Fund, and LongView Broad Market 3000 Index Fund ("Amalgamated Bank") and Oklahoma Firefighters Pension and Retirement System ("Oklahoma Firefighters") have each moved for appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), and Federal Rule of Civil Procedure 23.[1] For the reasons explained below, Oklahoma Firefighters' motion is granted, and Amalgamated Bank's motion is denied.

---

[1] See Motion to Appoint Amalgamated Bank to Serve as Lead Plaintiff and Appoint Lead Counsel, filed June 13, 2022 (Docket # 6) ("Amalgamated Bank Mot."); Memorandum of Law in Support, filed June 13, 2022 (Docket # 7) ("Amalgamated Bank Mem."); Memorandum of Law in Opposition, filed June 27, 2022 (Docket # 18) ("Oklahoma Firefighters Opp."); Reply Memorandum of Law, filed July 5, 2022 (Docket # 19) ("Amalgamated Bank Reply").

I.       BACKGROUND

    A.       Plaintiffs' Allegations

Musk "is the founder of Tesla and SpaceX, and according to Forbes, is the richest person in the world." Comp. ¶ 16. In January 2022, Musk began purchasing Twitter shares. Id. ¶ 19. By March 14, Musk had acquired more than 5% of Twitter stock. Id. Thus, 17 C.F.R. § 240.13d-1(a) required Musk to file a "Schedule 13" with the Securities and Exchange Commission ("SEC") by March 24, revealing that his ownership interest exceeded 5%. Id. ¶¶ 19-20. Musk did not file a Schedule 13 until April 4, however, by which point Musk had acquired a 9.1% ownership interest in Twitter. See id. ¶ 21. Once Musk filed the Schedule 13, the price of Twitter shares rose approximately 27%. See id. ¶ 22. By failing to disclose that his ownership interest exceeded 5%, Musk was able to acquire Twitter shares at artificially low prices between March 24 and April 4. See id. ¶ 24. Rasella and other putative class members sold Twitter shares during this period and therefore "missed the resulting share price increase," instead selling at artificially low prices. Id. ¶ 23. According to plaintiff, Musk's conduct violated Section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j(b) and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. See id. ¶ 41.

    B.       Procedural History

Rasella filed the complaint in this action on April 12, 2022. See Comp. On June 13, 2022, Oklahoma Firefighters, Amalgamated Bank, and an individual named Partha Pratim Palit

---

      Oklahoma Firefighters' Motion for Appointment as Lead Plaintiff and Approval of its Selection of Lead Counsel, filed June 13, 2022 (Docket # 8) ("Oklahoma Firefighters Mot."); Memorandum of Law in Support, filed June 13, 2022 (Docket # 9) ("Oklahoma Firefighters Mem."); Declaration of Avi Josefson in Support, filed June 13, 2022 (Docket # 10) ("Josefson Decl."); Proposed Order, filed June 13, 2022 (Docket # 11); Response in Opposition, filed June 27, 2022 (Docket # 17) ("Amalgamated Bank Opp."); Reply Memorandum of Law, filed July 5, 2022 (Docket # 20) ("Oklahoma Firefighters Reply").

moved for appointment as lead plaintiff. See Amalgamated Bank Mot.; Oklahoma Firefighters Mot.; Motion to Appoint Partha Pratim Palit to Serve as Lead Plaintiff, filed June 13, 2022 (Docket # 12). Palit subsequently filed a notice of non-opposition to the competing motions. See Notice of Non-Opposition, filed June 24, 2022 (Docket # 16).

II.     DISCUSSION

    A.     Governing Law

The PSLRA directs a court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). One of the key presumptions in the statute is that the most adequate plaintiff is the person who "has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

Congress enacted the PSLRA in 1995

> in response to perceived abuses in securities fraud class actions. The purpose behind the PSLRA was to prevent "lawyer-driven" litigation, and to ensure that "parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel."

Weltz v. Lee, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) (quoting In re Oxford Health Plans, Inc., Sec. Litig., 182 F.R.D. 42, 43-44 (S.D.N.Y. 1998)).

As one court has explained,

> The theory of these provisions was that if an investor with a large financial stake in the litigation was made lead plaintiff, such a plaintiff . . . would be motivated to act like a "real" client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation was delivered at a reasonable price.

In re Razorfish, Inc. Sec. Litig., 143 F. Supp. 2d 304, 307 (S.D.N.Y. 2001). See also Barnet v. Elan Corp., 236 F.R.D. 158, 161 (S.D.N.Y. 2005) ("In other words, by enacting the PSLRA,

Congress sought to encourage class members with the largest purported losses to act as lead plaintiffs in private securities litigation."). "In accordance with this policy, the PSLRA provides for extensive judicial involvement in the process of selecting a lead plaintiff and lead counsel in a securities class action. The [PSLRA] carefully sets forth the procedure for doing so and the criteria to be applied." Peters v. Jinkosolar Holding Co., 2012 WL 946875, at *4 (S.D.N.Y. Mar. 19, 2012).

First, "within twenty days of filing a putative class action, the plaintiff must publish 'in a widely circulated national business-oriented publication or wire service,' a notice to the class, informing the members of the class of the pendency of the action, and their right to file a motion for appointment as lead plaintiff." Id. (quoting 15 U.S.C. § 78u-4(a)(3)(A)(i)). Next, "within sixty days of publication of the notice, any member or members may apply to the court to be appointed as lead plaintiff(s)." Id. (citing 15 U.S.C. § 78u-4(a)(3)(A)(i)). Finally, "within ninety days of the publication of the notice, the Court shall consider any motion made by a purported class member in response to the notice." Id. (citing 15 U.S.C. § 78u-4(a)(3)(B)(i)).

As noted above, the PSLRA directs courts "to appoint as lead plaintiff the member or members of the purported class that is or are the 'most capable of adequately representing the interests of class members,' referred to in the statute as the 'most adequate plaintiff.'" Id. (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)). The PSLRA creates a "presumption" that the "most adequate plaintiff" is the "person or group of persons" that (1) "has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i)"; (2) "in the determination of the court, has the largest financial interest in the relief sought by the class"; and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

While the PSLRA does not specify how the "largest financial interest in the relief sought by the class" is to be measured, 15 U.S.C. § 78u-4(a)(3(B)(iii)(I)(bb), "[f]inancial loss . . . is the most important" consideration. Varghese v. China Shenghuo Pharm. Holdings, Inc., 589 F. Supp. 2d 388, 395 (S.D.N.Y. 2008) (citations omitted); accord Crass v. Yalla Grp. Ltd., 2021 WL 5181008, at *5 (S.D.N.Y. Nov. 8, 2021). Where the alleged harm arises from a fraudulently induced sale of shares, the following factors are pertinent to determining loss:

> (1) the total number of shares [sold] during the class period;
>
> (2) the net shares [sold] during the class period (in other words, the difference between the number of shares [sold] and the number of shares [purchased] during the class period;
>
> (3) the net funds [obtained] during the class period (in other words, the difference between the . . . amount received for the sale of shares during the class period [and the amount spent to purchase shares during the class period]); and
>
> (4) the approximate losses suffered.

Kaplan v. Gelfond, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) (citations omitted).[2]

Additionally, the PSLRA requires that the lead plaintiff satisfy the requirements of Fed. R. Civ. P. 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Under Rule 23,

> [o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> > (1) the class is so numerous that joinder of all members is impracticable;
> >
> > (2) there are questions of law or fact common to the class;
> >
> > (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

---

[2] Because the four-factor test assumes the harm to plaintiffs arose from a fraudulently induced purchase of shares, see id., we have adjusted the language in the first three factors to reflect the harm alleged in this case: the sale of shares at artificially low prices, see Comp. ¶¶ 19-24.

> (4) the representative parties will fairly and
> adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). However, "[i]n practice, a potential lead plaintiff need only make a 'preliminary showing' that it satisfies the 'typicality' and 'adequacy' requirements of Rule 23 in order to satisfy the PSLRA." Peters, 2012 WL 946875, at *11 (citing Janbay v. Canadian Solar, Inc., 272 F.R.D. 112, 120 (S.D.N.Y. 2010); In re Cendant Corp. Litig., 264 F.3d 201, 264 (3d Cir. 2001)). As a recent decision from this district explained,

> Lead plaintiffs' claims are typical where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Sgalambo v. McKenzie, 268 F.R.D. 170, 173-74 (S.D.N.Y. 2010) (citations omitted). A lead plaintiff is adequate where it "does not have interests that are antagonistic to the class that he seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class that he seeks to represent." Glauser v. EVCI Ctr. Colls. Holding Corp., 236 F.R.D. 184, 189 (S.D.N.Y. 2006) (citing Dietrich v. Bauer, 192 F.R.D. 119, 126 (S.D.N.Y. 2000)).

Crass, 2021 WL 5181008, at *6.

Once the "most adequate plaintiff" is determined, that plaintiff is deemed the presumptive lead plaintiff, and will be appointed lead plaintiff unless another class member offers "exacting proof," In re Facebook, Inc., IPO Sec. & Derivitive Litig., 288 F.R.D. 26, 39-40 (S.D.N.Y. 2012), "that the presumptively most adequate plaintiff" (1) "will not fairly and adequately protect the interest of the class"; or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As discussed further below, the statute contains a separate provision, sometimes known as the "professional plaintiff bar," which provides:

> Except as the court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5

>   securities class actions brought as plaintiff class actions pursuant to
>   the Federal Rules of Civil Procedure during any 3-year period.

15 U.S.C. § 78u-4(a)(3)(B)(vi).

   B.   Application

      1.   Presumptive Lead Plaintiff

Both Amalgamated Bank and Oklahoma Firefighters have satisfied the PSLRA's procedural requirements. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa). On April 12, the same day the complaint was filed, counsel for Rasella published a notice in Globe Newswire, alerting investors to the action and informing them that the deadline to seek appointment as lead plaintiff was June 13, 2022. See Notice of Pendency, annexed as Ex. B to Josefson Decl. (Docket # 10-2). On June 13, 2022, Amalgamated Bank and Oklahoma Firefighters filed the instant motions. See Amalgamated Bank Mot.; Oklahoma Firefighters Mot. Because Amalgamated Bank and Oklahoma Firefighters have both "made a motion in response to a notice under" 15 U.S.C. § 78u-4(a)(3)(A)(i), they have both satisfied the first requirement of § 78u-4(a)(3)(B)(iii)(I).

Amalgamated Bank and Oklahoma Firefighters have also satisfied the requirements of Fed. R. Civ. P. 23. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Both entities' claims "are typical of the class because their claims and injuries arise from the same conduct from which the other class members' claims and injuries arise" — namely, Musk's acquisition of Twitter shares before the belated filing of the Schedule 13 with the SEC on April 4, 2022. Oxford Health Plans, 182 F.R.D. at 50 (citations omitted); accord Crass, 2021 WL 5181008, at *6; see Comp. ¶¶ 19-24. Moreover, the "adequacy" requirement is satisfied because both entities have "retained counsel that is capable and qualified to vigorously represent the interests of the class [they] seek[] to represent," see Bernstein Litowitz Berger & Grossmann LLP Firm Resume, annexed as Ex. C to Josefson Decl. (Docket # 10-3) ("Bernstein Litowitz Firm Resume"); The Rose Law Firm P.A.

Biography, annexed as Ex. 4 to Amalgamated Bank Mem. (Docket # 7-4), and there is no evidence that either movant "ha[s] interests that are antagonistic to the class [they] seek to represent," Glauser, 236 F.R.D. at 189 (S.D.N.Y. 2006).

Finally, as to financial interest, Oklahoma Firefighters sold 14,367 Twitter shares during the class period while Amalgamated Bank sold 1,351 shares. See Oklahoma Firefighters Opp. at 1. In its reply, Amalgamated Bank does not contest that Oklahoma Firefighters suffered the greater loss. See Amalgamated Bank Reply at 1. Thus, Oklahoma Firefighters has the "largest financial interest in the relief sought by the class," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb), and is the presumptive lead plaintiff.

### 2. "Professional Plaintiff" Bar

Amalgamated Bank does not argue that there exists "rebuttal evidence" within the meaning of 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II), that Oklahoma Firefighters "will not fairly and adequately protect the interests of the class," or that Oklahoma Firefighters are "subject to unique defenses that render [it] incapable of adequately representing the class." Id. Instead, Amalgamated Bank points to the PSLRA's "professional plaintiff" bar, 15 U.S.C. § 78u-4(a)(3)(B)(vi), contending that because Oklahoma Firefighters "served as a lead plaintiff or co-lead plaintiff in six different securities class actions over the last three years," Oklahoma Firefighters should not be permitted to do so again. Amalgamated Bank Reply at 1-3; Amalgamated Bank Opp. at 2-3. As already noted, the PSLRA's "professional plaintiff bar" provides that "[e]xcept as the court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff . . . in no more than 5 securities class actions brought . . . during any 3-year period." 15 U.S.C. § 78u-4(a)(3)(B)(vi).

Because the statute directs us to act "consistent with the purposes of this section," id., we turn to the PSLRA's legislative history. The Senate Report to the PSLRA noted that in securities class actions,

> [l]awyers typically rely on repeat, or 'professional' plaintiffs who, because they own a token number of shares in many companies, regularly lend their names to lawsuits. Even worse, investors in the class usually have great difficulty exercising any meaningful direction over the case brought on their behalf. The lawyers can decide when to sue and when to settle based largely on their own financial interests, not the interest of their purported clients.

S. Rep. No. 104-98, at 6 (1995), as reprinted in 1995 U.S.C.C.A.N. 679, 685.

The House Conference Report concurred:

> Professional plaintiffs who own a nominal number of shares in a wide array of public companies permit lawyers readily to file abusive securities class action lawsuits. Floor debate in the Senate highlighted that many of the "world's unluckiest investors" repeatedly appear as lead plaintiffs in securities class action lawsuits . . . . These individuals do not adequately represent other shareholders . . . .

H.R. Conf. Rep. No. 104-369, at 32-33 (1995), as reprinted in 1995 U.S.C.C.A.N. 730, 731-32.

As to the "professional plaintiff bar," the House Conference Report explained that

> [i]nstitutional investors seeking to serve as lead plaintiff may need to exceed this limitation <u>and do not represent the type of professional plaintiff this legislation seeks to restrict</u>. As a result, the Conference Committee grants courts discretion to avoid the unintended consequences of disqualifying institutional investors from serving more than five times in three years. The Conference Committee does not intend for this provision to operate at cross purposes with the "most adequate plaintiff" provision.

Id. at 35 (emphasis added).

The statute bars a person from exceeding the 5-in-3 limit, "[e]xcept as the court may otherwise permit, consistent with the purposes of this section." Id. Thus, courts have repeatedly excepted institutional investors from § 78u-4(a)(3)(B)(vi) in order to reflect the statute's purposes as we have just described them. See, e.g., Ragan v. AppHarvest, Inc., 2021 WL

5909116, at *8 n. 6 (S.D.N.Y. Dec. 13, 2021); Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing and Securitization, LLC, 616 F. Supp. 2d 461, 467 (S.D.N.Y. 2009); In re Pfizer Inc. Sec. Litig., 233 F.R.D. 334, 338 n.4 (S.D.N.Y. 2005); In re Boeing Co. Aircraft Sec. Litig., 2019 WL 6052399, at *8 (N.D. Ill. Nov. 15, 2019); In re Extreme Networks Inc. Sec. Litig., 2016 WL 3519283, at *6-9 (N.D. Cal. June 28, 2016); In re Fannie Mae Sec. Litig., 355 F. Supp. 2d 261, 264 (D.D.C. 2005); In re Vicuron Pharms., Inc. Sec. Litig., 225 F.R.D. 508, 512 (E.D. Pa. 2004). We agree with these decisions, and in particular with Extreme Networks's statement that "[b]ecause § 78u-4(a)(3)(B)(vi) is to be applied 'consistent with the purposes of this section,' any interpretation that the 5-and-3 cap applies to institutional investors would contravene the very purpose for which the professional plaintiff bar was enacted." 2016 WL 3519283, at *7. Indeed, Congress recognized that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions." Id. (quoting H.R. Conf. Rep. 104-369, at 34).

The burden to rebut the presumption that Oklahoma Firefighters should be appointed lead plaintiff rests with Amalgamated Bank. See Constance Sczesny Trust v. KPMG LLP, 223 F.R.D. 319, 324 (S.D.N.Y. 2004). As just explained, the statute gives the Court discretion to exempt a person from the "professional plaintiff" provision through the language "[e]xcept as the court may otherwise permit." 15 U.S.C. § 78u-4(a)(3)(B)(vi). An exception is justified in this case because, as we have described, application of the rule would be inconsistent with the "purposes," id., of the professional plaintiff bar. See H.R. Conf. Rep. No. 104-369, at 34 ("increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); id. at 35

("The Conference Committee does not intend for [the 'professional plaintiff' bar] to operate at cross purposes with the 'most adequate plaintiff' provision."). Unlike Cunha v. Hansen Natural Corp., 2009 WL 2029797 (C.D. Cal. July 13, 2009), cited by Amalgamated Bank, see Amalgamated Bank Opp. at 2; Amalgamated Bank Reply at 2, Amalgamated Bank has offered no evidence that Oklahoma Firefighters "have over-extended their resources in securities litigation," Cunha, 2009 WL 2029797, at *3, or otherwise "would be unable to efficiently function as lead plaintiff," Extreme Networks, 2016 WL 3519283, at *9.³ Oklahoma Firefighters is involved in 14 shareholder litigations, far fewer than the 21 in Cunha, 2009 WL 2029797, at *7, and along with its outside general counsel, Oklahoma Firefighters possess the resources and capabilities necessary to litigate the instant case. See Declaration of Chase Rankin, annexed as Ex. A to Josefson Reply Decl. (Docket # 21-1) ("Rankin Decl."), ¶¶ 6-9. Other than the number of litigations in which Oklahoma Firefighters is involved, Amalgamated Bank offers nothing to suggest that Oklahoma Firefighters is not up to serving as lead plaintiff. Amalgamated Bank thus has not rebutted the presumption in § 78u-4(a)(3)(B)(iii)(I) that Oklahoma Firefighters should be the lead plaintiff in this action. See generally Bach v.

---

³ The remaining cases cited by Amalgamated Bank, Knurr v. Orbital ATK, Inc., 220 F. Supp. 3d 653, 662-63 (E.D. Va. 2016); Aronson v. McKesson HBOC, Inc., 79 F. Supp. 2d 1146, 1156-57 (N.D. Cal. 1999); In re Alamosa Holdings, Inc. Sec. Litig., 2004 WL 578439, at *1 (N.D. Tex. Mar. 4, 2004), rely on reasoning that is inconsistent with the statute's express invocation of congressional purpose and with the underlying congressional purpose itself. Indeed, Aronson has been rejected on this basis. See In re Extreme Networks, 2016 WL 3519283, at *5 ("[I]n the decade and a half since Aronson, all [cases in the Northern District of California] have held that § 78u-4(a)(3)(B)(vi) is not a bar to institutional investors — and with good reason."). Notably, Alamosa, 2004 WL 578439, at *1, does not consider the institutional investor issue, conducting no analysis of legislative history at all. As for Knurr, 220 F. Supp. 3d at 662-63, we disagree with its suggestion that such discretion should not be employed merely because another institutional investor with a lesser financial interest is available to serve as lead plaintiff.

Amedisys, 2010 WL 4318755, at *5 (M.D. La. Oct. 22, 2010) (rejecting similar lack of resources argument).

     3.  Amalgamated Bank's Request for Appointment as Co-Lead Plaintiff

Amalgamated Bank requests in the alternative to be appointed co-lead plaintiff, noting that Elon Musk is "one of the richest people in the world with vast resources at his disposal" and contending that Oklahoma Firefighters is "spread too thin" because of its other litigations to handle the case alone. Amalgamated Bank Opp. at 2; accord Amalgamated Bank Reply at 2-3. Oklahoma Firefighters opposes the request. See Oklahoma Firefighters Reply at 9-10.

As an initial matter, we harbor significant "doubt that is appropriate under the PSLRA to appoint co-lead plaintiffs where the plaintiffs have not filed a joint motion to be appointed together." Basile v. Valeant Pharm Int'l, Inc., 2015 WL 13652714, at *2 (C.D. Cal. May 5, 2015). "While the PSLRA allows a group to serve as lead plaintiff, it also consistently refers to the lead plaintiff and most adequate plaintiff in the singular, suggesting that the district court should appoint only one lead plaintiff, whether an individual or a group." Cohen v. U.S. Dist. Court for the N. Dist. of Cal., 586 F.3d 703, 711 n.4 (9th Cir. 2009) (citing Cendant, 264 F.3d at 223 n.3). Further, [t]he appointment of multiple lead plaintiffs would also tend to run counter to the sequential inquiry . . . for selection of lead plaintiff." Id.

Separately, the contention that Amalgamated Bank is "spread too thin" relies on impermissible speculation. There is no reason to doubt Oklahoma Firefighters' representation that it possesses the experience and resources necessary to competently litigate this case on its own through outside counsel. See Rankin Decl. ¶¶ 6-9.

Furthermore, the authorities cited by Amalgamated Bank, see Amalgamated Bank Opp. At 3-4; Amalgamated Bank Reply at 3, are inapposite. In both Simmons v. Spencer, 2014 WL

1678987, at *6 (S.D.N.Y. Apr. 25, 2014), and Janbay, 272 F.R.D. at 120-21, a co-plaintiff structure was utilized to avoid anticipated conflicts of interest, which do not exist here.

Notwithstanding Amalgamated Bank's professed desire to benefit the class members through its appointment as co-lead plaintiff, see Amalgamated Bank Reply at 3, we find that "rejecting co-lead plaintiffs and counsel in this action better serves the interests of the investors in this case" because the use of co-lead plaintiffs, each represented by its own counsel, is "likely to increase unnecessarily attorney's fees and expenses," In re J. Ezra Merkin & BDO Sideman Sec. Litig., 2010 WL 11597482, at *2 (S.D.N.Y. Jan. 28, 2010), or "result in unnecessary disagreement" among co-counsel, Kuriakose v. Fed. Home Loan Mortg. Co., 2008 WL 4974839, at *9 (S.D.N.Y. Nov. 24, 2008).

Accordingly, Amalgamated Bank's request for appointment as co-lead plaintiff is denied.

4.  Appointment of Lead Counsel

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). Because we grant Oklahoma Firefighters' Motion for Appointment as Lead Plaintiff, we must consider Oklahoma Firefighters' request to appoint its attorneys from Bernstein Litowitz Berger & Grossmann LLP as lead counsel. The PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." In re Adelphia Commc'ns Corp. Sec. & Derivative Litig., 2008 WL 4128702, at *2 (S.D.N.Y. Sept. 3, 2008) (citation omitted), aff'd sub nom. Victor v. Argent Classic Convertible Arbitrage Fund L.P., 623 F.3d 82 (2d Cir. 2010). Here, Oklahoma Firefighters has provided evidence that its chosen firm, Bernstein Litowitz, "has extensive experience serving as lead counsel in securities class actions." Oklahoma Firefighters Mem. at 9 (citing Bernstein Litowitz

Firm Resume). Indeed, it has been represented that Bernstein Litowitz "is among the few law firms with experience successfully prosecuting claims for securities fraud under Section 10(b) of the Exchange Act on behalf of investors who were harmed by selling (rather than purchasing) shares of a company's stock at prices that were artificially depressed (rather than inflated) by violations of the federal securities laws." Id. at 10. Based on these representations, we approve Oklahoma Firefighters' selection of Bernstein Litowitz as lead counsel.

IV. CONCLUSION

For the foregoing reasons, Oklahoma Firefighters' Motion for Appointment as Lead Plaintiff (Docket # 8) is granted, and Amalgamated Bank's Motion to Appoint (Docket # 6) is denied. Oklahoma Firefighters' request to appoint Bernstein Litowitz Berger & Grossmann LLP as lead counsel is granted.

SO ORDERED.

Dated: September 2, 2022
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge