UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARC BAIN RASELLA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ELON R. MUSK and ELON MUSK REVOCABLE TRUST DATED JULY 22, 2003,<br><br>Defendants. | No. 1:22-cv-03026-ALC-GWG |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO DISMISS THE COMPLAINT ON BEHALF OF DEFENDANTS**

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Alex Spiro
Jacob J. Waldman
51 Madison Avenue, 22nd Floor
New York, New York  10010-1601
Telephone:  (212) 849-7000
alexspiro@quinnemanuel.com
jacobwaldman@quinnemanuel.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I.  PLAINTIFF'S CAUSE OF ACTION UNDER SECTION 10(B) FAILS ........................... 1

    A.  Plaintiff Has No Private Right of Action for Damages Under Section 10(b) ......... 1

    B.  The Statutory Scheme Supports the Exclusivity of Section 18(a) .......................... 4

    C.  Plaintiff Fails to Plead That Musk Formed Intent to Control or Acquire Twitter During the Class Period ............................................................................ 5

    D.  Plaintiff Fails to Plead That Musk Acted With Scienter ......................................... 8

II. PLAINTIFF FAILS TO PLEAD THAT MUSK ENGAGED IN INSIDER TRADING UNDER SECTION 20(A) ................................................................................................ 10

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

**PAGE**

*Alexander v. Sandoval*,
 532 U.S. 275 (2001)..................................................................................................5

*Azurite Corp. v. Amster & Co.*,
 52 F.3d 15 (2d Cir. 1995).......................................................................................3, 4

*Burt v. Maasberg*,
 2014 WL 1291834 (D. Md. Mar. 28, 2014).................................................................4

*E.ON AG v. Acciona, S.A.*,
 2007 WL 316874 (S.D.N.Y. Feb. 5, 2007)...................................................................7

*GAF Corp. v. Milstein*,
 453 F.2d 709 (2d Cir. 1971)..................................................................................2, 3

*Gruber v. Gilbertson*,
 2018 WL 1418188 (S.D.N.Y. Mar. 20, 2018) .....................................................2, 3, 10

*In re Ivan F. Boesky Sec. Litig.*,
 848 F. Supp. 1119 (S.D.N.Y. 1994)............................................................................3

*Kamerman v. Steinberg*,
 891 F.2d 424 (2d Cir. 1989)...........................................................................1, 2, 3, 4

*Levie v. Sears Roebuck & Co.*,
 2006 WL 756063 (N.D. Ill. Mar. 22, 2006).................................................................5

*Lou v. Belzberg*,
 728 F. Supp. 1010 (S.D.N.Y. 1990)............................................................................3

*Puddu v. 6D Global Technologies, Inc.*,
 2021 WL 1198566 (S.D.N.Y. Mar. 30, 2021) .............................................................2

*Puddu v. 6D Global Technologies, Inc.*,
 742 F. App'x 553 (2d Cir. 2018) ................................................................................2

*Puddu v. NYGG (Asia) Ltd.*,
 2022 WL 2304248 (S.D.N.Y. June 27, 2022) .............................................................2

*In re Refco, Inc. Securities Litigation*,
 503 F. Supp. 2d 611 (S.D.N.Y. 2007)..........................................................................9

*Rhyne v. Omni Energy Servs. Corp.*,
 2009 WL 1844474 (W.D. La. June 23, 2009) .............................................................3

*Rincon v. Covidien*,
  2017 WL 2242969 (S.D.N.Y. May 22, 2017) ..........................................................................8

*Rondeau v. Mosinee Paper Corp.*,
  422 U.S. 49 (1975) ................................................................................................................3

*Rosen v. Brookhaven Cap. Mgmt. Co.*,
  113 F. Supp. 2d 615 (S.D.N.Y. 2000) ...................................................................................7

*Rubin v. Posner*,
  701 F. Supp. 1041 (D. Del. 1988) .........................................................................................4

*Schnell v. Schnall*,
  1981 WL 1618 (S.D.N.Y. Mar. 30, 1981) ............................................................................4

*Seagoing Uniform Corp. v. Texaco, Inc.*,
  705 F. Supp. 918 (S.D.N.Y. 1989) ....................................................................................3, 7

*SEC v. Lund*,
  570 F. Supp. 1397 (C.D. Cal. 1983) ...................................................................................10

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*,
  552 U.S. 148 (2008) ..............................................................................................................4

*Takata v. Riot Blockchain, Inc.*,
  2022 WL 1058389 (D.N.J. Apr. 8, 2022) .............................................................................4

*TCS Cap. Mgmt., LLC v. Apax Partners, L.P.*,
  2008 WL 650385 (S.D.N.Y. Mar. 7, 2008) ..........................................................................5

*U.S. v. Bilzerian*,
  926 F.2d 1285 (2d Cir. 1991) ................................................................................................3

*U.S. v. Kosinski*,
  976 F.3d 135 (2d Cir. 2020) ................................................................................................10

*Vladimir v. Bioenvision Inc.*,
  606 F. Supp. 2d 473 (S.D.N.Y. 2009) ...............................................................................3, 4

*Willard v. UP Fintech Holding Ltd.*,
  527 F. Supp. 3d 609 (S.D.N.Y. 2021) ...................................................................................6

**Rules / Statutes**

Exchange Act § 10(b) .......................................................................................................... passim

Exchange Act § 13(d) .......................................................................................................... passim

Exchange Act § 18(a)........................................................................................................... passim

Defendants respectfully submit this Reply Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint:

## PRELIMINARY STATEMENT

Plaintiff seeks damages under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") for an alleged breach of Section 13(d). The Second Circuit has found, however, that "[o]ne complaining of a false or misleading statement in a Schedule 13D may seek damages only under Section 18(a) of the Act." *Kamerman v. Steinberg*, 891 F.2d 424, 430 (2d Cir. 1989). None of Plaintiff's authority overturns *Kamerman*, nor awards damages to a private plaintiff under Section 10(b) for a Section 13(d) violation. This point is dispositive.

Further, Plaintiff fails to plead that Musk's alleged untimely Schedule 13D was intentional or reckless. The Complaint alleges not only that Musk led three companies during the Class Period, but that attorneys filed Musk's April 5, 2022 Schedule 13D. Plaintiff's repeated, conclusory allegations that Musk personally signed and filed all of his previous Schedules 13D are thus contrary to Plaintiff's own allegations, as well as implausible. The most compelling inference from Plaintiff's allegations is that any filing failure was therefore inadvertent.

Finally, Plaintiff claims Musk was a "temporary insider" at Twitter, and so liable under Section 20(A), but fails to plead Musk obtained any confidential information from Twitter.

The Complaint should be dismissed, in its entirety, with prejudice.

## ARGUMENT

**I.   PLAINTIFF'S CAUSE OF ACTION UNDER SECTION 10(b) FAILS**

    **A.   Plaintiff Has No Private Right of Action for Damages Under Section 10(b)**

The Second Circuit made plain in *Kamerman* that where, as here, a private plaintiff seeks damages under Section 13(d), their recourse is to Section 18(a). 891 F.2d at 430; Mot. 8-9 (citing

additional authority).[1] Plaintiff asserts that *Kamerman* supports his position because it "evaluated the merits of the *separate* § 10(b) claim based on a violation of § 13(d) obligations." Opp. 11 (emphasis original). In fact, the plaintiff in *Kamerman* sought *rescission* and *injunctive* relief—not damages. 891 F.2d at 425 (listing causes of action). *Kamerman* therefore stands for the proposition it states: Section 18(a) is the sole damages remedy for a breach of Section 13(d).

Plaintiff's authority fails to address *Kamerman* or analyze the statutory scheme relating to appropriate remedies under Section 13(d). *Puddu v. 6D Global Technologies, Inc.*, 2021 WL 1198566 (S.D.N.Y. Mar. 30, 2021) (*"Puddu II"*) finds that failure to file a Schedule 13D can be "enough to adequately plead a material omission" under Section 10(b). *Id.* at *6. This by itself is not controversial, but *Puddu II* does not address or analyze what *relief*, consistent with the statutory scheme, is available to a private plaintiff under Section 10(b) for a breach of Section 13(d), nor does it address *Kamerman*. That *Puddu II* does not account for these issues does not suggest that *Kamerman* can be disregarded, but at most that the parties failed to raise them (and there is no obligation for the Court to raise them *sua sponte*). The Summary Order in *Puddu v. 6D Global Technologies, Inc.*, 742 F. App'x 553 (2d Cir. 2018) ("*Puddu I*") is also inapposite, as it is confined to the appealed decision, and does not address remedies. *See id.* at 555-557.[2]

Plaintiff's other authority is similarly inapposite. In *GAF Corp. v. Milstein*, 453 F.2d 709 (2d Cir. 1971), issued 18 years before *Kamerman*, the Second Circuit found that GAF, as an issuer of securities, had standing to seek injunctive relief under Section 13(d). *Id.* at 722. The statement highlighted by Plaintiff that "[i]f there is a purchase or sale of securities, section 10(b) will apply,"

---

[1] The opening brief is cited herein as "Mot. __"; the Opposition as "Opp. __".

[2] Neither *Puddu v. NYGG (Asia) Ltd.*, 2022 WL 2304248 (S.D.N.Y. June 27, 2022) nor *Gruber v. Gilbertson*, 2019 WL 4439415 (S.D.N.Y. Sept. 17, 2019) certifies class claims under Section 18(a), and the other cited *Puddu* and *Gruber* cases are distinguishable as stated herein.

*id.* at 720 n.22, is preceded by the statement that "persons subject to 13(d) may confer or communicate with shareholders in the course of a takeover attempt." *Id.* In other words, this passage makes the unremarkable point that false statements can be actionable under Section 10(b), but does not address Section 18(a). Indeed, *GAF*'s holding as to the Section 10(b) claim is only to uphold that an issuer of securities—as opposed to purchasers and sellers—lacks standing under Section 10(b). *Id.* at 722; *see also Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 57-60 (1975) (addressing request for injunctive relief for delay in filing a Schedule 13D, and not addressing or mentioning Section 10(b)); *Azurite Corp. v. Amster & Co.*, 52 F.3d 15, 16, 18 (2d Cir. 1995) (*rejecting* Section 10(b) claim without analysis of appropriate remedies under Section 13(d)); *U.S. v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991) (government, not private, action).[3]

Plaintiff's assertion that courts "routinely sustain § 10(b) damages claims arising from" Section 13(d), Opp. 9, likewise relies on inapposite authority that fails to address *Kamerman* or Section 18(a). *See, e.g.*, *Gruber v. Gilbertson*, 2018 WL 1418188, at *13 (S.D.N.Y. Mar. 20, 2018) (citing *criminal* case for proposition that *private* Section 13(d) plaintiff may bring an action under Section 10(b)); *In re Ivan F. Boesky Sec. Litig.*, 848 F. Supp. 1119, 1121, 1124-25 (S.D.N.Y. 1994) (findings in action brought by the S.E.C.—and not a private plaintiff—were *res judicata*). And *Seagoing Uniform Corp. v. Texaco, Inc.*, 705 F. Supp. 918 (S.D.N.Y. 1989), notes the general proposition that false statements in S.E.C.-filed documents can be actionable under Section 10(b),

---

[3] Cases that *dismissed* actions for damages under Section 10(b) for breaches of Section 13(d)—cited apparently because they were dismissed for reasons *other* than the exclusivity of Section 18(a)—are inapposite. *See Vladimir v. Bioenvision Inc.*, 606 F. Supp. 2d 473 (S.D.N.Y. 2009) (general notion that 13(d) "duty to disclose" can implicate Section 10(b); not addressing *Kamerman* or Section 18(a)); *Lou v. Belzberg*, 728 F. Supp. 1010 (S.D.N.Y. 1990) (not addressing *Kamerman* or Section 18(a)); *Rhyne v. Omni Energy Servs. Corp.*, 2009 WL 1844474 (W.D. La. June 23, 2009) (addressing various misrepresentations, including unrelated to Section 13(d)).

3

*id.* at 926-27, but fails to limit remedies under Section 13(d) (as *Kamerman* clarified months later).[4]

Plaintiff seeks to distinguish *Takata v. Riot Blockchain*, 2022 WL 1058389 (D.N.J. Apr. 8, 2022) as addressing "an undisclosed control group" while "Musk acted alone" and "**purchased** shares of Twitter during the class period." Opp. 12 (emphasis original). This is a distinction without a difference. *Takata* analyzes whether there is an "implied private right of action for shareholders to seek damages (1) directly under Section 13(d) of the [Exchange Act] or (2) indirectly under 10(b)." 2022 WL 105839, at *2. And Plaintiff offers no reason the appropriate statutory remedy would vary with the specific breach of Section 13(d). Plaintiff also claims that *Takata* endorses *Azurite* and *Vladimir* even while distinguishing them, and even though *Takata* nowhere supports the holding in either case, and instead concludes that "implied private rights of action under Section 13(d) may provide plaintiffs injunctive relief but not monetary damages." *Id.* at *10; *see also id.* at *11 (noting it "seems improper" for a plaintiff to "sidestep the boundaries of even the implied right of action by pleading Section 10(b).").

Plaintiff seeks an unavailable remedy, and the Court can dismiss on this ground alone.

**B.   The Statutory Scheme Supports the Exclusivity of Section 18(a)**

The Motion made clear that *Kamerman*'s view is consistent with appropriate statutory construction—including of the Exchange Act—and with the lack of legislative intent to expand remedies under Section 13(d). Mot. 11-13. Plaintiff asserts that "decisions concerning completely different subject matters should be disregarded," Opp. 13 n.6, but offers no reason why statutory construction, legislative history, and caselaw interpreting the Exchange Act are irrelevant. For instance, *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148 (2008),

---

[4] *Schnell v. Schnall*, 1981 WL 1618 (S.D.N.Y. Mar. 30, 1981) and *Rubin v. Posner*, 701 F. Supp. 1041 (D. Del. 1988) pre-date *Kamerman*; *Burt v. Maasberg*, 2014 WL 1291834 (D. Md. Mar. 28, 2014) relies on *Azurite* and *Vladimir*, addressed *infra*, but not Section 18(a) or *Kamerman*.

4

recognized that aiding and abetting liability in private actions is not available under Section 10(b) by giving "weight to Congress' amendment to the [Exchange] Act restoring aiding and abetting liability in certain cases but not others." *Id.* at 163. The Court should likewise reject expanding the private right of action under Section 13(d) beyond where Congress expressly permitted it in Section 18(a). *See* Mot. 12; *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001) ("The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy.").[5]

Plaintiff also claims that authority concerning Section 13(d) is irrelevant because he asserts a claim under Section 10(b). Opp. 10. This argument assumes what it wants to prove—that a Section 13(d) plaintiff can seek damages under Section 10(b)—and highlights Plaintiff's attempt to end-run Section 18(a) to be eligible for class treatment.

### C. Plaintiff Fails to Plead That Musk Formed Intent to Control or Acquire Twitter During the Class Period

Plaintiff does not dispute that "until a course of action is definite, it need not be disclosed as a 'plan' or 'proposal' under 13D." *TCS Cap. Mgmt., LLC v. Apax Partners, L.P.*, 2008 WL 650385, at *21 (S.D.N.Y. Mar. 7, 2008). The Complaint itself makes clear that Musk did not settle on a course concerning his board membership at Twitter until the end of the Class Period. *See* Mot. 13-14 (identifying allegations that Musk was considering a new or even "rival" platform, and assertions about other inchoate notions of "help[ing]" and "considering various options").

---

[5] Plaintiff cites *Levie v. Sears Roebuck & Co.*, 2006 WL 756063 (N.D. Ill. Mar. 22, 2006) for the proposition that Section 10(b) governs where, as here, the issue is the failure to file a Schedule 13D. Plaintiff offers no Second Circuit authority for this assertion, nor any reason that the statutory remedy for an omission *within* a filed Schedule 13D, and for the omission of failing to file a Schedule 13D altogether, should be any different. Plaintiff's own authority supports that this argument relies upon a distinction without a difference. *See Gruber*, 2018 WL 418188, at *13 (failure to disclose ownership is a "communicative" act).

5

Plaintiff responds largely by reiterating insufficient allegations.  *First*, Plaintiff re-asserts that an unspecified document demonstrates Musk's intent to buy Twitter, but does not address the failure to plead such particularized facts as the type of document, the source of the information, what Plaintiff might mean by "internally determined," or whether the "direct quotes" are Musk's, or characterizations of the unknown source.  *See* Opp. 22.  The Opposition claims that the "Complaint pleads that the document is dated March 31, 2022," but that is false: the Complaint alleges that Musk's supposed "internal determination" happened on March 31, 2022, but does not plead the date of the document, which further diminishes its credibility.  *See id.*  And, contrary to Plaintiff's assertions, alleged events on April 5, 9, and 25 demonstrate, at best, Musk's intent on *those* dates, *see id.*, but not in hindsight, particularly given the failure otherwise to plead concrete plans regarding Twitter.  *See* Mot. 18 (citing authority rejecting fraud by hindsight).

*Second*, Plaintiff claims that Defendants concede Musk had "sufficiently definite intent" as to control by April 4, when he accepted the invitation to join Twitter's board.  Opp. 22.  (Plaintiff fails to plead that Twitter's April 3 invitation shows definite intent *on the part of Musk*, particularly given the allegation that he was merely "hopeful[]" he might join.  *See* Mot. 5.)  Plaintiff offers no authority or reason that not disclosing the April 4 board invitation the minute it happened supports scienter—nor even that Musk accepted the April 4 invitation during trading hours, such that disclosure would have made a difference on that date.  Further, Musk's April 4, 2022 Schedule 13G disclosed his 9.2% interest *and* expressly deleted the certification of "non-intent" to control Twitter, rendering any alleged omission concerning the Twitter board immaterial.  *See Willard v. UP Fintech Holding Ltd.*, 527 F. Supp. 3d 609, 621 (S.D.N.Y. 2021) (information is immaterial where it would not "*significantly* alter[] the total mix of information already made available") (quotation omitted) (emphasis in original).  Additionally, Musk's last alleged stock purchase was

6

on April 1, 2022, Compl. ¶ 154, and Plaintiff pleads no benefit to Musk from waiting until Twitter's April 5 announcement disclosed his board membership.

*Third*, Plaintiff addresses the indefinite nature of Musk's pre-April 5, 2022 plans by reiterating Musk's alleged statements, which do not suggest definite or concrete plans.  *See* Mot. 5, 13-15.  Plaintiff also cites authority for the notion that negotiations can be sufficient to plead control intent, but each case involves far more detailed allegations about more advanced, complicated transactions than the scattered assertions about whether Musk might join Twitter's board (or than the far less particularized allegations about alleged intent to buy Twitter).[6]  And Plaintiff's authority confirms that "disclosure is required of definite intentions and matters fully determined, and not predictions of future behavior or tentative or inchoate plans."  *Rosen*, 113 F. Supp. 2d at 630.  Plaintiff's allegations are not sufficiently definite *as to board membership* until, at the earliest, Musk accepted the board invitation (which, as above, does not support scienter).

*Finally*, Plaintiff fails to establish that Musk "had his attorneys correct" his April 4, 2022 Schedule 13G because it was "misleading."  Opp. 23.  In fact, Plaintiff fails meaningfully to address that Musk removed the certification of "non-intent" from the 13G, Mot. 16; Opp. 15-16 (unsupported assertion that Schedule 13G was "**affirmative misrepresentation**").  If anything, deleting the certification of "non-intent" from the April 4, 2022 Schedule 13G *alerted* the market to potential control intentions.  And contrary to Plaintiff's claim, Opp. 6, although Bank of America noted the *typical* purpose of Schedule 13G, it nonetheless "'expect[ed] the news to drive

---

[6] *See Seagoing*, 705 F. Supp. at 927-29 (alleging extensive and detailed negotiations); *E.ON AG v. Acciona, S.A.*, 2007 WL 316874, at *9 (S.D.N.Y. Feb. 5, 2007) (failure to disclose financing "and other arrangements," and merger plans relating to tender offer); *Rosen v. Brookhaven Cap. Mgmt. Co.*, 113 F. Supp. 2d 615, 632-33 (S.D.N.Y. 2000) (allegations pointed to potential, undisclosed involvement in "substantial reorganization" of company business).

significant retail investor interest in, and activity for" Twitter stock. Compl. ¶ 92.[7] The more plausible inferences are that Musk's attorneys filed a Schedule 13D to reflect that he had accepted Twitter's board invitation on April 4, or simply because the Schedule 13G, as filed, was atypical.

### D.  Plaintiff Fails to Plead That Musk Acted With Scienter

Plaintiff's grab bag of unparticularized assertions does not approach the PSLRA standard for pleading scienter. Mot. 15-19. To start, Defendants' arguments about Musk's limited time, and that disclosures under Section 13(d) were delegated to appropriate agents (such as counsel), are based on *Plaintiff's* allegations that Musk led multiple companies and that his attorneys filed the April 5, 2022 Schedule 13D (as well as on basic plausibility). Mot. 15 (citing Compl. ¶¶ 2, 23, 95). Plaintiff asserts the "delegation" argument is contrary to allegations that Musk "personally signed and filed" previous Schedules 13D, but this conclusory allegation offers no supporting facts beyond the person on whose behalf the Schedule was filed. *See* Opp. 14; Compl. ¶ 59. Plaintiff's list of activities on which Musk allegedly spends time only supports that his time was stretched thin. *See* Opp. 19. And notably, it is Plaintiff who goes outside the pleadings to assert that Musk did not Tweet about delegation, and "had his attorneys make this unsupported assertion" (the latter is false). *See id.*; *see also Rincon v. Covidien*, 2017 WL 2242969, at *2 (S.D.N.Y. May 22, 2017) (unpleaded assertions "serve only to illustrate the deficiencies" in the complaint). Indeed, the sole particularized allegation about the mechanics of filing Schedules 13D is that Musk delegated the

---

[7] Plaintiff also insists that alleged failure to comply with Hart-Scott-Rodino supports scienter, even though Plaintiff nowhere pleads that Musk was aware of any such requirements. *See* Opp. 17; Mot. 17. And Plaintiff fails to plead that the exemption under 15 U.S.C. § 18(a) for "acquisitions, solely for the purpose of investment" is inapplicable, because, as addressed above, Plaintiff fails to plead a definite intent to purchase Twitter during the Class Period. *See* Mot. 13-15 (allegations suggest, at most, that Musk had reached no conclusion).

8

task to attorneys. *See* Compl. ¶ 95.[8]  Additionally, Plaintiff's scolding claim that Musk "had sufficient time to comply with his legal obligations" is irrelevant to *intent*, *see* Opp. 19—nor does it support recklessness. *See Gluck v. Hecla Mining Co.*, 2023 WL 2161958, at *10 (S.D.N.Y. Feb. 22, 2023) ("[R]ecklessness . . . involves an extreme departure from the standards of ordinary care. In other words, an allegation that a defendant merely ought to have known is not sufficient to allege recklessness.") (internal citations and quotations omitted).

Plaintiff asserts that Musk's alleged discussions with Twitter about his stake were not "'forthcoming' to ***investors***." Opp. 20 (emphasis original).  Plaintiff misses the point that, had Musk sought to conceal his acquisition, he would not have openly discussed it with executives of the issuer, and Plaintiff makes no allegation that Musk sought to bestow some benefit on Twitter through selective disclosure.  Plaintiff also does not allege with particularity that Musk even knew *when* he had crossed the 5% threshold, which means Plaintiff fails to plead that, at the time of the alleged conversations, Musk knew the 10-day grace period for filing Schedule 13D had expired.[9]

Finally, in support of motive, Plaintiff asserts only that allegedly concealing purchases "saved [Musk] ***over $200 million***." Opp. 18 (emphasis original).  Plaintiff cannot assert motive in hindsight, particularly where, as here, Plaintiff alleges that Musk "did not know with precision exactly how much money he was saving." Mot. 18-19 (quoting Compl. ¶ 125; citing unanswered authority that fraud-by-hindsight is inactionable).  Plaintiff's claims about behavior of other stocks fails to plead with particularity that Musk himself had considered, much less could predict, that

---

[8] Plaintiff cites *In re Refco, Inc. Securities Litigation*, 503 F. Supp. 2d 611 (S.D.N.Y. 2007), which concerns allegations that an auditor failed to recognize "sham loans," and is irrelevant to Plaintiff's allegations concerning the finite time of a single person.

[9] Plaintiff fails to walk back his contrary scienter allegations. *See* Opp. 21.  In short, Plaintiff cannot plead that Musk's supposed disregard for the SEC supports intent, while pleading that his prior adherence to the specific requirement here at issue *also* supports intent. Mot. 17-18.

disclosing his purchases would cause the price to rise. Mot. 19 (noting Plaintiff's assertions concerning a counter-factual world are speculative). And, notably, the "splash" Plaintiff alleges nowhere speaks to the *direction* the stock might move. *See* Opp. 18.[10]

## II. PLAINTIFF FAILS TO PLEAD THAT MUSK ENGAGED IN INSIDER TRADING UNDER SECTION 20(A)

Plaintiff does not attempt to plead a Section 20A breach under either of the two theories noted in the Motion. Mot. 19. Plaintiff instead asserts that Musk was a "temporary insider with confidential information," Opp. 24-25, but fails to plead facts sufficient to sustain this claim.

Plaintiff's authority defines "temporary insider" as someone who has "entered into a special confidential relationship in the conduct of the business of the enterprise"—such as an "accountant, lawyer, or consultant"—and receives "access to information solely for corporate purposes." *U.S. v. Kosinski*, 976 F.3d 135, 144 (2d Cir. 2020) (quotation omitted). In *Kosinski*, the defendant became a "temporary insider" when he obtained information by executing a confidentiality agreement. 976 F.3d at 145. By contrast, the sole "confidential information" Musk supposedly possessed "concern[ed] his ownership of Twitter common stock and intentions for Twitter," Mot. 2 (quoting Compl. ¶ 153), and Plaintiff nowhere alleges that Musk obtained this information from Twitter (or from a person to whom he owed a duty).[11] Plaintiff's claim fails.

## CONCLUSION

Defendants respectfully request an Order dismissing the Complaint, with prejudice.

---

[10] As to loss causation, Plaintiff cannot dispute that allegations as to losses—or, really, non-gains—investors might have incurred relies on speculation as to what *would have happened* had Musk made disclosures at some other time. *See* Opp. 23-24. And Plaintiff does not deny that speculative loss causation allegations are insufficient. *See id.*; *see also* Mot. 20-21.

[11] Plaintiff's authority does not support that Musk was a temporary insider. *See Gruber*, 2018 WL 1418188, at *17 (defendant "made every material decision for the Company"); *SEC v. Lund*, 570 F. Supp. 1397, 1403 (C.D. Cal. 1983) (temporary insider obtained information that was "solely for corporate purposes," and where "the information was to be kept confidential.").

| | |
|---|---|
| DATED:  New York, New York<br>May 3, 2023 | Respectfully submitted,<br><br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br><br>*/s/ Alex Spiro*<br>Alex Spiro<br>Jacob J. Waldman<br>51 Madison Avenue, 22nd Floor<br>New York, New York  10010-1601<br>Telephone:  (212) 849-7000<br>alexspiro@quinnemanuel.com<br>jacobwaldman@quinnemanuel.com<br><br>*Attorneys for Defendants* |