# BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

ATTORNEYS AT LAW

NEW YORK • CALIFORNIA • ILLINOIS • LOUISIANA • DELAWARE

Katherine Sinderson
(212) 554-1392
KatieM@blbglaw.com

August 3, 2023

**Via ECF & E-MAIL**

Hon. Andrew L. Carter, Jr.
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, NY 10007

  Re: *Rasella v. Musk*, No. 1:22-cv-03026-ALC-GWG (S.D.N.Y.)

Dear Judge Carter:

  We represent Lead Plaintiff, Oklahoma Firefighters Pension and Retirement System, in the above-captioned action. We write to advise the Court of the recent decision denying the motion to dismiss in *In re Bed Bath & Beyond Corporation Securities Litigation*, No. 1:22-cv-02541-TNM (D.D.C July 27, 2023) ("*Bed Bath*") (attached as Exhibit A) and respectfully submit it as supplemental authority in support of Lead Plaintiff's opposition to Defendants' motion to dismiss pending in this Action. As discussed briefly below, the *Bed Bath* court rejected many of the same legal arguments Defendants raise in their motion to dismiss.

  By way of brief background, this case centers on Defendant Elon Musk's knowing or reckless concealment of his greater-than-5% ownership stake in Twitter, in defiance of his regulatory obligations under Rule 13 and in violation of Section 10(b) of the Securities Exchange Act of 1934. Musk's violation of the law allowed him to purchase hundreds of millions of dollars in additional Twitter stock at artificially depressed prices—thereby cheating putative Class members out of the true value of their securities when they sold their stock during Musk's buying spree.

  The *Bed Bath* opinion sustained securities fraud claims based on strikingly similar allegations as those pled in this Action. There, a wealthy investor, Ryan Cohen ("Cohen"), manipulated public sentiment through his robust Twitter following to push Bed Bath and Beyond stock to retail investors. *Bed Bath* at 2, 11, 16-17, 21. Cohen "had access to Bed Bath's board" and its senior executives and quickly accumulated a large (9%) interest in the company. *Bed Bath* at 1-2, 11, 16-17, 21. While Bed Bath and Beyond's stock price was soaring due to its status as a "meme stock," Cohen omitted to disclose in his SEC-required Schedule 13D filing his concrete plans to sell his stock for a $68 million profit—which would predictably cause Bed Bath and Beyond's stock price to drop once disclosed. *Bed Bath* at 4, 13, 21. Investors were

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Hon. Andrew L. Carter, Jr.
August 3, 2023
Page 2 of 3

harmed when the news broke that Cohen had already sold his stock, causing Bed Bath and Beyond's share price to plummet. *Bed Bath* at 1-4, 13, 21.

Here, Defendants' principal argument in support of dismissal is that there is no private right of action for violations of Section 13 of the Exchange Act or, if there is, it is only under Section 18. The *Bed Bath* court rejected virtually the same arguments that Defendants raise here.

*First*, like Defendants here, Cohen argued that "no private right of action for damages exists under Section 13(d)." *Bed Bath* at 13; *compare with* MTD at 7-13. As the *Bed Bath* court put it, "No matter. Even if that is right, ***it does not follow that 10(b) claims may not be based on misleading 13D filings***. Those are two separate questions." *Bed Bath* at 13. As such, the *Bed Bath* court correctly concluded that the question of whether there is a private right of action under Section 13(d) is separate from—and irrelevant to—the question of whether there has been a violation of Section 10(b).

*Second*, like Defendants here, Cohen argued that "a different section of the Exchange Act, [Section] 18(a) provides the exclusive remedy for claims based on 'a false or misleading statement in a Schedule 13D'" under *Kamerman v. Steinberg,* 891 F.2d 424, 430 (2d Cir. 1989). *Id.*; *compare with* MTD at 1-4; Defs' Reply at 1, 6, 8-9. The *Bed Bath* court rejected this reading of *Kamerman* as improper reliance "on dated Supreme Court dicta" that "do[es] not resolve the issue." *Bed Bath* at 13-14. In reaching this conclusion, the *Bed Bath* court specifically recognized that the Supreme Court "has since directed that when determining 'the scope of conduct prohibited by [Section] 10b, the text of the statute controls'" and "nothing in 10(b)'s text . . . support[s] a carveout for misleading 13Ds." *Id.*; *compare with* MTD at 11-13.

As Lead Plaintiff set forth in its opposition to Defendants' motion to dismiss, the Second Circuit has since routinely endorsed this very cause of action. *See*, *e.g.*, *Puddu v. 6D Glob. Techs., Inc.*, 742 F. App'x 553, 555-56 (2d Cir. 2018) (holding that the complaint stated a valid §10(b) claim by plausibly alleging that defendants had "failed to disclose [a defendant's] beneficial ownership" in violation of Section 13(d)).[1]

The *Bed Bath* court also explicitly distinguished *Motient Corporation v. Dondero*, 529 F.3d 532, 536 (5th Cir. 2008) and *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.,* 286 F.3d 613, 620 (2d Cir. 2002) as "deal[ing] with a different issue—whether to imply a cause of action under 13(d) for money damages." *Bed Bath.* at 14. Here, Defendants' effort to press the same incorrect interpretation—*i.e.*, that the availability of a private remedy under Section 13(d) is relevant to Lead Plaintiff's Section 10(b) claim—should likewise be rejected. *See* MTD at 8-9; Opp. at 10.[2]

---

[1] In the *Bed Bath* briefing, the court was not presented with the favorable ruling in *Puddu* and so did not incorporate it into its opinion.

[2] Like Defendants in this case, the defendants in *Bed Bath* also cited to *Takata v. Riot Blockchain, Inc.*, 2022 WL 1058389 (D.N.J. Apr. 8, 2022), *See In re Bed Bath & Beyond Corporation Securities Litigation*, No. 1:22-cv-02541, ECF No. 87 at 8-9 (D.D.C. May 3, 2023). Lead Plaintiff outlined *Takata*'s

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Hon. Andrew L. Carter, Jr.
August 3, 2023
Page 3 of 3

*Third*, the *Bed Bath* court rejected any argument that the court should read Section 10(b) more narrowly in light of Section 18(a), since Section 10(b) is an implied right of action and 18(a) is express. Like Defendants here, Cohen relied on *Alexander v. Sandoval*, 532 U.S. 275 (2001), to argue that "the Court should read 10(b) to exclude conduct covered by 18(a)." *Bed Bath* at 14-15; *compare with* MTD at 12. The *Bed Bath* court held that "*Sandoval* dealt with the question of whether to imply a cause of action in the first place, not the issue here—10(b)'s reach." *Id.* at 15. The *Bed Bath* court also recognized that "the Supreme Court has rejected similar arguments for *narrowing* [Section] 10(b), refusing to do so despite [Section] 10(b)'s overlap with other securities laws." *Id.* (emphasis in original). Here, Defendants' mirror-image reliance on *Sandoval* and related arguments should likewise be rejected.

For these reasons and those stated in Lead Plaintiff's opposition to Defendants' motion to dismiss, Lead Plaintiff respectfully submits that Defendants' motion to dismiss should be denied. We appreciate Your Honor's attention to this matter and are available at the Court's convenience.

Respectfully submitted,

*/s/ Katherine Sinderson*
Katherine Sinderson

cc: All counsel (by email)

---

deficiencies in its opposition to Defendants' motion to dismiss. Opp. at 12. The *Bed Bath* court did not find *Takata* persuasive and implicitly rejected it without citation.