**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

December 29, 2023

WRITER'S DIRECT DIAL NO.
**(212) 849-7364**

WRITER'S EMAIL ADDRESS
**alexspiro@quinnemanuel.com**

**VIA ECF**

Hon. Gabriel W. Gorenstein
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, NY 10007

Re:   *Oklahoma Firefighters Pension and Retirement System v. Musk*,
      No. 1:22-cv-03026-ALC-GWG (S.D.N.Y.)

Dear Judge Gorenstein:

On behalf of our clients Elon R. Musk and the Elon Musk Revocable Trust Dated July 22, 2003 ("Defendants"), we respond to Plaintiff's Rule 37.2 Letter ("Letter" or "Plaintiff's Letter") dated December 27, 2023, Dkt. No. 62. Plaintiff's letter improperly seeks to compel Defendants to demand from the SEC and FTC transcripts of testimony and related exhibits (the "Transcripts") that Defendants do not possess so that Defendants may then turn those Transcripts over to Plaintiff.

## I.   Background

### A.   Documents Produced Debunk Plaintiff's Claims

Plaintiff's claims are premised on the false notion that Mr. Musk intentionally deceived investors regarding his acquisition of more than 5% of Twitter stock as well as his alleged "plans to influence the control of the Company." Letter at 1. To prove its claim, Plaintiff must prove that Defendants acted with scienter, *i.e.* intent to defraud. *Halliburton Co. v. Erica P. John Fund, Inc*., 573 U.S. 258, 267 (2014). To meet its scienter obligation, Plaintiff must prove that Defendants acted with actual intent, or, at minimum, with "recklessness." *See Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000). In the securities fraud context, recklessness "must be conduct that is highly unreasonable, representing an extreme departure from the standards of ordinary care," *id*. (quotation marks omitted), "not merely a heightened form of negligence." *In re Advanced Battery Techs., Inc*., 781 F.3d 638, 644 (2d Cir. 2015) (quoting *Novak v. Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000)). Indeed, "simple or ***even inexcusable negligence*** will not suffice to satisfy the § 10(b) scienter requirement." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 411 (S.D.N.Y. 2001) (emphasis added).

As evidenced by documents produced to Plaintiff, Mr. Musk had no intent to defraud investors and did not act recklessly. Instead, any failure to timely disclose his ownership stake was the result of a good-faith misunderstanding of the technical reporting requirements. Indeed,

**quinn emanuel urquhart & sullivan, llp**

ATLANTA | AUSTIN | BOSTON | BRUSSELS | CHICAGO | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM |
MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI |
SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

before Mr. Musk crossed the 5% threshold, Mr. Musk and his financial advisors operated under the genuine belief that that crossing the 5% threshold would only require a year-end filing. This is, in fact, true for certain types of investors (*e.g.*, certain institutional investors, commonly referred to as "qualified institutional investors," under subsection (b) of the SEC rule, *see* 17 C.F.R. § 240.13d-1(b)). Mr. Musk—who meets the standards of what is referred to as a "qualified purchaser" (*see* 15 USC § 80a-2(a)(51)—and his advisors honestly believed that no disclosure was required. Within one trading day of learning that the original understanding regarding the timing requirements may have been incorrect, Mr. Musk filed a Schedule 13D disclosing a more than 9% interest in Twitter. Under these facts, there is no intent to defraud. There is, at most, mere negligence. Rather than pursue further discovery, Plaintiff should dismiss its case.

**B.      Defendants Considerable Meet-and-Confer and Discovery Efforts**

Despite the unquestionable evidence that Mr. Musk had no intent to defraud anyone, Plaintiff is seeking wide-ranging discovery to which Defendants have agreed. Plaintiff served its First Set of Requests for the Production of Documents Directed to All Defendants ("RFPs") on October 23, 2023, and Defendants timely responded on November 22, 2023. Since then, the parties have held three lengthy meet-and-confer sessions and exchanged numerous, often detailed e-mails in their considerable and productive efforts to agree upon a production protocol. Indeed, contrary to Plaintiff's obligatory histrionics about non-cooperation and delay, Plaintiff's Letter identifies only the Transcript area as the parties' single impasse. And while Plaintiff complains that not a single document had been produced as of the date of their letter, Plaintiff omits that Defendants previously confirmed they would be making a production this week following their agreed-upon document-by-document review of documents previously provided to the SEC and FTC. Consistent with that confirmation, Defendants made their first production today of 1,028 documents (3,396 pages).

In addition, Plaintiff omits that Defendants also have offered to review and produce all documents Defendants produced in the action titled *Twitter v. Musk* (Del. Ch. Ct. C.A. No. 2022-0613-KSJM), that are responsive to several broad categories, including "communications, concerning actual or contemplated Transactions by or on behalf of Musk in Twitter Securities between January 1, 2022 and April 30, 2022."

**C.      The Single Area of Impasse Identified By Plaintiff**

The single issue here is whether, in response to RFPs 25(g) and 26(g), Plaintiff can compel Defendants to request the Transcripts from the SEC[1] in order to then turn them over to Plaintiff. Specifically, Plaintiff demands that Defendants produce Transcripts from testimony provided to the SEC by Mr. Musk and Jared Birchall in connection with *In the Matter of Certain Purchases, Sales and Disclosures of Twitter Shares* (SEC File No. SF-4519). That investigation has focused on, and sought information relating to, various topics, including Mr. Musk's purchases of Twitter stock prior to his acquisition of Twitter, as well as Mr. Musk's public communications and Schedule 13 filings relating to the acquisition. The testimony was conducted on July 12, 2022,

---

[1]  Neither Mr. Musk nor Mr. Birchall has given testimony in the FTC investigation; accordingly, no such transcripts exist.

and July 27, 2022, and each testimony session lasted approximately four to five hours.  The testimony covered Mr. Musk's purchases of Twitter stock, Schedule 13 filings, communications with Twitter board members, Mr. Musk's offer to purchase Twitter, how the merger would be funded, Mr. Musk's role at Tesla, bots and spam on Twitter, whether the deal would close, and Mr. Musk's tweets about the deal.  Plaintiff has not seen the Transcripts—nor have Defendants—but insists not only that the Transcripts must contain relevant evidence, but that they must be requested from the SEC and then produced in their entirety, including those portions that are not relevant to Plaintiff's claims.

## II.   Defendants Should Not Be Compelled To Produce Documents They Must First Request From the SEC

Defendants *do not possess* the Transcripts, a fact which is not in dispute.  Rather than seek this discovery from the SEC—which does possess the Transcripts—Plaintiff wants Defendants to seek discovery from the SEC on Plaintiff's behalf, and then provide the Transcripts to Defendants.  Plaintiff's demand should be rejected for several reasons.

*First*, Plaintiff seeks to justify its demand by citing 17 C.F.R. § 203.6, which allows a witness to request a transcript of testimony provided to the SEC.  The same regulation permits the SEC to decline that request for "good cause":

> A **person** who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however*, That in a nonpublic formal investigative proceeding the **Commission** may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

17 C.F.R. § 206.3.

The purpose of the regulation is to provide certain protections and benefits to the ***witness***—such as affording the witness the opportunity to make sure the transcript is accurate, and to keep a record of a proceeding that concerns the witness.  The purpose was not to disadvantage the witness by compelling production of testimony to adverse parties in litigation.  The history of the regulation confirms this.

The Federal Register, in addressing the implementation of the rule, refers to "certain recommendations of the Administrative Conference of the United States."  17 Fed. Reg. 3619 (Mar. 21, 1964) (citing Selected Reports of the Administrative Conference of the United States, S. Doc., No. 24, 88th Cong., 1st Sess. (1963) ("Admin Conf. Report")).  Of these, Recommendation No. 24 in particular provided that "[e]ach agency should afford to all persons who submit data or evidence . . . the right to retain or, on payment of lawfully prescribed costs, to procure a copy of any document submitted by him or a copy of any transcript made of his evidence."  Admin Conf. Report at 247.

The Report of the Committee on Compliance and Enforcement Proceedings in Support of Recommendation No. 24 ("Committee Report") explained that the purpose of the recommendation was "to **enlarge a witness' access** to his own statements made in connection with administrative investigations." *Id.* at 249 (emphasis added). The Committee Report was concerned in particular with whether a witness in a "nonpublic investigatory proceeding"—like the proceeding at issue here—should be able to inspect a transcript, but be precluded from obtaining a copy. *See id.* The Committee did not accept the SEC's explanation for the distinction—that it was necessary to reduce the likelihood of perjury. Rather, the Committee explained that "it is not proper, even in a nonpublic investigation, to stigmatize a witness with an imputation of perjurious intent when he seeks a copy of his own statements made in that hearing. To deny him reasonable opportunity to check for accuracy of transcription, and to refuse him the opportunity to keep a record of what he said on that occasion, seems unworthy of the administrative process." *Id.* at 250.

Plaintiff should not be permitted to contort a rule that gives witnesses the **option** to **protect** themselves in an SEC proceeding into a rule that **requires** Defendants to **expose** themselves to adverse discovery in litigation. Notably, none of the limited authority Plaintiff cites addresses the purpose of the regulation when evaluating whether commanding a Defendant to obtain the transcripts for the benefit of a civil litigant is appropriate. Indeed, far from endorsing the idea that contorting the rule in that manner is appropriate, one of Plaintiff's own authorities denied a motion to compel the production of government investigation discovery despite a similar rule allowing the defendants to obtain such documents should they request them because the rule, like the rule at issue here "was intended to afford Defendants in government antitrust actions a full and fair opportunity to defend against such actions." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 531 (S.D.N.Y. 1996). Thus, the court ruled that "[t]o hold that such language can be invoked to allow Plaintiffs to obtain discovery of CID materials for use against Defendants in a private action would distort the regulations and impose an injustice on Defendants." *Id.* The same is true regarding the transcripts Plaintiff seeks here: Mr. Musk has the right, but not the obligation, to obtain the transcripts for his own benefit. To allow Plaintiff to distort the rule to force Mr. Musk to obtain transcripts he does not want in order to allow Plaintiff to use those transcripts in this private action against Mr. Musk would "impose an injustice on" Mr. Musk.[2] This is particularly true for Jared Birchall who is not even a party to this action.

*Second*, in light of its purpose, the best way to read the regulation is that it is the SEC that has possession, custody, and control of the transcript, but makes it available to the witness under limited circumstances where the witness seeks additional information for the witness' benefit in connection with the agency proceeding. The witness does not have unlimited "control" of the document. The language of the rule supports this understanding, providing that "in a nonpublic

---

[2]  It would similarly impose an injustice on Mr. Birchall who is not even a party to this action. Under Plaintiff's proposed rule, Mr. Birchall would be forced to obtain a transcript he does not want that could then be sought by other litigants since it would then be in his possession. Moreover, while Plaintiff is correct that Defendants are—despite no obligation to do so—treating Mr. Birchall as a custodian for purposes of document discovery (Letter at 2 n.2), this does not mean that Defendants have custody over Mr. Birchall's transcript or any other documents beyond the documents Defendants have voluntarily agreed to obtain with Mr. Birchall's consent.

formal investigative proceeding the Commission may for good cause ***deny such request***." 17 C.F.R.§ 203.6 (emphasis added). Although the regulation does not specify what constitutes good cause, it is clear that the SEC has broad discretion, and so the witness cannot have "control" over his transcript.

*Third*, there is no meaningful distinction between compelling a witness to seek documents from the SEC and compelling a witness to seek documents under FOIA or compelling a witness to subpoena a non-party. The regulation at issue makes clear that a witness in a "nonpublic formal investigative proceeding"—as here—may ***request*** a document, but that the SEC can refuse that request. FOIA similarly ***requires*** government agencies to provide information requested by the public ***unless*** it satisfies one of several exemptions. *See What are FOIA Exemptions?*, https://www.foia.gov/faq.html (last visited Dec. 29, 2023). There can be no dispute that 17 C.F.R. § 206.3 includes exemptions from the SEC's obligation to produce documents, but, unlike in FOIA, they are left to the SEC's discretion rather than enumerated. A third-party subpoena works the same way: a party that serves a subpoena is likely entitled to at least *some* responsive documents, but the subpoena target might refuse to provide others or, under some circumstances, any. And Plaintiff offers no authority suggesting Plaintiff could compel Defendants to make FOIA requests or serve subpoenas.

*Fourth*, Plaintiff's demand impermissibly infringes upon Defendants' rights under the First Amendment to the U.S. Constitution. Plaintiff demands that Defendants request the Transcripts from the SEC, and therefore by implication, if not expressly, to represent to the SEC that Defendants' ***want*** the SEC to produce the Transcripts. But here Defendants ***do not*** want the SEC to produce the Transcripts, and cannot and should not be compelled to make such a representation. "Mandating speech that a speaker would not otherwise make necessarily alters the content of the speech" and is impermissible under the First Amendment. *Riley v. Nat'l Fed. of the Blind of North Carolina, Inc.*, 487 U.S. 781, 795 (1988). *See also Wooley v. Maynard*, 430 U.S. 705, 715 (1977) (New Hampshire may not require vehicle license plates to bear the motto "Live Free or Die" because "the State 'invade[d] the sphere of intellect and spirit which it is the purpose of the First Amendment . . . to reserve from all official control.'") (quoting *Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943)); *id.* at 714 (First Amendment freedom of speech "includes both the right to speak freely and the right to refrain from speaking at all."); *Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 256 (1974) (invalidating requirement that newspapers provide political candidates with equal space to reply to newspapers' criticism because "compulsion to publish that which [newspaper editors believe] should not be published" is unconstitutional).[3]

*Finally*, at the very least, the Court should defer any decision on this issue until the Northern District of California has decided whether to quash the SEC's subpoena to compel Mr. Musk to testify for a third time in connection with the investigation into his acquisition of Twitter.

---

[3] Nor can Plaintiff avoid the Constitutional question by arguing that the First Amendment restricts only government action. The Oklahoma Firefighters Pension and Retirement System is, in fact, "a body corporate and an instrumentality of the State of Oklahoma." Rules of the Okla. Firefighters Pension and Ret. Sys., Sept. 14, 2018, 270:1-1-2(a), https://www.ok.gov/fprs/documents/2018%20Handbook.pdf.

*See SEC v. Musk*, 3:23-mc-80253-LB (N.D. Cal.).  In particular, Mr. Musk contends that the SEC's third request for testimony does not reflect a legitimate investigatory purpose, seeks irrelevant and immaterial information beyond the scope of the investigation, and exceeds constitutional restraints on executive action.  The magistrate judge held a hearing on December 14, 2023, and is currently considering Mr. Musk's petition.  The Court should not compel Defendants to produce transcripts from the same investigation while the above decision is pending.  Compelling Mr. Musk to make representations to the SEC while he is simultaneously litigating against the SEC is particularly problematic under the First Amendment.  *See, e.g.*, *Hurley v. Irish-Am. Gay, Lesbian and Bisexual Grp. of Boston, Inc.*, 515 U.S. 557, 564, 566 (1995) (compelling parade organizers of parade to include a group whose message the organizers wanted to exclude violated the parade organizers' First Amendment rights).  In Plaintiffs' words, "These are the exact same issues in dispute in this Action," Letter at 2, and Mr. Musk should not be forced to speak on behalf of Plaintiffs to the SEC while that dispute is live.

For each and all of the foregoing reasons, the Court should deny Plaintiff's demand to compel Mr. Musk to request documents from the SEC.

Respectfully submitted,

*/s/ Alex Spiro*

Alex Spiro

cc:      All counsel (via ECF)