**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7036**

WRITER'S EMAIL ADDRESS
**jessebernstein@quinnemanuel.com**

May 14, 2024

**VIA ECF**

Hon. Andrew L. Carter
United States District Judge
Southern District of New York
40 Foley Square, Room 435
New York, NY 10007

Re:     *Oklahoma Firefighters Pension & Retirement Sys. v. Musk*, 1:22-cv-03026-ALC-GWG

Dear Judge Carter:

On behalf of Elon R. Musk, the Elon Musk Revocable Trust Dated July 22, 2003 (together, "Musk"), Jared Birchall, and Excession, LLC (collectively, "Defendants"), we write pursuant to Rule 2.A of the Court's Individual Practices to respectfully request a pre-motion conference to seek leave to move to dismiss Lead Plaintiff's Amended Complaint ("AC").

The AC alleges that Defendants (i) engaged in a "scheme" to defraud by failing to timely disclose Musk's ownership interest in Twitter; and (ii) made materially misleading statements in Twitter posts by failing to disclose his Twitter ownership interest. Plaintiff's claims fail.[1]

**Plaintiff's Scheme Theory Fails As A Matter Of Law**

The Supreme Court recently confirmed that Plaintiff's original theory—that "Musk made materially false and misleading omissions each day of the Class Period by refusing to report his Twitter holdings and plans on a Schedule 13D form" (Dkt. 33 ¶ 147)—is untenable because "[p]ure omissions are not actionable under Rule 10b5-(b)." *Macquarie Infrastructure Corp. v. Moab Partners, L. P.*, 601 U.S. 257, 266. Plaintiff now recycles its allegations in order to bootstrap a "scheme" theory in an effort to evade the Supreme Court's ruling. Plaintiff's attempt fails.

"To state a scheme liability claim, a plaintiff must show: (1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance." *Buhrke Fam. Revocable Tr. v. U.S. Bancorp*, 2024 WL 1330047, at *26 (S.D.N.Y. Mar. 28, 2024). Plaintiff fails to allege each element.

---

[1] This letter does not purport to be a complete recitation of Defendants' defenses and arguments. Defendants reserve the right to raise additional points should the Court grant leave.

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | SINGAPORE | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

***Plaintiff Fails To Plead A Deceptive Or Manipulative Act.*** Plaintiff "must specify what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and the effect the scheme had on investors in the securities at issue." *Buhrke Fam. Revocable Tr.*, 2024 WL 1330047, at *26. The "inherently deceptive" act must be "distinct from an alleged misstatement," such as "sham agreements," "sham transactions," or "sham companies." *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 253 (S.D.N.Y. 2022). Here, virtually all of the allegedly "manipulative conduct" amounts to nothing more than "omissions" or alleged "misrepresentations" regarding Musk's ownership interest in Twitter, which is insufficient. *SEC v. Rio Tinto plc*, 41 F.4th 47, 49 (2d Cir. 2022) ("[A]n actionable scheme liability claim also requires something beyond misstatements and omissions."). Moreover, even assuming misrepresentations could suffice, the alleged "misrepresentations" here fail. Plaintiff claims Musk misled the market by failing to disclose his Twitter interest when he suggested he was considering starting a competitor to Twitter. AC ¶ 228–31. But Plaintiff concedes that Musk *was* considering "doing something new that's decentralized." AC ¶ 167. And his statements "create no affirmative impression, either way, regarding [his ownership in Twitter]." *Kairalla v. Advanced Med. Optics, Inc.*, 2008 WL 2879087, at *4 (C.D. Cal. June 6, 2008). Plaintiff's remaining allegation that Morgan Stanley—who is not named as a Defendant—utilized an "algorithmic trading strategy" (AC ¶ 253) also fails because Plaintiff does not allege what was manipulative about the strategy or how it sent "a false pricing signal to the market." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 100 (2d Cir. 2007).

***Plaintiff Has Not Pled Reliance.*** To establish reliance for "claims under subsections (a) and (c) of Rule 10b-5(a)," Plaintiff must plead that the "undisclosed deceptive or manipulative" conduct made the misleading statement or omission "necessary." *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d at 254 (citing *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148 (2008)). Even assuming that these acts "made it easier for [Musk] to continue" to allegedly mislead the market regarding his ownership interest, "none of it can be said to have made such misstatements necessary or inevitable." *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d at 254 (internal quotations omitted).

***Plaintiff Fails To Plead Scienter.*** To establish scienter, Plaintiff must allege a "strong inference," i.e., one that is "cogent" and "at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). Where, like here, Plaintiff alleges scienter based on a failure to disclose, it is not enough to show that Defendants were aware of the allegedly omitted information. Rather, Plaintiff must plead "a known or obvious duty to disclose." *In re SunEdison, Inc. Sec. Litig.*, 300 F. Supp. 3d 444, 495 (S.D.N.Y. 2018). Plaintiff comes nowhere close.

Despite having access to extensive texts, emails, and documents exchanged during discovery, the AC makes no allegation that Defendants received clear, specific information about Rule 13 requirements which would demonstrate scienter. Plaintiff does not point to a single document suggesting any Defendant believed they were evading any reporting requirements. Indeed, far from demonstrating scienter, Plaintiff's allegations undermine scienter.

*First*, Plaintiff's allegation that Birchall knew of the Rule 13 timing requirements but concealed his knowledge from Morgan Stanley is debunked by Plaintiff's simultaneous allegation that Birchall sent Morgan Stanley an article which, according to Plaintiff, "clearly spelled out the 10-day filing deadline . . . ." AC ¶¶ 119–20. It defies logic that Birchall would send an article to

2

Morgan Stanley which "clearly spell[s] out" the Rule 13 requirements (as Plaintiff alleges) while concealing his knowledge of those very requirements. AC ¶ 119–20.  *Second*, Musk's filing of a Schedule 13G instead of a 13D does not raise an inference of scienter because, according to Plaintiff, Musk knew at the time of filing that Twitter would announce his appointment to the Board in short order. AC ¶ 179.  Further, Musk purchased *zero* shares of Twitter between the 13G filing and the 13D filing.  *Third*, Plaintiff's allegation that Musk was "teasing" the market undermines scienter because the "teasing" may have alerted the market to his interest in Twitter.

At bottom, the stronger inference is that Defendants made an honest mistake regarding the filing requirements and timely disclosed Musk's holdings as soon as Defendants realized the rule. In fact, Plaintiff concedes that Musk disclosed his Twitter ownership within one trading day of Birchall being informed by Morgan Stanley that disclosure may have been required "within 10 days of acquiring 5%," AC ¶ 125, which supports an inference of mistake.  The inference of fraud, by contrast, makes no sense.  If Musk was covertly building his position in knowing violation of the securities laws, it would make no sense for Musk to openly disclose to Twitter leadership in March that he had exceeded the 5% threshold. AC ¶ 168.  It certainly would make no sense for Defendants to voluntarily disclose—shortly after being informed that disclosure may be required (AC ¶125)—"that March 14, 2022 was the 'Date of the Event' that required submission of a Schedule 13" if Defendants had been intentionally committing fraud. AC ¶ 138.  And it makes no sense for Musk to engage in allegedly illegal conduct—all but guaranteed to be revealed—in order to save a small fraction on the overall $44 billion purchase price.  *See In re Grand Canyon Educ., Inc. Sec. Litig.*, 2021 WL 3491779, at *17 (D. Del. Aug. 9, 2021) (scienter theory that "does not make a whole lot of sense," cannot "be found cogent or at least as compelling" as the non-culpable inference).  *At most*, the allegations of scienter demonstrate "simple or even inexcusable negligence," which is insufficient to plead scienter. *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 411 (S.D.N.Y. 2001).

**Plaintiff's Misrepresentation Theory Also Fails**

Plaintiff's misrepresentation theory fares no better than the scheme theory.  As discussed above, Plaintiff does not plausibly allege any materially misleading statement.  Nor does Plaintiff allege scienter.  Finally, Plaintiff's misrepresentation theory—brought more than two years after the initial complaint—alleges that Musk's statements were misleading for failing to disclose that Musk owned more than 5% in Twitter stock.  There is no reason Plaintiff could not have made that allegation more than two years ago; thus, that claim is time-barred.[2]

Defendants respectfully request leave to move to dismiss the Amended Complaint.

Respectfully submitted,

*/s/ Jesse Bernstein*
Jesse Bernstein

cc:   All counsel of record (via ECF)

---

[2]  Similarly, Plaintiff's claims against Birchall and Excession are time-barred because they were added over two years after the initial complaint was filed (ECF No. 1).