UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, | No. 1:22-cv-03026-ALC-GWG |
| Plaintiff, | **ORAL ARGUMENT REQUESTED** |
| v. | |
| ELON R. MUSK, ELON MUSK REVOCABLE TRUST DATED JULY 22, 2003, EXCESSION, LLC, and JARED BIRCHALL, | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS LEAD PLAINTIFF'S FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................................1

BACKGROUND ...........................................................................................................................2

    A.    Parties .............................................................................................................2

    B.    Plaintiff's Key Allegations Concerning Musk's Twitter Purchases........................3

        1.    Musk's Twitter Purchases.......................................................................3

        2.    Disclosure of Musk's Ownership of Twitter Securities..............................4

        3.    Plaintiff's Causes of Action....................................................................5

ARGUMENT ................................................................................................................................5

I.    PLAINTIFF FAILS TO PLEAD LIABILITY UNDER RULE 10b-5(a) AND (c)............6

    A.    Plaintiff Does Not Plead A Deceptive Or Manipulative Act ..................................6

    B.    Plaintiff Fails To Plead Scienter ........................................................................11

        1.    Plaintiff Fails To Plead Motive and Opportunity......................................12

        2.    Plaintiff Fails To Plead Conscious Misbehavior Or Recklessness ...........13

        3.    The More Plausible Inference Is Non-Fraudulent....................................19

II.    PLAINTIFF FAILS TO PLEAD LIABILITY UNDER RULE 10b-5(b)........................21

    A.    No Tweet Alleged By Plaintiff Is Misleading Or Made With Scienter ................21

    B.    Musk's Schedule 13 Filings Are Neither Misleading Nor Made With
        Scienter...............................................................................................................23

III.    PLAINTIFF'S SECTION 20(a) CLAIM MUST BE DISMISSED....................................24

CONCLUSION............................................................................................................................24

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*In re 1993 Corning Sec. Litig.*,
  1996 WL 257603 (S.D.N.Y. May 15, 1996) ............................................................. 20

*In re Advanced Battery Techs., Inc.*,
  781 F.3d at 644 (2d Cir. 2015) ............................................................................... 21

*In re Aegean Marine Petrol. Network, Inc. Sec. Litig.*,
  529 F. Supp. 3d 111 (S.D.N.Y. 2021) ...................................................................... 11

*Atlas Partners, LLC v. STMicroelectronics, Int'l N.V.*,
  2015 WL 4940126 (S.D.N.Y. Aug. 10, 2015) ............................................................ 4

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) ............................................................................. 6, 9, 24

*Bergesen v. Manhattanville Coll.*,
  2021 WL 3115170 (S.D.N.Y. July 20, 2021) ............................................................. 4

*In re Canandaigua Sec. Litig.*,
  944 F. Supp. 1202 (S.D.N.Y. 1996) ......................................................................... 14

*Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett Packard Co.*,
  964 F. Supp. 2d 1128 (N.D. Cal. 2013) .................................................................... 16

*Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*,
  543 F. App'x 72 (2d Cir. 2013) ............................................................................... 18

*City of Providence v. Bats Glob. Mkts., Inc.*,
  878 F.3d 36 (2d Cir. 2017) ....................................................................................... 9

*Cohen v. Stevanovich*,
  722 F. Supp. 2d 416 (S.D.N.Y. 2010) .................................................................. 9, 10

*In re DDAVP Direct Purchaser Antitrust Litig.*,
  585 F.3d 677 (2d Cir. 2009) ................................................................................... 11

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009) .............................................................................. 13, 15

*Ganino v. Citizens Utils. Co.*,
  228 F.3d 154 (2d Cir. 2000) ................................................................................... 12

*In re Garrett Motion Inc. Sec. Litig.*,
  2022 WL 976269 (S.D.N.Y. Mar. 31, 2022) .............................................................. 5

*In re GeoPharma, Inc. Sec. Litig.*,
  411 F. Supp. 2d 434 (S.D.N.Y. 2006) ........................................................................ 16

*GFL Advantage Fund, Ltd. v. Colkitt*,
  272 F.3d 189 (3d Cir. 2001) ....................................................................................... 9

*In re Grand Canyon Educ., Inc. Sec. Litig.*,
  2021 WL 3491779 (D. Del. Aug. 9, 2021) ........................................................... 20, 24

*Green Star Energy Sols., LLC v. Edison Props., LLC*,
  2022 WL 16540835 (S.D.N.Y. Oct. 28, 2022) ...................................................... 12, 15

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*,
  286 F.3d 613 (2d Cir. 2002) ....................................................................................... 8

*Harrington Glob. Opportunity Fund, Ltd. v. CIBC World Mkts. Corp.*,
  585 F. Supp. 3d 405 (S.D.N.Y. 2022) .......................................................................... 9

*Hensley v. IEC Elecs. Corp.*,
  2014 WL 4473373 (S.D.N.Y. Sept. 11, 2014) ............................................................ 20

*Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*,
  309 F. Supp. 3d 100 (S.D.N.Y. 2018) ................................................................... 15, 17

*IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of
  Scotland Grp., PLC*,
  783 F.3d 383 (2d Cir. 2015) ....................................................................................... 6

*Kairalla v. Advanced Med. Optics, Inc.*,
  2008 WL 2879087 (C.D. Cal. June 6, 2008) ......................................................... 22, 23

*Kemp v. New York City Dep't of Health & Mental Hygiene*,
  2019 WL 1459040 (E.D.N.Y. Apr. 2, 2019) .......................................................... 4, 14

*Kuriakose v. Fed. Home Loan Mortg. Corp.*,
  897 F. Supp. 2d 168 (S.D.N.Y. 2012) ........................................................................ 18

*In re Livent, Inc Noteholders Sec. Litig.*,
  151 F. Supp. 2d 371 (S.D.N.Y. 2011) ........................................................................ 21

*Macquarie Infrastructure Corp. v. Moab Partners, L. P.*,
  601 U.S. 257 (2024) ....................................................................................... 1, 7, 8, 24

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
  26 F. Supp. 3d 278 (S.D.N.Y. 2014) .......................................................................... 20

*Merck & Co. v. Reynolds*,
  559 U.S. 633 (2010) ................................................................................................... 21

*In re Parmalat Sec. Litig.*,
　383 F. Supp. 2d 616 (S.D.N.Y. 2005) .......................................................................................... 10

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
　11 F.4th 90 (2d Cir. 2021) ............................................................................................................. 6

*In re Refco Cap. Mkts., Ltd. Brokerage Customer Sec. Litig.*,
　586 F. Supp. 2d 172 (S.D.N.Y. 2008) .......................................................................................... 22

*Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*,
　2011 WL 4357368 (S.D.N.Y. Sept. 19, 2011) ............................................................................ 18

*Ritani, LLC v. Aghjayan*,
　970 F. Supp. 2d 232 (S.D.N.Y. 2013) ............................................................................................ 7

*U.S. ex rel. Rose v. E. Texas Med. Ctr. Reg'l Healthcare Sys.*,
　2008 WL 4056601 (E.D. Tex. Aug. 25, 2008) ...................................................................... 15, 16

*Santa Fe Indus., Inc. v. Green*,
　430 U.S. 462 (1977) ..................................................................................................................... 10

*Saskatchewan Healthcare Emp.'s Pension Plan v. KE Holdings, Inc.*,
　2024 WL 775195 (S.D.N.Y. Feb. 26, 2024) ................................................................................ 11

*Schiro v. Cemex, S.A.B. de C.V.*,
　396 F. Supp. 3d 283 (S.D.N.Y. 2019) .......................................................................................... 22

*Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
　610 B.R. 197 (Bankr. S.D.N.Y. 2019) ........................................................................................... 9

*SEC v. CKB168 Holdings, Ltd.*,
　210 F. Supp. 3d 421 (E.D.N.Y. 2016) ........................................................................................ 6, 7

*SEC v. Masri*,
　523 F. Supp. 2d 361 (S.D.N.Y. 2007) ............................................................................................ 9

*SEC v. Wey*,
　246 F. Supp. 3d 894 (S.D.N.Y. 2017) ............................................................................................ 6

*In re Segue Software, Inc. Sec. Litig.*,
　106 F. Supp. 2d 161 (D. Mass. 2000) .......................................................................................... 20

*Shields v. Citytrust Bancorp, Inc.*,
　25 F.3d 1124 (2d Cir. 1994) ......................................................................................................... 13

*Singh v. Cigna Corp.*,
　918 F.3d 57 (2d Cir. 2019) ........................................................................................................... 21

*Small v. Arch Cap. Grp., Ltd.*,
  2006 WL 2708448 (S.D.N.Y. Sept. 20, 2006) ...........................................................12

*In re Smith Barney Transfer Agent Litig.*,
  884 F. Supp. 2d 152 (S.D.N.Y. 2012) ..........................................................................6, 7

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*,
  552 U.S. 148 (2008) ..............................................................................................11, 21

*In re SunEdison, Inc. Sec. Litig.*,
  300 F. Supp. 3d 444 (S.D.N.Y. 2018) ...........................................................................14

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007) ........................................................................................................11

*Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*,
  612 F. Supp. 2d 267 (S.D.N.Y. 2009) ......................................................................10, 11

*Three Crown Ltd. P'ship v. Caxton Corp.*,
  817 F. Supp. 1033 (S.D.N.Y. 1993) ................................................................................7

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
  625 F. Supp. 3d 164 (S.D.N.Y. 2022) ...........................................5, 6, 7, 8, 10, 11, 18

*United States v. Aleynikov*,
  737 F. Supp. 2d 173 (S.D.N.Y. 2010) .............................................................................9

*United States v. Finnerty*,
  533 F.3d 143 (2d Cir. 2008) .............................................................................................5

## Statutes and Rules

15 U.S.C. § 78u-4(b)(2) .........................................................................................................6, 11

Private Securities Litigation Reform Act of 1995 ................................................. 1, 5, 6, 16

Securities Exchange Act of 1934 Section 10(b) .................................................. 5, 6, 21, 24

Fed. R. Civ. P. 12(b)(6) ...........................................................................................................1

Fed. R. Civ. P. 9(b) ............................................................................................... 1, 5, 6, 7, 16

Defendants Elon R. Musk ("Musk"), the Elon Musk Revocable Trust Dated July 22, 2003 (the "Trust"), Excession, LLC ("Excession"), and Jared Birchall ("Birchall"), (collectively, "Defendants") respectfully submit this Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), and the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## PRELIMINARY STATEMENT

Plaintiff's case centers on a single question: whether Defendants' alleged delay in filing a Rule 13 disclosure was the result of a mistake—even a negligent mistake—or, instead, part of a scheme to defraud investors during at most seven trading days. All indications—including those in the pleadings—point to mistake. Defendants' intent was always to disclose, and to do so at year-end, consistent with their understanding of the rules. And when their understanding was corrected, Defendants disclosed the very next trading day *and* disclosed that the filing was late. Such prompt and corrective disclosure—within seven trading days of the purported deadline—is not the stuff of a fraudulent scheme to manipulate the market.

Despite the prompt and corrective action, Plaintiff wishes to plead, against all evidence, a highly-calculated scheme to defraud investors, orchestrated by sophisticated actors, but with a plan to ensure 100% chance of detection by no later than year-end. Not only is that an implausible inference from the facts—which point, at most, to neglect—but it lacks any basis for a civil claim and should be dismissed.

The Supreme Court has confirmed that Plaintiff's original theory—that Musk's failure to disclose his ownership interest in Twitter constituted a "material omission"—is untenable under Section 10b-5(b) of the Securities Exchange Act of 1934 because "[p]ure omissions are not actionable under Rule 10b-5(b)." *Macquarie Infrastructure Corp. v. Moab Partners, L. P.*, 601 U.S. 257, 266 (2024). So Plaintiff attempts to pivot, alleging that the omission and certain tweets

by Musk were part of a "scheme" to defraud.  But scheme liability under subsections (a) and (c) of Rule 10b-5 requires a plaintiff to plead a deceptive act *distinct from* any alleged misstatement or omission.  Plaintiff's remaining "manipulative acts" amount to unremarkable trading strategies and allegedly false "assurances" to Musk's wealth manager at Morgan Stanley, which were never conveyed to investors, and thus could not have been relied upon.

Plaintiff also fails to plead any cogent theory of intent to defraud, let alone one that is as compelling as the non-fraudulent explanation of mistake, as required to plead a scheme liability claim.  In fact, far from being cogent and compelling, Plaintiff's theory of fraud makes no sense.  As noted, Plaintiff alleges a theory of a fraudulent scheme which included a plan to conclude with an open disclosure of the scheme within a matter of months, at most.  And, in its actual execution, the alleged scheme was quickly and candidly disclosed as soon as its participants were informed that prompt disclosure was required.  This is not a scheme to defraud.

## BACKGROUND

### A.      Parties

Defendant Elon Musk is the Chief Executive Officer of multiple companies, including Tesla.  ¶¶ 32-33.[1]  The Defendant Trust is a revocable trust of which Musk is the sole trustee.  ¶ 34.  Defendant Excession is Musk's "family office" that "is responsible for a range of wealth and investment management activities on" his behalf.  ¶ 35 (quotation omitted).  Defendant Jared Birchall is Musk's wealth manager, the managing director of Excession, and he has power of attorney over the Trust.  ¶ 36.

---

[1]  The First Amended Complaint (Dkt. 99) is cited herein as "¶__".  The allegations in the First Amended Complaint are set out for the purposes of the motion herein without conceding the veracity of those pleadings.

**B.      Plaintiff's Key Allegations Concerning Musk's Twitter Purchases**

**1.      Musk's Twitter Purchases**

In late 2021, Musk had several billion in cash from the exercise of expiring Tesla stock options. ¶ 85.  Musk decided to use cash from the exercise of those options to buy Twitter stock, a company whose product he frequently used. ¶¶ 43-57, 85.  On January 31, 2022, Jon ███████ of Morgan Stanley, ¶ 41, began purchasing Twitter stock for Musk.  ¶ 174.  ███████ provided updates to Birchall as the purchases proceeded, ¶ 89, and applied an "algorithm that picks up 5% of the [daily] volume that passes through the market" to buy shares, ¶ 93.

Defendants initially sought to acquire under 5% ownership of Twitter, which would not have triggered any disclosure requirement.  ¶ 90.  Prior to reaching the 5% threshold, Birchall and ███████ determined that crossing the 5% ownership threshold would require disclosure ***after year-end***.  ¶¶ 118, 213.  Thus, as they approached 5%, ███████ asked Birchall to "confirm that you are comfortable with a year-end filing of the 13D/G" as the original plan did not include crossing a threshold that would require disclosure.  ¶¶ 118, 213.  ███████ did not state that a year-end disclosure was inconsistent with Rule 13.  *Id.*.  Musk and Birchall proceeded "to buy more shares," ¶ 132, and set approximately 10% ownership as a goal, ¶ 83.  On March 14, 2022, Musk's ownership of Twitter stock crossed 5%.  ¶ 137.  Defendants were operating under the belief that Musk would not need to disclose ownership above 5% until year-end. *See* ¶¶ 118, 213.

On March 27, 2022, when Musk's stake had reached 7.93%, Birchall texted ███████ "I am operating on the belief that based on rule 13G, we will need to file something within 10 days after the month in which we hit 10% ownership.  Do you agree with this?  If so, and we assume we want to buy more than 10%, prob makes sense to wait to cross that threshold after the end of this month – then we would have 41 more days to do whatever we want.  Agree?" Ex. A. ███████ confirmed "I agree with that . . .  [y]ou'll want to have your counsel confirm the reading of the

rule." ¶ 119; Ex. B.[2]  In response, Birchall did not say that he had spoken to any lawyer. ¶ 120. Instead, he sent a link to a publicly available client update from a law firm, titled "SEC Reporting Obligations Under Section 13 and Section 16 of the Exchange Act." *Id.*

The law firm update stated that "a Qualified Institution that acquires direct or indirect beneficial ownership of more than 10% of a class of an issuer's Section 13(d) Securities prior to the end of a calendar year must file an initial Schedule 13G *within 10 days after the first month in which the person exceeds the 10% threshold*." Ex. C (emphasis added).[3]  With respect to the 5% threshold, the article stated that "a Qualified Institution also is required to file its initial Schedule 13G within 45 days *of the end of the calendar year in which the person exceeds the 5% threshold*." *Id.* (emphasis added).  ▮▮▮▮ did not, at that time, suggest Birchall's reading of either the 5% or 10% reporting requirements was inconsistent with anything in the law firm update. Ex. B.

## 2. Disclosure of Musk's Ownership of Twitter Securities

On April 1, 2022, ▮▮▮▮ notified Birchall that "[t]oday was the *first time* I'd heard that one may interpret [Rule 13's language] 'within 10 days of acquiring 5% . . .' a date which is in the near rear-view." ¶¶ 214, 225 (emphasis added).  Birchall promptly sought legal counsel. ¶ 189.

---

[2]  Plaintiff misleadingly suggests that all ▮▮▮▮ said to Birchall was that he should check with counsel, ¶ 119, omitting that in the same text message, ▮▮▮▮ *also* said he agreed with Birchall's reading of the rule.  The full text exchange is incorporated by reference. *See Kemp v. New York City Dep't of Health & Mental Hygiene*, 2019 WL 1459040, at *1 n.1 (E.D.N.Y. Apr. 2, 2019) (incorporating documents by reference where they were necessary to "complete the story"); *Bergesen v. Manhattanville Coll.*, 2021 WL 3115170, at *2 (S.D.N.Y. July 20, 2021) (noting that document was incorporated by reference where plaintiff made a "clear, definite[,] and substantial reference to" the document) (quoting *Atlas Partners, LLC v. STMicroelectronics, Int'l N.V.*, 2015 WL 4940126, at *7 (S.D.N.Y. Aug. 10, 2015)).

[3]  Ex. C is incorporated by reference into the pleadings. *See Kemp*, 2019 WL 1459040, at *1 n.1 (incorporating documents by reference where they were necessary to "complete the story"); *Bergesen*, 2021 WL 3115170, at *2 (noting that document was incorporated by reference where plaintiff made a "clear, definite[,] and substantial reference to" the document) (quoting *Atlas Partners, LLC*, 2015 WL 4940126, at *7).  The content in Ex. C is consistent with Rule 13.

He engaged McDermott Will & Emery LLP that same day. *Id.* By the next trading day, on April 4, 2022, and in coordination with counsel, ¶ 189, Musk filed a Schedule 13G reporting that he owned 9.2% of Twitter's common stock. ¶ 179. Before the start of trading the next day, on April 5, 2022, Twitter filed a Form 8-K press release announcing Musk's appointment to Twitter's Board of Directors. ¶ 187. After market close, Musk promptly coordinated with his attorneys to amend his Schedule 13G and file a Schedule 13D that disclosed "both Musk's ownership stake in Twitter and the fact that he was joining the Board." ¶ 189.

### 3. Plaintiff's Causes of Action

Plaintiff's First Amended Complaint asserts a cause of action against Defendants arising under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder. ¶¶ 247-60. Plaintiff also asserts a Section 20(a) claim against Musk and Birchall based on allegations that Musk and Birchall are the control persons of the Trust and Excession. ¶ 262. Each claim fails because, among other things, the pleadings do not adequately allege that Defendants had any intention of avoiding reporting requirements. *See* ¶¶ 118, 213.

### ARGUMENT

Plaintiff alleges two deficient theories of liability under Section 10(b): first, that Defendants engaged in a scheme to depress the value of Twitter securities in violation of Section 10(b) and Rules 10b-5(a) and (c) and second, that Musk made material misstatements and omissions in violation of Section 10(b) and Rule 10b-5(b). Plaintiff's claims are subject to heightened pleading requirements of Rule 9(b) and the PSLRA. *In re Garrett Motion Inc. Sec. Litig.*, 2022 WL 976269, at *17 (S.D.N.Y. Mar. 31, 2022) (applying Rule 9(b) to scheme liability claim); *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 247 (S.D.N.Y. 2022) ("Scheme liability claims are subject to the PSLRA pleading standard with respect to scienter.").

Rule 9(b) requires that a plaintiff plead fraud with particularity.  *See IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015).  The PSLRA requires that Plaintiff establish scienter by "stat[ing] with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  And for misrepresentation claims, the PSLRA requires that a complaint "specify each statement alleged to have been misleading, the reason . . . why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . state with particularity all facts on which that belief is formed."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (citation and quotation omitted).

Plaintiff does not plead a deceptive or manipulative act upon which investors could rely, Plaintiff does not plead scienter, nor does Plaintiff plead an alleged misrepresentation.  Thus, Plaintiff's Section 10(b) claim should be dismissed.

## I.      PLAINTIFF FAILS TO PLEAD LIABILITY UNDER RULE 10b-5(a) AND (c)

To state a scheme liability claim, Plaintiff must show:  (1) a deceptive or manipulative act, (2) in furtherance of a scheme to defraud, (3) scienter, and (4) reliance.  *See Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 105 (2d Cir. 2021).  Plaintiff fails to plead these elements.

### A.      Plaintiff Does Not Plead A Deceptive Or Manipulative Act

To adequately allege an inherently deceptive or manipulative act, Plaintiff must allege an act that "irreducibly," *United States v. Finnerty*, 533 F.3d 143, 148 (2d Cir. 2008), has the "purpose and effect of creating a false appearance," *SEC v. Wey*, 246 F. Supp. 3d 894, 917−18 (S.D.N.Y. 2017) (quoting *SEC v. CKB168 Holdings, Ltd.*, 210 F. Supp. 3d 421, 445 (E.D.N.Y. 2016)).  The deceptive act must be "distinct from an alleged misstatement," such as "sham agreements," "sham transactions," or "sham companies."  *Turquoise Hill*, 625 F. Supp. 3d at 253; *see also In re Smith*

*Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 161 (S.D.N.Y. 2012) ("[C]ourts must scrutinize pleadings to ensure that misrepresentation or omission claims do not proceed under the scheme liability rubric.").

Here, Plaintiff alleges none of the types of manipulative conduct courts in this district have recognized as stating a scheme liability or market manipulation claim. *See, e.g.*, *Turquoise Hill*, 625 F. Supp. 3d at 253. Instead, Plaintiff relies on alleged misstatements and omissions—which are insufficient—and throws in other conduct that is neither manipulative nor possible to have been relied upon by investors.

As an initial matter, Plaintiff's allegations fail because they do not distinguish between each Defendant's alleged conduct, impermissibly lumping together allegations about each defendant. *See Ritani, LLC v. Aghjayan*, 970 F. Supp 2d 232, 250 (S.D.N.Y. 2013) (noting that Rule 9(b) is not satisfied where "defendants are clumped together in vague allegations" (quoting *Three Crown Ltd. P'ship v. Caxton Corp.*, 817 F. Supp. 1033, 1040 (S.D.N.Y. 1993)). Plaintiff does not, for example, allege any facts suggesting Birchall was involved with Musk's tweets or that Musk was involved in the alleged deceptive trading strategy. *See CKB168 Holdings, Ltd.*, 210 F. Supp. 3d at 445. Further, even assuming Plaintiff could clump all Defendants together, each of the purportedly "manipulative acts" fails.

***Failure To Disclose Twitter Stake.*** Plaintiff primarily relies on the alleged failure to timely disclose Musk's stake in Twitter. *E.g.*, ¶¶ 177, 223, 252-54. But this pure omission is not actionable under Rule 10b-5. *See Macquarie Infrastructure Corp.*, 601 U.S. at 259 ("Pure omissions are not actionable under Rule 10b-5(b)."); *SEC v. Rio Tinto plc*, 41 F.4th 47, 49 (2d Cir. 2022) ("[M]isstatements and omissions can form *part* of a scheme liability claim, but an actionable

scheme liability claim also requires something *beyond* misstatements and omissions, such as dissemination.").[4]

***Musk's Schedule 13G.*** Plaintiff alleges that the Schedule 13G was a deceptive or manipulative act because it was purportedly misleading. ¶¶ 22, 24, 179, 181-84; Dkt. 100 at 2. But scheme liability requires an act to go "*beyond* misstatements and omissions." *Rio Tinto plc*, 41 F.4th at 49; *Turquoise Hill*, 625 F. Supp. 3d at 253 (manipulative act that was not "*distinct* from an alleged misstatement" was insufficient to state a scheme liability claim) (emphasis added).[5] This allegation too fails to state a claim.

***Musk's Tweets.*** Plaintiff alleges that Musk tweeted during the class period and that statements therein were deceptive or manipulative acts because they were purportedly misleading. ¶ 255; Dkt. 100 at 2. They were not. *See infra* Section II.B. In any event, because a requisite act required for scheme liability must go "*beyond* misstatements and omissions," *Rio Tinto plc*, 41 F.4th at 49, these allegations also fail to state a claim.

***Trading Strategy.*** Perhaps aware that alleged omissions and misrepresentations are insufficient to state a scheme liability claim, Plaintiff tries to dress up ordinary market trading into manipulative conduct to claim that "algorithmic trading" is inherently manipulative. ¶ 253. Advanced trading strategies are not inherently deceptive or manipulative. *See United States v.*

---

[4]  Moreover, Plaintiff cannot assert a claim for damages through a private right of action under Rule 10b-5 that arises from a violation of Section 13(d). *See Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 286 F.3d 613, 620 (2d Cir. 2002) ("[T]here is no private damages remedy for issuers under § 13(d)."). A plaintiff seeking recompense for a violation of Section 13(d) must resort, if at all, to Section 18(a) of the 1934 Act, *id.* at 619–20, which Plaintiff fails to do. Although the Court previously rejected this argument (Dkt. 49), that was before the Supreme Court ruled that pure omissions are inactionable under Rule 10b5-b. *Macquarie Infrastructure Corp.*, 601 U.S. at 257.

[5]  Plaintiff alleges that ▮▮▮▮▮ and Birchall "strategized about how to manufacture 'plausible den[iability]' concerning Musk and Birchall's scheme to deceive investors," ¶ 177, but notably offers no specifics about what this purported plausible deniability concerned.

*Aleynikov*, 737 F. Supp. 2d 173, 175 (S.D.N.Y. 2010) (noting that "various banks and financial institutions engage" in high frequency trading). Algorithmic trading is no exception. *City of Providence v. Bats Glob. Mkts., Inc.*, 878 F.3d 36, 41 (2d Cir. 2017) (acknowledging the popularity of high-frequency algorithm trading). Nor is there anything manipulative or deceptive about a trading strategy that uses Volume Weighed Average Price ("VWAP"), "a widely used industry benchmark." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 610 B.R. 197, 211–12 (Bankr. S.D.N.Y. 2019).

In contrast to cases where courts have found that traders engaged in market manipulation involving trading algorithms, such as where a plaintiff used a trading algorithm to engage in spoofing, *see, e.g.*, *Harrington Glob. Opportunity Fund, Ltd. v. CIBC World Mkts. Corp.*, 585 F. Supp. 3d 405, 416, 424 (S.D.N.Y. 2022), Plaintiff pleads no facts demonstrating that the trading algorithm ████████ used "sen[t] a false pricing signal to the market" or was otherwise "designed to manipulate prices and deceive purchasers and sellers." *SEC v. Masri*, 523 F. Supp. 2d 361, 367 (S.D.N.Y. 2007); *ATSI Commc'ns, Inc.*, 493 F.3d at 100 ("In identifying activity that is outside the 'natural interplay of supply and demand,' courts generally ask whether a transaction sends a false pricing signal to the market.") (citation and quotation marks omitted). Just the opposite. The trading strategy at issue was a "legitimate trading strateg[y] intended to anticipate and respond to prevailing market forces," *id.* (quoting *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 205 (3d Cir. 2001)), by "pick[ing] up 5% of the [daily] volume that passe[d] through the market," ¶ 93.

Plaintiff's true complaint is that, while employing a trading strategy, neither ████████ nor Defendants disclosed Musk's stake in Twitter. *E.g.*, ¶¶ 22, 83, 85, 120, 124, 126, 132, 145, 166. But "plaintiff[] must identify wash sales, matched orders, rigged prices, or some other manipulative act intended to mislead investors by ***artificially affecting*** market activity." *Cohen v.*

*Stevanovich*, 722 F. Supp. 2d 416, 424 (S.D.N.Y. 2010) (citing *Santa Fe Indus., Inc. v. Green,* 430 U.S. 462, 476 (1977)) (emphasis added) (quotation marks omitted).  Without that, as here, Plaintiff has failed to state a claim and is instead, again, relying on mere omissions, which are also insufficient to state a claim.

   ***Alleged Assurances to*** ███████  Plaintiff's final allegation is that Birchall purportedly assured ███████ "that the secret buying scheme and refusal to disclose Musk's interests in Twitter" was "approved by counsel."  ¶ 124; *see also* ¶¶ 111, 124-29.  But Plaintiff does not articulate how this purported assurance would have been manipulative, nor is any theory of manipulation logical. If Birchall was seeking to mislead ███████ in order to engage in a scheme to defraud investors, why would he ask ███████ if he agreed with his reading of Rule 13G?  Why would he provide ███████ with an article which, according to Plaintiff, "clearly spelled out the 10-day filing deadline for activist investors under Rule 13?"  ¶¶ 119-20.  More fundamentally, how does lying to ███████ so that ███████ "would report back to the very persons allegedly engaged in the fraud constitute an 'underlying deceptive device or fraud'?"  *Turquoise Hill*, 625 F. Supp. 3d at 253–54 (ruling allegation that defendants hired outside counsel to conduct sham investigation did not amount to a deceptive practice).

   Moreover, even assuming Birchall's alleged assurance to ███████ could constitute part of a scheme to defraud, Plaintiff cannot allege reliance.  Plaintiff does not—and cannot—allege Birchall's purported assurances to ███████ had any effect on investors:  The assurances were unknown to the public.  *See In re Parmalat Sec. Litig.*, 383 F. Supp. 2d 616, 622 (S.D.N.Y. 2005) (noting that plaintiff must plead the "effect the scheme had on investors").  "[B]ecause plaintiff[] could not have relied on" this assurance, "no liability can attach" to Birchall for such "remote" representations.  *Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F.

Supp. 2d 267, 279 (S.D.N.Y. 2009) (quoting *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 150 (2008)).  At bottom, the alleged assurance to ███████ "may have made it easier for" Defendants to purportedly conceal Musk's Twitter stake, but "none of it can be said to have made such misstatements [or omissions] 'necessary or inevitable.'"  *Turquoise Hill*, 625 F. Supp. 3d at 254.

**B.    Plaintiff Fails To Plead Scienter**

To plead scienter, a plaintiff must "state with particularity facts giving rise to a strong inference that" *each defendant* acted "with the required state of mind," 15 U.S.C. § 78u-4(b)(2)(A), meaning "intent to deceive, manipulate, or defraud," *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319 (2007) (citation and quotation marks omitted); *see also Saskatchewan Healthcare Emp.'s Pension Plan v. KE Holdings Inc.*, 2024 WL 775195, at *28 (S.D.N.Y. Feb. 26, 2024) (plaintiff must allege the specific "'factual basis for scienter for each defendant.'") (quoting *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009)); *In re Aegean Marine Petrol. Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 161 (S.D.N.Y. 2021) ("[S]cienter is not amenable to group pleading."), *aff'd sub nom. Westchester Teamsters Pension Fund v. UBS AG*, 604 F. App'x 5 (2d Cir. 2015)).  To constitute a "strong" inference, the inference "must be more than merely 'reasonable' or 'permissible'—it must be . . . cogent and *at least as compelling as any opposing inference of nonfraudulent intent*."  *Tellabs*, 551 U.S. at 314 (emphasis added).

Plaintiff's scienter allegations are deficient.  Plaintiff relies upon allegations that show, at most, that Defendants wanted to avoid public attention, to the extent permissible, and were generally aware that crossing the 5% threshold required disclosure *at some point*.  But none of this shows that Defendants intended to conceal information from investors in knowing or reckless disregard of disclosure requirements.  Indeed, despite the benefit of discovery—including sworn

testimony, text messages, and emails—Plaintiff makes no allegation that Defendants received clear, specific information that Rule 13 required immediate disclosure. Nor does Plaintiff point to a single document suggesting any Defendant believed they were evading any reporting requirements.

Instead, the discovery materials Plaintiff relies upon show that Musk filed his Rule 13 filing *within one trading day* of anyone even suggesting that it may have been required to be filed within 10 days of crossing the 5% threshold. ¶¶ 125, 179. Thus, far from demonstrating scienter, Plaintiff's allegations undermine scienter.

### 1.    Plaintiff Fails To Plead Motive and Opportunity

Plaintiff's allegations that Defendants were motivated to conceal Musk's ownership of Twitter securities to protect his "unstable wealth," ¶ 225, and "reap[] the benefit of substantial savings," ¶ 20; *see also* ¶¶ 12, 16, 82, 145, 159, 161, are insufficient to establish motive and opportunity. The "notion that" Musk "wanted to save money" does not "support the inference that [he] intended to do so by fraud." *Green Star Energy Sols., LLC v. Edison Props., LLC*, 2022 WL 16540835, at *9 (S.D.N.Y. Oct. 28, 2022).

Moreover, "economic self-interest" is "hardly a concrete benefit that supports a securities fraud claim." *Small v. Arch Cap. Grp., Ltd.*, 2006 WL 2708448, at *14 (S.D.N.Y. Sept. 20, 2006) (citing *Ganino v. Citizens Utils. Co.,* 228 F.3d 154, 170 (2d Cir. 2000)); *see Ganino*, 228 F.3d at 170 (noting that "allegations that [defendant] acted in [his] economic self-interest are not enough" to show motive). Similarly, Plaintiff's allegations that Birchall was paid part of his "annual comp bonus" through the "transfer [of] $100,000 shares of TSLA from the ERM Trust," ¶ 34, does not raise an inference of scienter because "incentive compensation can hardly be the basis on which

an allegation of fraud is predicated." *ECA*, 553 F.3d at 201 (2d Cir. 2009). And Plaintiff does not even allege that this bonus was tied to the Twitter securities purchases.

In any event, Plaintiff's theory that Defendants engaged in intentional securities fraud in order to save $200 million, ¶ 145, is illogical in light of Musk's eventual *$44 billion* purchase of Twitter, which Plaintiff alleges was Musk's plan at the same time he was purportedly intentionally violating his disclosure obligations. ¶ 200. It defies logic that Musk would commit fraud to save *less than 0.5% of Twitter's total purchase price*, ¶ 42, *and 0.1% of his net worth*, ¶ 33, all while knowing that there would be "an inevitable day of reckoning" when he would disclose the truth—which was always his intent. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994).

### 2.    Plaintiff Fails To Plead Conscious Misbehavior Or Recklessness

Plaintiff fails to allege "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *ECA*, 553 F.3d at 202−03 (citation and quotation marks omitted). Each piece of circumstantial evidence that Plaintiff points to is insufficient to demonstrate, individually and collectively, such scienter.

***Alleged Familiarity With Rule 13.*** Defendants' alleged familiarity with Rule 13 filings, ¶¶ 8-9, 74-78, 129, 210-11, does not support an inference of scienter regarding the timing requirements of Rule 13. As Plaintiff concedes, Musk and Birchall merely stated that they were "aware that a 5 percent ownership of a public company meant *something*." ¶ 74 (emphasis added); *see also* ¶ 129 ("[W]e knew that five percent meant something . . . *we knew that that would trigger something where at some point we would have to disclose something*."). This merely shows that Defendants knew that crossing five percent meant that a filing would need to occur *at some point*. The pleadings demonstrate they believed that "point" was "year-end," consistent with ██████

confirming, or at minimum not disputing, that crossing the five percent threshold would require a year-end filing.  ¶ 118.[6]

Notably, Plaintiff does not allege—because it cannot—that Musk's prior Rule 13 filings informed him regarding the timing of a Rule 13 filing *under these circumstances*.  The reason is simple:  Musk's other Rule 13 filings were required because of Musk's role at the company, not because he acquired more than five percent of its securities on the open market.  ¶¶ 80-81.  In any event, as this Court noted, Musk's past compliance "support[s] an opposing inference that his failure to disclose was inadvertent," Dkt. 49 at 36.

***Knowledge of Ownership Percentage.***  Plaintiff's allegation that Defendants were aware that Musk passed the five percent threshold "misses the mark" because "Defendants' knowledge about a given fact is relevant to the scienter of an affirmative misstatement, but not as to an omission." *In re SunEdison, Inc. Sec. Litig.*, 300 F. Supp. 3d 444, 494 (S.D.N.Y. 2018).  For an omission, Plaintiff must show that not only did Defendants know the fact that Musk passed the five percent threshold but that they also knew that Rule 13 required disclosure at that time.  *Id.*; *see also In re Canandaigua Sec. Litig.*, 944 F. Supp. 1202, 1213 (S.D.N.Y. 1996) (finding no scienter where plaintiffs alleged no "facts that suggest defendants knew they had a duty to disclose . . . pursuant to statute or regulation").

But, as discussed above, Plaintiff does not allege a single fact demonstrating that Defendants were aware that crossing the five percent threshold meant that they had to disclose

---

[6]  Plaintiff claims ▮▮▮▮ "questioned" the year-end disclosure date, seemingly implying ▮▮▮▮ expressed doubt about its appropriateness.  The document, which is incorporated by reference, *Kemp*, 2019 WL 1459040, at *1 n.1 (incorporating documents by reference where they were necessary to "complete the story"), does not indicate any doubt regarding the appropriateness of a year-end disclosure, Ex. D.  This is unsurprising.  Plaintiff concedes that it was not until April 1, 2022 when ▮▮▮▮ informed Birchall that "[t]oday was the first time I'd heard that one may interpret [Rule 13's language] 'within 10 days of acquiring 5% . . .' a date which is in the near rear-view."  ¶ 214.

Musk's stake within 10 days.  Indeed, Plaintiff does not allege that ▇▇▇▇ or anyone else informed them—until the trading day before the disclosure was made—that disclosure may be required within 10 days.  To the contrary, the text message Plaintiff relies upon demonstrates that ▇▇▇▇ agreed with Birchall's reading of the rule.  Exs. A, B.  And, notably, as soon as the possibility that crossing five percent required disclosure within 10 days was raised, Defendants promptly disclosed Musk's stake.  ¶¶ 125, 179.

   *Knowing Twitter Securities Ownership Would Generate Press.*  Plaintiff alleges that Defendants believed Twitter's price would increase once Musk's ownership was public and that his ownership would generate press, ¶ 67.  But Musk's desire to continue purchasing Twitter securities at a lower price—and avoid unnecessary public attention—does not "support the inference that [he] intended to do so by fraud" and is insufficient "to raise a 'strong inference' of intent."  *Green Star Energy Sols., LLC*, 2022 WL 16540835, at *9 (citation omitted); *Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*, 309 F. Supp. 3d 100, 119 (S.D.N.Y. 2018) (allegations that defendant was motivated "to profit from their manipulative borrowing and short selling" "fall short . . . because they amount to no more than allegations of a general business motive to make a profit.").

   *Failure To Seek Legal Advice.*  Defendants' failure to seek legal advice, ¶¶ 13, 213-15, also does not support an inference of scienter.  As an initial matter, Plaintiff does not allege that Musk himself refused to seek legal advice, ¶ 213, or was even told to seek legal advice, ¶ 215.  Indeed, the FAC does not allege "that [Musk] knew, or even suspected, based on" his "knowledge" of Rule 13 "that a fraud was being perpetrated."  *Id.*  Nor does Plaintiff allege why failure to seek legal advice was "highly unreasonable" and an "*extreme* departure from the standards of ordinary care."  *ECA*, 553 F.3d at 203 (emphasis added); *see also U.S. ex rel. Rose v. E. Texas Med. Ctr.*

*Reg'l Healthcare Sys.*, 2008 WL 4056601, at *9 (E.D. Tex. Aug. 25, 2008) (Defendants' failure to seek [independent] legal advice was "[a]t most," "negligent").

 ***False Assurances to*** ███████   Plaintiff alleges that Birchall's purported assurance to ███████ that Musk's counsel said there was a year-end filing requirement after reaching 5% does not demonstrate scienter.  As an initial matter, Plaintiff points to no contemporaneous document where Birchall claimed he had spoken to counsel.  To the contrary, Plaintiff glosses over the fact that Birchall sent ███████ a public article from an uninvolved law firm in response to ███████ suggestion that Birchall confirm his reading of Rule 13.  ¶ 118.

 Moreover, Plaintiff's theory makes no sense in light of Plaintiff's own allegation that the law firm article Birchall sent ███████ "clearly spelled out the 10-day filing deadline for activist investors under Rule 13."  ¶¶ 119-20.  It defies logic that Birchall would provide a link to an interpretation of Rule 13 which supposedly contradicted his own interpretation if Birchall's goal was to convince ███████ to adopt Birchall's view.  *See In re GeoPharma, Inc. Sec. Litig.*, 411 F. Supp. 2d 434, 446 n.83 (S.D.N.Y. 2006) ("Courts often refuse to infer scienter, even on a recklessness theory, when confronted with illogical allegations.").

 ***Trading Strategy.***  Plaintiff alleges Musk purchased the Twitter shares through a "secret" trading strategy implemented by ███████ ¶ 12, 216.  However, the fact that Defendants wanted to keep the trades secret "is insufficient to implicate the PSLRA."  *Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett Packard Co.*, 964 F. Supp. 2d 1128, 1143 (N.D. Cal. 2013).  Rather, the desire to maintain secrecy "give[s] rise only to the inference that" Musk "did not want" certain conduct known—which indicates nothing about intent to defraud.  *Id.*  Indeed, if "secrecy" were sufficient to establish scienter under the heightened pleading standard of the PSLRA and Rule 9(b), the trading practices of virtually every investment firm in America would be sufficient

to allege scienter.  Simply put, Plaintiff does not—and cannot—allege that it is unusual to not disclose one's trading strategy to the market.

Plaintiff also does not identify anything improper about the trading strategy used by ▮▮▮▮▮ nor that Musk was aware of any specifics regarding ▮▮▮▮▮ trading methodology.  In any event, Plaintiff's allegation that Defendants were motivated to not push the price up "fall[s] short" because it amounts "to no more than allegations of a general business motive to make a profit" that would apply to all investors.  *Hudson Bay Master Fund Ltd.*, 309 F. Supp. 3d at 119 (citation and quotation omitted).

***Musk's Tweets.***  Musk's tweets about a potential new social media platform, *e.g.*, ¶ 217, do not support a strong inference of scienter.  As an initial matter, as discussed below, Musk's tweets were not misleading, undermining any inference of scienter.  In any event, Plaintiff's theory that Musk's tweets somehow "kept the market in the dark about Musk's activist intentions for Twitter" fails.  ¶ 164.  There was no need to "misdirect" the market with tweets.  As Plaintiff alleges, the market was unaware that Musk had purchased *any* stake in Twitter.  ¶ 144.  Indeed, there was concern that these "teasing tweets may have alerted the market to [Musk's] interest in Twitter."  ¶ 153.  If anything, then, the "teasing" tweets undermine scienter because they potentially brought unwanted attention to Musk concerning Twitter.  *Id.*

***Schedule 13G Filing.***  Plaintiff alleges that Musk's filing of a Schedule 13G instead of a Schedule 13D demonstrates scienter. ¶ 218.  Plaintiff also claims an inference of scienter is further supported by the "deletion of the requisite certification on the Schedule 13G form—and . . . insertion of the affirmative (and misleading)" statement that the certification was "'Not Applicable.'"  *Id.*  Both allegations fail.

As an initial matter, Plaintiff concedes that Defendants retained attorneys for the filing of the Schedule 13G filing.  ¶ 189.  Moreover, Defendants quickly filed a correct filing *less than 24 hours after the Schedule 13G filing*, ¶¶ 179, 262, undermining any inference of scienter.  *See Turquoise Hill*, 625 F. Supp. 3d at 246 (finding strong inference of scienter is undermined where defendant promptly corrected disclosure).  And Musk bought *zero shares* of Twitter during the period between the filings.  ¶ 97 at Table 2.  It is an implausible inference that Musk filed the "misleading" Schedule 13G with the goal of "artificially depress[ing] the price of Twitter stock and further reap[ing] substantial savings."  ¶ 218.  He bought no shares during that period.

Nor does the fact that the Schedule 13G states that the "Date of Event" that required filing was March 14, 2022, support an inference of scienter.  ¶ 219.  If anything, the stronger inference from Musk's acknowledgement of his tardiness is that he was expressly acknowledging *a mistake*, not publicly conceding a purportedly days-old fraudulent scheme.  *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 2011 WL 4357368, at *17 (S.D.N.Y. Sept. 19, 2011) ("[I]t is simply bizarre to suggest that [Defendants] concocted a fraudulent scheme in which they would" buy securities to save $200 million "only to reveal this . . . to the world a few [days] later."); *see Kuriakose v. Fed. Home Loan Mortg. Corp.*, 897 F. Supp. 2d 168, 185 (S.D.N.Y. 2012) ("It defies logic to conclude that executives who are seeking to perpetuate fraudulent information upon the market would make such fulsome disclosures."), *aff'd sub nom.*, *Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72 (2d Cir. 2013).

***Conversations with Twitter Leadership.***  Plaintiff points to Musk's private conversations with Twitter leadership to show that he knew he exceeded five percent ownership and that he was buying securities for to influence Twitter's control.  *E.g.*, ¶¶ 220-22.  But as noted above, Musk's knowledge that he exceeded five percent ownership is not the relevant question.  The relevant

question is whether he knew that he needed to disclose that ownership interest *at that time*. The fact that he shared such information with Twitter leadership undermines scienter—if Musk *knew* he was violating Rule 13, he would have kept his secret not only from the market *but also* from Twitter leadership, especially because Twitter had its own reporting obligations.

**HSR Filings.** Although Plaintiff points to an alleged violation of HSR requirements, ¶ 221, it fails to plead this allegation with any particularity. The First Amended Complaint alleges nothing about when the HSR violation occurred or how it is relevant to this action.

**Opinions on the SEC.** Musk's purported dislike of the SEC does not support a strong inference of scienter. ¶ 223. Plaintiff's argument is undermined in its own pleadings: Musk has duly filed many Schedule 13 filings despite his purported dislike of the SEC. ¶¶ 11, 212.[7] He always intended to file one here and promptly did so when informed it was so-required.

### 3.    The More Plausible Inference Is Non-Fraudulent

Even assuming Plaintiff raised any inference of scienter, Plaintiff's alleged inference is not as compelling as the competing non-fraudulent inference. Plaintiff's own allegations demonstrate that Defendants had no intent to defraud, but rather were, at worst, negligent.

*First*, Plaintiff alleges that Defendants intended to disclose Musk's position, no later than year-end. ¶ 118. Plaintiff therefore alleges a scheme, which was *guaranteed* to be revealed to the market within a matter of months.

*Second*, Plaintiff alleges that, in order to convince ▮▮▮▮▮ that Musk did not need to disclose his position until year-end, Birchall purportedly told ▮▮▮▮▮ that he had consulted with

---

[7]   Plaintiff does not plead any independent basis of scienter for Excession and the Trust. Rather, Plaintiff presumably seeks to impute scienter to Excession and the Trust through Birchall and Musk, respectively. But because Plaintiff fails to pleader scienter for Musk and Birchall, Plaintiff also fails to plead scienter for Excession and the Trust.

a lawyer. But despite the intent to mislead ███████ Birchall sent them a link to a public article that, according to Plaintiff, "clearly spelled out the 10-day filing deadline." ¶ 120.

*Third*, Plaintiff alleges that Defendants misled ███████ in order to avoid disclosing Musk's position to investors, but Birchall nonetheless asked ███████ to confirm that his reading of Rule 13 was correct. ¶¶ 119-20. And then Defendants filed a Schedule 13G within one trading day of ███████ informing Birchall that disclosure may have already been required. ¶¶ 22, 125.

*Finally*, not only did Defendants promptly disclose Musk's position, ¶ 125, but Defendants also candidly listed the "Date of Event" as March 14, 2022, ¶ 219. That "prompt" action—demonstrated by disclosure of the mistake within one trading day, ¶ 22, and then a further correction to a Schedule 13D less than 24 hours later—"negates rather than supports any inference of scienter." *In re Segue Software, Inc. Sec. Litig.*, 106 F. Supp. 2d 161, 170 (D. Mass. 2000); *see also Hensley v. IEC Elecs. Corp.*, 2014 WL 4473373, at *6 (S.D.N.Y. Sept. 11, 2014) (noting that the fact that defendants "discovered, disclosed, and corrected" an error negated inference of scienter); *In re 1993 Corning Sec. Litig.*, 1996 WL 257603, at *8 (S.D.N.Y. May 15, 1996) (noting that prompt and candid disclosure undermines scienter); *In re Magnum Hunter Res. Corp. Sec. Litig*, 26 F. Supp. 3d 278, 297–98 (S.D.N.Y. 2014), *aff'd*, 616 F. App'x 442 (2d Cir. 2015) (no scienter where prompt disclosure to rectify weaknesses after errors identified).

At bottom, to accept Plaintiff's alleged inference is to accept that Defendants intentionally sought to evade their disclosure obligations, but only until the end of the year. And then, just a few trading days after initiating their purported fraudulent scheme, they threw up their hands, disclosed immediately, *and* admitted that they were required to have disclosed earlier. This theory "does not make a whole lot of sense." *In re Grand Canyon Educ., Inc. Sec. Litig.*, 2021 WL 3491779, at *17 (D. Del. Aug. 9, 2021) (quotation and citation omitted). Instead, these allegations

are far more consistent with a misunderstanding of Rule 13—which permits certain investors to make year-end filings when they cross the 5% threshold—than with an intentional scheme to defraud.  At most, the allegations demonstrate negligence, but "even inexcusable negligence" is insufficient to plead scienter.  *In re Livent, Inc Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 411 (S.D.N.Y. 2011); *In re Advanced Battery Techs., Inc.*, 781 F.3d 638, 644 (2d Cir. 2015) (negligence is insufficient to prove scienter).

## II.     PLAINTIFF FAILS TO PLEAD LIABILITY UNDER RULE 10b-5(b)

To state a claim under Section 10(b) and Rule 10b-5(b), Plaintiff must show: (1) a material misrepresentation or omission; (2) scienter; (3) connection to the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation.  *See Stoneridge Inv. Partners, LLC*, 552 U.S. at 157; *see also Singh v. Cigna Corp.*, 918 F.3d 57, 62 (2d Cir. 2019).  Plaintiff fails to plead a material misrepresentation and scienter.

### A.     No Tweet Alleged By Plaintiff Is Misleading Or Made With Scienter

As an initial matter, Plaintiff's claims premised on the purportedly false tweets are untimely as Plaintiff had all the facts necessary to allege these statements were purportedly false and misleading more than two years ago.  *See Merck & Co. v. Reynolds*, 559 U.S. 633, 638 (2010) ("[A]pplicable statute of limitations . . . [is] 2 years after the discovery of the facts constituting the violation.").  Even assuming such claims are timely, Plaintiff fails to establish how Musk's tweets were false or misleading.

***Free speech poll.***  Plaintiff cites to Musk's March 25, 2022, Twitter poll, but does not allege that the statements were actually false.[8]  Instead, Plaintiff claims that the poll was misleading because it did not disclose Musk's ownership stake in Twitter.  But the poll does not

---

[8]   Plaintiff characterizes this tweet an opinion, noting it discusses "Musk's views on Twitter."  ¶ 151.

mention anything about his interest in Twitter.  Thus, the poll "create[s] no affirmative impression, either way," regarding his ownership in Twitter.  *Kairalla v. Advanced Med. Optics, Inc.*, 2008 WL 2879087, at *4 (C.D. Cal. June 6, 2008); *see In re Refco Capital Markets, Ltd. Brokerage Customer Sec. Litig.*, 586 F. Supp. 2d 172, 192 (S.D.N.Y. 2008) (dismissing case where plaintiff failed "to establish any affirmative misrepresentation"), *aff'd*, 680 F.3d 214 (2d Cir. 2012).

*"What should be done?" tweet.*  Plaintiff claims Musk's March 26, 2022, tweet— "Given that Twitter serves as the de facto public town square, failing to adhere to free speech principles fundamentally undermines democracy.  What should be done?"—is misleading.  ¶¶ 156, 228.  But Plaintiff does not allege with particularity what is misleading about this tweet.  *Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 299 (S.D.N.Y 2019).  Again, the tweet does not imply that Musk does or does not have an ownership interest in Twitter.  It thus "create[s] no affirmative impression, either way," regarding his ownership in Twitter.  *Kairalla*, 2008 WL 2879087, at *4.

*Tweets about a new social media platform.*  Plaintiff cites two March 26, 2022 tweets by Musk to allege misrepresentations regarding considering an alternative social media platform: first, "Is a new platform needed?"  ¶¶ 156, 228, and second, Musk's reply to a third-party user, whereby the user asked Musk if he would "consider building a new social media platform" and Musk replied he was "giving serious thought to this,"[9]  ¶ 160.  Plaintiff alleges that these tweets were "designed to, and did, distract the public from Musk's already-massive ownership stake in Twitter" and "falsely indicated that Musk was considering building an alternative social media platform," ¶ 157, where he "had no intention of" doing this.  ¶ 17.  Not so.

---

[9]    Plaintiff repeatedly quotes a tweet about "building a new social media platform" as if it is attributed to Musk.  *E.g.*, ¶¶ 17, 155, 160, 175, 217, 228.  It is not.  As the image accompanying ¶ 160 shows, the quote is from a tweet by a third-party to which Musk replied.

Plaintiff makes clear that there is no falsity in either tweet. Plaintiff's own allegations undercut falsity: The "same day Musk tweeted" about a "rival social media platform," he texted Jack Dorsey (founder, former CEO, and then-director of Twitter), "I think it's worth *both* trying to move Twitter in a better direction *and doing something new that's decentralized*." ¶ 167 (emphasis added). And, once again, Musk's reply "create[s] no affirmative impression, either way," regarding his ownership in Twitter. *Kairalla*, 2008 WL 2879087, at *4.

*"Haha that would be sickkk" tweet.* Plaintiff alleges that Musk's March 26, 2022, reply tweet "Haha that would be sickkk" to a third-party user's tweet, "just buy twitter . . . and change the bird logo to a doge," was a false or misleading statement because it "suggested that [Musk] could hypothetically buy Twitter, while leaving out the critical information that he *already owned* nearly ten percent of the Company." ¶¶ 158-59. Musk was referring to the user's joke about making Doge Twitter's logo. Even assuming the tweet made a representation about buying Twitter, Plaintiff does not explain how Musk's existing ownership of Twitter stock renders a statement that it would be "sickkk" to buy all of Twitter misleading. In any event, Plaintiff alleges that Musk "internally *determined* that he wanted to *buy* Twitter" in a text with Parag Agrawal and Bret Taylor on March 31, 2022—*after* this tweet. ¶ 175 (emphasis added). In other words, if anything, Musk's tweet suggested to the market that Musk had *more* interest in a Twitter takeover than he actually did at the time, the exact opposite of Plaintiff's theory.

\* \* \*

In addition to failing to identify any material misrepresentation in Musk's tweets, Plaintiff fails to plead scienter for the reasons described above, *supra* Section I.B.

### B.      Musk's Schedule 13 Filings Are Neither Misleading Nor Made With Scienter

The Court noted, in its Opinion on the First Motion to Dismiss that "[a]t least at this juncture, considering the other circumstantial evidence presented by Plaintiff, the allegation that

Defendant Musk was obligated to file the Schedule 13D—and opted not to do so—is enough to adequately plead a material omission and misstatement for purposes of Plaintiff's Section 10(b) claim." Dkt. 49 at 38.  Although the Second Circuit recognized pure omissions at the time of the Court's original ruling, the Supreme Court has now held that "[p]ure omissions are not actionable under Rule 10b-5(b)." *Macquarie Infrastructure Corp.*, 601 U.S. at 264.  Thus, Plaintiff cannot support a 10b-5(b) claim based on the alleged failure to file the Schedule 13D.

Moreover, although the Court previously found the "Schedule 13G form was misleading . . . because it inherently signaled that Musk's interest was passive," Dkt. 49 at 34, Plaintiff has not alleged scienter with respect to that filing.  As Plaintiff concedes, Defendants filed a Schedule 13D that disclosed Musk's activist intent within one day of the allegedly misleading Schedule 13G. During that one-day period, Musk did not make a single Twitter trade or otherwise seek to profit off of the allegedly misleading Schedule 13G.  ¶ 97 at Table 2.  Nor would Musk have had motive to mislead investors regarding his "activist intent" since Plaintiff alleges Musk knew Twitter was imminently going to disclose his appointment to the Twitter Board.  ¶¶ 178-79.  It "does not make a whole lot of sense" that Musk would seek to deceive the market for a matter of hours when he made no trades during that period. *In re Grand Canyon*, 2021 WL 3491779, at *17 (scienter theory that "does not make a whole lot of sense," cannot "be found cogent or at least as compelling" as the non-culpable inference).

## III.   PLAINTIFF'S SECTION 20(a) CLAIM MUST BE DISMISSED

Because Plaintiff fails to plead a Section 10(b) claim, Plaintiff necessarily cannot plead a Section 20(a) claim.  *See ATSI*, 493 F.3d at 108 (dismissing Section 20(a) claim because plaintiff failed to adequately allege a primary violation under Section 10(b)).

**CONCLUSION**

Defendants respectfully request that the Court dismiss Plaintiff's FAC with prejudice.

DATED:  July 3, 2024

Respectfully submitted,

*/s/ Jesse Bernstein*

Alex Spiro
Jesse Bernstein

Jacob Waldman
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
alexspiro@quinnemanuel.com
jessebernstein@quinnemanuel.com
jacobwaldman@quinnemanuel.com

Rachel G. Frank (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
rachelfrank@quinnemanuel.com

*Attorneys for Defendants Elon R. Musk, the Elon*
*Musk Revocable Trust Dated July 22, 2003,*
*Excession, LLC, and Jared Birchall*