UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM,<br><br>Plaintiff,<br><br>v.<br><br>ELON R. MUSK, ELON MUSK REVOCABLE TRUST DATED JULY 22, 2003, EXCESSION, LLC, and JARED BIRCHALL,<br><br>Defendants. | No. 1:22-cv-03026-ALC-GWG<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS LEAD PLAINTIFF'S FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I.   PLAINTIFF CANNOT ALLEGE LIABILITY UNDER RULES 10b-5(a) AND (c) ....... 1

    A.   Plaintiff Fails To Plead A Deceptive Or Manipulative Act ...................................... 1

        1.   Defendants' Trading Was Neither Deceptive Nor Manipulative .......................... 2

        2.   Birchall's "Assurances" Were Neither Deceptive Nor Manipulative ................... 3

        3.   Tweets And Schedule 13G Alone Are Insufficient For Scheme Liability ............. 4

    B.   Plaintiff Fails To Allege A Strong Inference Of Scienter .......................................... 5

        1.   Inadvertence Is The Only Compelling Inference .................................................. 5

        2.   Plaintiff Fails To Plead Knowledge Of Rule 13 Requirements ............................ 7

        3.   Allegations Around Legal Advice Fail To Plead Scienter .................................... 8

        4.   Motive And Strategy Allegations Do Not Save Scienter ...................................... 9

II.  PLAINTIFF'S MISREPRESENTATION CLAIM FAILS ............................................... 9

    A.   Musk's Tweets Are Not Actionable ........................................................................... 9

    B.   Plaintiff Fails To Plead Scienter As To Musk's Tweets Or Schedule 13G ............ 10

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Affiliated Ute Citizens of Utah v. United States*,
　406 U.S. 128 (1972) .................................................................................................................. 4

*In re Alstom SA*,
　406 F. Supp. 2d 433 (S.D.N.Y. 2005) ........................................................................................ 3

*ATSI Comm'n, Inc. v. Shaar Fund, Ltd.*,
　493 F.3d 87 (2d Cir. 2007) ........................................................................................................ 3

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*,
　2011 WL 3211472 (S.D.N.Y. July 29, 2011) ............................................................................ 7

*Monroe Emps. Ret. Sys. v. Bridgestone Corp.*,
　399 F.3d 651 (6th Cir. 2005) ................................................................................................... 10

*In re Duane Reade Inc. Sec. Litig.*,
　2003 WL 22801416 (S.D.N.Y. Nov. 25, 2003), *aff'd*, 107 F. App'x 250 (2d
　Cir. 2004) ................................................................................................................................... 7

*In re GeoPharma, Inc. Sec. Litig.*,
　399 F. Supp. 2d 432 (S.D.N.Y. 2005) ........................................................................................ 6

*In re GeoPharma, Inc. Sec. Litig.*,
　411 F. Supp. 2d 434 (S.D.N.Y. 2006) ........................................................................................ 8

*Gillis v. QRX Pharma Ltd.*,
　197 F. Supp. 3d 557 (S.D.N.Y. 2016) ................................................................................. 6, 10

*In re Glob. Crossing, Ltd. Sec. Litig.*,
　322 F. Supp. 2d 319 (S.D.N.Y. 2004) ........................................................................................ 7

*Gruber v. Gilbertson*,
　2018 WL 1418188 (S.D.N.Y. Mar. 20, 2018) ........................................................................ 2, 7

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*,
　95 F. Supp. 2d 169 (S.D.N.Y. 2000) .......................................................................................... 7

*Hensley v. IEC Elecs. Corp.*,
　2014 WL 4473373 (S.D.N.Y. Sept. 11, 2014) ........................................................................... 9

*Inter-Local Pension Fund GCC/IBT v. Gen. Elec. Co.*,
　445 F. App'x 368 (2d Cir. 2011) ................................................................................................ 6

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001) .................................................................................................. 9

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005) .................................................................................................. 2

*In re Livent, Inc. Noteholders Sec. Litig.*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2011) ................................................................................... 9

*Moab Partners, L.P. v. Macquarie Infrastructure Corp.*,
   2024 WL 3867669 (2d Cir. Aug. 19, 2024) .......................................................................... 2

*In re Nature's Sunshine Prods. Sec. Litig.*,
   2008 WL 4442150 (D. Utah Sept. 23, 2008) ........................................................................ 4

*Pierce v. Fordham Univ., Inc.*,
   2016 WL 3093994 (S.D.N.Y. June 1, 2016), *aff'd*, 692 F. App'x 644 (2d Cir.
   2017) ..................................................................................................................................... 3

*Rahman v. Kid Brands, Inc.*,
   736 F.3d 237 (3d Cir. 2013) .................................................................................................. 9

*Ross v. Lloyds Banking Grp.*,
   2012 WL 4891759 (S.D.N.Y. Oct. 16, 2012) ........................................................................ 7

*S. Cherry St. v. Hennessee Grp.*,
   573 F.3d 98 (2d Cir. 2009) .................................................................................................... 5

*S.E.C. v. Czarnik*,
   2010 WL 4860678 (S.D.N.Y. Nov. 29, 2010) ....................................................................... 7

*S.E.C. v. Enterprises Sols.*,
   142 F. Supp. 2d 561 (S.D.N.Y. 2001) ................................................................................... 7

*S.E.C. v. Stubos*,
   634 F. Supp. 3d 174 (S.D.N.Y. 2022) ................................................................................... 3

*Shields v. Citytrust Bancorp, Inc.*,
   25 F.3d 1124 (2d Cir. 1994) .................................................................................................. 9

*Stoneridge Inv. Partners v. Sci.-Atlanta*,
   552 U.S. 148 (2008) .............................................................................................................. 4

*TCS Cap. Mgmt. v. Apax Partners*,
   2008 WL 650385 (S.D.N.Y. Mar. 7, 2008) ........................................................................... 5

*Tellabs v. Makor Issues & Rights*,
   551 U.S. 308 (2007) .............................................................................................................. 5

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
    625 F. Supp. 3d 164 (S.D.N.Y. 2022) ........................................................................... 4, 5

*United States v. Wey*,
    2017 WL 237651 (S.D.N.Y. Jan. 18, 2017) ................................................................... 2, 3

*Zannikos v. Oil Inspections (U.S.A.)*,
    605 F. App'x 349 (5th Cir. 2015) ...................................................................................... 8

**<u>Rules</u>**

Rule 10b-5 ............................................................................................................................ 1, 4-5

**<u>Statutes</u>**

15 U.S.C. § 80a-2(a)(51) ............................................................................................................ 7

Defendants respectfully submit this reply memorandum of law in further support of their motion to dismiss the First Amended Complaint ("Complaint" or "AC").

## PRELIMINARY STATEMENT

Plaintiff alleges a supposed scheme by which the world's wealthiest person intentionally committed federal securities fraud with no plan to conceal that fraud longer than, at most, a few months, all to save a miniscule 0.4% of the overall purchase price of his Twitter shares. And then *within one trading day* of learning that the deadline for disclosure had passed, Musk *disclosed* the entire "scheme" (which Plaintiff alleges was always the plan), including candidly "confirming beyond question that it was 11 days late" (AC ¶ 179). This failure to plead a sensical theory is dispositive under the PSLRA's requirement that Plaintiff's claims be at least as plausible as any competing inferences. Here, the more compelling (if not only) inference is that Defendants made a mistake, not that they intentionally committed unconcealable federal crimes for the sole purpose of lowering the cost on a $44 billion purchase by a fraction of a percent. This failure to plead scienter is reason alone to dismiss Plaintiff's claims with prejudice.

Additionally, Plaintiff effectively concedes that its newly-pleaded "scheme liability" theory must allege acts that are separate from the misstatements and omissions, yet Plaintiff fails to allege those acts. Plaintiff's attempt to repackage alleged misstatements and omissions as a species of manipulative trading strategy fails out of the gate, not least because it is contrary to settled law and collapses the separate subdivisions of Rule 10b-5. This action should be dismissed.

## ARGUMENT

### I. PLAINTIFF CANNOT ALLEGE LIABILITY UNDER RULES 10b-5(a) AND (c)

#### A. Plaintiff Fails To Plead A Deceptive Or Manipulative Act

Plaintiff concedes that "a deceptive act beyond misstatements and omissions" is necessary to allege scheme liability. Opp. 9-10. Yet Plaintiff's theory rests virtually entirely on alleged

delayed compliance with Section 13. None of Plaintiff's authorities (Opp. 10) provide for liability based on such omission alone. As an initial matter, both cases cited by Plaintiff (Opp. 10) pre-date the Second Circuit's holding that "an actionable scheme liability claim also requires something *beyond misstatements and omissions*." *S.E.C. v. Rio Tinto plc*, 41 F.4th 47, 49 (2d Cir. 2022) (emphasis added).[1] Moreover, in both cases the defendants directed alter-ego intermediaries to make trades that did not reflect the true supply and demand of the securities, i.e., that sent false pricing signals to the market, as is required to be manipulative. *United States v. Wey*, 2017 WL 237651, at *2 (S.D.N.Y. Jan. 18, 2017) (defendant "proceeded to manipulate the demand for and price of Issuer stock" by "facilitating match trades in the Issuers' stock involving Nominees and/or other Wey confederates"); *Gruber v. Gilbertson*, 2018 WL 1418188, at *1 (S.D.N.Y. Mar. 20, 2018) (defendant "persuaded friends and family to purchase more stock" in order to artificially inflate stock price for purposes of triggering an additional payment to defendant). No such allegations of secret alter-ego intermediaries or trades that did not reflect true supply or demand are present here.

 1. **Defendants' Trading Was Neither Deceptive Nor Manipulative**

Plaintiff concedes (Opp. 11) that "advanced trading strategies" are not "*per se* unlawful," finding fault instead solely with the alleged initial secrecy around Defendants' Twitter purchases. Plaintiff's claim, thus, relies solely on an omission—non-disclosure of Musk's Twitter ownership—which is insufficient. *See, e.g.*, *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 177 (2d Cir. 2005) (no market manipulation claim "where the sole basis for such claims is alleged

---

[1] *Moab Partners, L.P. v. Macquarie Infrastructure Corp.* ("*Macquarie II*"), 2024 WL 3867669, at *2 (2d Cir. Aug. 19, 2024) (cited ECF No. 113), did not modify or overturn Supreme Court or Second Circuit caselaw. It merely remanded for consideration on a count that the Supreme Court did not "directly" address. On remand (and here), the Second Circuit rule remains: "misstatements and omissions can form *part* of a scheme liability claim, but an actionable scheme liability claim also requires something *beyond* misstatements and omissions." *Rio Tinto*, 41 F.4th at 49.

misrepresentations or omissions").

Further, Plaintiff cannot rely on Defendants' trading strategy because, unlike in Plaintiff's authorities, there are no allegations here that the alleged strategy sent "a false pricing signal to the market," *i.e.*, "injected inaccurate information into the marketplace or created a false impression of supply and demand for" Twitter shares. *Compare ATSI Comm'n v. Shaar Fund*, 493 F.3d 87, 100-01 (2d Cir. 2007) (citations omitted), *and In re Alstom SA*, 406 F. Supp. 2d 433, 477 (S.D.N.Y. 2005) (no scheme liability where underlying conduct not deceptive), *with S.E.C. v. Stubos*, 634 F. Supp. 3d 174, 201 (S.D.N.Y. 2022) (deception where "nominee companies" used to hide ownership, "encrypted messages" sent to direct traders to inflate share price, and shares sold to "unsuspecting investors" after "misleading stock promotions"), *and Wey*, 2017 WL 237651, at *2, 8 (deception using nominee entities to facilitate "match trades").

### 2. Birchall's "Assurances" Were Neither Deceptive Nor Manipulative

Left without any answer to Defendants' question regarding why Birchall would simultaneously seek to deceive Advisor A as to the correct filing deadline and send Advisor A an article that supposedly "clearly spelled out" the disclosure timeline (whereas he could have responded: "counsel blessed this"), Plaintiff argues (Opp. 11-12) that it is "inappropriate" to force Plaintiff to explain its contradictory allegations. Not so. *See Pierce v. Fordham Univ., Inc.*, 2016 WL 3093994, at *2 n.1 (S.D.N.Y. June 1, 2016) ("[W]here a plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations … in deciding a motion to dismiss"), *aff'd*, 692 F. App'x 644 (2d Cir. 2017).

The only explanation Plaintiff musters is that there is no contradiction at all because "Musk had almost exhausted the funds allotted to build his Twitter position" (Opp. 12). But that does not explain why Birchall would send Advisor A an article that would have "clearly" showed Birchall had "lied." *See id*. Nor is "***almost***" exhausting funds the same as exhausting all funds. *See id*.

3

(emphasis added). Indeed, Plaintiff alleges that Musk owned less than 8% of Twitter's shares but was planning on buying up to 10%, hence the reason for the discussion regarding when disclosure would be required after crossing the 10% threshold. *See* AC ¶¶ 119-20. And at the same time Plaintiff argues that Musk had nearly "exhausted" his funds, Plaintiff simultaneously alleged he planned on buying all of Twitter. *See* AC ¶¶ 84-85.

Nor does Plaintiff offer any serious response to Defendants' argument (Br. 10) that because "[n]o member of the investing public had knowledge, either actual or presumed, of [Birchall's purported] deceptive acts," those acts cannot establish scheme liability. *Stoneridge Inv. Partners v. Sci.-Atlanta*, 552 U.S. 148, 159 (2008); *see In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 254 (S.D.N.Y. 2022) (no scheme liability where defendant's acts were not "made known to or relied upon by investors"); *In re Nature's Sunshine Prods. Sec. Litig.*, 2008 WL 4442150, at *4 (D. Utah Sept. 23, 2008) (no scheme liability where allegedly false statements to auditor were not publicly disclosed). Nor can Plaintiff remedy this deficiency by invoking the *Affiliate Ute* reliance presumption (Opp. 12), since Birchall's alleged assurances were not omissions, *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153 (1972), and Advisor A was not an "investor to whom the duty [to disclose] was owed[.]" *Stoneridge*, 552 U.S. at 159.[2]

### 3. Tweets And Schedule 13G Alone Are Insufficient For Scheme Liability

As noted, it is undisputed that an "actionable scheme liability claim" "requires something *beyond* misstatements and omissions." *Rio Tinto*, 41 F.4th at 49. Yet, Plaintiff argues (Opp. 13) that the "something *beyond*" here is Musk's "dissemination" of his own alleged misrepresentations. The Second Circuit, however, "made clear that subsections (a) and (b) of Rule

---

[2] Plaintiff's authorities (Opp. 11) for the proposition that lying to a third-party can constitute manipulative conduct are cases brought by the SEC, where reliance is not an element. Moreover, they involve alleged misrepresentations to auditors, not financial advisors.

4

10b–5 should not be interpreted in a manner that would render Rule 10b–5(b) surplusage." *Turquoise Hill*, 625 F. Supp. 3d at 249; *TCS Cap. Mgmt. v. Apax Partners*, 2008 WL 650385, at *22 (S.D.N.Y. Mar. 7, 2008) ("[S]leight of hand" in repackaging misstatements "does not magically transform [Plaintiff's] disclosure claim into a market manipulation claim.").

### B. Plaintiff Fails To Allege A Strong Inference Of Scienter

#### 1. Inadvertence Is The Only Compelling Inference

As Defendants explained, negligence is the only plausible inference from Plaintiff's revised allegations. *See Tellabs v. Makor Issues & Rights*, 551 U.S. 308, 324 (2007); Br. 19-21. Plaintiff's allegations come nowhere close to demonstrating actual intent to defraud or "'conscious recklessness—i.e., a state of mind *approximating actual intent*, and *not merely a heightened form of negligence*.'" *S. Cherry St. v. Hennessee Grp.*, 573 F.3d 98, 109 (2d Cir. 2009).

Unable to defend its scienter allegations, Plaintiff argues (Opp. 14-15) the Court's prior finding of scienter is dispositive. Wrong. Plaintiff's argument is rooted in the misguided notion that the "same facts are still alleged" (Opp. 14-15), which ignores that Plaintiff added "40 pages of new facts" (Opp. 3), all of which point towards mistake more strongly than Plaintiff's preferred inference of intentional fraud. Most notably, Plaintiff now pleads that, just one trading day before Musk's disclosure, Advisor A informed Birchall "[t]oday was the ***first time*** I'd heard that one may interpret [Rule 13's language] 'within 10 days of acquiring 5%...' a date which is in the near rear-view." AC ¶ 214 (emphasis added); *see also* Br. 4. As if wishing this allegation was not on the face of the Complaint, Plaintiff ignores it throughout the Opposition. But Plaintiff's silence is a concession that its own allegation demonstrates Defendants' actions were, at most, negligent.

Indeed, Plaintiff concedes that ***one trading day*** after learning of the 10-day filing deadline—Musk candidly disclosed in a ***public filing*** that the "Date of Event"—*i.e.* the date by which Section 13 had required disclosure of Musk's Twitter interest—had inadvertently already

5

passed. Opp. 15. Further, Plaintiff *pleads* that Musk had always planned to disclose, just that he intended to do so by the end of 2022—conduct that is completely opposed to any rational scheme to defraud by non-disclosure. *See* AC ¶ 85. In Plaintiff's telling, Musk intended to commit an obvious infraction by not disclosing for nine months but then to disclose at the end of month nine, revealing the entire fraud in a public securities filing. It "is hard to see what benefits accrue from a short respite from an inevitable day of reckoning." *Inter-Local Pension Fund GCC/IBT v. Gen. Elec. Co.*, 445 F. App'x 368, 370 (2d Cir. 2011); *see also In re GeoPharma, Inc. Sec. Litig.*, 399 F. Supp. 2d 432, 449-50 (S.D.N.Y. 2005) (no scienter where alleged scheme would be discovered after an inevitable public disclosure). Plaintiff certainly does not explain why Musk would commit one of the world's most irrational crimes: engaging in securities fraud to delay a few days (and never planning to gain more than nine months) before the "inevitable day of reckoning."

Plaintiff's allegations—largely ignored by Plaintiff in its Opposition—are rife with additional facts supporting an inference of mistake over the implausible inference that Musk directed a sure-to-fail intentional scheme to defraud:

- Defendants disclosed Musk's purchases—and thus the supposed scheme—as soon as they were told they needed to do so, AC ¶¶ 125, 179.

- Musk transparently disclosed his ownership interest to Twitter leadership at a time when he was supposedly fraudulently concealing his ownership interest. AC ¶¶ 220-224.

- Birchall sent Advisor A an article "spelling out Rule 13's 10-day filing deadline" (Opp. 20), and asked Advisor A if he agreed with Birchall's (incorrect) interpretation that a month-end filing deadline (also discussed in the article) applied here. *See* ECF 109-1-3.

- By the end of 2022, Musk paid *$44 billion* for Twitter (AC ¶ 32), belying any notion that he was so cash-poor that he would commit intentional securities fraud (with no chance of ultimate success) to save the cash-equivalent of 0.4% off that purchase.

Even accepting Plaintiff's allegations, it is implausible that Defendants intended to violate federal law, especially given the more-logical explanation: they made a mistake before learning that a ten-day deadline applied. *See Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 600 (S.D.N.Y.

6

2016) (no scienter where theory lacks a "coherent rational objective"). As in *In re Duane Reade*, Plaintiff cannot plead scienter: working on a $44 billion purchase, it would be "illogical to commit fraud" for 0.4% of that value. *In re Duane Reade Inc. Sec. Litig.*, 2003 WL 22801416, at *9 n.22 (S.D.N.Y. Nov. 25, 2003), *aff'd.*, 107 F. App'x 250 (2d Cir. 2004). On the pleaded facts alone, Plaintiff fails to plead any state of mind more plausible than mistake.

### 2. Plaintiff Fails To Plead Knowledge Of Rule 13 Requirements

Plaintiff continues to argue Defendants knew *when* the Schedule 13 was due, but points only to facts allegedly showing that Defendants knew *that* a filing was required *at some point*. *See* Opp. 15 (arguing Defendants knew the "5 percent mark [] means something"). Plaintiff's failure to allege, with particularity, knowledge of Section 13's timing requirement, vitiates any inference of scienter. *Ross v. Lloyds Banking Grp.*, 2012 WL 4891759, at *10-11 (S.D.N.Y. Oct. 16, 2012) (no scienter where plaintiff did not make "fact-based allegations of [defendants'] actual knowledge"); *see also* Br. 14-15. Nor is "Birchall's knowledge" of the timing "confirmed by his circulation" of an article (Opp. 18) that contained month-end and year-end deadlines (Br. 4) and was sent in a text message in which Birchall *asked* for confirmation that the month-end deadline applied.³ *See* ECF 109-1-3. Plaintiff cites no authority to the contrary.⁴

---

³ Notably, the "month-end" and "year-end" deadlines apply to "qualified institutions," ECF No. 109-3 at 8-9, a term that sounds similar to "qualified purchaser," a category of investor under SEC rules that includes high-net-worth individuals such as Musk, 15 U.S.C. § 80a-2(a)(51), further buttressing the inference of mistake, not fraud.

⁴ *See, e.g.*, *In re Glob. Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 351 (S.D.N.Y. 2004) (cited Opp. 16) (defendant "actually aware" of fraud, "actively 'quashed'" dissenting auditor); *Gruber*, 2018 WL 1418188, at *12 (Opp. 16) (defendants investigated scheme but did not disclose it); *In re Bank of Am. Corp.*, 2011 WL 3211472, at *8 (S.D.N.Y. July 29, 2011) (Opp. 18) (defendant failed to disclose despite other executives advocating disclosure); *S.E.C. v. Czarnik*, 2010 WL 4860678, at *9 (S.D.N.Y. Nov. 29, 2010) (Opp. 18) (attorney, while aware of scheme, drafted documents for issuance of unregistered shares); *Hallwood Realty Partners, v. Gotham Partners*, 95 F. Supp. 2d 169, 171-72 (S.D.N.Y. 2000) (Opp. 15) (companies filed series of inaccurate 13Ds and 13Gs to hide collaboration); *S.E.C. v. Enterprises Sols.*, 142 F. Supp. 2d 561, 576 (S.D.N.Y. 2001) (Opp. 16) (non-disclosure of former company's bankruptcy in registration statement).

### 3. Allegations Around Legal Advice Fail To Plead Scienter

Plaintiff's allegations (Opp. 11-12) that Birchall did not seek legal counsel and "lied" to Advisor A about obtaining legal counsel do not defeat the unmistakable competing inference of mistake. As an initial matter, Plaintiff does not cite a single authority holding that the failure to seek legal advice is sufficient to establish scienter, which is unsurprising because it is not. *See, e.g.*, *Zannikos v. Oil Inspections (U.S.A.)*, 605 F. App'x 349, 360 (5th Cir. 2015) ("fail[ing] to seek legal advice" "is merely negligent"). Moreover, the interactions between Birchall and Advisor A undermine intent to defraud because Plaintiff's allegations, taken as a whole, are inconsistent with any intent by Birchall to mislead Advisor A as to the filing deadline.

In fact, as late as March 27, 2022, Birchall sent Advisor A a publicly available article (AC ¶ 120) which included the "year-end filing" deadline that Birchall and Advisor A had been assuming applied (AC ¶ 119). In that same communication, Birchall asked Advisor A to confirm whether a month-end deadline applied for crossing the 10% threshold. ECF 109-1. Notably, Birchall did not tell Advisor A his reading was based on purported legal advice; he asked Advisor A's opinion. *See id.* Advisor A said he agreed but suggested Birchall reach out to a lawyer to confirm, demonstrating that there was no "obvious duty to disclose" as is required to find scienter in connection with an omission. *See, e.g.*, *In re GeoPharma, Inc. Sec. Litig.*, 411 F. Supp. 2d 434, 446 (S.D.N.Y. 2006) ("[A] failure to disclose particular information, by itself, can only constitute recklessness [under the PSLRA] if there was an obvious duty to disclose that information.").

Mere days later, on April 1, 2022, Advisor A mentioned a "10 day" deadline for "the first time." AC ¶ 125. In response, Birchall did not push back or cite advice of counsel. *See id.* To the contrary, by the ***next trading day***, Musk disclosed and candidly admitted to missing the deadline. AC ¶ 179. Plaintiff makes no attempt to reconcile Defendants' prompt curative actions following Advisor A informing Birchall of the 10-day deadline with Plaintiff's theory that

8

Defendants were seeking to evade their disclosure obligations. It cannot. The swift corrective action undermines any inference of fraudulent intent, demonstrating that Defendants were, at worst, "inexcusabl[y] negligen[t]," which is insufficient to establish scienter. *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 411 (S.D.N.Y. 2011); *see Hensley v. IEC Elecs. Corp.*, 2014 WL 4473373, at *6 (S.D.N.Y. Sept. 11, 2014) (fact that defendants "discovered, disclosed, and corrected" an error negated inference of scienter); Br. 20.[5]

### 4. Motive And Strategy Allegations Do Not Save Scienter

Allegations of a "secret trading strategy" do not buttress Plaintiff's failure to plead scienter. *See* Opp. 19. Indeed, Defendants had used the same trading strategy since January 2022—even before becoming subject to any Rule 13 disclosure obligations. *See* AC ¶ 98. Nor is Birchall's $100,000 "reward" in any way factually linked to Plaintiff's purported intentional and ill-conceived illegal scheme. *See* Opp. 21-22; *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994); *Kalnit v. Eichler*, 264 F.3d 131, 140 (2d Cir. 2001) (if incentive compensation were sufficient for scienter, "virtually every company in the United States … could be forced to defend securities fraud actions"); *contra* Opp. 16-17 & 22 (citing cases finding scienter based on specific facts on a scheme to defraud, not general facts of potential motive and reward).

## II. PLAINTIFF'S MISREPRESENTATION CLAIM FAILS

### A. Musk's Tweets Are Not Actionable

Plaintiff now abandons most of the tweets it alleged were false and misleading. *See* Opp. 23-24. Plaintiff instead appears to limit its allegations to Musk's tweet asking "what should be done" given Twitter's important role as a public town square and that he was "giving serious

---

[5] Nor could any recklessness by Birchall (and Plaintiff pleads none) be imputed to Musk. *See Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 245 (3d Cir. 2013) (no scienter as to high-level officers that met with subsidiary managers who knew about violations at subsidiary).

9

thought" to building a competing social media platform. *Id.* Both allegations fail. The alleged facts—that Musk tweeted about his interest in using his purchasing power to improve free speech on social media—do not support Plaintiff's "untethered" conclusion that Musk was "distract[ing]" investors (AC ¶ 157) from his ongoing purchases of 5% to 10% stake in Twitter stock. *See Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 671 (6th Cir. 2005) (no claim where representations were "too untethered to anything measurable, to communicate anything" important to a reasonable investor); Br. 21-23. Moreover, even in its Opposition, Plaintiff does not dispute that the Complaint alleges—consistent with Musk's statements—that Musk *was considering* building a new social media platform, rendering his statements true. *See* Opp. 13.[6]

### B. Plaintiff Fails To Plead Scienter As To Musk's Tweets Or Schedule 13G

Plaintiff still does not explain why Musk would issue "teasing" tweets—like it would be "sickkk" if he purchased all of Twitter (AC ¶ 158)—if he was trying to conceal his involvement with Twitter. And Plaintiff's only explanation for why Musk would file the "wrong" form only to correct it one day later—and buy no additional shares in between—is that he had exhausted his funds by that point. *See* Opp. 17 n.8. If anything, this further weakens scienter. There was no purpose to Musk filing the wrong form if he *could not* buy more shares.[7] *See Gillis*, 197 F. Supp. 3d at 600 (no scienter where "no concrete benefit to defendants to justify [] risks").

### CONCLUSION

The Court should dismiss the Complaint with prejudice.

---

[6] Plaintiff fails (Opp. 25) to point to any material fact needed to plead the claims regarding the Tweets unknown two years prior to the Complaint, rendering those claims untimely (Br. 21).
[7] Plaintiff references (Opp. 25) an alleged attempt to manufacture "plausible deniability," but the Complaint offers no specifics as to what the "plausible deniability" constituted (AC ¶ 177). Nor can a purported attempt to "manufacture" plausible deniability be squared with the transparent and rapid disclosure by Defendants following their first learning of the 10-day rule.

Dated: September 9, 2024                        Respectfully submitted,


                                                By:  /s/ *Jesse Bernstein*
                                                Alex Spiro
                                                Jesse Bernstein
                                                Jacob J. Waldman
                                                QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                                51 Madison Avenue, 22nd Floor
                                                New York, New York 10010
                                                Telephone: (212) 849-7000
                                                alexspiro@quinnemanuel.com
                                                jessebernstein@quinnemanuel.com
                                                jacobwaldman@quinnemanuel.com


                                                Rachel G. Frank (*pro hac vice*)
                                                QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                                1300 I Street NW, Suite 900
                                                Washington, D.C. 20005
                                                Telephone: (202) 538-8000
                                                rachelfrank@quinnemanuel.com

                                                *Attorneys for Defendants Elon R. Musk, the Elon Musk Revocable Trust Dated July 22, 2003, Excession, LLC, and Jared Birchall*