# BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

ATTORNEYS AT LAW

NEW YORK ● CALIFORNIA ● ILLINOIS ● LOUISIANA ● DELAWARE

Katherine Sinderson
(212) 554-1392
KatieM@blbglaw.com

April 22, 2025

**Via ECF**

Hon. Gabriel W. Gorenstein
United States District Court
Southern District of New York
40 Foley Square, Room 519
New York, NY 10007

      Re:    *Oklahoma Firefighters Pension and Retirement System v. Musk*,
            No. 1:22-cv-03026-ALC-GWG (S.D.N.Y.)

Dear Judge Gorenstein:

      In accordance with Rule 2 of Your Honor's Individual Practices, Court-appointed Lead Counsel, Bernstein Litowitz Berger & Grossmann LLP ("BLB&G" or the "Firm"), respectfully requests a pre-motion conference regarding Lead Counsel's anticipated motion to approve BLB&G's conflict screening procedures (the "Motion") regarding Mr. Jorge G. Tenreiro, a former attorney with the U.S. Securities and Exchange Commission ("SEC") who BLB&G intends to hire subject to this Court's review and approval of the Firm's proposed screening procedures.

      The anticipated Motion is a precautionary effort to ensure that no potential conflict arises in connection with Mr. Tenreiro's anticipated hiring and to head off any future disqualification motion by Defendants. BLB&G attempted to resolve this issue without resorting to motion practice, including through the communications with counsel for Defendants described below. Counsel for Defendants stated that Defendants intend to oppose the Motion. Importantly, while he had limited involvement with related SEC proceedings, Mr. Tenreiro will be fully screened off from this Action in a manner that has been reviewed and supported by a leading ethics expert.

      **I.**    **Relevant Background**[1]

      ***Mr. Tenreiro's Limited Involvement in the SEC Action.*** Mr. Tenreiro worked at the SEC for over a decade and served as its Chief Litigation Counsel from December 2024 through February 2025. In that role, Mr. Tenreiro oversaw the SEC's national litigation program and served as one of many SEC employees who reviewed recommendations regarding the potential filing of

---

[1] In support of the anticipated Motion, BLB&G will rely on the attached declarations from Professor Bruce A. Green (**Exhibit A**), Mr. Tenreiro (**Exhibit B**), and Salvatore J. Graziano (Partner at BLB&G) (**Exhibit C**).

a civil action or administrative proceeding.

On January 14, 2025, after an investigation (the "SEC Investigation"), the SEC instituted an action against Musk for violating Section 13(D) of the Exchange Act and Rule 13d promulgated thereunder. *See Securities and Exchange Commission v. Musk*, Case No. 1:25-cv-105 (D.D.C. Jan. 14, 2025) (the "SEC Action"). Mr. Tenreiro's involvement was limited to his participation in certain discussions regarding the investigation and review of and comment on documents relating to the decision of whether to commence the SEC Action. Beyond those limited discussions and reviews, Mr. Tenreiro did not conduct any of the work that led to the filing of the SEC Action and had only limited involvement in the SEC Investigation and the SEC Action. Further, Mr. Tenreiro has no recollection of any confidential government information underlying the substantive allegations in the SEC Action and, to the best of his knowledge, does not possess any other non-public information that could be used to the material disadvantage of any Defendant in this Action.

***Mr. Tenreiro's Potential Employment at BLB&G.*** On February 6, 2025, Mr. Tenreiro first reached out to BLB&G due to his interest in potential employment at a plaintiff-side securities law firm. Over the next several weeks, Mr. Tenreiro met with multiple BLB&G partners to discuss his legal background, his career aspirations, and BLB&G's litigation record. None of these discussions concerned the SEC Investigation, the SEC Action, or this Action.

After determining that BLB&G was interested in potentially hiring Mr. Tenreiro, BLB&G consulted Professor Bruce A. Green (a nationally recognized expert on professional legal ethics) to address any potential conflicts. The Firm also informed Mr. Tenreiro that any offer was contingent on the Firm being comfortable with his hiring, including through the elimination of any potential conflicts. The Firm provided Mr. Tenreiro with a list of all active BLB&G cases. Mr. Tenreiro identified certain cases where he had limited involvement in an SEC action that potentially related to a defendant in a case involving BLB&G, including this Action. To date, counsel for all relevant defendants in the other actions identified by Mr. Tenreiro (save for two actions where BLB&G reached out more recently and is still waiting to hear back) have agreed to waive any potential conflicts or agreed not to object if BLB&G were to hire Mr. Tenreiro, including based on BLB&G's conflict screening procedures.

***BLB&G Alerts Quinn Emanuel.*** On March 19, 2025, Mr. Graziano informed Mr. Jesse Bernstein, counsel for Defendants in this Action and a partner at Quinn Emanuel Urquhart & Sullivan ("Quinn Emanuel"), that BLB&G was interested in hiring Mr. Tenreiro subject to clearing potential conflicts. The parties met and conferred through multiple communications over the next few weeks, which included BLB&G sending Quinn Emanuel a draft of Prof. Green's declaration.

## II. **BLB&G'S Proposed Screen Prevents Any Potential Conflict**

BLB&G's proposed ethical screen timely precludes Mr. Tenreiro from any involvement in this Action and, thus, eliminates any potential conflict. The Second Circuit has "join[ed]" the "strong trend . . . toward allowing the presumption of confidence sharing within a firm to be rebutted." *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005). To rebut this presumption of shared confidences, a firm may present evidence of an ethical screen that "effectively protects against any sharing of confidential information." *Id.* at 138.

Here, BLB&G's proposed screening procedures are consistent with the New York Rules

of Professional Conduct (the "NY Rules") and rebut any concern arising from the presumption of shared confidences. *First,* BLB&G's proposed screen includes all measures identified in NY Rule 1.11(b) as necessary to prevent disqualification of a former government lawyer, including notification of all firm personnel that Mr. Tenreiro is prohibited from participating in this Action, procedures to prevent the flow of information about the Action between Mr. Tenreiro and those working on the matter, measures to ensure that Mr. Tenreiro receives no portion of any fee that may result from this matter, and written notice to the SEC. Appendix A lists BLB&G's proposed screening procedures, which Professor Green has endorsed. *See* Exhibit A. Notably, Quinn Emanuel has sought approval of a substantially similar "routine ethical screen" of an attorney it proposed to hire—which undermines their opposition to the present Motion.[2]

*Second,* BLB&G's proposed measures are "timely and effective[]" in accordance with NY Rule 1.11(c). BLB&G's screening procedures are timely because they will be implemented **before** Mr. Tenreiro joins the Firm. *E.g.*, *Dumbo Moving & Storage, Inc. v. Piece of Cake Moving & Storage LLC*, 2024 WL 3085052, at *3 (S.D.N.Y. June 20, 2024) (presumption of shared confidences rebutted where "ethical wall was raised within forty-eight hours"). BLB&G's proposed procedures are effective because they will include all elements listed in NY Rule 1.11(b), as described above and in Appendix A. BLB&G has also adopted additional protective measures, including providing notice to this Court so that it may impose any additional screening measures.

Courts within the Second Circuit regularly approve ethical screens less stringent than BLB&G's proposed measures, as disqualification of counsel is a "disfavored" remedy courts are "reluctan[t] to grant." *Maricultura Del Norte, S. de R.L. de C.V. v. Worldbusiness Cap., Inc.*, 2015 WL 1062167, at *2 (S.D.N.Y. Mar. 9, 2015) ("In every other post-*Hempstead* case I have located within this circuit, the district court, after considering whether an ethical screen was sufficient, has found the presumption rebutted and denied a motion to disqualify."). Indeed, courts across the country have denied motions to disqualify Quinn Emanuel in cases involving its "flawed screens" and failure to conduct "effective conflicts check[s]"—unlike BLB&G's timely and effective screening measures here. *See, e.g.*, *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 827 F. Supp. 2d 341, 344, 346 (S.D.N.Y. 2011) (rejecting motion to disqualify where a Quinn Emanuel attorney billed 5.8 hours on a conflicted matter because "flawed screens—including late screens—are not fatal"); *Lutron Elecs. Co. v. Crestron Elecs., Inc.*, 2010 WL 4720693, at *5 (D. Utah Nov. 12, 2010) (rejecting motion to disqualify where Quinn Emanuel failed to "conduct an effective conflicts check and discover the conflict initially" because the firm later established an ethical screen).

\*     \*     \*

In conclusion, BLB&G respectfully requests a conference concerning its anticipated motion to approve the ethical screen in connection with its potential hiring of Mr. Tenreiro. We appreciate the Court's attention to this matter and are available at the Court's convenience.

---

[2] *Compare* ECF No. 1618 at 6-7, *In re Libor-Based Financial Instruments Antitrust Litig.*, 11-md-2262 (S.D.N.Y.) ("Quinn Emanuel will not ask, directly or indirectly, for any confidential or privileged information from Mr. Soames pertaining to Credit Suisse and QE has instructed its lawyers working on any Credit Suisse matters not to discuss with Mr. Soames any work he performed for Credit Suisse") *with* Appendix A ("Barring all BLB&G personnel from asking, directly or indirectly, for any confidential or privileged information from Mr. Tenreiro, and prohibiting all BLB&G personnel—including *Musk* team members—from discussing this Action in Mr. Tenreiro's presence").

Hon. Gabriel W. Gorenstein
April 22, 2025
Page 4

        Respectfully submitted,

        */s/ Katherine M. Sinderson*
        Katherine M. Sinderson

cc: All counsel (via ECF)

# APPENDIX A

## BLB&G's Proposed Screening Procedures:

1. Barring Mr. Tenreiro from working on any engagements, assignments, matters, or service performed by BLB&G in connection with this Action;

2. Prohibiting Mr. Tenreiro from having any discussions concerning this Action with any BLB&G personnel;

3. Denying Mr. Tenreiro access to all documents and computer-stored information concerning this Action;

4. Barring all BLB&G personnel from providing Mr. Tenreiro with information relating to this Action;

5. Barring all BLB&G personnel from asking, directly or indirectly, for any confidential or privileged information from Mr. Tenreiro, and prohibiting all BLB&G personnel—including *Musk* team members—from discussing this Action in Mr. Tenreiro's presence, including from casual discussion or routine status updates;

6. Before Mr. Tenreiro joins BLB&G, BLB&G will notify all BLB&G personnel that no one is permitted to discuss or exchange emails with Mr. Tenreiro regarding this Action;

7. BLB&G has informed Mr. Tenreiro that if he joins the firm, he must not provide any confidential or privileged information pertaining to this Action or Defendants to any Firm personnel;

8. Mr. Tenreiro will not partake in any potential recovery arising from this Action; and

9. BLB&G has provided written notice to the SEC of its desire to hire Mr. Tenreiro and the ethical screening procedures it would implement if permitted to do so.