**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

OKLAHOMA FIREFIGHTERS PENSION
AND RETIREMENT SYSTEM,

                  Plaintiff,

     v.

ELON R. MUSK, ELON MUSK
REVOCABLE TRUST DATED JULY 22,
2003, EXCESSION LLC, AND JARED
BIRCHALL,

              Defendants.

No. 1:22-cv-03026-ALC-GWG

**COURT-APPOINTED LEAD COUNSEL'S**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**TO APPROVE CONFLICT SCREENING PROCEDURES**

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................... 1

II.   STATEMENT OF RELEVANT FACTS ...................................................... 3

    A.    Mr. Tenreiro's Limited Involvement In The SEC Action ....................... 3

    B.    Mr. Tenreiro's Potential Employment At BLB&G ................................ 5

    C.    BLB&G Alerts Quinn Emanuel Of Mr. Tenreiro's Potential Employment ............ 7

III.  BLB&G'S PROPOSED SCREEN PREVENTS ANY POTENTIAL CONFLICT .......... 8

    A.    Relevant Legal Standards ......................................................... 8

    B.    BLB&G's Decision To Screen Mr. Tenreiro Precludes Any Potential Conflict .............. 9

    C.    BLB&G's Screening Procedures Rebut The Presumption Of Shared Confidences.............. 10

IV.   CONCLUSION ................................................................................. 15

## **TABLE OF AUTHORITIES**

**Page(s)**

C̲ASES

*Allegaert v. Perot*,
  565 F. 2d 246 (2d Cir. 1977)......................................................................................3

*Am. Int'l Grp., Inc. v. Bank of Am. Corp*.,
  827 F. Supp. 2d 341 (S.D.N.Y. 2011).......................................................................12

*Arista Records LLC v. Lime Grp. LLC*,
  2011 WL 672254 (S.D.N.Y. Feb. 22, 2011)..............................................................8

*Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*,
  1996 WL 66130 (S.D.N.Y. Feb. 15, 1996).................................................................9

*Drag Racing Techs., Inc. as D.R.T., Inc. v. Universal City Studios, Inc.*,
  2003 WL 1948798 (S.D.N.Y. Apr. 24, 2003).............................................................8

*Dumbo Moving & Storage, Inc. v. Piece of Cake Moving & Storage LLC*,
  2024 WL 3085052 (S.D.N.Y. June 20, 2024) ...........................................................12

*Eberle Design, Inc. v. Reno A & E*,
  354 F. Supp. 2d 1093 (D. Ariz. 2005) ........................................................................9

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*,
  409 F.3d 127 (2d Cir. 2005)................................................................................8, 10

*In re Libor-Based Fin. Instr. Antitrust Litig.*,
  No. 11-md-2262 (S.D.N.Y.) .....................................................................................13

*Lutron Elecs. Co. v. Crestron Elecs., Inc.*,
  2010 WL 4720693 (D. Utah Nov. 12, 2010) ............................................................12

*Maricultura Del Norte, S. de R.L. de C.V. v. Worldbusiness Cap., Inc*.,
  2015 WL 1062167 (S.D.N.Y. Mar. 9, 2015) ..........................................................2, 8

*SEC v. Musk*,
  No. 3:23-mc-80253 (N.D. Cal.).............................................................................4, 12

*SEC v. Musk*,
  Case No. 1:25-cv-105 (D.D.C.) ..................................................................... *passim*

*In re Sunbum5 Enters., LLC*,
  2011 WL 4529648 (M.D. Fla. Sept. 30, 2011) ...........................................................8

*Vinewood Cap., LLC v. Dar Al-Maal Al-Islami Trust*,
  2010 WL 1172947 (N.D. Tex. Mar. 25, 2010)............................................................8

**STATUTES AND RULES**

17 C.F.R. §240.13d-1 ................................................................................................4

N.Y. Rules of Prof. Conduct §1.11 ......................................................................6, 10

N.Y. Rules of Prof. Conduct §1.11(a)(2) ..............................................................9, 10

N.Y. Rules of Prof. Conduct §1.11(b) ......................................................................11

N.Y. Rules of Prof. Conduct §1.11(c) ...................................................................9, 11

**OTHER AUTHORITIES**

Quinn Emanuel, *Announcement: October 2017: White Collar Trial Lawyer Joins Quinn Emanuel New York Office* (Oct. 2017), https://www.quinnemanuel.com/the-firm/news-events/announcement-october-2017-white-collar-trial-lawyer-joins-quinn-emanuel-new-york-office/ ..................................14

Quinn Emanuel, *Concannon Joins Quinn Emanuel, Boosting Firm's Securities Litigation Team* (Nov. 1, 2021), https://www.quinnemanuel.com/media/cl3f1tcv/qe_concannon-press-release.pdf ..................................................................................................................14

## I.    **PRELIMINARY STATEMENT**

Bernstein Litowitz Berger & Grossmann LLP ("BLB&G" or the "Firm") is the Court-appointed Lead Counsel in this Action. In this Motion, the Firm respectfully asks the Court to approve a routine ethical screen of Mr. Jorge G. Tenreiro, an attorney formerly employed with the U.S. Securities and Exchange Commission ("SEC") that BLB&G would like to hire subject to this Court's review and approval of the Firm's proposed screening procedures precluding Mr. Tenreiro from having any involvement in this Action. The Motion is supported by a declaration by Professor Bruce A. Green, a nationally recognized legal ethics and professional responsibility expert, who has advised BLB&G in this matter and reviewed the screening procedures proffered by the Firm. The motion is necessary to head off any possible future disqualification motion by Defendants Elon R. Musk, the Elon Musk Revocable Trust dated July 22, 2003, Excession LLC, and Jared Birchall ("Defendants") to remove BLB&G from serving as Lead Counsel in this Action in the event that Mr. Tenreiro joins the Firm.[1] BLB&G has conferred with counsel for Defendants who intend to oppose the Motion. By contrast, defendants in all other relevant pending cases (save for two actions where BLB&G reached out more recently and is still waiting to hear back) have agreed to waive any potential conflicts or agreed not to object if BLB&G were to hire Mr. Tenreiro, including based on BLB&G's conflict screening procedures. Importantly, while he had limited involvement with related SEC proceedings, Mr. Tenreiro will be fully screened off from this Action in a manner that has been reviewed and supported by a leading ethics expert.

---

[1] Unless otherwise indicated, all internal citations and quotations are omitted, and emphasis is added. References to (i) "Green Decl." are to the Declaration of Bruce A. Green in Support of Motion to Approve Conflict Screening Procedure (Exhibit A); (ii) "Tenreiro Decl." are to the Declaration of Jorge G. Tenreiro in Support of Motion to Approve Conflict Screening Procedures (Exhibit B); and (iii) "Graziano Decl." are to the Declaration of Salvatore J. Graziano in Support of Motion to Approve Conflict Screening Procedures (Exhibit C).

Mr. Tenreiro worked at the SEC for over a decade and served as its Chief Litigation Counsel from December 2024 through February 2025. As part of this supervisory role, Mr. Tenreiro generally had limited involvement in SEC investigations and potential civil enforcement actions when they were presented to the Commissioners for approval. Mr. Tenreiro participated in certain discussions and reviewed and commented on certain documents relating to the decision of whether to commence the SEC Action as part of his supervisory responsibilities at the SEC. However, Mr. Tenreiro did not conduct any of the work that led to the filing of *Securities and Exchange Commission v. Musk*, Case No. 1:25-cv-105 (D.D.C.) (the "SEC Action"), has no recollection of any confidential government information underlying the substantive allegations in the SEC Action and, to the best of his knowledge, does not possess any other non-public information that could be used to the material disadvantage of any Defendant in this Action.

However, to eliminate any potential concern regarding Mr. Tenreiro's limited involvement in the SEC Investigation and SEC Action if he were to be hired by the Firm, BLB&G will implement a robust ethical screen to completely wall-off Mr. Tenreiro from this Action prior to any potential employment at BLB&G. BLB&G's proposed screening measures, which have been reviewed and approved by legal ethics expert Professor Green, include barring Mr. Tenreiro from working on any matters related to this Action, prohibiting Mr. Tenreiro from having discussions with BLB&G personnel about this Action, and denying Mr. Tenreiro from access to all documents and electronically-stored information about this Action. Moreover, BLB&G personnel will be prohibited from providing any information to, or speaking with, Mr. Tenreiro regarding this Action, and Mr. Tenreiro will not receive any portion of any fee potentially received by BLB&G from this Action. Courts in this District have repeatedly found that such screening measures rebut any presumption of shared confidences within a law firm. To be clear, this Motion is brought out

of an abundance of caution to avoid any possible concern, as Mr. Tenreiro has not been hired by BLB&G and has not performed any work for the Firm—so there is no current conflict between his prior service at the SEC and this Action.

In sum, the Motion is a precautionary effort to ensure that no conflict arises and there is no basis for a later potential disqualification motion by Defendants. Indeed, courts routinely approve screens like the one proposed by BLB&G here because disqualification is a "disfavored" remedy that courts are "reluctan[t] to grant." *Maricultura Del Norte, S. de R.L. de C.V. v. Worldbusiness Cap., Inc.*, 2015 WL 1062167, at *15 (S.D.N.Y. Mar. 9, 2015) ("In [all but one] case I have located within this circuit, the district court, after considering whether an ethical screen was sufficient, has found the presumption rebutted and denied a motion to disqualify."). Further, a court has a "duty to supervise members of its bar" to protect from any significant risk of taint at trial. *Allegaert v. Perot,* 565 F. 2d 246, 248 (2d Cir. 1977). This Court is fully empowered to review BLB&G's proposed screen without waiting for a disqualification motion. Notably, counsel for Defendants, Quinn Emanuel Urquhart & Sullivan ("Quinn Emanuel"), previously sought approval of substantially identical ethical screening procedures based on a similar declaration from the same legal ethics expert, Professor Green.

Plaintiff respectfully requests that the Court grant the Motion and approve the proposed ethical screen to wall Mr. Tenreiro off from any involvement in this Action.

## II.     STATEMENT OF RELEVANT FACTS

### A.     Mr. Tenreiro's Limited Involvement In The SEC Action

Mr. Tenreiro served at the SEC from December 2013 through April 4, 2025 in various roles principally related to the work of the SEC's Division of Enforcement ("Enforcement"). Tenreiro Decl. ¶3. From approximately late August 2021 through approximately September 2022, Mr.

Tenreiro was detailed to the Office of the Chair of the SEC, serving as the Enforcement Counsel advising the Chair on matters relating to Enforcement's work. *Id.* ¶4.

From December 1, 2024 through February 3, 2025, Mr. Tenreiro served as Chief Litigation Counsel at the SEC. *Id.* ¶5. In this supervisory role, Mr. Tenreiro oversaw the SEC's national litigation program and served as one of several dozen SEC employees who typically review SEC Enforcement staff recommendations to the Commission regarding the potential filing of a civil action or administrative proceeding. *Id.*

On January 14, 2025, after an investigation (the "SEC Investigation"), the SEC instituted an action against Musk for violating Section 13(D) of the Exchange Act and Rule 13d promulgated thereunder. *See* ECF No. 1, *Securities and Exchange Commission v. Musk*, Case No. 1:25-cv-105 (D.D.C. Jan. 14, 2025).

Mr. Tenreiro was not assigned to conduct or supervise any of the work that led to the filing of the SEC Action, including but not limited to the SEC Investigation, the miscellaneous district court action *SEC v. Musk*, No. 3:23-mc-80253 (N.D. Cal. filed October 5, 2023) (the "Misc Action"), or any other investigation or matter concerning the SEC Action. Tenreiro Decl. ¶7. Further, Mr. Tenreiro had no involvement in the Misc Action. *Id.* ¶8.

Mr. Tenreiro's minimal involvement in the SEC Investigation and the SEC Action was limited to his supervisory role as Chief Litigation Counsel.[2] Between approximately December 1, 2024 through the filing of the SEC Action, Mr. Tenreiro was responsible for participating in certain discussions regarding the SEC Investigation. *Id.* ¶9. He was also responsible for reviewing and

---

[2] While serving in his role as Enforcement Counsel from late August 2021 through approximately September 2022 (*id.* ¶4), Mr. Tenreiro would have likely participated in any meetings with the Chair that may have occurred discussing the SEC Investigation, but he has no recollection of any such discussion. *Id.* ¶¶9, 10.

commenting on certain documents relating to the decision of whether to file the SEC Action. *Id.*
He has no present recollection of these matters or any other information that could be used to the
material disadvantage of Defendant Musk in any matter. *Id.* ¶10.

Mr. Tenreiro had no further involvement in the SEC Investigation, SEC Action, or in any
other proceeding relating to those matters, after the SEC Action was filed on January 14, 2025. *Id.*
¶11. To the best of his knowledge, Mr. Tenreiro is not in possession or aware of any non-public
information acquired while he served at the SEC that could be used to the material disadvantage
of any defendant in this Action, nor has he taken or retained any public or non-public information
about the defendants in the SEC Action. *Id.* ¶¶10, 22, 25.

### B.    Mr. Tenreiro's Potential Employment At BLB&G

On February 6, 2025, Mr. Tenreiro first reached out to BLB&G partners, Katherine M.
Sinderson and James A. Harrod, after an introduction by his former law school classmate due to
Mr. Tenreiro's interest in potential employment at a plaintiff-side securities law firm. *Id.* ¶¶14, 15;
Graziano Decl. ¶2. During the week of February 10, 2025, Mr. Tenreiro had Zoom meetings with
Ms. Sinderson and Mr. Harrod. Tenreiro Decl. ¶16.

Over the next two weeks, Mr. Tenreiro met with several additional BLB&G partners. *Id.*
¶¶16, 17. On February 21, 2025, BLB&G partner John Rizio-Hamilton had an initial discussion
with Mr. Tenreiro about his legal background and qualifications, his career aspirations, BLB&G's
work generally, and the possibility of Mr. Tenreiro joining BLB&G. Tenreiro Decl. ¶18; Graziano
Decl. ¶3. Over the following week, Mr. Tenreiro met with additional BLB&G partners during
which they discussed similar topics. Graziano Decl. ¶5.

Critically, none of the discussions that took place between Mr. Tenreiro and BLB&G's
partners involved discussions of the SEC Investigation, SEC Action, or this Action. Tenreiro Decl.
¶29; Graziano Decl. ¶¶5, 6.

After determining that BLB&G was interested in potentially hiring Mr. Tenreiro, BLB&G consulted nationally recognized legal ethics expert Professor Bruce A. Green to help the Firm become comfortable that Mr. Tenreiro could be screened off from the Firm's existing matters and eliminate any possible claim that there could be a potential conflict. Graziano Decl. ¶10.

On or around March 14, 2025, Mr. Graziano and Mr. Rizio-Hamilton informed Mr. Tenreiro that any offer to join BLB&G would be contingent on Mr. Tenreiro's clearing potential conflicts, specifically: (1) Mr. Tenreiro's agreement not to participate in any way in the representation of any BLB&G client adverse to any defendant in any case in which BLB&G worked as counsel and in which non-public information acquired while Mr. Tenreiro was an SEC employee could be used to the material disadvantage of any defendant; and (2) either the defendant(s)' or the relevant court's approval of a conflict screening procedure that would preclude Mr. Tenreiro's participation in any case in which BLB&G worked as counsel and in which non-public information acquired while Mr. Tenreiro was an SEC employee could be used to the material disadvantage of any defendant. Tenreiro Decl. ¶20; Graziano Decl. ¶7.

Mr. Rizio-Hamilton provided Mr. Tenreiro with a list of all active BLB&G cases to facilitate Mr. Tenreiro's consideration of this request. Graziano Decl. ¶7. Mr. Tenreiro agreed to comply with these instructions (Tenreiro Decl. ¶20), and Mr. Tenreiro identified certain BLB&G cases where he had some limited involvement in an SEC action that potentially related to a defendant in a case involving BLB&G, including this Action. Graziano Decl. ¶8; *see also* Tenreiro Decl. ¶21.

Importantly, BLB&G partners and Mr. Tenreiro did not discuss the substance of either this Action or the SEC Action. Graziano Decl. ¶6. Mr. Tenreiro's only discussions with anyone at BLB&G about this Action and the SEC Action have been part of the conflicts checks process and

6

the proposed conflict screening procedures that are the subject of this Motion, and did not involve any discussion of any non-public information. Tenreiro Decl. ¶30.

During February and March 2025, Mr. Tenreiro discussed the obligations and restrictions that would apply to his post-SEC employment with the SEC's Office of Ethics Counsel and Office of the General Counsel, including specifically as to any potential employment at a plaintiff's side firm and Rule 1.11 of the New York Rules of Professional Conduct. *Id.* ¶19. Moreover, Mr. Tenreiro's anticipated departure from the SEC in April 2025 has been supervised at all times, including by individuals at the SEC's Office of Ethics Counsel, Office of General Counsel, Office of Information Technology, and Division of Enforcement. *Id.* ¶26.

To date, counsel for all relevant defendants in the other actions identified by Mr. Tenreiro (save for two actions where BLB&G reached out more recently and is still waiting to hear back) have agreed to waive any potential conflicts or agreed not to object if BLB&G were to hire Mr. Tenreiro, including based on BLB&G's conflict screening procedures. Graziano Decl. ¶9. Mr. Tenreiro's potential employment at BLB&G will only commence once he has fully cleared all conflicts, including the determination of this Motion by this Court. *See id.* ¶7.

### C.    BLB&G Alerts Quinn Emanuel Of Mr. Tenreiro's Potential Employment

On March 19, 2025, Mr. Graziano informed Mr. Jesse Bernstein, counsel for Defendants in this Action and a partner at Quinn Emanuel, that BLB&G was interested in potentially hiring Mr. Tenreiro subject to the clearing of potential conflicts. *See id.* ¶11. On March 26, 2025, Mr. Bernstein responded by email that his firm had "not been able to get consents from our clients." *Id.* ¶12. During a subsequent meet and confer on April 3, 2025, the parties discussed this motion and the requested relief, and Mr. Bernstein stated he would respond with his clients' position. *Id.* ¶13. On April 21, 2025, Mr. Bernstein indicated that his clients would oppose the relief sought in this Motion. *Id.* ¶14.

### III.    BLB&G'S PROPOSED SCREEN PREVENTS ANY POTENTIAL CONFLICT

#### A.    Relevant Legal Standards

The Second Circuit has "join[ed]" the "strong trend . . . toward allowing the presumption of confidence sharing within a firm to be rebutted" and has held that an ethical screen that "effectively protects against any sharing of confidential information" will "adequately protect against taint." *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005).

Disqualification of counsel is "disfavored," and courts express "reluctance to grant such motions." *Maricultura Del Norte, S. de R.L. de C.V.*, 2015 WL 1062167, at *7. "Disqualification is warranted only in situations where violations of the Canons of the Code of Professional Responsibility pose a ***significant*** risk of trial taint." *Drag Racing Techs., Inc. as D.R.T., Inc. v. Universal City Studios, Inc.*, 2003 WL 1948798, at *3 (S.D.N.Y. Apr. 24, 2003) (cleaned up). Disqualification is particularly disfavored because it is "often tactically motivated, caus[ing] undue delay, add[ing] expense, and hav[ing] an immediate adverse effect on the client by separating him from counsel of his choice." *Id.* at *2.

As such, courts within the Second Circuit regularly approve ethical screens and reject motions to disqualify. *Maricultura Del Norte, S. de R.L. de C.V.*, 2015 WL 1062167, at *15 ("In every other post-*Hempstead* case I have located within this circuit, the district court, after considering whether an ethical screen was sufficient, has found the presumption rebutted and denied a motion to disqualify."); *see also, e.g.*, *Arista Records LLC v. Lime Grp. LLC,* 2011 WL 672254, at *5, *8 (S.D.N.Y. Feb. 22, 2011) (rejecting motion to disqualify even though the law firm failed to enter the attorney's prior representation of Arista into its conflict database; when it learned of the conflict, the law firm delayed establishing an ethical screen).

This Court is empowered to endorse a proposed ethical screen without waiting for a disqualification motion. *See, e.g., In re Sunbum5 Enters., LLC*, 2011 WL 4529648, at *1 (M.D. Fla. Sept. 30, 2011) (ruling on appeal from bankruptcy court's order concerning "a motion for a determination that a law firm did not have a conflict of interest in representing the Chapter 7 trustee"); *Vinewood Cap., LLC v. Dar Al-Maal Al-Islami Trust,* 2010 WL 1172947, at *9 (N.D. Tex. Mar. 25, 2010) (granting "Motion for Declaration that Counsel is Not Subject to Disqualification"); *Eberle Design, Inc. v. Reno A & E*, 354 F. Supp. 2d 1093, 1094 (D. Ariz. 2005) (ruling on a motion that sought the court's guidance about a potential conflict before the attorney who worked for the law firm representing one party joined the firm representing the opposing party); *Bank Brussels Lambert v. Chase Manhattan Bank, N.A.,* 1996 WL 66130, at *1 (S.D.N.Y. Feb. 15, 1996) (same).

### B.    BLB&G's Decision To Screen Mr. Tenreiro Precludes Any Potential Conflict

The New York Rules of Professional Conduct ("NY Rules") provide that BLB&G's decision to screen Mr. Tenreiro to block him from having any involvement in this Action eliminates any potential conflict. Green Decl. ¶¶13-17. Rule 1.11(a)(2) generally forbids a former government lawyer from personally representing a party in "a matter in which [he] participated personally and substantially as a public officer or employee" absent the government agency's informed consent. *Id.* ¶15. Critically, however, Rule 1.11(c) provides that "[a] firm with which that lawyer is associated may undertake or continue representation in the matter only if the disqualified lawyer is timely and effectively screened from any participation" in accordance with the NY Rules. *Id.* ¶16.

There is no potential conflict here. If Mr. Tenreiro joins BLB&G, the Firm has committed to screen Mr. Tenreiro from having any involvement in this Action, as detailed in the next section.

Thus, no conflict will arise from Mr. Tenreiro's limited prior involvement in the SEC Investigation and SEC Action.

### C. BLB&G's Screening Procedures Rebut The Presumption Of Shared Confidences

To rebut the presumption that attorneys within a law firm share confidential information, a firm may present evidence of an ethical screen that "effectively protects against any sharing of confidential information [and] can[] adequately protect against taint." *Hempstead Video*, 409 F.3d at 138.

Here, BLB&G's screening procedures rebut any concern arising from the presumption of shared confidences. For example, BLB&G's proposed screen includes the following measures:

1. Barring Mr. Tenreiro from working on any engagements, assignments, matters, or service performed by BLB&G in connection with this Action;

2. Prohibiting Mr. Tenreiro from having any discussions concerning this Action with any BLB&G personnel;

3. Denying Mr. Tenreiro access to all documents and computer-stored information concerning this Action;

4. Barring all BLB&G personnel from providing Mr. Tenreiro with information relating to this Action;

5. Barring all BLB&G personnel from asking, directly or indirectly, for any confidential or privileged information from Mr. Tenreiro, and prohibiting all BLB&G personnel—including *Musk* team members—from discussing this Action in Mr. Tenreiro's presence, including from casual discussion or routine status updates;

6. Before Mr. Tenreiro joins BLB&G, BLB&G will notify all BLB&G personnel that no one is permitted to discuss or exchange emails with Mr. Tenreiro regarding this Action;

7. BLB&G has informed Mr. Tenreiro that if he joins the firm, he must not provide any confidential or privileged information pertaining to this Action or Defendants to any Firm personnel;

8. Mr. Tenreiro will not partake in any potential recovery arising from this Action; and

9.  BLB&G has provided written notice to the SEC of its desire to hire Mr. Tenreiro and the ethical screening procedures it would implement if permitted to do so.

The screening procedures proposed by BLB&G are consistent with NY Rule 1.11 and have been approved by other Courts in this District. Green Decl. at ¶17.

Relatedly, Rule 1.11(a)(2) prohibits a former government lawyer from personally representing a party in "a matter in which [he] participated personally and substantially as a public officer or employee" unless the relevant government agency gives its informed consent. Here, the Court need not decide whether Mr. Tenreiro participated in the same "matter" at the SEC because Rule 1.11(b) provides that if a lawyer is disqualified from representation under paragraph (a), the firm may not continue representation unless the firm implements certain screening measures, including notification of personnel that the disqualified lawyer is prohibited from participating in the representation; procedures to prevent the flow of information about the action between the disqualified lawyer and those working on the matter; measures to ensure that the disqualified lawyer receives no portion of the firm's fee from this matter; and written notice to the government agency. Rule 1.11(c) further provides that "A firm with which that lawyer is associated may undertake or continue representation in the matter only if the disqualified lawyer is timely and effectively screened from any participation in the matter" in accordance with Rule 1.11(b).

BLB&G's proposed measures, which again have been reviewed and approved by Professor Green, will be timely and effective under the NY Rules. Green Decl. ¶¶18-22. In the event the Court grants this motion and Mr. Tenreiro subsequently joins BLB&G, BLB&G's screening procedures will be timely because they will be implemented *before* Mr. Tenreiro joins the Firm or does any work at BLB&G. *Id.* ¶18. BLB&G's proposed screening procedures will also be effective because they will include all elements listed in Rule 1.11(b) as set forth above, including notification of all personnel in the firm that Mr. Tenreiro is prohibited from participating in this

11

action; procedures to prevent the flow of information about the action between Mr. Tenreiro and those working on the matter; measures to ensure that Mr. Tenreiro receives no portion of the firm's fee from this matter; and written notice to the SEC. *Id.* ¶19. In addition, BLB&G has adopted additional protective measures, including giving advance notice to this Court so that the Court may impose any additional screening measures, as well as advance notice to Defendants (through their counsel) so that they are in a position to suggest additional measures. *Id.* ¶20.

Courts in this District routinely approve such screening measures. *See, e.g.*, *Dumbo Moving & Storage, Inc. v. Piece of Cake Moving & Storage LLC*, 2024 WL 3085052, at *3 (S.D.N.Y. June 20, 2024) (presumption of shared confidences rebutted where "ethical wall was raised within forty-eight hours" and included measures that prevented attorney "from accessing electronic or physical files related to the matter and prevented all assigned personnel from communicating with [attorney] about the matter"). Significantly, courts across the country have denied motions to disqualify Quinn Emanuel even in cases involving its "flawed screens" and failure to conduct "effective conflicts check[s]"—unlike BLB&G's timely and effective screening measures here. *See, e.g.*, *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 827 F. Supp. 2d 341, 344, 346 (S.D.N.Y. 2011) (rejecting motion to disqualify where a Quinn Emanuel attorney billed 5.8 hours on a conflicted matter because "flawed screens—including late screens—are not fatal"); *Lutron Elecs. Co. v. Crestron Elecs., Inc.*, 2010 WL 4720693, at *5 (D. Utah Nov. 12, 2010) (rejecting motion to disqualify where Quinn Emanuel failed to "conduct an effective conflicts check and discover the conflict initially" because the firm later established an ethical screen).

Moreover, Mr. Tenreiro's involvement with the SEC Investigation and SEC Action was limited and minimal, further weighing in favor of approving BLB&G's ethical screening measures. *See, e.g.*, *Am. Int'l Grp*, 827 F. Supp. 2d at 344-45 (conflicted Quinn Emanuel attorney's "work

on the case was minimal" such that disqualification was unwarranted). Mr. Tenreiro was not assigned to conduct the day-to-day work, or the supervision of any work, that led to the filing of the SEC Action, including but not limited to the SEC Investigation and the Misc Action, or any other investigation or matter, and his involvement in the SEC Investigation and SEC Action was limited to participating in certain discussions regarding the SEC Investigation and the filing of the then-potential SEC Action and his review of and comment on certain documents related to that decision as part of his responsibilities as Chief Litigation Counsel. Tenreiro Decl. ¶9. Mr. Tenreiro did not bring or retain any relevant materials from the SEC after his departure, which furthers the effectiveness of BLB&G's proposed screening measures. Green Decl. ¶21.

Notably, BLB&G's proposed screen is substantively similar to the screen proposed by Quinn Emanuel, counsel for Defendants, in a separate litigation and even adds additional screening procedures to ensure that any information Mr. Tenreiro possesses is not shared with anyone at BLB&G—undermining their opposition to the present Motion. Specifically, in *In re Libor-Based Financial Instruments Antitrust Litigation*, No. 11-md-2262 (S.D.N.Y.) (Buchwald, J.) ("*Libor*"), Quinn Emanuel, who represents certain plaintiffs in that action and represents Defendants here, asked the court there to approve a "routine ethical screen" of an attorney Quinn Emanuel proposed to hire. *Libor*, ECF No. 1618. The ethical screen proposed by Quinn Emanuel in that action has significant overlap with the ethical screen proposed by BLB&G here. *Compare, e.g., Libor*, ECF No. 1618 at 6-7 ("Quinn Emanuel will not ask, directly or indirectly, for any confidential or privileged information from Mr. Soames pertaining to Credit Suisse and QE has instructed its lawyers working on any Credit Suisse matters not to discuss with Mr. Soames any work he performed for Credit Suisse"), *with e.g., supra* at 10 ("Barring all BLB&G personnel from asking, directly or indirectly, for any confidential or privileged information from Mr. Tenreiro, and

13

prohibiting all BLB&G personnel—including *Musk* team members—from discussing this Action in Mr. Tenreiro's presence, including from casual discussion or routine status updates").[3]

Unsurprisingly, Quinn Emanuel has also previously hired former government attorneys. Indeed, in 2021, Quinn Emanuel hired former Senior Trial Counsel at the SEC, Sarah Heaton Concannon as Co-Chair of its SEC Enforcement Defense practice.[4] Likewise, in 2017, Quinn Emanuel hired Alex Spiro—who represents Defendants in this very case—as a partner after his stint as a prosecutor at the New York County District Attorney's Office.[5] Denial of this instant motion would chill law firms from hiring former government attorneys like Mr. Tenreiro, Ms. Concannon, and Mr. Spiro who seek employment in private practice.

Mr. Tenreiro recently left the SEC and is not presently employed. Given BLB&G's interest in hiring him subject to the Court's approval in connection with this Motion, Mr. Tenreiro has found a potential employer to continue his successful legal career in private practice. It would be unfair to allow Defendants Musk and Birchall to block his attempt to find meaningful private employment. Given BLB&G's careful and extensive measures to comply with all ethical rules, it is unnecessary to do so.

---

[3] While the motion was ultimately withdrawn by Quinn Emanuel, Quinn Emanuel made many of the same arguments that Plaintiff does now.

[4] Quinn Emanuel, *Concannon Joins Quinn Emanuel, Boosting Firm's Securities Litigation Team* (Nov. 1, 2021), https://www.quinnemanuel.com/media/cl3f1tcv/qe_concannon-press-release.pdf.

[5] Quinn Emanuel, *Announcement: October 2017: White Collar Trial Lawyer Joins Quinn Emanuel New York Office* (Oct. 2017), https://www.quinnemanuel.com/the-firm/news-events/announcement-october-2017-white-collar-trial-lawyer-joins-quinn-emanuel-new-york-office/.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, BLB&G respectfully requests that the Court grant its Motion and approve the screening procedures walling off Mr. Tenreiro from any involvement in this Action.

Dated: April 22, 2025

**BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP**

*/s/ Salvatore J. Graziano*
Salvatore J. Graziano
Katherine M. Sinderson
Jeremy P. Robinson
Jonathan G. D'Errico
Emily A. Tu
1251 Avenue of the Americas
New York, NY 10020
Phone: (212) 554-1400
Fax: (212) 554-1444
salvatore@blbglaw.com
katie@blbglaw.com
jeremy@blbglaw.com
jonathan.derrico@blbglaw.com
emily.tu@blbglaw.com

*Counsel for Lead Plaintiff Oklahoma
Firefighters Pension and Retirement System*