# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM,<br><br>Plaintiff,<br>v.<br><br>ELON R. MUSK, ELON MUSK REVOCABLE TRUST DATED JULY 22, 2003, EXCESSION LLC, AND JARED BIRCHALL,<br><br>Defendants. | No. 1:22-cv-03026-ALC-GWG<br><br>Honorable Gabriel W. Gorenstein |

**DECLARATION OF JORGE G. TENREIRO IN SUPPORT OF MOTION TO APPROVE CONFLICT SCREENING PROCEDURES**

I, JORGE G. TENREIRO, declare pursuant to 28 U.S.C. § 1746:

1. I am an attorney admitted to the bar of the State of New York, in good standing since 2007, and a member of the bar of the Southern District of New York since 2008.

2. I submit this declaration in support of Plaintiff's Motion to Approve Conflict Screening Procedures. The information contained herein is true to the best of my recollection, and I am prepared to testify to it in court if required to do so.

3. From December 2013 until April 4, 2025, I was employed at the United States Securities and Exchange Commission ("SEC"), occupying various roles principally related to the work of the SEC's Division of Enforcement ("Enforcement").

4. From approximately late August 2021 through approximately September 12, 2022, I was detailed to the Office of the Chair of the SEC, serving as the Enforcement Counsel advising the Chair on matters relating to Enforcement's work.

1

5. From December 1, 2024, through February 3, 2025, I worked as the SEC's Chief Litigation Counsel, overseeing the SEC's national litigation program. As Chief Litigation Counsel, I was one of as many as several dozen reviewers who typically review Enforcement staff recommendations to the Commission recommending the potential filing of an Enforcement civil action or administrative proceeding.

6. On January 14, 2025, the SEC filed the lawsuit *SEC v. Musk*, No. 25-cv-00105 (D.D.C.), alleging a violation of Section 13(d) of the Securities Exchange Act of 1934 and Rule 13d-1 thereunder ("*SEC v. Musk*"), with respect to Mr. Musk's purchases of Twitter shares in 2022.

7. I was not and have never been, at any time, part of any SEC staff (Enforcement or otherwise) assigned to conduct the day-to-day work, or the supervision of any work, that ultimately led to the filing of *SEC v. Musk*, including but not limited to investigation SEC File No. SF-4519 ("SEC Investigation"), the miscellaneous district court action *SEC v. Musk*, No. 3:23-mc-80253 (N.D. Cal. filed October 5, 2023) (the "Misc Action"), or any other investigation or matter.

8. I have never participated in the Misc Action in any way.

9. My substantive participation in the SEC Investigation was limited to the following:

   a. In the normal course of my duties as Enforcement Counsel to the Chair, I would have likely participated in discussions with the Chair that may have occurred discussing the SEC Investigation. I have no recollection of any content regarding any discussion of the SEC Investigation that may have occurred during my detail as Enforcement Counsel to the Chair.

   b. In the normal course of my duties as Chief Litigation Counsel, from approximately December 1, 2024, through the filing of *SEC v. Musk*, I was responsible for participating in certain discussions concerning the SEC Investigation and the then-

potential SEC civil enforcement action and for reviewing and commenting on documents relating to the decision of whether to file the then-potential civil enforcement action.

10. I have no recollection of any confidential government information underlying the allegations in *SEC v. Musk* or relating to the SEC Investigation, or of any allegations in this case, or, to the best of my knowledge, of any other information that could be used to the material disadvantage of Mr. Musk in any matter.

11. I did not substantively participate in the SEC Investigation or in *SEC v. Musk*, or in any other matter relating to those matters, after January 14, 2025.

12. On January 21, 2025, I began contacting potential outside employers to explore the possibility of post-SEC employment.

13. On January 31, 2025, I was informed by SEC leadership that, effective February 3, 2025, I would commence a detail in the SEC's Office of Information Technology. I had no further involvement with Enforcement or any of its investigations or litigations after January 31, 2025.

14. On February 3, 2025, I contacted a former classmate from law school who I knew had worked at a major plaintiffs' side firm. I let him know that I was considering the next steps in my career outside the SEC and that I was interested in exploring employment options with plaintiffs' side firms.

15. On February 6, 2025, my former classmate put me in touch with or directed me to various individuals at numerous firms across the plaintiffs' bar, including two partners who work for plaintiff's counsel, the law firm Bernstein, Litowitz, Berger and Grossmann LLP ("BLBG").

16. I contacted those two partners via email on February 6, and had zoom meetings with them during the week of February 10, 2025, to discuss BLBG.

3

17. On February 14, 2025, I spoke to a third BLBG partner, John Rizio-Hamilton, to set up a time to meet to further discuss the work of BLBG.

18. On February 21, 2025, I met with Rizio-Hamilton to discuss the possibility of joining BLBG. I met with additional BLBG partners in March 2025 to discuss the possibility of joining BLBG.

19. At various times in February and March of 2025, I discussed with various individuals at the SEC's Office of Ethics Counsel and Office of the General Counsel the obligations and restrictions that would apply with respect to my post-SEC employment, including specifically with respect to any potential employment at a plaintiff's side firm, and including specifically Rule 1.11 of the New York Rules of Professional Conduct.

20. On or around March 14, 2025, BLBG informed me that any offer to join the firm would be contingent on (1) my agreement not to participate in any way in the representation of any BLBG client adverse to any defendant in any case in which BLBG worked as counsel and in which non-public information acquired while I was an SEC employee could be used to the material disadvantage of any defendant and (2) either the defendant(s)' or the relevant court's approval of a conflict screening procedure that would preclude my participation in any case in which BLBG worked as counsel and in which non-public information acquired while I was an SEC employee could be used to the material disadvantage of any defendant. I agreed to comply with these instructions.

21. Between March 15 and March 17, 2025, I became aware for the first time that BLBG was counsel for the plaintiffs in this action, and I promptly informed BLBG of the limited circumstances of my involvement in SEC discussions leading up to the filing of *SEC v. Musk*.

22. To the best of my knowledge, I am not in possession or aware of any non-public information acquired while I was an SEC employee that could be used to the material disadvantage of any defendant in this case.

23. On March 20, 2025, I gave the SEC notice of my intent to separate from the agency under a "Voluntary Incentive Separation Program" that the agency offered to employees, requiring them to separate from the SEC no later than April 4, 2025.

24. On April 4, 2025, I completed my separation from the SEC.

25. I did not take or retain any information, confidential or otherwise, about the SEC Investigation or the defendants in *SEC v. Musk*, when I left the SEC.

26. My departure from the SEC was supervised at all times by various individuals designated by the SEC to oversee the separation of an employee from the SEC, including individuals at the SEC's Office of Ethics Counsel, Office of General Counsel, Office of Information Technology, and Division of Enforcement.

27. I have not disclosed and will never disclose to anyone at BLBG any non-public information acquired while I was an SEC employee, including but not limited to any non-public information acquired while I was an SEC employee that could be used to the material disadvantage of any defendant in any case in which BLBG serves as counsel.

28. My obligation not to disclose to anyone, including anyone at BLBG, any non-public information acquired while I was an SEC employee is also consistent with my legal and professional obligations as a member of the Bar of the State of New York, SEC rules and regulations, and federal criminal and civil statutes, all of which I understand and affirm are applicable to me as a former SEC employee and binding on my post-SEC employment conduct.

29. I have never discussed with anyone who was not at the time an SEC employee, including specifically anyone at BLBG, any non-public information about the SEC Investigation, *SEC v. Musk* or about this matter.

30. My only discussions with anyone at BLBG about this matter and about *SEC v. Musk* have been as part of the conflicts checks process and this proposed conflict screening procedure, both as they relate to my potential employment at BLBG, and did not involve any discussion of any non-public information.

31. I have also recently re-reviewed the New York Rules of Professional Conduct, including specifically Rule 1.11 thereof:

   a. I acknowledge and agree not to communicate with anyone at BLBG about the SEC Investigation or the *SEC v. Musk* or this matter.

   b. I agree to avoid any contact with BLBG files or other materials relating to this matter.

   c. I understand that if I join BLBG, I will not be apportioned any part of any fee generated by this matter.

32. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April _22_, 2025.

By: _____
Jorge G. Tenreiro