# Exhibit C

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, | No. 1:22-cv-03026-ALC-GWG |
| Plaintiff, | |
| v. | Honorable Gabriel W. Gorenstein |
| ELON R. MUSK, ELON MUSK REVOCABLE TRUST DATED JULY 22, 2003, EXCESSION LLC, AND JARED BIRCHALL, | |
| Defendants. | |

**DECLARATION OF SALVATORE J. GRAZIANO IN SUPPORT OF**
**MOTION TO APPROVE CONFLICT SCREENING PROCEDURES**

I, Salvatore J. Graziano, declare pursuant to 28 U.S.C. § 1746:

1.      I am a member in good standing of the bars of the State of New York and of this Court. I am a partner in the law firm of Bernstein Litowitz Berger & Grossmann LLP ("BLB&G" or the "Firm"). I submit this declaration in support of Lead Plaintiff's Motion to Approve Conflict Screening Procedures.

2.      On February 6, 2025, Jorge Tenreiro contacted two of my partners, Katherine M. Sinderson and James A. Harrod. I understand from speaking with Ms. Sinderson and Mr. Harrod that they discussed with Mr. Tenreiro what it was like to work at BLB&G generally and their respective experience at the Firm.

3.      On February 21, 2025, my partner John Rizio-Hamilton met with Mr. Tenreiro in person. I understand from Mr. Rizio-Hamilton that he and Mr. Tenreiro discussed generally his experience at the SEC, his legal background and qualifications, his career aspirations, and the

Firm's work generally. At the end of that conversation, they discussed the possibility of Mr. Tenreiro interviewing at the firm for a partner position.

4.      On March 5, 2025, Mr. Rizio-Hamilton and I met with Mr. Tenreiro in person and interviewed him. We discussed generally his experience at the SEC, his legal background and qualifications, his career aspirations, and the Firm's work generally.

5.      On March 5 and 7, Mr. Tenreiro met with other partners at BLB&G, including Hannah Ross, Jeroen van Kwawegen, and Jerry Silk. I understand from speaking with those individuals that they discussed with Mr. Tenreiro his legal experience, background and qualifications, his career aspirations, and the Firm's work generally.

6.      Based on my personal involvement in meeting with Mr. Tenreiro, as well as my discussions with each of my partners at BLB&G who met him, my understanding is that at no time during Mr. Tenreiro's meetings at BLB&G did anyone discuss the lawsuit captioned *SEC v. Musk*, No. 25-cv-00105 (D.D.C.) ("*SEC v. Musk*") (or the SEC's investigation prior to filing that action) or the lawsuit captioned *Oklahoma Firefighters Pension and Retirement System v. Elon R. Musk, Elon Musk Revocable Trust Dated July 22, 2003, Excession, LLC, and Jared Birchall*, No. 1:22-cv-03026-ALC-GWG ("*Okla. Firefighters v. Musk*" or this "Action").

7.      Mr. Rizio-Hamilton and myself informed Mr. Tenreiro that any offer to join BLB&G would be contingent on (1) Mr. Tenreiro's agreement not to participate in any way in the representation of any BLB&G client adverse to any defendant in any case in which BLB&G worked as counsel and in which non-public information acquired while Mr. Tenreiro was an SEC employee could be used to the material disadvantage of any defendant; and (2) either the defendant(s)' or the relevant court's approval of a conflict screening procedure that would preclude Mr. Tenreiro's participation in any case in which BLB&G worked as counsel and in which non-

2

public information acquired while Mr. Tenreiro was an SEC employee could be used to the material disadvantage of any defendant. To facilitate Mr. Tenreiro's consideration of this request, Mr. Rizio-Hamilton sent Mr. Tenreiro a list of all active BLB&G cases, including this Action.

8.      In response, Mr. Tenreiro identified certain cases where he had some limited involvement in an SEC action that potentially related to a defendant in a case involving BLB&G, including this Action. As relevant to this Action, we discussed only the existence of this Action and the fact that Mr. Tenreiro had some limited involvement in *SEC v. Musk*—but did not discuss the substance of either of this Action or *SEC v. Musk*.

9.      BLB&G reached out to counsel for the relevant defendants in the other actions noted by Mr. Tenreiro. Nearly all of the defendants in those cases either agreed to waive any potential conflicts or agreed not to object if BLB&G were to hire Mr. Tenreiro, including based on BLB&G's conflict screening procedures. Defense counsel in two of those cases are consulting with their clients and have not reverted with their position yet.

10.     On March 19, 2025, Mr. Rizio-Hamilton and myself consulted with a professional legal ethics expert, Professor Bruce Green.

11.     With respect to this Action, on March 19, 2025, I informed Jesse Bernstein, counsel for Defendants in this Action and a partner at Quinn Emanuel Urquhart & Sullivan, that BLB&G was interested in potentially hiring Mr. Tenreiro subject to the considerations outlined above. I asked if Defendants in this Action would consent.

12.     On March 26, 2025, Jesse Bernstein informed me by email that his firm had "not been able to get consents from our clients."

13.     On April 1, 2025, BLB&G partner Jeremy Robinson emailed Mr. Bernstein to *inter alia* request a meet and confer concerning this Motion and the relief sought herein. On April 3,

3

2025, my partners and I spoke by phone with Mr. Bernstein—who said he would respond with his clients' position on the relief requested in the Motion.

14.     On April 21, 2025, Mr. Bernstein informed us that Defendants in this Action would oppose the relief sought in this Motion.

15.     I have re-reviewed the New York Rules of Professional Conduct, including Rule 1.11 ("Special Conflicts of Interest for Former and Current Government Officers and Employees").

16.     In consultation with Professor Bruce Green, BLB&G has developed a set of screening procedures that it will implement with respect to Mr. Tenreiro if he is ultimately employed at BLB&G. Those screening procedures will include:

    a.  Bar Mr. Tenreiro from working on any engagements, assignments, matters, or service performed by BLB&G in connection with *Musk*;

    b.  Prohibit Mr. Tenreiro from having any discussions concerning *Musk* with any BLB&G personnel;

    c.  Deny Mr. Tenreiro access to all documents and computer-stored information to *Musk*;

    d.  Bar all BLB&G personnel from providing Mr. Tenreiro with information relating to *Musk*;

    e.  Bar all BLB&G personnel from asking, directly or indirectly, for any confidential or privileged information from Mr. Tenreiro, and prohibit all BLB&G personnel—including *Musk* team members—from discussing *Musk* in Mr. Tenreiro's presence, including from casual discussion or routine status updates;

    f.  Before Mr. Tenreiro joins BLB&G, BLB&G will notify all BLB&G personnel that no one is permitted to discuss or exchange emails with Mr. Tenreiro regarding *Musk*;

    g.  BLB&G has informed Mr. Tenreiro that if he joins the firm, he must not provide any confidential or privileged information pertaining to *Musk* to any Firm personnel; and

       h.   BLB&G has provided written notice to the SEC of its desire to hire Mr. Tenreiro and the ethical screening procedures it would implement if permitted to do so.

17.     Further, I confirm that Mr. Tenreiro will not be apportioned any part of any fee that may be received by BLB&G in connection with this Action.

18.     I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

Executed this 22nd day of April 2025.

_____
Salvatore J. Graziano