**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, <br><br> Plaintiff, <br><br> v. <br><br> ELON R. MUSK, ELON MUSK REVOCABLE TRUST DATED JULY 22, 2003, EXCESSION LLC, and JARED BIRCHALL, <br><br> Defendants. | No. 1:22-cv-03026-ALC-GWG |

## DECLARATION OF JESSE BERNSTEIN

I, Jesse Bernstein, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am a partner at Quinn Emanuel Urquhart & Sullivan LLP ("QEU&S") and a member in good standing of the bar of the State of New York and am admitted to practice before this Court.  I represent Defendants Elon R. Musk, the Elon Musk Revocable Trust dated July 22, 2003, Excession, LLC, and Jared Birchall (collectively, "Defendants") in this action.

2.      I respectfully submit this declaration and its accompanying exhibits in support of Defendants' opposition to Lead Counsel's Motion to Approve Conflict Screening Procedures (Dkt. #123).  I make this declaration based on my personal knowledge.  If called and sworn as a witness, I could and would testify competently to the facts set forth in this declaration.

3.      On March 19, 2025, Salvatore J. Graziano, counsel for Plaintiff in this Action and a partner at Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") called me and informed me that BLB&G was interested in hiring Jorge G. Tenreiro.  Mr. Graziano stated that he was inquiring whether Defendants would consent to the hiring.  He also stated, in sum and substance, that Mr.

Tenreiro's role in the investigation was limited to the review of a single memorandum.  On March 26, 2025, I informed Mr. Graziano that we were unable to obtain consents from Defendants.

4.      Attached hereto as **Exhibit A** is a true and correct copy of an email chain between defense counsel and counsel at movant, BLB&G, spanning March 21, 2025 through March 26, 2025.

5.      On April 1, 2025, Jeremy P. Robinson, a BLB&G partner, informed me via email that BLB&G "intend[s] to file a motion relating to [the] firm's hiring of Jorge Tenreiro" and asked for a meet and confer concerning this Motion and the relief sought herein.  Agreeing to the meet and confer, I also provided our questions concerning Mr. Tenreiro's contemplated hiring in advance of the call with the BLB&G attorneys.

6.      Attached hereto as **Exhibit B** is a true and correct copy of an email chain between counsel at QEU&S and BLB&G spanning April 1, 2025 through April 2, 2025.

7.      A telephonic meet-and-confer was scheduled for April 3, 2025 between my colleague, Nathan Goralnik, and I, and a number of BLB&G attorneys, including John Rizio-Hamilton who led the discussion regarding Mr. Tenreiro's hiring.

8.      During the meet-and-confer, Mr. Rizio-Hamilton stated to me, in sum and substance, that Mr. Tenreiro's role in the SEC's proceedings against Mr. Musk related to his purchase of shares in Twitter, Inc. was limited to reviewing one memorandum on the proposed SEC civil enforcement action against Mr. Musk before the case was referred to the SEC Commissioners, which was consistent with what Mr. Graziano had told me on our March 19, 2025 call.  The BLB&G attorneys on the call did not disclose Mr. Tenreiro's participation in discussions with SEC Chair Gary Gensler regarding the SEC's investigation, or any other facts concerning Mr. Tenreiro's involvement in the Commission's proceedings against Mr. Musk.

9. On April 11, 2025, Mr. Graziano emailed to follow up about if there is any change in our client's position on opposing this Motion.

10. On April 16, 2025, I emailed Mr. Graziano and his partners at BLB&G seeking confirmation of my understanding from our meet-and-confer and my initial call with Mr. Graziano that "Mr. Tenreiro played no role in the SEC investigation (SF-4519) regarding Mr. Musk's ownership or disclosure of his Twitter stake or the filing of the action captioned SEC v. Musk, 25-cv-105 (D.D.C.), apart from reviewing a memo[.]"  I explained that we understood their representation to mean that "Mr. Tenreiro did not participate in Senior Officer discussions concerning the potential filing of the action or take any actions necessary for the filing of the SEC action beyond reviewing the memo, e.g., he did not approve the memo as Chief Trial Counsel, participate in meetings with the Director of Enforcement or Acting Director of Enforcement concerning the matter, assign supervisory trial counsel or other staff to the litigated matter, or appear before the Commission in his capacity as Chief Trial Counsel when the action was approved by the Commission to be filed."  I also stated that: "Assuming our understanding is correct, we will not oppose your motion (though we do not consent)."

11. The same day, Mr. Graziano replied to my email clarifying that Mr. Tenreiro "played no role in that investigation, apart from, in the routine course of his duties as Enforcement Counsel to the Chair or Chief Litigation Counsel, reviewing documents relating to the decision of whether to file an action and participating in discussions concerning the potential filing of the action."

12. On April 17, 2025, in light of Mr. Graziano's clarification, among other things, I inquired Mr. Graziano and his partners at BLB&G whether "[i]n his role as Enforcement Counsel to the Chair, did Mr. Tenreiro provide advice and counsel to the Chair in connection with the

[SEC] [I]nvestigation?" and "[d]id Mr. Tenreiro liaise with the Enforcement Director, the Division of Enforcement Front Office, and/or the Enforcement staff investigating the matter concerning the matter?"  I further asked whether "[i]n his capacity as Chief Litigation Counsel, did Mr. Tenreiro provide comments to the memorandum ultimately submitted to the Commission concerning the Enforcement Staff's recommendation to bring a litigated action?" and "[d]id Mr. Tenreiro participate (orally, by text, or by email) in discussions with the Enforcement Director and/or Senior Officers concerning the recommendation to the Commission?"  And I asked "[d]id Mr. Tenreiro attend any meetings during which the Commission discussed potential political motivations for the action, as has been reported in the media?"

13.    Attached hereto as **Exhibit C** is a true and correct copy of an email chain between counsel at QEU&S and BLB&G spanning April 11, 2025 through April 17, 2025.

14.    In his response to my email, Mr. Graziano disputed the "relevance" of my inquiries and otherwise asserted that the information was privileged or that Mr. Tenreiro lacked any recollection:

> Your question asking if, "in his role as Enforcement Counsel to the Chair, did Mr. Tenreiro provide advice and counsel to the Chair in connection with the investigation," seeks privileged SEC information.  In any event, Mr. Tenreiro has no recollection of whether he did or did not do so.

> As to whether "Mr. Tenreiro liaise[d] with the Enforcement Director, the Division of Enforcement Front Office, and/or the Enforcement staff investigating the matter concerning the matter," again, this question seeks SEC privileged matter.  In any event, Mr. Tenreiro has no recollection of whether he did or did not do so in his capacity as Enforcement Counsel to the Chair.

> Your remaining three questions also seek SEC privileged information.

15.    On April 21, 2025, I notified Mr. Graziano and his partners at BLB&G by email that: "In light of the additional detail you provided regarding Mr. Tenreiro's role, Defendants

4

intend to oppose Plaintiff's motion."  Attached hereto as **Exhibit D** is a true and correct copy of an email chain between counsel at QEU&S and BLB&G containing my email.

16. Attached hereto as **Exhibit E** is a true and correct copy of a LinkedIn post by Jeroen van Kwawegen, a partner at BLB&G published approximately one month prior to the date of this declaration and printed from the "All activity" section of Mr. Tenreiro's LinkedIn profile.  The post is available at https://www.linkedin.com/posts/jeroen-van-kwawegen-b543811_metas-potential-exit-from-delaware-had-governor-activity-7308089678102999040-HubG/.

17. Attached hereto as **Exhibit F** is a true and correct copy of a LinkedIn post by Lauren Ormsbee, a partner at Labaton Keller Sucharow LLP published approximately one month prior to the date of this declaration and printed from the "All activity" section of Mr. Tenreiro's LinkedIn profile.  The post is available at https://www.linkedin.com/posts/lauren-ormsbee-b275772_dont-undermine-delawares-judiciary-at-the-activity-7307432812381433857-mQKY.

18. Attached hereto as **Exhibit G** is a true and correct copy of a LinkedIn post by Amanda Fischer, former Chief of Staff to the Chair of the SEC, published approximately one month prior to the date of this declaration and printed from the "All activity" section of Mr. Tenreiro's LinkedIn profile.  The post is available at https://www.linkedin.com/posts/amanda-fischer-21877210_my-take-on-the-paul-atkins-hearing-he-activity-7311070175657676800-belb/.

19. Attached hereto as **Exhibit H** is a true and correct copy of a LinkedIn post by Robin Andrews, a former investigator and litigator at the SEC and, until recently, lead counsel in *SEC v. Musk*, No. 25-cv-00105 (S.D.N.Y.), published approximately one month prior to the date of this declaration and printed from the "All activity" section of Mr. Tenreiro's LinkedIn profile.  The post is available at https://www.linkedin.com/posts/robin-andrews-6b151414_this-is-a-heartbreaking-day-for-me-after-activity-7313979560016891906-zIQf/.

20.    Attached hereto as **Exhibit I** is a true and correct copy of a LinkedIn post by Americans for Financial Reform published approximately one month prior to the date of this declaration and printed from the "All activity" section of Mr. Tenreiro's LinkedIn profile.  The post is available at https://www.linkedin.com/posts/americans-for-financial-reform-education-fund_stop-the-billionaires-bill-tell-lawmakers-activity-7307813861183635456-ctVB.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.  Executed in New York, New York on this 6th day of May 2025.

Jesse Bernstein

Jesse Bernstein

6