# BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

## ATTORNEYS AT LAW

### NEW YORK ● CALIFORNIA ● ILLINOIS ● LOUISIANA ● DELAWARE

Katherine Sinderson
(212) 554-1392
KatieM@blbglaw.com

May 30, 2025

**Via ECF**

Hon. Andrew L. Carter, Jr.
United States District Court
Southern District of New York
40 Foley Square
New York, N.Y. 10007

> **Re:** *Oklahoma Firefighters Pension and Retirement System v. Musk*,
> **No. 1:22-cv-03026-ALC-GWG (S.D.N.Y.)**

Dear Judge Carter:

In accordance with Rule 2.A of Your Honor's Individual Practices, Court-appointed Lead Counsel respectfully requests a pre-motion conference regarding Lead Plaintiff's anticipated motion for class certification.[1] For the reasons set forth herein and in the forthcoming motion, Lead Plaintiff respectfully requests that the Court certify the following Class pursuant to Rule 23:

> All persons or entities who sold Twitter common stock and/or call options and/or purchased put options between March 25, 2022 and April 4, 2022, inclusive (the "Class Period") and were damaged thereby (the "Class"). Excluded from the Class are Defendants; officers and directors of Defendant Excession LLC and Defendant Elon Musk Revocable Trust Dated July 22, 2003; Twitter, Inc. ("Twitter") and its subsidiaries and affiliates; any person who is or was an officer or director of Twitter during the Class Period; any entity in which Defendants have a controlling interest; and the legal representatives, heirs, successors and assigns of any such excluded person or entity.

## I.    Relevant Background

This action arises from the scheme by Elon Musk and his righthand man Jared Birchall to buy Twitter stock at the cheapest price possible by hiding Musk's massive ownership stake and activist interest in Twitter. During the Class Period, Defendants concealed Musk's acquisition of more than 5% of Twitter stock—which they were legally required to disclose—and misrepresented Musk's intent to influence Twitter. Defendants' scheme deprived investors who sold Twitter

---

[1] Unless otherwise indicated, all internal citations and quotations are omitted, and emphasis is added.

1251 AVENUE OF THE AMERICAS ● NEW YORK ● NY 10020-1104
TELEPHONE: 212-554-1400 ● www.blbglaw.com ● FACSIMILE: 212-554-1444

Hon. Andrew L. Carter, Jr.
May 30, 2025
Page 2

securities during the Class Period of critical information regarding the true value of their securities.

The truth began to be revealed only after Musk had spent the money he had earmarked to build his position in Twitter and Twitter had privately invited Musk to join its Board. Knowing that Twitter would soon disclose Musk's massive ownership interest in Twitter, Defendants filed on April 4, 2022 a misleading SEC disclosure that announced Musk's then-9.2% ownership stake but falsely represented that Musk was merely a passive investor in Twitter. On April 5, 2022, Musk's activist intent was revealed when Twitter disclosed that he had agreed to join its Board, and Musk had his attorneys quickly file a corrected Schedule 13D confirming his activist intent. In response to these disclosures, Twitter's stock price soared nearly 40%. However, those investors who had sold their securities before Musk revealed his ownership interest—even though Musk was required to do so—were fraudulently deprived of enormous value for their securities.

## II.    This Case is Well-Suited for Class Treatment Under Rule 23

"The Second Circuit requires a liberal, rather than restrictive, interpretation of Rule 23." *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 2017 WL 3608298, at \*2 (S.D.N.Y. Aug. 22, 2017). Courts in this district recognize that "securities fraud suit[s]" are "particularly well suited to class treatment." *In re Allergan PLC Sec. Litig.*, 2021 WL 4077942, at \*1 (S.D.N.Y. Sept. 8, 2021). Here, the proposed Class readily satisfies the requirements of Rule 23(a) and (b)(3).

**Numerosity**. Numerosity is presumed for classes larger than 40 members. *See Allergan,* 2021 WL 4077942, at \*6. Here, Twitter had over 800 million shares of common stock outstanding owned by many thousands of investors, readily satisfying the numerosity requirement. *Id.*

**Commonality**. Commonality exists when "common issues of law or fact affect all class members." *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at \*8 (S.D.N.Y. July 10, 2019). Here, there are numerous questions of law and fact common to the Class, including: (i) whether Defendant Musk's statements were materially false and misleading when made; (ii) whether Defendants engaged in a scheme to defraud Twitter investors; (iii) whether Defendants acted with scienter; (iv) whether the prices of Twitter securities were artificially depressed during the Class Period due to Defendants' scheme and Musk's alleged misstatements; (v) whether Defendants' scheme and Musk's alleged misstatements caused Class members to suffer economic losses when the truth was revealed; and (vi) whether Musk and Birchall were "control persons" within the meaning of §20(a). As such, "[t]his case—as is typical of most securities fraud putative class actions—raises common questions of law and fact." *Signet*, 2019 WL 3001084, at \*8.

**Typicality**. The typicality requirement "is satisfied when each class member's claim arises from the same course of events" and "each class member makes similar legal arguments to prove the defendant's liability." *See In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 98 (S.D.N.Y. 2016). Here, investors' claims all arise from an identical course of events—namely, Defendants' scheme and Defendant Musk's false and misleading statements—and Plaintiff asserts the same legal claims on behalf of all members of the Class based on the same legal theories and same evidence.

**Adequacy**. To satisfy adequacy, the class representative must "fairly and adequately protect the interests of the class." *Signet,* 2019 WL 3001084, at \*9. The adequacy requirement "seeks to ensure that Plaintiff's interests are not antagonistic to those of the Class and that Plaintiff's attorneys are qualified, experienced, and able to conduct the litigation." *Id.* Here, Lead

Hon. Andrew L. Carter, Jr.
May 30, 2025
Page 3

Plaintiff is a sophisticated institutional investor with significant experience representing investors in similar class actions, with no interests antagonistic to those of other Class members. Additionally, Lead Counsel has a distinguished record of successfully prosecuting complex securities class actions, and is thus "qualified, experienced, and able to conduct the litigation." *Id.*

**Predominance**. Rule 23(b)(3)'s predominance requirement is met where common issues predominate over issues affecting only individual class members. *See In re Petrobras Sec.,* 862 F.3d 250, 270 (2d Cir. 2017). The predominance requirement "does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." *Id.* at 268 (emphasis in original). Here, myriad legal and factual issues—including those concerning falsity, materiality, scienter, and loss causation—are common to the Class and involve class-wide proof. With respect to the element of reliance, the Class is entitled to the well-established presumption of class-wide reliance set forth in *Affiliated Ute* because the Class's claims arise primarily from Defendants' omissions, the materiality of which Defendants did not contest and this Court affirmed. *See* ECF No. 118 at 25-30 ("plaintiffs need not demonstrate affirmative proof of reliance in securities fraud cases 'involving primarily a failure to disclose' if the 'facts withheld [were] material'") (quoting *Affiliated Ute*); *see also Gruber v. Gilbertson*, 2019 WL 4439415, at *6 (S.D.N.Y. Sept. 17, 2019) (applying *Affiliated Ute* where "[c]omplaint is based primarily on the fact that [defendants'] ownership was not disclosed").

The Class is also entitled to the *Basic v. Levinson* fraud-on-the-market presumption because Twitter stock and options were actively traded throughout the Class Period on the New York Stock Exchange ("NYSE")—one of the most efficient markets in the world. *See Wilson v. LSB Indus., Inc.,* 2018 WL 3913115, at *15 (S.D.N.Y. Aug. 13, 2018) ("the NYSE is a presumptively efficient market"). Class-wide damages can be demonstrated using the standard "out-of-pocket" model uniformly accepted by courts throughout the country. *Allergan*, 2021 WL 4077942, at *15 ("there is no reason why an event study—the generally accepted method for measuring damages in a securities fraud class action—cannot work in this case").

**Superiority**. Finally, Rule 23(b)(3) requires "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Martínek v. AmTrust Fin. Servs., Inc.,* 2022 WL 326320, at *19 (S.D.N.Y. Feb. 3, 2022). Courts routinely recognize the superiority of securities class actions over a multitude of individual actions, explaining that "in securities fraud cases, there are significant structural factors that make traditional forms of litigation both inefficient and unlikely." *Id.* This case satisfies the superiority requirement because (i) the number of class members is too large, and the typical claim is too small; (ii) Lead Plaintiff is aware of no other action that seeks recovery under federal securities laws for damages caused by Defendants' alleged scheme; (iii) it is desirable and efficient to hear all such claims in one court; and (iv) there is no difficulty in maintaining the case as a class action. *See id.*

\*               \*               \*

In conclusion, Lead Counsel respectfully requests a conference concerning its anticipated motion to certify the Class. Should the Court grant Lead Plaintiff leave to file the motion, the Parties jointly request that Lead Plaintiff's motion shall be due 14 days after the Court's order, Defendants' response shall be due 60 days after the motion, and Lead Plaintiff's reply shall be due 45 days after Defendants' response. We appreciate the Court's attention to this matter.

Hon. Andrew L. Carter, Jr.
May 30, 2025
Page 4

                                     Respectfully submitted,

                                     */s/ Katherine M. Sinderson*
                                     Katherine M. Sinderson

cc: All counsel (via ECF)