# BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

ATTORNEYS AT LAW

NEW YORK • CALIFORNIA • ILLINOIS • LOUISIANA • DELAWARE

Salvatore J. Graziano
(212) 554-1538
salvatore@blbglaw.com

May 30, 2025

**Via ECF**
Hon. Gabriel W. Gorenstein
United States District Court
Southern District of New York
40 Foley Square, Room 519
New York, NY 10007

      Re:    *Oklahoma Firefighters Pension and Retirement System v. Musk*,
              No. 1:22-cv-03026-ALC-GWG (S.D.N.Y.)

Dear Judge Gorenstein:

      Pursuant to Your Honor's request at the May 27, 2025 hearing, Court-appointed Lead Counsel Bernstein Litowitz Berger & Grossmann LLP ("BLB&G" or the "Firm") submits this letter in further support of Lead Counsel's motion to approve BLB&G's conflict screening procedures (the "Motion") regarding Mr. Jorge G. Tenreiro.[1] ECF Nos. 123-24, 130. As discussed during the hearing and below, BLB&G has offered to employ Mr. Tenreiro as a partner of the Firm, he has accepted that offer, and consummation of that offer and acceptance is contingent solely on this Court's grant of the Motion. Further, as discussed below, this Court would not be the first to prospectively approve screening procedures to moot a disqualification motion. Thus, this matter is ripe for Your Honor's consideration, and this Court is fully empowered to endorse BLB&G's proposed ethical screening procedures in order to wall off Mr. Tenreiro from this Action and eliminate any possible conflict. *See* Mot. at 8; Green Decl. ¶¶11-12.

      **Ripeness.** "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013). Constitutional ripeness requires that the plaintiff's injury be "actual or imminent," rather than "conjectural or hypothetical." *Id.* at 688. Prudential ripeness requires a two-step inquiry considering "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 691. The "fitness" analysis considers "whether the issues sought to be adjudicated are contingent on future events or may never occur," while the possibility of hardship "ask[s] whether the challenged action creates a direct and immediate dilemma for the parties." *Id.*

---

[1] All defined terms bear the same meaning as in Lead Counsel's Motion. Unless otherwise indicated, all internal citations and quotations are omitted, and emphasis is added.

Hon. Gabriel W. Gorenstein
May 30, 2025
Page 2

Lead Counsel's Motion is ripe. *First*, the Motion is constitutionally ripe because Mr. Tenreiro's and the Firm's injury is "actual or imminent," as he has been unable to commence his employment at BLB&G. As Lead Counsel explained at the May 27 conference, Mr. Tenreiro has accepted an offer of employment as a partner at BLB&G that is solely contingent upon his clearing of conflicts. This includes, among other things, either defendants' or the relevant court's approval of conflict screening procedures in any case in which BLB&G worked as counsel and in which non-public information potentially or arguably was acquired while Mr. Tenreiro was an SEC employee could be used to the material disadvantage of any defendant.[2] *See* Tenreiro Decl. ¶¶20, 22; Graziano Decl. ¶7. Because Defendants have opposed this Motion—the only party to do so— Mr. Tenreiro is unable to commence his employment at BLB&G. *See* Mot. at 10-11. If the Court were to approve BLB&G's conflict screening procedures, Mr. Tenreiro would begin his employment virtually immediately.

*Second*, there is no prudential reason to abstain from deciding this Motion. Defendants' opposition to this Motion has singlehandedly stymied Mr. Tenreiro's employment at BLB&G. There is no "future event" that could affect the instant issues. *Nat'l Org. for Marriage*, 714 F.3d at 687. Barring a decision from this Court, Defendants will have denied Mr. Tenreiro any of the benefits of practicing law at BLB&G, including receiving his first regular compensation since leaving government service in early April and beginning his career in private practice at his chosen firm. Defendants are also currently denying BLB&G the benefits of employing Mr. Tenreiro as a partner. Thus, there is a "direct and immediate dilemma for the parties." *Id.*

**Authority To Rule.** Courts are empowered to endorse proposed ethical screens before conflicted attorneys join firms seeking to avoid disqualification and have done so, including in this Circuit. *See* Mot. at 8 (collecting cases); Green Decl. ¶¶11-12. For example, in *Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, Judge McKenna determined prior to the employment of the conflicted attorney that "the screening procedure proposed by [the law firm seeking to employ the conflicted attorney], together with a further requirement set forth below, will adequately safeguard any confidences." 1996 WL 66130, at *1 (S.D.N.Y. Feb. 15, 1996) (cited at Mot. at 9). In doing so, Judge McKenna specifically highlighted that the conflicted attorney had "not yet been employed by [the law firm], so that screening procedures will be in place *ab initio*." *Id.* Likewise, in *Eberle Design, Inc. v. Reno A & E*, the court ordered the law firm seeking to employ the conflicted attorney "not be disqualified" from representing its client when the conflicted attorney "joins the firm, provided [the law firm] complies fully with the requirements" of the applicable rules of professional conduct. 354 F. Supp. 2d 1093, 1097-98 (D. Ariz. 2005) (cited at Mot. at 9).

In other contexts, courts have approved similar prospective motions to approve screening procedures to avoid harm. *See*, *e.g.*, Order at 2-3, *In re FiberMark, Inc.*, No. 04-bk-10463 (D. Vt.), ECF No. 684 (approving motion of the official committee of unsecured creditors seeking to implement "specified information blocking procedures" that were "designed to prevent the misuse of Committee information" and permit trading in debtors' securities).

Notably, Defendants do not, and cannot, contest this Court's inherent power to decide the

---

[2] As stated in the Motion papers, to the best of Mr. Tenreiro's knowledge, he is not "in possession or aware of any non-public information" from his SEC employment "that could be used to the material disadvantage of any defendant in this case." Tenreiro Decl. ¶22.

Hon. Gabriel W. Gorenstein
May 30, 2025
Page 3

Motion. Counsel for Defendants sought the same relief in *In re Libor-Based Financial Instruments Antitrust Litigation*, No. 11-md-2262 (S.D.N.Y.) (Buchwald, J.), arguing that Quinn Emanuel's "application seeking a declaratory ruling . . . to approve our proposed ethical screen [of the conflicted attorney] and to protect Plaintiffs' choice of counsel" was an "actual live controversy that ***this Court has the authority and discretion to resolve***." *Libor*, ECF No. 1618 at 2, 5.[3]

\*   \*   \*

In conclusion, BLB&G respectfully requests the Court approve its proposed ethical screen in connection with its potential hiring of Mr. Tenreiro. We appreciate the Court's attention to this matter.

Respectfully submitted,

*/s/ Salvatore J. Graziano*
Salvatore J. Graziano

cc: All counsel (via ECF)

---

[3] BLB&G's motion here is even more ripe than Quinn Emanuel's *Libor* motion, because opposing counsel in *Libor* had not yet responded to Quinn Emanuel's request for approval of its proposed screening procedures at the time the motion was filed. *Libor*, ECF No. 1618 at 1. Here, Quinn Emanuel has explicitly opposed BLB&G's motion. Moreover, the *Libor* motion was withdrawn before the court ruled on it—presumably because opposing counsel consented to the screening procedures, as the conflicted attorney subsequently became the managing partner of Quinn Emanuel's Brussels office. *See* Geradin Partners, *Leading EU competition law practitioner joins Geradin Partners' Brussels office*, *available at* https://www.geradinpartners.com/leading-eu-competition-law-practitioner-joins-geradin-partners-brussels-office/.