**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

OKLAHOMA FIREFIGHTERS PENSION
AND RETIREMENT SYSTEM,

                           Plaintiff,

       v.

ELON R. MUSK, ELON MUSK
REVOCABLE TRUST DATED JULY 22,
2003, EXCESSION LLC, and JARED
BIRCHALL,

                           Defendants.

No. 1:22-cv-03026-ALC-GWG

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO REQUIRE DEFENDANTS TO DECIDE WHETHER THEY WILL
RELY ON COUNSEL AS AN AFFIRMATIVE DEFENSE**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ................................................................................................... 1

II.     RELEVANT BACKGROUND ............................................................................... 4

        A.      Defendants' Lies To Their Advisors About Blessing By Counsel Prior to
                April 1, 2022 Is Part Of Their Scheme And Proof Of Their Scienter ................... 4

        B.      Defendants Testify Repeatedly That They "Completely Reli[ed]" On
                Counsel For The Misleading Schedule 13G Filing But Blocked Testimony
                Beyond The Selective Facts They Wanted To Reveal............................................ 6

        C.      Plaintiff Seeks Clarity On Defendants' "Good Faith" Defense ............................. 8

        D.      Defendants Withhold Hundreds Of Documents And Information
                Concerning Counsel's Involvement From Discovery Under The Guise Of
                Privilege ................................................................................................................. 9

        E.      Defendants Facially Disclaim Reliance On "Advice Of Counsel" To Block
                Discovery Into Their Communications With Counsel But Also Make
                Clear That They Will Rely On Counsel As A Defense, Including To Prove
                Their Purported Good Faith ................................................................................. 10

III.    ARGUMENT ........................................................................................................ 12

        A.      Second Circuit Law Prohibits Defendants' Shield and Sword Strategy............... 13

        B.      Plaintiff Is Entitled To Clarity On Defendants' Reliance On Counsel's
                Involvement Before Fact Discovery Ends ........................................................... 23

        C.      Plaintiff Will Suffer Prejudice Absent Clarity on Defenses ................................ 26

        D.      Absent A Clear Election By A Firm Deadline, Defendants Have Waived
                Any Reliance On Counsel Defense ....................................................................... 28

IV.     CONCLUSION...................................................................................................... 29

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**C**ASES

*Abromavage v. Deutsche Bank Sec. Inc.*,
    2019 WL 6790513 (S.D.N.Y. Dec. 11, 2019) ......................................................14, 15, 16, 19

*AngioDynamics, Inc. v. Biolitec, Inc.*,
    2010 WL 11541926 (N.D.N.Y. May 25, 2010).............................................................18, 22

*Arista Recs. LLC v. Lime Grp. LLC*,
    2011 WL 1642434 (S.D.N.Y. Apr. 20, 2011).........................................................................28

*Bivins v. Rogers*,
    2017 WL 1535110 (S.D. Fla. Apr. 27, 2017) .......................................................................18

*Bovis Lend Lease, LMB, Inc. v. Seasons Contracting Corp.*,
    2002 WL 31729693 (S.D.N.Y. Dec. 5, 2002) .....................................................................18

*In re Buspirone Antitrust Litig.*,
    208 F.R.D. 516 (S.D.N.Y. 2002) ..................................................................................... *passim*

*CFIP Master Fund, Ltd. v. Citibank, N.A.*,
    738 F. Supp. 2d 450 (S.D.N.Y. 2010)..................................................................................20

*In re Cnty. of Erie*,
    546 F.3d 222 (2d Cir. 2008)..................................................................................................20

*CSX Corp. v. Children's Inv. Fund Mgmt. (UK) LLP*,
    562 F. Supp. 2d 511 (S.D.N.Y. 2008)..................................................................................29

*Deutsche Bank Tr. Co. of Americas v. Tri-Links Inv. Tr.*,
    43 A.D.3d 56 (N.Y. App. Div. 2007) ...................................................................................25

*In re Fresh & Process Potatoes Antitrust Litig.*,
    2014 WL 1413676 (D. Idaho Apr. 11, 2014) .......................................................................14

*Harter v. CPS Sec. (USA), Inc.*,
    2013 WL 3108947 (D. Nev. June 18, 2013)........................................................................20

*John Doe Co. v. United States*,
    350 F.3d 299 (2d Cir. 2003), *as amended* (Nov. 25, 2003)..............................................21, 22

*McKeen-Chaplin v. Provident Sav. Bank, FSB*,
    2015 WL 502697 (E.D. Cal. Feb. 5, 2015)..........................................................................20

*In re Residential Cap., LLC*,
    491 B.R. 63 (Bankr. S.D.N.Y. 2013).............................................................................23, 28

*Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
    2017 WL 3037414 (D. Vt. Apr. 17, 2017)......................................................................14, 19

*S.E.C. v. Tourre*,
    950 F. Supp. 2d 666 (S.D.N.Y. 2013).............................................................................19

*Scott v. Chipotle Mexican Grill, Inc.*,
    67 F. Supp. 3d 607 (S.D.N.Y. 2014).....................................................................14, 15, 20

*Shenwick v. Twitter, Inc.*,
    2021 WL 1232451 (N.D. Cal. Mar. 31, 2021).................................................................14

*Spin Master, Ltd. v. Zobmondo Entm't, LLC*,
    2012 WL 8134011 (C.D. Cal. Mar. 9, 2012)..................................................................29

*Trydel Rsch. Pty. Ltd. v. ITW Glob. Tire Repair, Inc.*,
    2024 WL 3950213 (N.D. Ill. Aug. 27, 2024) ................................................................17

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir.), *cert. denied*, 502 U.S. 813 (1991)........................................... *passim*

*United States v. Wells Fargo Bank N.A.*,
    2015 WL 3999074 (S.D.N.Y. June 30, 2015) ..............................................................23, 28

*In re Valeant Pharm. Int'l, Inc. Secs. Litig.*,
    2021 WL 5105774 (D.N.J. Nov. 3, 2021) .............................................................15, 21, 22

*In re Worldcom, Inc. Sec. Litig*.,
    2004 WL 936320 (S.D.N.Y. May 3, 2004) ..................................................................23, 26

*Zarrella v. Pac. Life Ins. Co.*,
    498 F. App'x 945 (11th Cir. 2012) ..............................................................................20

**STATUTES AND RULES**

17 C.F.R. § 240.10b-5....................................................................................................8

# I.    __INTRODUCTION__

In an effort to continue to shield their key communications with counsel from discovery, Defendants have ostensibly "disclaimed any advice-of-counsel defense." ECF No. 155 at 2. The problem, however, is that Defendants admit that they simultaneously intend to inject evidence of the purported involvement and advice of their counsel into this Action as part of their affirmative "good faith" defense, and to convince the trier of fact that they acted with innocent minds. *Id*. at 4. This is particularly problematic given that Defendants have no excuse as to why they filed the *wrong* SEC disclosure document (which also was late) other than it was counsel who did so, after that counsel communicated with Defendants about the facts and upon whom Defendants testified they "completely reli[ed]." Defendants' strategy of blocking discovery into their communications with counsel—while still asserting their reliance on counsel as a defense—seeks to use the privilege as both a "shield and sword," which is unfair to Plaintiff and prohibited by controlling Second Circuit authority. If Defendants want to blame counsel for their misleading SEC filing, Plaintiff should be able to discover what counsel asked of Defendants and what Defendants told counsel that led to the filing of the Schedule 13G, which the Court sustained as a false and misleading statement.[1]

As a matter of settled law, Defendants must make a definitive and binding decision during discovery as to whether or not they will rely on legal counsel as part of their good faith defense so that Plaintiff may thoroughly explore that defense during discovery. Like any litigation strategy,

---

[1] References to "Ex. __" are to exhibits to the Declaration of Katherine M. Sinderson in Support of Plaintiff's Motion To Require Defendants To Decide Whether They Will Rely On Counsel As An Affirmative Defense ("Sinderson Decl."). Unless otherwise noted, all emphasis is added and citations are omitted. "¶__" refers to paragraphs in Plaintiff's Amended Complaint (ECF No. 99). "Advisor A" is a Managing Director at Morgan Stanley and "the lead on all things at MS [Morgan Stanley] related to Elon." ¶41.

Defendants' choice on this issue will have consequences. Defendants may choose to maintain their privilege—but then they must forgo any reliance on counsel, counsel's advice or purported blessing, or counsel's involvement as part of their defenses. Alternatively, if Defendants choose to rely on their counsel as a defense, which they explicitly did in repeated testimony before the SEC on the ***same topic***, their choice gives rise to a broad waiver over their communications with counsel. To permit Defendants to have it both ways—rely on their counsel and their purported blessing as a defense while still blocking discovery into their communications with counsel—is prejudicial to Plaintiff. Because that is what Defendants are trying to do here, Plaintiff respectfully requests that the Court require Defendants to immediately make a clear and binding choice regarding their reliance on counsel as part of their defenses to Plaintiff's claims.

This issue is both ripe and critical to the prosecution of this Action. Defendants' sworn testimony to the SEC concerning the same facts at issue here made it clear that Defendants did not consult counsel until April 1, 2022—only ***after*** they had secretly acquired an enormous $2 billion position in Twitter stock for Musk. Then, according to Defendant Birchall's ***repeated*** sworn SEC testimony, Defendants were apparently "completely reliant on legal counsel" (including on McDermott Will & Emery) to file the erroneous Schedule 13G on April 4, 2022, which the Court sustained as a false and misleading statement. ECF No. 118 at 42. Assuming Birchall told the truth in his testimony that the entire excuse for filing the false Schedule 13G disclosure (as opposed to the truthful Schedule 13D) was because ███████████████████████████████ and relied completely on their advice, it raises an issue of waiver. However, if Defendants wish to avoid waiver and disavow any reliance on counsel (including to explain why they filed the wrong disclosure form), Birchall must not be allowed to testify that he relied on McDermott Will & Emery or any other counsel in filing the misleading Schedule 13G.

Defendants argue that it is Plaintiff "who seeks to use the involvement of counsel (or the purported lack thereof) as both a sword and a shield." ECF No. 155 at 2-3. This is wrong. First, Defendants' accusation makes no sense, because it is undisputed that Defendants articulated this defense in two separate depositions before the SEC before this dispute ever ripened in this case. Second, only Defendants are blocking discovery into relevant communications with counsel under the guise of privilege, not Plaintiff. Third, the Court sustained the fact that Defendants refused to even obtain any legal advice regarding their disclosure obligations prior to April 1, 2022— notwithstanding Advisor A's repeated admonitions to do so—as a key fact showing Defendants' scienter. ECF No. 118 at 35-36. Judge Carter has also repeatedly held that Defendants' scienter is further established by their filing of the wrong disclosure form with the SEC (they filed an improperly doctored Schedule 13G instead of a Schedule 13D disclosure). So, pursuant to the Court's motion to dismiss ruling, Plaintiff must be able to ask about **all** of these facts that are the core to proving its case.

If Defendants want to argue (as they have repeatedly in sworn testimony to the SEC) that they did later involve lawyers to suggest that their counsel blessed their conduct in filing the erroneous Schedule 13G and they had innocent minds, then they must provide full and fair discovery into what they told their lawyers and what their lawyers told them regarding that critical filing. Otherwise, Defendants will be unfairly cherry-picking only what they want to disclose— *i.e.*, that counsel was involved and decided what should be filed—while they withhold from discovery the truth regarding what was communicated between them and their counsel.

To be clear, Plaintiff does not seek to direct Defendants' choice or force any waiver. Plaintiff asks only that Defendants be required to make a clear and binding choice during the discovery period (before the depositions) so that Plaintiff will not have to re-do numerous

depositions and re-open document discovery later in this Action, including with witnesses such as Mr. Musk who claims to be extremely busy working at numerous corporations. *In re Buspirone Antitrust Litig.,* 208 F.R.D. 516, 522 (S.D.N.Y. 2002) (Gorenstein, J.) (requiring litigation choice to be made "during the discovery period"). Delaying a ruling on this dispute will only result in witnesses—including Defendants Musk and Birchall—having to sit for multiple depositions. The motion should be granted.

## II.    RELEVANT BACKGROUND

### A.    Defendants' Lies To Their Advisors About Blessing By Counsel Prior to April 1, 2022 Is Part Of Their Scheme And Proof Of Their Scienter

As Musk secretly acquired more than $2 billion worth of Twitter shares, Advisor A implored Defendants to get legal advice on their disclosure obligations. For example, Advisor A told Birchall "[y]ou'll want to have your counsel confirm the reading of the rule" (¶¶119, 213), and to "[h]ave counsel confirm timing of [Section 13] filing around recent / future statements. Can discuss offline" (¶121). To avoid any doubt, Advisor A expressly inserted into his emails to Birchall bright red disclaimers that Morgan Stanley advisors "do not provide tax or legal advice," which Advisor A testified were "to make sure that it was very clear to [Birchall] . . . that this is a topic that required him to seek advice from counsel." ¶¶115-17, 123-28.

In response, Birchall falsely assured Advisor A (prior to April 1, 2022) that Musk's attorneys approved Defendants' refusal to disclose Musk's interests. ¶¶82-83, 111-29, 213-14, 254. For example, Advisor A explained in his testimony to the SEC that "Mr. Birchall told [him] that … Alex Spiro and Quinn Emanuel attorneys … review[ed] the prior advice that they had given [Birchall] about the Twitter filings." Ex. 1 at 32:20-33:4 (excerpt).

In reality, knowing Musk's disclosure obligation was triggered by 5% ownership, Defendants refused to obtain legal advice on this issue until April 1, 2022—the final trading day

4

of Defendants' scheme and more than a week *after* their March 24, 2022 disclosure deadline. ¶¶111, 126-28, 153, 170, 182. For example, Musk repeatedly testified before the SEC that he did not seek "any advice from any attorney" about his disclosure obligations before April 1, 2022 (¶127), as did Birchall (¶128). Tellingly, Birchall did not correct Advisor A when the latter repeatedly stated that Birchall was consulting with counsel. During Birchall's testimony before the SEC, the SEC asked "Did you have any discussion with [Advisor A] about this apparent misunderstanding from him about what advice you had been getting from outside counsel?" In response, Birchall admitted "No. No. We did not have a discussion about that[.]" ¶126. Despite Musk's virtually unlimited resources and that he admittedly "probably work[s] with 20 different law firms" (¶¶111, 126), Defendants did not want legal counsel to interfere with their fraudulent scheme.[2]

In sustaining Plaintiff's claims, Judge Carter held that "Birchall's misrepresentations to Advisor A about the trading strategy being blessed by counsel" strengthened the inference of scienter. ECF No. 118 at 33-34. The Court held that "Birchall acted recklessly in lying to Advisor A, evincing his state of mind with respect to the perpetuation of the scheme more broadly." *Id.* at 34. The Court found that the above facts "outranked" Defendants' proposed "inference of mistake," including "the absence of any evidence that Birchall ever told Advisor A that no outside counsel was involved." *Id.* at 34-35.

---

[2] Musk has denied responsibility for adhering to his known reporting requirements, claiming he relied completely on Morgan Stanley (even though Advisor A from Morgan Stanley repeatedly admonished Birchall to seek legal counsel regarding these same requirements). For instance, in Musk's SEC testimony, he explained that he did not seek legal advice prior to April 1, 2022, ███████████████████████████████████████████████████████████████████ Ex. 12 at 74:9-75:22 (excerpt).

This portion of the Class Period (through April 1, 2022) should not raise any discovery issue given Defendants' representations to the Court. Plaintiff will confirm at Defendants' depositions that they did not seek the advice of counsel, nor rely on counsel, prior to April 1, 2022. Plaintiff does not anticipate any contrary testimony given the record to date on this matter.

**B.    Defendants Testify Repeatedly That They "Completely Reli[ed]" On Counsel For The Misleading Schedule 13G Filing But Blocked Testimony Beyond The Selective Facts They Wanted To Reveal**

On April 4, 2022, the SEC launched an investigation into the false Schedule 13G Musk had filed that day, which was signed by Musk and wherein he fraudulently concealed his activist interest in Twitter by using the form reserved for passive investors and manually deleting the required certification of his passive interest in Twitter. *E.g.*, ¶184(b). Importantly, the false April 4, 2022 13*G* filing that Musk signed was soon corrected with a proper Schedule 13*D* that McDermott Will & Emery (or "McDermott") actually agreed to sign on April 5, 2022. ¶189.

Birchall has since testified twice in the SEC's related investigation into Musk's erroneous Schedule 13G filing and Musk's refusal to timely disclose his ownership interest. At his first deposition, Birchall repeatedly testified that, starting on April 1, 2022, Birchall "was completely reliant on legal counsel" (McDermott Will & Emery) in filing the erroneous Schedule 13G and ███████████████████████████████████████████████████████████████████ Ex. 2 at 158:15-158:16, 163:11-163:13 (excerpt). Birchall elaborated that ████████████████ ████████████████████████████████████████████████████████████████████████ ███████████████████. Ex. 2 at 159:20-159:25 (excerpt).

Months later, Birchall again testified to the SEC that he was ████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ Ex. 3 at 268:9-268:14 (excerpt). Specifically, Birchall testified that, ████████████████████████



Ex. 3 at 260:22-261:4 (excerpt). Birchall testified that, ██████

██████████████████████████████████████████████████████

██████████████████████████ Ex. 3 at 263:2-263:17, 269:24-270:9 (excerpt).

Birchall repeatedly testified that ████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████ Ex. 3 at 261:22-263:23, 270:10-

270:24 (excerpt).

     In both of Birchall's depositions, counsel for Birchall in the SEC investigation and trial counsel here (Quinn Emanuel) allowed Birchall to testify as to Defendants' side of the story, including regarding his purported answers to counsel (McDermott), the purported nature of counsel's inquiries in filling out the erroneous 13G, and his "███████████████" on counsel to accurately do so. However, Quinn Emanuel selectively ***blocked*** Birchall from testifying about certain subjects under the guise of privilege, including ████████████████████████████ ██████████████████████████████████ *See, e.g.*, Ex. 3 at 265:19-266:24 (excerpt). Further, Quinn Emanuel and Mr. Spiro appear to have been heavily involved in Defendants' disclosure decisions with respect to the misleading Schedule 13G—a complicating fact that Defendants do not address in their pre-motion letter. ECF No. 155. Through Defendants' strategy of selective disclosure and withholding on privilege grounds, Defendants used Birchall to tell their side of the story while preventing the SEC from learning the true facts of what counsel was told by Defendants and what counsel advised Defendants regarding the disclosure misconduct at the heart of this case.

This self-serving and selectively disclosed narrative of Defendants' interactions with counsel is particularly troubling given that Judge Carter has repeatedly found that Defendants' decision to file the misleading and manipulated Schedule 13G form (for passive investors) instead of the proper Schedule 13D form (for activist investors) strengthens the inference of Musk's scienter. *See* ECF No. 49 at 34 ("Defendants seem to ignore the Complaint's allegation that filing a Schedule 13G form was misleading in the first place because it inherently signaled that Musk's interest was passive."); ECF No. 118 at 33 ("Because both the Complaint and Amended Complaint deal with Musk's nondisclosure and that the Amended Complaint alleges at least the same bases for a finding of scienter as to Musk, the Court also finds scienter as to Musk in the Rule 10-5(a) and (c) contexts.").

### C.     Plaintiff Seeks Clarity On Defendants' "Good Faith" Defense

Defendants have repeatedly injected into this case an affirmative defense that they "acted in good faith" and thus are not liable for Plaintiff's securities claims, which require proof of scienter. *E.g.,* ECF No. 61 at 25 (Seventh Affirmative Defense); ECF No. 128 at 50 (Seventh Defense).

From the start of discovery, Plaintiff has asked Defendants to state whether they intend to rely on counsel in defending this Action, including with regard to the false Schedule 13G filing on April 4, 2022. For example, on January 4, 2024, Plaintiff asked that Defendants "state in clear and unambiguous terms" whether they are relying on counsel as part of their defenses, and emphasized that "Defendants must make their election regarding reliance on counsel early on in discovery— so the parties can avoid having to redo document production protocols or having to recall witnesses for depositions." Ex. 4 at 1, 2. On February 5, 2024, Defendants promised to finalize their position 45 days before the close of discovery.

On February 13, 2024, Plaintiff issued an interrogatory to confirm whether Defendants received any legal advice concerning Defendants' disclosure obligations. Ex. 5 at 6. Defendants objected on, *inter alia*, privilege grounds and reserved their right to invoke "***any defense that arises on the basis of advice provided by counsel***." Ex. 6 at 5.

### D.    Defendants Withhold Hundreds Of Documents And Information Concerning Counsel's Involvement From Discovery Under The Guise Of Privilege

Defendants have continued to maintain their privilege claims throughout fact discovery. Indeed, Defendants and their legal counsel involved in the underlying facts, McDermott Will and Emery LLP and Quinn Emanuel, have withheld or redacted over 1,000 documents in total, and their respective privilege logs indicate the key involvement of those same counsel in Defendants' disclosure decisions during the Class Period.

Quinn Emanuel withheld or redacted over 500 documents on privilege grounds, including 44 communications that took place between McDermott and Quinn Emanuel attorneys dated between April 2, 2022 and April 4, 2022, the date of the false Schedule 13G filing. Ex. 7. Quinn Emanuel further withheld 33 communications involving Quinn Emanuel and/or McDermott attorneys dated April 5, 2022, the date of the correct Schedule 13D filing that disclosed Musk's 9.1% ownership interest in Twitter and his activist intentions. While Quinn Emanuel did not log a description of the privilege they were asserting, 23 of those 33 communications have the subject line "███████████" or "███." *Id.* (excerpt).

Likewise, Defendants withheld over 300 documents, including 23 communications involving Quinn Emanuel and/or McDermott attorneys dated April 3, 2022 and April 4, 2022.[3] McDermott withheld or redacted over 200 documents on privilege grounds, including 14

---

[3] Defendants separately redacted over 800 documents that Defendants have not logged. At the time of this filing, Defendants still have not yet served a redaction log.

communications involving Mr. Spiro and Quinn Emanuel during the Class Period concerning the Schedule 13D and Schedule 13G. Ex. 8 (excerpt). Notably, McDermott's log indicates that the communications between Defendants and McDermott were ███████████████████

████████████████████████████████████████████████████████████

██████████████. Ex. 2 at 126:7-127:1 (excerpt).

**E.**   **Defendants Facially Disclaim Reliance On "Advice Of Counsel" To Block Discovery Into Their Communications With Counsel But Also Make Clear That They Will Rely On Counsel As A Defense, Including To Prove Their Purported Good Faith**

Prior to the Parties' agreed-upon extension, fact discovery was due to close on September 5, 2025. ECF No. 120. Defendant Birchall was scheduled to be deposed on August 25, and Musk and Advisor A were scheduled to be deposed on September 4, 2025. In light of Defendants' agreement to provide their decision on reliance on counsel by 45 days before the conclusion of fact discovery, on July 25, 2025, Plaintiff requested a conference with Defendants "to confirm that Defendants are not relying on counsel as any part of their defense to this Action." Ex. 9 at 1. Defendants did not respond. After Plaintiff followed up on July 30, the Parties conferred on August 4, 2025. Ex. 10 at 9. During the meet and confer, Plaintiff explained, *inter alia*, that "we do need in writing that Defendants will not be referring to the words 'counsel' or name of their counsel with regard to any disclosure or nondisclosure decision here." Sinderson Decl. ¶2. Defendants agreed to memorialize their position.

On August 5, 2025, Defendants stated that they "are not asserting an advice-of-counsel defense," preserved all privileges, and represented that "Defendants do not intend to rely on attorney-client privileged communications or documents in defense of this action." Ex. 11 at 1. However, Defendants also stated that they "***do not waive, and expressly reserve, all rights with regard to the presentation of evidence at summary judgment and trial***, consistent with established

law." *Id*. Plaintiff immediately sought clarity on whether Defendants' reservation of rights included the right to rely on counsel. On August 6, 2025, Plaintiff wrote to confirm that Defendants "will not rely on the involvement of counsel in their disclosure decisions or ***as any part of their defense of this action***." Ex. 10 at 8. Defendants initially refused to provide any further clarity. *Id*. at 4-8.

On August 8, 2025, the Parties met and conferred. Sinderson Decl. ¶3. During that call, Plaintiff stated that if Defendants intended to reserve the right to rely on counsel in their disclosure decisions without allowing full and fair discovery of that involvement, the Parties were at an impasse and Plaintiff would seek the Court's assistance. *Id.* Defendants stated that they are not asserting an advice of counsel defense, do not waive privilege, and will not call any attorneys to testify at trial. *Id.*

In light of its understanding of Defendants' position, Plaintiff stated that it did not intend to raise this issue with the Court. Ex. 10 at 3-4. However, on August 12, 2025, Defendants responded that Plaintiff's understanding of Defendants' representations was incorrect. *Id*. at 1-2. Instead, Defendants now claimed that they ***did*** intend to rely on their counsel's involvement to defend against Plaintiff's claims regarding "Defendants' state of mind." *Id*. On August 14, 2025, Plaintiff confirmed that, given Defendants' clarification of their position and as discussed on the August 7 call, the Parties were at an impasse and the dispute was ripe. *Id*. at 1.

On August 18, 2025, Plaintiff filed a letter requesting a pre-motion conference regarding its motion to compel Defendants to provide a binding election as to Defendants' assertion of any reliance on counsel or good faith defense. ECF No. 151 at 1. Plaintiff respectfully requested that, if Defendants elect to rely on counsel, Plaintiff "must be entitled to seek previously withheld documents before any depositions of Defendants Birchall and Musk (or Advisor A), as well as any

11

other discovery (including depositions) relevant to counsel-related defenses. The deposition discovery period will have to be extended accordingly." *Id.* at 5. Plaintiff further submitted as an alternative that the Court "should bar Defendants' reliance on counsel as any part of their defenses at trial." *Id.*

On August 20, 2025, Defendants responded to Plaintiff's letter. ECF No. 155. Defendants' letter confirms their attempt to use their reliance on counsel as a shield and a sword. Specifically, Defendants state in their letter that they "must be permitted to respond with the factual evidence" concerning the involvement of counsel after April 1, 2022 to rebut Plaintiff's scienter allegations. *Id.* at 4. Put differently, Defendants intend to selectively disclose such evidence about the involvement of counsel after April 1, 2022 at trial, while preventing Plaintiff and the trier of fact from obtaining access to the full record concerning Defendants' disclosure decisions.

On August 21, 2025, the Court entered the Joint Stipulation and Order Regarding Revised Schedule. ECF No. 160. Fact discovery now closes on October 17, 2025. *Id.* at 2. Plaintiff intends to depose Defendant Musk, Defendant Birchall, Advisor A, and other witnesses in a month. During those depositions, Plaintiff will question witnesses regarding Defendants' refusal to obtain disclosure-related legal advice prior to April 1, 2022 and the misleading Schedule 13G filed on April 4, 2022 to prove the scheme and misrepresentation claims that Judge Carter sustained.

## III.  **ARGUMENT**

Defendants' strategy is now clear: they intend to affirmatively invoke their counsel's involvement (starting on April 1, 2022) to argue that they made an innocent mistake and that counsel blessed or approved their disclosure failures as well as the filing of the false Schedule 13G. At the same time, Defendants intend to use the attorney-client privilege to shield from discovery documents in their counsels' files showing what Defendants actually told counsel and what counsel told them. This maneuver will allow Defendants to selectively cherry-pick which

facts are revealed and which are withheld (*see, e.g.*, Ex. 3 at 260-70) and will unfairly deprive Plaintiff of an opportunity to discover and present the true facts to the trier of fact.

### A.    Second Circuit Law Prohibits Defendants' Shield and Sword Strategy

The Second Circuit and courts nationwide have rejected Defendants' strategy to use privilege as both a shield and sword. In *United States v. Bilzerian*, the Second Circuit addressed a defendant's attempt to testify that "he acted in good faith in making certain statements in documents filed with the SEC" and that "he believed his conduct was legal." 926 F.2d 1285, 1292 & n.1 (2d Cir.), *cert. denied*, 502 U.S. 813 (1991). There, like Defendants do here, the defendant sought to avoid waiver of the privilege and argued that his proposed testimony "regarding his good faith attempt to comply with the securities laws ***would not have disclosed the content or even the existence of any privileged communications or asserted a reliance on counsel defense***." *Id.* at 1291. In rejecting defendant's argument, the Second Circuit reasoned:

> [T]he attorney-client privilege cannot at once be used as a shield and a sword …. Thus, the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications. This waiver principle is applicable here for Bilzerian's testimony that he thought his actions were legal would have put his knowledge of the law and the basis for his understanding of what the law required in issue.

*Id.* at 1292 ("[defendant's] conversations with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent."). Under *Bilzerian*, a party cannot choose to selectively disclose or rely on counsel's involvement to show good faith or lack of scienter, while shielding the underlying communications under the guise of privilege. This is exactly what Defendants are trying to do here.

Defendants point to their disclaimer of an "advice of counsel" defense in an effort to sidestep waiver. But *Bilzerian* and its progeny make clear that even where a "defendant attempts to disclaim any reliance on the advice of counsel," waiver still occurs where a defendant invokes

"affirmative defenses that require showings of good faith" and the defendant puts its "reliance on advice of counsel" at issue. *Scott v. Chipotle Mexican Grill, Inc.,* 67 F. Supp. 3d 607, 614-15 (S.D.N.Y. 2014); *id.* at 611 ("[C]ourts within this Circuit, relying on *Bilzerian,* have reaffirmed the broader principle that forfeiture of the privilege may result where the proponent asserts a good faith belief in the lawfulness of its actions, ***even without expressly invoking counsel's advice.***") (collecting cases); *see also, e.g.*, *Abromavage v. Deutsche Bank Sec. Inc.,* 2019 WL 6790513, at *3-4 (S.D.N.Y. Dec. 11, 2019) ("[A] defendant invoking his good faith may place his privileged communications at issue even if he does not specifically plead or argue that he relied on an attorney's advice" because "express reliance is not necessary to trigger the waiver rule.").[4] Defendants' strategy—to rely on the involvement of counsel to defend the case and rebut scienter while withholding the full record of counsel's involvement—contravenes these well-established principles.

Relatedly, there is no dispute that Defendants should not have filed the 13G form—indeed, the SEC flagged this problem on April 4 (¶184) and Defendants' counsel (McDermott) corrected it by filing the 13D on April 5. ¶¶187-90. Given this reality, by relying on counsel regarding the false 13G, Defendants' position necessitates that either McDermott committed malpractice by

---

[4] Courts around the nation are in accord. *See*, *e.g., Louisiana Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, 2017 WL 3037414, at *6 (D. Vt. Apr. 17, 2017) ("Since *Bilzerian*, the Second Circuit has reiterated the principle that a good-faith defense involves an inquiry into state of mind, which typically calls forth the possibility of implied waiver of the attorney-client privilege. Courts have held that this principle applies even where a party does not reference specific communications with counsel."); *Shenwick v. Twitter, Inc.*, 2021 WL 1232451, at *4 (N.D. Cal. Mar. 31, 2021) ("A reliance on counsel privilege waiver does not require a party's direct statement that counsel was relied upon. It may also arise from more indirect evidence where a party affirmatively raises an inference of reliance on counsel for the party's own benefit."); *In re Fresh & Process Potatoes Antitrust Litig.*, 2014 WL 1413676, at *8 (D. Idaho Apr. 11, 2014) ("Even if Offutt Defendants do not reveal the advice, if there is any suggestion that Offutt Defendants sought, obtained or relied upon the advice of counsel, the privilege is waived.").

advising them to file the 13G or that McDermott advised them it was wrong to do so, but Defendants ignored that advice. Either way, Defendants are squarely placing their counsel's advice "at issue" in this case, while improperly blocking the document and deposition discovery that may reveal McDermott's inquiries about Musk's activist intentions in preparing the Schedule 13G. *See Scott*, 67 F. Supp. 3d at 611 ("Even if [d]efendant's beliefs about the lawfulness of his conduct were actually separate from legal advice, [p]laintiffs still would be entitled to know if [d]efendant ignored counsel's advice.") (cleaned up). This is particularly unfair here, where the facts indicate that McDermott refused to sign the false Schedule 13G. *See* ¶218 ("Tellingly, Musk's attorneys evidently refused to sign the misleading 13G form—but they did sign the truthful corrected form filed later.").

The decision in *In re Valeant Pharmaceuticals International, Inc. Securities Litigation* is instructive here. There, the defendants contended that they were not "asserting an advice of counsel defense, they do not intend to waive any privilege or protection from disclosure." 2021 WL 5105774, at *7 (D.N.J. Nov. 3, 2021). But, just as Defendants do here, the *Valeant* defendants "reserve[d] the right to develop facts in discovery 'that may establish the involvement of counsel' and rely on such evidence 'as a factor that can undermine a finding of scienter.'" *Id*. The *Valeant* defendants argued that "the mere fact attorneys were consulted" by defendants "supports their position that decisions were made in good faith, but that the substance of those consultations is off limits to Plaintiffs." *Id*. at *5. In rejecting the *Valeant* defendants' arguments, the Special Master acknowledged the "abundant authority"—including *Bilzerian*—that "a party waives the attorney-client privilege by asserting claims or defenses that put an attorney's advice in issue":

> It is the finding of the Special Master that the underlying facts and the precedent cited previously entitle Plaintiffs to an opportunity to explore the foundations of such a defense through appropriate discovery. . . . Defendants are supporting their position that they acted in good faith by attempting to show that they consulted with

15

> counsel and others before making a pivotal decision as to what they would disclose
> to investors about Valeant's business practices and, in particular, its relationship
> with Philidor. Yet, at the same time, Defendants have blocked Plaintiffs from
> examining the validity of that defense by asserting attorney-client privilege.

*Id.* at *9. The Special Master recognized that "[i]n each case where the courts found that a party

had 'injected' this issue causing a waiver, consequences followed – disclosure of attorney-client

communications; deadlines for providing definitive statements as to whether a party is, in fact,

relying on advice of counsel defense; and/or preclusion of such a defense." *Id.* at *5-7 (collecting

cases). Thus, the Special Master ordered the defendants to "unequivocally state whether or not

they are relying on advice or 'involvement' of counsel either as an affirmative defense or as

evidence of good faith" and set a 7-day deadline for them to do so. *Id.* at *10 (requiring defendants

to produce "all documents and communications of any sort which support an advice of counsel

defense or a defense of good faith," identify knowledgeable witnesses, and "present them for

depositions" if they proceed with the defense). The same outcome is warranted here.

Under these well-established principles, Defendants have a choice. Either Defendants may

elect to rely on counsel's involvement as part of their "good faith" defense and produce all

documents and information concerning counsel's involvement. Or Defendants may forgo any

reliance on the advice, blessing, or involvement of their counsel. Importantly, given the Court's

motion to dismiss ruling, Plaintiff must still be able to elicit testimony regarding Defendants'

failure to get legal advice on their disclosure obligations for most of the Class Period as well as

the false Schedule 13G—including that Defendants filed the Schedule 13G, that Defendant Musk's

signature is on the filing, that the filing does not disclose Defendant Musk's activist interest or

agreement to join the Board of directors (all of which was known before the Schedule 13G filing),

and that the required certification of non-activist intent was improperly deleted. But, absent a full

waiver, Defendants may not introduce argument, testimony, or evidence indicating that counsel

drafted the Schedule 13G or advised on the contents of the Schedule 13G. The Parties also must necessarily redact attorney names from trial exhibits—including of trial counsel (Quinn Emanuel) who was directly involved in the underlying facts. The choice belongs to Defendants. But, if Defendants elect to forgo any "good faith" defense based on counsel's involvement, they could not rely on McDermott's (or any other counsel's) involvement *at all* to defend their erroneous 13G filing on April 4, 2022 or to otherwise attempt to prove that they lacked scienter.

Defendants' misguided responses in their pre-motion letter misstate the law and the facts.

*First,* Defendants insist that Plaintiff is trying to "elicit" waiver because Plaintiff's Complaint includes "references to Defendants' lawyers, communications with lawyers, purported instructions to seek instructions from lawyers, and the alleged absence of legal advice to support Plaintiff's scienter allegations." ECF No. 155 at 2-3. This is wrong. The record demonstrates that Defendants—not Plaintiff—are wielding the attorney-client privilege as both shield and sword. For example, Defendants made the decision to raise their supposed "good faith" in their Affirmative Defenses on two separate occasions. ECF No. 61 at 25 (Seventh Affirmative Defense); ECF No. 128 at 50 (Seventh Defense). At the same time, they have withheld hundreds of documents and information from discovery concerning counsel's involvement on privilege grounds. And Defendants now concede that they intend to rely on counsel's involvement to suggest innocent intent and to undermine Plaintiff's scienter allegations. Unlike Defendants, Plaintiff is not withholding highly relevant documents under the guise of privilege and is not attempting to rely on its counsel to defend any scheme, disclosure misconduct, or misleading statements. For Defendants to suggest otherwise is false and nonsensical.

Tellingly, Defendants' cases do not concern a defendant's affirmative injection of a "good faith" defense into the action. *Compare Trydel Rsch. Pty. Ltd. v. ITW Glob. Tire Repair, Inc.,* 2024

WL 3950213, at *9 (N.D. Ill. Aug. 27, 2024) (rejecting plaintiff's attempt to use its own "sham litigation antitrust claim" to seek a privilege waiver where defendants did not assert any good faith defense or "*affirmative*[*ly*] attempt to use communications protected by a privilege to influence a decision maker"); *Bovis Lend Lease, LMB, Inc. v. Seasons Contracting Corp.*, 2002 WL 31729693, at *17 (S.D.N.Y. Dec. 5, 2002) ("[Defendant] has not raised any issue in this case that would, in fairness, require disclosure of its privileged communications with counsel regarding the defense of its insured. Rather, [plaintiff] has apparently raised the issue of [defendant's] alleged bad faith as a *defense* to [defendant's] counterclaim for reimbursement."); *Bivins v. Rogers*, 2017 WL 1535110, at *4 (S.D. Fla. Apr. 27, 2017) (describing the case as "strikingly different" from *Bilzerian* because "[t]he guardians have not made an argument at any stage of the case that they could not have breached their fiduciary duty because they relied on the advice of counsel to carry out their duties to the ward" and "[t]hey have not asserted in their affirmative defenses or motion for summary judgment a reliance on advice of counsel defense, nor did they file a counter-claim"); *AngioDynamics, Inc. v. Biolitec, Inc.*, 2010 WL 11541926, at *4 (N.D.N.Y. May 25, 2010) (noting that, unlike Defendants, the withholding party there (the plaintiff) had not *inter alia* asserted "a good-faith defense which places in issue whether his attorney made him aware that his acts were illegal or otherwise improper" and explaining that, if the withholding party did "rely on such communications in order to prove its case," as Defendants do here, the other party "would obviously be entitled to them"). None of these cases are relevant here, where Defendants' defense of good faith and confirmation that they will rely on counsel as part of their defense to scienter directly place their counsel's advice and involvement "at issue."

      *Second*, Defendants argue that Plaintiff seeks to "preclud[e] truthful rebuttal evidence before Defendants have even attempted to offer it," such as "when counsel was contacted." ECF

No. 155 at 3-4. This argument twists Plaintiff's claims and, if anything, shows the unfairness inherent in Defendants' selective disclosure strategy. At the outset, Plaintiff's claims do not arise because Defendants did not retain counsel by a certain date. Rather, Plaintiff's claims are supported in part by Defendants' ***refusal*** to seek legal advice, and Birchall's lies about doing so to Advisor A, over the course of Defendants' fraudulent scheme. In order to rebut these sustained allegations, Defendants have admitted that they will introduce evidence of counsel's ultimate involvement to convince the trier of fact of Defendants' "good faith." Defendants seek to create the inference that Defendants ***did*** receive legal advice and that counsel blessed Defendants' improper disclosure strategy and false 13G filing, while they withhold hundreds of documents on that same subject. Defendants effectively seek to gain "all of the essential benefits of an advice of counsel defense without having to bear the burden of proving any of the elements of the defense." *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013) ("A lay jury could easily believe that the fact that a lawyer is present at a meeting means that he or she must have implicitly or explicitly 'blessed' the legality of all aspects of a transaction.").

Importantly, the law on waiver does not distinguish between whether a party is relying on privileged legal advice or "non-privileged" legal advice. *See Green Mountain Coffee Roasters, Inc.*, 2017 WL 3037414, at *6 ("if [d]efendants intend to testify that they relied, even partially, upon counsel's approval, then [p]laintiffs are entitled to production of the communications that resulted in counsel's actions and [d]efendants' reliance," even though defendants' "reliance was based upon actions that were non-privileged"); *Abromavage*, 2019 WL 6790513, at *4 ("express reliance is not necessary to trigger the waiver rule"); *Tourre*, 950 F. Supp. 2d at 684 ("the fact that lawyers saw and commented on disclosure language could be understood as 'blessing' the sufficiency of that disclosure").

19

Defendants' cases are again inapposite, as they did not involve a party injecting a good faith defense that relied on counsel and placed counsel's advice at issue, as Defendants are doing here. *See In re Cnty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) ("Petitioners do not claim a good faith or state of mind defense."); *McKeen-Chaplin v. Provident Sav. Bank, FSB*, 2015 WL 502697, at *7-9 (E.D. Cal. Feb. 5, 2015) (defendant "does not allege that it relied upon the advice of counsel in making its good faith determination" and there was no evidence as to what or how the counsel's knowledge or actions were relevant to the claim of waiver); *Harter v. CPS Sec. (USA), Inc.*, 2013 WL 3108947, at *7 (D. Nev. June 18, 2013) (finding that defendants put management consultant's advice "at issue" and thus "his advice is fully discoverable," but defendants did not waive privilege because "[d]efendants have not sought legal advice from [management consultant] in his capacity as a lawyer," and "[d]efendants have never claimed that [management consultant's] advice was privileged"); *Zarrella v. Pac. Life Ins. Co.*, 498 F. App'x 945, 950-51 (11th Cir. 2012) (no "good faith" defense at issue); *CFIP Master Fund, Ltd. v. Citibank, N.A.*, 738 F. Supp. 2d 450, 473-74 & n.27 (S.D.N.Y. 2010) (where, unlike here, the "focus of [the defendant's] 'good faith' defense is on the nature of the inquiry that [defendant] undertook, not the substance of the legal advice that was eventually provided."). By contrast, here, Defendants are relying on counsel to argue that their actions were legal, and they innocently believed that their actions were legal.

*Third,* Defendants' disclaimer of an advice of counsel defense does not insulate their privilege claims, as Defendants suggest. ECF No. 155 at 1-2. In accordance with *Bilzerian*, privilege is waived "where the proponent asserts a good faith belief in the lawfulness of its actions," including where "defendant attempts to disclaim any reliance on the advice of counsel" and "***even without expressly invoking counsel's advice.***" *See Scott,* 67 F. Supp. 3d at 611, 618 (collecting cases). Here, Defendants have admitted that they will inject evidence of counsel's

involvement to convince the trier of fact that Defendants acted in "good faith." Under these circumstances, courts are clear that Defendants' disclaimer of advice of counsel does not save their privilege claims from waiver. *Valeant*, 2021 WL 5105774, at 9 ("there can be no doubt that Defendants' 'involvement of counsel' assertion is a disguised 'advice of counsel' defense despite Defendants' representations to the contrary").

Tellingly, Defendants do not—and cannot—reconcile their strategy with *Bilzerian* or its progeny. In their pre-motion letter, Defendants' sole reference to *Bilzerian* (ECF No. 155 at 4) is from a quote in *John Doe Co. v. United States*, 350 F.3d 299, 303 (2d Cir. 2003), *as amended* (Nov. 25, 2003). However, the Second Circuit acknowledged that *John Doe* "is completely lacking that element of unfairness" present in *Bilzerian. Id.* at 303. For example, in the grand jury investigation at issue in *John Doe*, "Doe has made its assertions [regarding his innocent state of mind] only to [the U.S. Attorney,] which is free to ignore them," "[t]he U.S. Attorney's office in its sole discretion decides what evidence will be placed before the grand jury," and "[Doe's letter] was not seen by the grand jury, much less by a petit jury or court adjudicating Doe's claims of innocent state of mind." *Id.* at 303-06. Unlike *Doe*—where "Doe made its assertions only to its adversary" (*id.* at 306)—here, Defendants intend to affirmatively inject evidence of counsel's involvement and purported blessing with the specific aim of influencing the trier of fact to find that Defendants had an innocent state of mind. *Doe* bears no weight here.

*Fourth*, Defendants argue that their reservation of "all rights" to present evidence at summary judgment and trial is "standard language" and "not a commitment to any particular defense." ECF No. 155 at 4. Not so. Defendants' written correspondence to Plaintiff confirms that Defendants **do** intend to rely on their counsel's involvement to defend against Plaintiff's claims regarding "Defendants' state of mind." Ex. 10 at 1-2. By "reserv[ing] the right to develop facts in

discovery that may establish the involvement of counsel" and to "rely on such evidence as a factor that can undermine a finding of scienter," Defendants "have made a conscious decision to inject advice of counsel as an issue in the litigation." *Valeant*, 2021 WL 5105774, at *7, *9.

*Finally*, Defendants resort to strawman attacks in an attempt to discredit Advisor A's and Birchall's repeated sworn testimony to the SEC. ECF No. 155 at 3. While Defendants claim that this testimony "cannot result in waiver" (*id.*), that has never been Plaintiff's position. Rather, this testimony forms part of the sustained scienter and scheme allegations, including that Birchall falsely assured Advisor A that Defendants' trading and disclosure scheme had been blessed by counsel. As noted above, Plaintiff is not attempting to force a waiver—but merely require Defendants to make a clear and binding choice as to how they will defend this action. The law is clear that if Defendants choose to rely on counsel as a defense, it will give rise to a waiver. But Defendants could equally choose to eliminate their reliance on counsel as a defense. The choice is Defendants—but they must make it during the discovery period or it will prejudice Plaintiff.[5]

Defendants' other attempts to discredit the SEC testimony similarly fall short. Defendants identify this testimony as arising from a "separate proceeding" but neglect that Birchall and Advisor A were deposed as part of the SEC's investigation into Musk's misleading Schedule 13G

---

[5] Neither *Doe* nor *AngioDynamics* support Defendants' claim that Plaintiff's references to sworn testimony before the SEC are "groundless" (ECF No. 155 at 3). In *Doe*, a defendant's letter sent to the U.S. Attorney's office "d[id] not run the risk that some independent decisionmaker will accept Doe's representations without the government having adequate opportunity to rebut them"—unlike here, where Defendants seek to inject evidence of counsel's involvement specifically to sway the opinion of the jury at trial while withholding evidence of that same involvement. 350 F.3d at 305. Defendants reference language in *AngioDynamics* that concerned a potential waiver concerning selective disclosure, not "at issue" waiver. 2010 WL 11541926, at *6. And, in any event, the *AngioDynamics* court found that there was no waiver based on selective disclosure because the disclosed facts "were known to the world" and "revealed little more than could be rationally presumed by an outside observer not privy to any attorney-client privileged communication." *Id.* Neither holding has any application here, particularly given that Plaintiff does not claim that the mere fact of Advisor A's and Birchall's testimony gives rise to waiver.

and refusal to comply with his disclosure requirements—a near-total overlap with the subject matter of this Action. Further, Defendants try to raise a negative inference by repeatedly noting that "Defendants were not permitted to attend" these depositions. But Defendants do not provide any insight into how Advisor A's testimony would have been any different were Defendants in attendance—and this argument is irrelevant to Birchall's repeated testimony on this very topic. At bottom, assuming Birchall told the truth in his SEC testimony, his repeated reliance on counsel for the 13G filing gives rise to an issue of whether Defendants will rely on counsel here. Plus, the fact that Defendants are trying to rely on counsel here is confirmed by their assertion of a good faith defense and their unequivocal representations that they intend to argue that they lacked scienter by relying on their legal counsel's involvement as a defense.

### B.    Plaintiff Is Entitled To Clarity On Defendants' Reliance On Counsel's Involvement Before Fact Discovery Ends

Before the Court extended the schedule for fact discovery in order to resolve this issue, fact discovery was set to close in less than three weeks. But Defendants still failed to make the requisite disclosure "during the discovery period whether it intends to rely on factual assertions or corresponding defenses that would require a waiver of the attorney-client privilege." *Buspirone*, 208 F.R.D. at 522; *see United States v. Wells Fargo Bank N.A.*, 2015 WL 3999074, at *1 (S.D.N.Y. June 30, 2015) ("the burden is on the 'party who intends to rely at trial on a good faith defense' to make ***a full disclosure during discovery*** and 'the failure to do so constitutes a waiver of that defense.'").[6]

---

[6] Other judges in this District have repeatedly come to the same conclusion. *See e.g.*, *In re Worldcom, Inc. Sec. Litig.*, 2004 WL 936320, at *1 (S.D.N.Y. May 3, 2004) (ordering unambiguous election on advice of counsel where fact discovery closed in six weeks); *In re Residential Cap., LLC*, 491 B.R. 63, 68 (Bankr. S.D.N.Y. 2013) (finding failure to fully disclose privileged issues during discovery constituted a waiver of a reliance on counsel defense).

Defendants argue that this determination is "premature." ECF No. 155 at 2, 5. None of Defendants' superficial arguments pass muster.

*First,* Defendants claim that this dispute is "hypothetical" because depositions have not yet occurred. *Id.* This argument turns a blind eye to the record, including Defendants' own sworn testimony regarding the same facts at issue here. Defendants are currently withholding hundreds of documents and information concerning counsel's involvement. As Plaintiff explained in its August 18, 2025 letter (ECF No. 170), Plaintiff must be able to question witnesses at depositions concerning the role and involvement of counsel, including with respect to the misleading Schedule 13G filed on April 4, 2022. Plaintiff should not have to conduct these depositions without either (i) confirmation that Defendants will not rely on counsel's involvement to raise an inference of "good faith"; or (ii) the opportunity to seek appropriate discovery to explore the role and involvement of counsel before such depositions. Absent Defendants' clear election, depositions will not "clarify any purported ambiguities in Defendants' position," as Defendants claim. ECF No. 155 at 2. Delaying this election until after depositions will only inure greater burden to the Parties (as witnesses will need to be recalled) and increase the likelihood of additional motion practice. Given one of these witnesses is Mr. Musk, Plaintiff will then have to risk arguments that he is too busy to be deposed for a second time when it has sought through this motion to avoid that very issue.[7]

---

[7] Laura Kolodny, *SEC Says Elon Musk Should be Sanctioned if He Keeps Dodging Twitter Depositions*, CNBC (Sept. 20, 2024), https://www.cnbc.com/2024/09/20/sec-says-musk-should-be-sanctioned-if-he-keeps-dodging-twitter-depositions.html ("Musk has now failed to appear before the SEC twice: first in September 2023, in defiance of a lawful administrative subpoena, and last week, in defiance of a clear court order."); Malathi Nayak, *Musk Skips Deposition in Investor Lawsuit Over Twitter Buyout,* Bloomberg.com (Apr. 8, 2025), https://www.bloomberg.com/news/articles/2025-04-08/musk-skips-deposition-in-investor-lawsuit-over-twitter-buyout [https://archive.ph/GdpWl] (Musk's attorney told lawyers for

*Second*, Defendants claim that Plaintiff "rushed to Court" in advance of Defendants' response to written discovery on September 5, 2025. These written discovery requests sought to further confirm Defendants' position as to its present or future election of any reliance on counsel defense. However, as explained in Plaintiff's August 18, 2025 letter (ECF No. 151), Defendants' communications have made clear that they not only reserve the right to rely on counsel—but they expressly intend to inject their reliance on counsel in an effort to argue that they lacked scienter. *See* Exs. 9, 10, 11. Indeed, Defendants even represented to this Court that they will rely on the involvement of counsel to attack Plaintiff's sustained scienter allegations (while improperly withholding the full scope of documents as to counsel's involvement). ECF No. 155 at 4. The issue is ripe and there is no need for further delay.

*Third*, Defendants claim that the "appropriate time for Plaintiff to raise any concerns is post-discovery and pre-trial." ECF No. 155 at 2, 4. There is no reason to delay given that Defendants have already admitted that they intend to inject counsel's involvement as part of their defense of this Action. Further, Defendants have "had ample time to consider this case, conduct discovery and decide upon its available defenses." *Buspirone*, 208 F.R.D. at 523. There is no reason to push off "discovery relating to these critical defenses." *Id.* at 522, 524 (rejecting defendants' request to delay election "until 30 days prior to the close of the expert discovery period").

Defendants' sole legal authority, *Deutsche Bank Tr. Co. of Americas v. Tri-Links Inv. Tr.*, is inapposite. 43 A.D.3d 56, 63, 67 (N.Y. App. Div. 2007). *Tri-Links* concerned "whether Bankers Trust settled the WMI action in good faith, as alleged in the complaint"—it did not involve a

---

plaintiffs in the *Pampena* action "20 minutes after the scheduled time for his deposition" that "he wouldn't be attending").

*defense* of good faith, like here. *Id.* Moreover, the *Tri-Links* Court explained that "Bankers Trust has not placed its attorneys' legal advice or work product at issue, and the reasonableness of its settlement with WMI can be determined on the basis of the extensive nonprivileged documentary record already available." *Id.* There is no similar record here, particularly given that Defendants have withheld hundreds of documents and information concerning counsel's involvement under the guise of privilege.

### C.    Plaintiff Will Suffer Prejudice Absent Clarity on Defenses

Without Defendants' clear election as to any reliance on counsel or good faith defense, Plaintiff will suffer prejudice.

Courts routinely consider "the prejudice that would inure to the plaintiff" as an "important factor" when deciding whether and when to require a defendant to make a clear election with respect to any reliance on counsel defense. *Buspirone*, 208 F.R.D. at 523; *see also, e.g.*, *Worldcom*, 2004 WL 936320, at *1 ("plaintiffs will be severely prejudiced without immediate and unambiguous notice of an election by these defendants" before the close of fact discovery).

This Court's opinion in *In re Buspirone Antitrust Litigation* is instructive. 208 F.R.D. at 523. There, defendant refused to make a clear election with respect to the good faith and reliance on counsel defenses, even though the case was "filed more than a year ago," "dispositive motions have been filed and decided," and "[d]iscovery ha[d] been ongoing for more than nine months." *Id.* at 523. In considering the "prejudice that would inure to the plaintiff," this Court noted that the good faith and reliance on counsel defenses at issue would "be a focus of dispute" if asserted, plaintiffs had already noticed numerous depositions, "thousands of pages of documents" had already been "withheld on the basis of privilege," and plaintiffs "should not be required to conduct this discovery in a one-month period." *Id.* at 523-24. Contrary to Defendants' assertions (ECF No. 155 at 5), the defendants in *Buspirone* were not "waffling" only with respect to the advice-of-

counsel defense, but also the good faith defense. *Buspirone*, 208 F.R.D. at 522 (rejecting defendant's argument that "it should be able to defer its decision whether to assert good faith *or* reliance on counsel defenses" until the conclusion of fact discovery).

Plaintiff will be prejudiced absent a near-term deadline to resolve Defendants' reliance on counsel's involvement as a defense. Absent a clear and binding election by Defendants on a date certain, Defendants will be able to spring any defense concerning the involvement of counsel at a later stage, forcing Plaintiff to obtain and review the over 1,000 documents currently withheld or redacted on Defendants' and other third parties' privilege logs[8] and potentially litigate the precise scope of Defendants' waiver—all of which would have to occur before the close of fact discovery that is currently set for October 17. Moreover, any reliance on counsel or good faith defense asserted by Defendants further impacts which witnesses Plaintiff will choose to depose and the scope and lines of questioning during those depositions, including whether Plaintiff will depose Defendants' counsel at Quinn Emanuel and McDermott, which were involved in Defendants' filing of the erroneous Schedule 13G. Plaintiff intends to take fact depositions that were originally scheduled for August and September in approximately one month. Plaintiff should not have to conduct depositions now without knowing the parameters of Defendants' "good faith" defenses. Finally, to the extent Defendants raise the involvement of counsel for the first time at trial, Plaintiff will be subject to a trial by ambush.

---

[8] Defendants, McDermott, and Quinn Emanuel have already withheld or redacted over 1,000 documents identified on privilege logs (*e.g.,* Exs. 7, 8)—which do not include the over 800 documents that Defendants have redacted for privilege and not logged. *See Buspirone*, 208 F.R.D. at 523 (noting "thousands of pages of documents" that had been withheld as privileged in assessing privilege).

**D.    Absent A Clear Election By A Firm Deadline, Defendants Have Waived Any Reliance On Counsel Defense**

Absent a firm election by Defendants as to any reliance on counsel or good faith defense by a date certain during discovery, Defendants will have waived their right to rely on the involvement of counsel as a defense in this action. *See Arista Recs. LLC v. Lime Grp. LLC*, 2011 WL 1642434, at *2 (S.D.N.Y. Apr. 20, 2011) ("a party who 'intends to rely at trial' on a good faith defense 'must make a full disclosure during discovery; failure to do so constitutes a waiver' of that defense"); *Wells Fargo Bank N.A.*, 2015 WL 3999074, at *1 (same).[9] Moreover, *any* presentation of evidence concerning the involvement of counsel as part of any defenses is waived absent a firm election because Defendants "cherry-pick[ed]" its "reliance on counsel evidence," and "consistently adopted the strategy of selective (and extremely limited) disclosure." *In re Residential Cap., LLC*, 491 B.R. at 70 ("the consequences of failing to make ***full*** disclosure of the advice that was given is that the [party] [is] now precluded from offering ***any*** evidence of the legal advice provided") (emphasis in original).

Here, while Defendants have stated that they "are not asserting an advice-of-counsel defense in this action" (ECF No. 155 at 1), they also "expressly reserve[d], all rights with regard to the presentation of evidence at summary judgment and trial" (Ex. 11 at 1), as well as the right

---

[9] Defendants badly mischaracterize *Arista Records* and *Wells Fargo*. ECF No. 155 at 5. Defendants contend that the *Arista* defendants were "waffling" as to whether to assert an advice-of-counsel defense. That is wrong. The plaintiffs moved to preclude defendants from "offering any argument or evidence at the trial regarding Defendants' purported good faith belief in the lawfulness of their conduct." *Arista Recs.*, 2011 WL 1642434, at *1. While Defendants make much of the fact that *Arista Records* was decided on a motion *in limine*, the decision affirms that "a party 'who intends to rely at trial' on a good faith defense 'must make a full disclosure ***during discovery***; failure to do so constitutes a waiver' of that defense." *Id.* at *2. And in *Wells Fargo*, the court found that an officer's testimony may not waive a ***corporation's*** privilege based on an "officer's discussion of counsel's advice," where the "officer was subpoenaed in his individual capacity." *Wells Fargo Bank, N.A.*, 2015 WL 3999074, at *3.

to present "factual evidence" concerning the involvement of counsel to rebut Plaintiff's scienter allegations (ECF No. 155 at 4). *See Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 2012 WL 8134011, at *2 (C.D. Cal. Mar. 9, 2012) ("a party need not invoke the 'magic words advice of counsel'" to trigger implied waiver). Because Defendants have "assert[ed] the attorney-client privilege to block disclosure," they are blocked from asserting any good faith defense. *See CSX Corp. v. Children's Inv. Fund Mgmt. (UK) LLP,* 562 F. Supp. 2d 511, 559 (S.D.N.Y. 2008) (holding that a managing partner of shareholder could not avoid control person liability for the shareholder's Section 13(d) violations by asserting that his actions "were consistent with the advice of counsel and therefore in good faith" after "block[ing] discovery of the existence and nature of any legal advice it sought").

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court compel Defendants to provide a binding election as to any reliance on counsel or good faith defense by a date certain. If Defendants elect to rely on counsel, Plaintiff respectfully submits that Defendants will have waived any privilege.

Dated: September 5, 2025

**BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP**

*/s/ Salvatore J. Graziano*
Salvatore J. Graziano
Katherine M. Sinderson
Jeremy P. Robinson
Jonathan G. D'Errico
Emily A. Tu
Rebecca S. Temkin
1251 Avenue of the Americas
New York, NY 10020
Phone: (212) 554-1400
Fax: (212) 554-1444
salvatore@blbglaw.com
katie@blbglaw.com
jeremy@blbglaw.com
jonathan.derrico@blbglaw.com
emily.tu@blbglaw.com
rebecca.temkin@blbglaw.com

*Counsel for Lead Plaintiff Oklahoma
Firefighters Pension and Retirement System*

**BISHOP PARTNOY LLP**

Frank I. Partnoy (admitted *pro hac vice*)
1717 K Street, NW Suite 900
Washington, DC 20006
Telephone: (202) 787-5769
frank@bishoppartnoy.com

*Additional Counsel for Lead Plaintiff
Oklahoma Firefighters Pension and
Retirement System and the Class*