# Exhibit 1

UNITED STATES SECURITIES AND EXCHANGE COMMISSION

In the Matter of:          )
                           ) File No.  SF-04519-A
CERTAIN PURCHASES,         )
SALES, AND DISCLOSURES     )
OF TWITTER SHARES          )

WITNESS:        ███████████

PAGES:     1 through 109

PLACE:     Securities and Exchange Commission

           44 Montgomery Street, Suite 2800

           San Francisco, California 94104

DATE:      Friday, May 27th, 2022

     The above-entitled matter came on for hearing via Webex, pursuant notice, at 9:59 a.m.

Diversified Reporting Services, Inc.

(202) 467-9200

CONFIDENTIAL

MSSB_OklaFire_0005709

Page 4

P R O C E E D I N G S

MR. ANDREWS:  We are on the record at 9:59 a.m. Pacific on May 27th, 2022.  This testimony is being conducted visa Webex.  My name is Robin Andrews.  Also, today via Webex.  I am designated as an officer of the Commission for purposes of this investigation.  Also attending for the SEC via Webex are Melissa Armstrong, ██████████████████ and ██████████████, who is just joining us.  ████ ██████████ and ████████ have also been designated as officers of the Commission for purposes of this investigation.

The Witness and Counsel are all attending via Webex, they're all in the same conference room. We'll ask for roll call in a bit.

But first, ██████████████, do you have consent to taking an oath or affirmation to tell the truth remotely via Webex rather than in person?

██████████████:  Yes.

MR. ANDREWS:  Please raise your right hand ██████████████.

Do you swear or affirm to tell the truth, the whole truth and nothing but the truth?

██████████████:  Yes.

Whereupon,

CONFIDENTIAL

Page 5

████████████

was called as a witness and, having been first duly sworn, was examined and testified as follows:

MR. ANDREWS:  Thank you very much.  You can put your right hand down.

Could you please just state and spell your full name for the record.

THE WITNESS:  ██████████████

██████████████████

MR. ANDREWS:  Thank you.

This is an investigation by the United States Securities and Exchange Commission in the matter of Certain Purchases, Sales, and Disclosures of Twitter Shares, SF-4519, to determine whether there have been violations of certain provisions of the federal securities laws; however, the facts developed in this investigation might constitute violations of other federal or state, civil or criminal laws.

Before opening of the record, you were provided with a copy of the Formal Order of Investigation in this matter.  Let me go ahead and share my screen again.  I know you looked at this before we went on the record.  Again, this is the Formal Order of Investigation.

CONFIDENTIAL

A   Yes.

Q   Okay.

So when Mr. Birchall said, I spoke to Mr. Musk's senior counsel, your assumption was that that he's referring to the same person, Mr. Spiro?

A   Yes.

Q   Did Mr. Birchall ever specifically say that he spoke to Mr. Spiro to get advice on any of the reporting requirement issues for acquiring Twitter stock, at any point now I'm asking?

A   At any moment in time or at this moment in time?

Q   Yeah, at any moment in time. So I guess -- it sounds like you're saying, before the end of the first week of February, beginning of second week of February conversation, Mr. Birchall didn't explicitly say, senior counsel to Mr. Musk means Alex Spiro. That was your assumption based on news reports. At any point after that, did Mr. Birchall tell you, yeah, when I say senior counsel, that's who I mean, I mean Alex Spiro?

A   He shared with me that he -- he was specific as to his name on or around April 1st.

Q   Okay.

And at that point, did -- and I'm just

CONFIDENTIAL

trying to close the loop on your understanding along this timeframe of who he's talking to, trying to get an idea of when Mr. Birchall is either confirming or clarifying your understanding of who he has been talking to.  On April 1st, what did Mr. Birchall say about Mr. Spiro, and specifically what advice he was giving then or had been giving during this timeframe to the extent you remember that?

A    Throughout the conversations we had in February and March, he did not link or clarify that he was talking to Mr. Spiro.  He was simply very clear to me along the way in several conversations that he was talking to counsel, and we had many conversations, and where I had repeatedly shared, this is an item where you need to talk to counsel. And he also shared with me, that, yes, I'm talking to counsel about this, I will talk to counsel about this, but wasn't specific as to his name.

Q    Okay.

On April 1st, what do you remember -- I know we're getting a little ahead of the chronology here, but just so we tie it back to this.  On April 1st, what do you remember Mr. Birchall telling you about Mr. Spiro's involvement in any advice relating to Twitter shares?

CONFIDENTIAL

MSSB_OklaFire_0005739

Page 32

A    On April 1st, I recall that he -- it was either April 1st or April 2nd, that he -- this was at a time when I had shared with Jared that it's likely necessary for you to review again again whatever counsel you may have received because you may be -- it's possible that you may be late, so you should review the advice that counsel has provided you to date.

He made me aware that Mr. Spiro and Quinn Emanuel put eight to ten attorneys in a room and re-reviewed the prior advice that they had provided Jared and came to several different conclusions still, but out of an abundance of caution over that weekend on the 2nd or 3rd, and I'm not exactly sure what the dates are for that Saturday and Sunday, but at that moment in time, decided to make their filing as it related to Section 13 on that Sunday night, slash, Monday.

Q    Okay.

So I just want to break down a little what you said.  So either April 1st or 2nd, at some point that either Friday or the weekend, Mr. Birchall told you after your Email to him, and we'll get to that Email, that Jared told you that Alex Spiro and Quinn Emanuel attorneys, that they had eight to ten

MSSB_OklaFire_0005740

attorneys in the room to review the prior advice that they had given Jared about the Twitter filings, do I have that right so far?

A    Yes.

Q    So he was saying that Mr. Spiro, Quinn Emanuel, and whoever those other eight to ten attorneys were in the room, that they had given prior -- he was confirming that they had given prior advice relating to the Twitter share acquisition?

A    Yes.

Q    And in that conversation, did he name any other firms?  So in other words, it's Alex Spiro, Quinn Emanuel, eight to ten lawyers.  Did he say some of them are from other firms, or was he silent on who all those lawyers were from?

A    He didn't -- he did not indicate any other firm.  He didn't indicate whether or not any other firm was involved, but he didn't indicate any other firm.

Q    So the only firm name he gave you was Quinn Emanuel in that conversation?

A    And, in fact, in that -- I should clarify, in that conversation, he didn't mention that it was Quinn Emanuel.  It wasn't until the next day that I was able to confirm in an Email that it was, in fact,

MSSB_OklaFire_0005741

Page 34

Quinn Emanuel.

Q    Okay.

So the Email you sent to him saying, thank you for telling me that, that Mr. Musk's securities counsel is Quinn Emanuel or words to that effect, that's what you're referring to?

A    Yes, I am.    Thank you.

Q    Okay.    And then -- and we'll get to that. I'm just trying -- I'm not trying to get ahead of ourselves with the documents.    I'm just trying to understand when the names of lawyers were given here.

And you said also that Mr. Birchall told you that counsel told him that there were several conclusions still about what the reporting requirements were, but that they were going to file something on Monday, did I hear that right?

A    Yes.

Q    And was his explanation as to why they were filing Monday, that this was just out of an abundance of caution, or were they saying, this is what we have to do?    I'm trying to understand which of those you're describing.

A    As best I recall, he shared that there was still confusion as to what their interpretation was, but out of an abundance of caution, that they would

CONFIDENTIAL

MSSB_OklaFire_0005742

file the next possible day, which would be Monday.

Q    Okay.  Understood.

All right.  So thank you for kind of jumping ahead with me there.  Let's come back to February.  And at a certain point, did you have a conversation with Mr. Birchall about what the reporting requirement might be once they crossed five percent? Because on the chronology we had, I think you said his first instructions were to you, let's get up to two percent.  Then very soon after that, his instructions were, let's get up to five percent, but don't not cross it yet.  At some point, did he discuss with you what his understanding was as the reporting requirements when they actually got to five percent?

A    It was in, approximately, the third or forth week in February that he initially shared with me what we had learned based on his initial conversations with senior counsel and with whatever other research and whoever else he may have been talking to, that he understood that the filing requirements were, based on Section 13, to file at the end of the year.

Q    So he reported back to you that his understanding was you had to file something after the

MSSB_OklaFire_0005743