# EXHIBIT 6

Page 1

THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION:

In the Matter of:                    )
                                     ) File No. SF-04519-A
CERTAIN PURCHASES, SALES AND  )       **COPY**
DISCLOSURES OF TWITTER SHARES )

WITNESS:  Jared Birchall
PAGES:    1 through 226
PLACE:    Securities and Exchange Commission
          44 Montgomery Street, Suite 2800
          San Francisco, California 94104
DATE:     Wednesday, June 1, 2022

     The above entitled matter came on for hearing via
Webex, pursuant to notice, at 8:05 a.m.

                Diversified Reporting Services, Inc.
                     (202) 467-9200

Attorneys Eyes Only                                    ERM-Oklahoma0010233

[REDACTED]

Q    Okay.  For either -- and just to be clear, for either your understanding for the five percent rule or the ten percent rule, did you at any point consult any attorneys to help you understand the -- the rules on those?

A    I did not.

Q    Okay.  So, Exhibit -- Exhibit 8 -- oh, go ahead.  I'm sorry, I didn't mean to cut you off.

A    At -- at the time that we discussed on -- on April 1st when I received the phone call from Morgan Stanley, that's -- then I did confer with an attorney, but prior to that --

Q    Okay.

A    -- no.

Q    So, yeah.  Thank you for the clarification on the time frame.

Okay.  So, before April 1st you did not consult any attorney on these reporting requirements, correct?

A    That's correct.

Q    And then, between April 1st and April

Attorneys Eyes Only



Page 110

4th you did -- you did consult advice from attorneys in filing the -- the schedule 13 on the 4th?

A    That's right.

Attorneys Eyes Only

ERM-Oklahoma0010342

Page 158



Q    Did you ever see any instructions for filling out Schedule 13G?

A    I mean, there's a chance that back when I was looking up internet articles at some point I did, but outside of that, no.  There -- there was a complete reliance on the securities lawyers for this.

Q    McDermott?

A    Yes.

Attorneys Eyes Only

ERM-Oklahoma0010390



Q    Okay.  And it says, The legal team prepped the filing and submitted this morning. You're referring to McDermott?

A    That's right.

Q    Okay.  And then -- okay.

Page 163

And this -- actually, let me quickly go back to 15.  I think -- so, I think we said you weren't sure if you ever saw a draft of this document before it was filed.  Did I have that right?

A    Yeah.  I'm guessing that I was CC'ed on something.  Whether or not I saw something --

Q    Yeah.

A    -- I just don't know.  I mean, because to be quite honest, SEC filings, like, I -- I would be almost completely -- well, I would be completely reliant on legal counsel to make sure that that is correct.

Attorneys Eyes Only

ERM-Oklahoma0010395

Page 172

[REDACTED]

Q    Okay.  Yeah.  I know sometimes it gets -- it doesn't quite zoom right.

And then -- so, [REDACTED] sends an e-mail to you.  In reference to articles below, intent was clearly unclear in that it evolved over time.  There's precedent on that over and over again.  And then below -- the next line it says, And you shared me with me how you received input all along with outside counsel and others and how counsel advised you along the way as goals changed. Near the end I suggested to re-review the issue again, dash, again.

And I think you -- you mentioned that there might have been a call later on when we were talking about late March where you had a conversation with [REDACTED] on the subject of whether you had been receiving counsel -- input from counsel all along.  Was that conversation you relayed before, I know we didn't get into it, around the time of this e-mail?

Attorneys Eyes Only

Page 173

A    Again, I -- you know, I -- ████ has great intentions.  Good guy, you know.  And -- and I do think that this is just, you know, an e-mail that is meant to kind of wash hands and -- and kind of see why a little bit.

But when we would have had that conversation about -- I mean, the first conversation that could have ever taken place confirming counsel was involved would have been April 1st.  There's -- there's just -- because that was the only time ever that -- that counsel was involved.

And, like I said, did he misinterpret it or -- or misunderstand, you know, something along the way, that is very possible, but there was never a confirmation where I said we had engaged counsel, you know, prior to June -- or April 1st because we hadn't engaged counsel prior to April 1st.

Attorneys Eyes Only

ERM-Oklahoma0010405



Page 174

Q    Well, putting aside what ▮▮▮▮▮▮ believed or interpreted or how he got to that, I -- I just want to be clear on that.  I think you've said this, but just to be clear here, before April 1st your testimony here today is you never told ▮▮▮▮▮▮ that you had sought advice from any counsel on any of the SEC reporting requirements you've been talking about?

A    Correct.  Though -- though I don't know if -- if he because of some of the articles that -- that we had exchanged and/or read they were legal -- from legal sites or -- or, you know, law firms that it -- that some -- one of

Attorneys Eyes Only

ERM-Oklahoma0010406

Page 175

those discussions caused him to believe that, and that he really did believe that, but -- but to state that I stated prior to April 1st that we'd be -- had engaged securities counsel, that could have never happened because it didn't happen. And so -- so, misunderstanding, maybe, but -- but, no, it was never stated to him, we have engaged securities counsel prior to April 1st.

Attorneys Eyes Only

ERM-Oklahoma0010407