**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, <br><br> Plaintiff, <br><br> v. <br><br> ELON R. MUSK, ELON MUSK REVOCABLE TRUST DATED JULY 22, 2003, EXCESSION LLC, AND JARED BIRCHALL, <br><br> Defendants. | No. 1:22-cv-03026-ALC-GWG |

**LEAD PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF ITS MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

**Page**

GLOSSARY OF CITATION CONVENTIONS ............................................................................ iii

I.    INTRODUCTION ........................................................................................................... 1

II.   ARGUMENT ................................................................................................................... 3

      A.    Oklahoma Firefighters Satisfies Predominance ....................................................... 3

      B.    Oklahoma Firefighters Is Typical ............................................................................. 8

      C.    The Class Is Entitled To The *Affiliated Ute* Presumption of Reliance ................. 10

      D.    The Class Is Entitled To The *Basic* Presumption of Reliance ............................. 13

            a.    Defendants' Arguments Do Not "Fit" This Case ..................................... 14

            b.    The Presence Of Substantial "Back-End" Price Impact Undercuts
                  Any Claimed Lack Of Price Impact ......................................................... 16

            c.    The Corrective Disclosures Addressed Exactly The Same Subject
                  Matter As Musk's Misrepresentations ...................................................... 18

            d.    The *Basic* Presumption Applies To Defendants' Scheme ....................... 20

      E.    Plaintiff's Proposed Damages Methodology Satisfies *Comcast* ........................... 21

III.  CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Affiliated Ute Citizens of Utah v. United States*,
    406 U.S. 128 (1972)......................................................................................2, 11, 12, 13

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
    77 F.4th 74 (2d Cir. 2023) ............................................................................................21

*In re Avon Sec. Litig.*,
    1998 WL 834366 (S.D.N.Y. Nov. 30, 1998)................................................................11

*Basic v. Levinson*,
    485 U.S. 224 (1988)............................................................................................ *passim*

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
    310 F.R.D. 69 (S.D.N.Y. 2015) ............................................................................17, 22, 25

*Cohen v. Laiti*,
    98 F.R.D. 581 (E.D.N.Y. 1983)...................................................................................10

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)....................................................................................3, 23, 24, 25

*Desai v. Deutsche Bank Secs. Ltd.*,
    573 F.3d 931 (9th Cir. 2009) ......................................................................................22

*In re DiDi Glob. Inc. Secs. Litig.*,
    2025 WL 1909295 (S.D.N.Y. July 7), *adopted* 2025 WL 2345696 (Aug. 13, 2025) .............12

*DuPont v. Brady*,
    680 F. Supp. 613 (S.D.N.Y. 1988) ..............................................................................7

*DuPont v. Brady*,
    828 F.2d 75 (2d Cir. 1987)..........................................................................................7

*In re FirstEnergy Corp. Sec. Litig.*,
    149 F.4th 587 (6th Cir. Aug. 13, 2025) ......................................................................13

*Fogarazzo v. Lehman Bros., Inc.*,
    263 F.R.D. 90 (S.D.N.Y. 2009) ..................................................................................12

*GAMCO Invs., Inc. v. Vivendi, S.A.*,
    927 F. Supp. 2d 88 (S.D.N.Y. 2013)...........................................................................7

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    903 F.2d 176 (2d Cir. 1990)..................................................................................................10

*Glickenhaus & Co. v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015) ...............................................................................................10

*Goldman Sachs Grp. v. Ark. Teacher Ret. Sys.*,
    594 U.S. 113 (2021).....................................................................................................14, 20

*Grae v. Corr. Corp. of Am.*,
    2021 WL 1100799 (M.D. Tenn. Mar. 23, 2021) ....................................................................8

*Gruber v. Gilbertson*,
    2019 WL 4439415 (S.D.N.Y. Sept. 17, 2019)......................................................................11

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014)...................................................................................................1, 4, 14

*IBEW Loc. 90 Pension Fund v. Deutsche Bank AG*,
    2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013) .......................................................................10

*In re IMAX Sec. Litig.*,
    272 F.R.D. 138 (S.D.N.Y. 2010) ..........................................................................................10

*In re Initial Public Offering*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009)...................................................................................22

*Jaeger v. Zillow Group, Inc.*,
    No. 24-6605, ECF No. 41.1 (9th Cir. Sept. 26, 2025) .........................................................20

*Jaroslawicz v. M&T Bank Corp.*,
    2024 WL 2975766 (D. Del. June 13, 2024)..........................................................................25

*Kamerman v. Ockap Corp.*,
    112 F.R.D. 195 (S.D.N.Y. 1986) ..........................................................................................10

*Kline v. Wolf*,
    88 F.R.D. 696 (S.D.N.Y. 1981) ............................................................................................10

*Kottaras v. Whole Foods Mkt., Inc.*,
    281 F.R.D. 16 (D.D.C. 2012)................................................................................................25

*Levy v. Gutierrez*,
    448 F. Supp. 3d 46 (D.N.H. 2019)......................................................................................4, 6

*Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
    282 F.R.D. 607 (N.D. Ala. 2012), *aff'd and remanded on unrelated grounds*, 762
    F.3d 1248 (11th Cir. 2014) .....................................................................................................6

*Loritz v. Exide Tech.*,
2015 WL 6790247 (C.D. Cal. July 21, 2015)..................................................................25

*McGuinness v. Parnes*,
1988 WL 66214 (D.D.C. June 17, 1988)........................................................................7

*Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*,
328 F.R.D. 86 (S.D.N.Y. 2018) .....................................................................................25

*In re Monster Worldwide, Inc. Sec. Litig.*,
251 F.R.D. 132 (S.D.N.Y. 2008) .................................................................................5, 8

*In re Nat'l Century Fin. Enters., Inc.*,
846 F. Supp. 2d 828 (S.D. Ohio 2012) ...........................................................................7

*In re Nortel Networks Corp. Sec. Litig.*,
2003 WL 22077464 (S.D.N.Y. Sept. 8, 2003).................................................................9

*In re NYSE Specialists Sec. Litig.*,
260 F.R.D. 55 (S.D.N.Y. 2009) .................................................................................9, 22

*In re Overstock Sec. Litig.*,
119 F.4th 787 (10th Cir. 2024) .......................................................................................7

*In re Oxford Health Plans, Inc. Secs. Litig.*,
191 F.R.D. 369 (S.D.N.Y. 2000) ....................................................................................9

*In re Par Pharm. Secs. Litig.*,
No. 06-cv-3226, ECF No. 286 (D.N.J. July 23, 2012) ...................................................5

*In re Parmalat Sec. Litig.*,
2008 WL 3895539 (S.D.N.Y. Aug. 21, 2008).................................................................8

*Pirnik v. Fiat Chrysler Auto., N.V.*,
327 F.R.D. 38 (S.D.N.Y. 2018) .........................................................................19, 24, 25

*Puddu v. NYGG (Asia) Ltd.*,
2022 WL 2304248 (S.D.N.Y. June 27, 2022) ...............................................................11

*Ret. Sys. of Miss. v. TreeHouse Foods, Inc.*,
2020 WL 919249 (N.D. Ill. Feb. 26, 2020) ....................................................................6

*Ret. Sys. v. Acadia Healthcare Co., Inc.*,
2022 WL 4598044 (M.D. Tenn. Sept. 30, 2022)...........................................................12

*Ret. Sys. v. Wyeth*,
284 F.R.D. 173 (S.D.N.Y. 2012) .................................................................................5, 8

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015)............................................................................................23

*Rocco v. Nam Tai Elecs., Inc.*,
   245 F.R.D. 131 (S.D.N.Y. 2007) .....................................................................................10

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2019 WL 3001084 (S.D.N.Y. July 10, 2019) ................................................................ *passim*

*In re Smith Barney Transfer Agent Litig.*,
   290 F.R.D. 42 (S.D.N.Y. 2013) ....................................................................................4, 13

*Stoneridge Inv. Partners v. Sci.-Atlanta*,
   552 U.S. 148 (2008)........................................................................................................22

*Strougo v. Barclays PLC*,
   312 F.R.D. 307 (S.D.N.Y. 2016) ................................................................................12, 23

*Sykes v. Mel S. Harris & Assocs., LLC*,
   780 F.3d 70 (2d Cir. 2015)...............................................................................................23

*In re Teva Sec. Litig.*,
   2021 WL 872156 (D. Conn. Mar. 9, 2021) ......................................................................23

*In re UBS Auction Rate Sec. Litig.*,
   2010 WL 2541166 (S.D.N.Y. June 10, 2010) ..................................................................22

*Villella v. Chem. & Mining Co. of Chile Inc.*,
   333 F.R.D. 39 (S.D.N.Y. Sept. 24, 2019) ..........................................................................7

*In re Vivendi Universal, S.A. Sec. Litig.*,
   183 F. Supp. 3d 458 (S.D.N.Y. 2016)................................................................................7

*In re Vivendi, S.A. Secs. Litig.*,
   838 F.3d 223 (2d Cir. 2016)....................................................................................3, 17, 23

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   2 F.4th 1199 (9th Cir. 2021) ............................................................................................13

*Waggoner v. Barclays PLC*,
   875 F.3d 79 (2d Cir. 2017)........................................................................................ *passim*

*In re Waste Mgmt. Sec. Litig.*,
   775 F. Supp. 3d 742 (S.D.N.Y. 2025)...............................................................................24

*Weintraub v. Texasgulf Inc.*,
   564 F. Supp. 1466 (S.D.N.Y. 1983)..................................................................................10

*In re WorldCom, Inc. Sec. Litig.*,
    219 F.R.D. 267 (S.D.N.Y. 2003) ...............................................................................2, 8, 9, 12

**RULES AND STATUTES**

Fed. R. Civ. P. 23..................................................................................................1, 3, 19, 23

**GLOSSARY OF CITATION CONVENTIONS**

| Term | Definition |
|---|---|
| Amended Complaint or ¶__ | The First Amended Complaint filed at ECF No. 99, *Rasella v. Musk*, 1:22-cv-03026-ALC-GWG (S.D.N.Y.). Partially unsealed per the Court's May 20, 2024 Order. *See* ECF No. 95. |
| Class Period | March 25, 2022 - April 4, 2022, inclusive. |
| Defendants | Defendants Elon Musk, Elon Musk Revocable Trust dated July 22, 2003, Jared Birchall, and Excession LLC. |
| Ex. __ | Exhibits to the Declaration of Katherine M. Sinderson in Further Support of Lead Plaintiff's Motion for Class Certification (submitted hereto). |
| Ferrell Rebuttal | Rebuttal Expert Report of Allen Ferrell, Ph.D. dated August 22, 2025, submitted with Defendants' Opposition to Lead Plaintiff's Motion for Class Certification (ECF Nos. 165-1, 167-1). |
| Ferrell Tr. | Transcript of the October 1, 2025 deposition of Dr. Allen Ferrell. |
| █████ | ████████████████████████████████████ is an investment manager for Lead Plaintiff Oklahoma Firefighters Pension & Retirement System. |
| █████ Tr. | Transcript of the July 17, 2025 deposition of ███████████ of ████. |
| Mason Report | Expert Report of Joseph R. Mason, Ph.D. dated June 23, 2025, submitted with Lead Plaintiff's Motion for Class Certification (ECF No. 142-1). |
| Mason Reply | Expert Reply Report of Joseph R. Mason, Ph.D. dated October 7, 2025 (submitted hereto). |
| Mason Tr. | Transcript of the August 19, 2025 deposition of Joseph R. Mason. |
| Motion or Mot. | Lead Plaintiff's Motion for Class Certification, Memorandum of Law, and Declaration of Katherine M. Sinderson and exhibits attached thereto (ECF Nos. 140, 141, and 142). |
| MTD Order | Opinion and Order, ECF No. 118. |

| Term | Definition |
|------|------------|
| Musk | Elon Musk, including the Elon Musk Revocable Trust dated July 22, 2003 and Excession LLC. ¶¶32-35. |
| Opposition or Opp. | Defendants' Memorandum of Law in Opposition to Lead Plaintiff's Motion for Class Certification (ECF No. 164). |
| Plaintiff or Oklahoma Firefighters | Oklahoma Firefighters Pension & Retirement System. ¶31. |
| Proposed Class or Class | All persons or entities who sold Twitter common stock and/or call options and/or purchased put options between March 25, 2022 and April 4, 2022, inclusive (the "Class Period") and were damaged thereby (the "Class").<br><br>Excluded from the Class are Defendants; officers and directors of Defendant Excession LLC and Defendant Elon Musk Revocable Trust Dated July 22, 2003; Twitter, Inc. ("Twitter") and its subsidiaries and affiliates; any person who is or was an officer or director of Twitter during the Class Period; any entity in which Defendants have a controlling interest; and the legal representatives, heirs, successors and assigns of any such excluded person or entity. |
| Rankin Tr. | Transcript of the July 15, 2025 deposition of Chase Rankin, Executive Director of Oklahoma Firefighters. |
| Twitter | Relevant nonparty Twitter Inc., which Musk now owns. ¶40. |
| ▮▮▮ Decl. | Declaration of ▮▮▮ dated September 30, 2025 (submitted hereto). |

viii

Plaintiff respectfully submits this reply memorandum of law in further support of its Motion for Class Certification.

## I.  **<u>INTRODUCTION</u>**

Plaintiff's opening Motion established that this case is ideally suited for class certification. In opposition, Defendants concede that the proposed Class readily satisfies the numerosity, commonality, superiority, and adequacy requirements of Rule 23. Unable to meaningfully challenge Plaintiff's showing that the Class meets these core elements of Rule 23, Defendants resort to rewriting the factual record and asserting premature merits arguments that are irrelevant to the issue of certification. Defendants' arguments should be rejected.



*See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 274 (2014) ("*Halliburton II*"). For this reason, courts nationwide (including Judges Sullivan and Rakoff) have ***rejected*** similar challenges to the trading strategies of quantitative traders, including ███ *itself*.

*See infra* at Section II.A. Defendants' misleading effort to fabricate testimony does not clear the heavy burden of challenging predominance and must similarly be rejected.

***Second***, Defendants claim that Oklahoma Firefighters is atypical because it supposedly did not rely on the "misstatements or omissions" when it made its investment decision. Opp. at 15. ████████████████████████████████████████████████████████████████████ ███████████████████████████████ Further, courts have consistently held that algorithmic trading strategies rooted in publicly available information and market prices—like ██████ here—do not render a class representative atypical and have "swiftly rejected" arguments like those Defendants posit here. *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 281 (S.D.N.Y. 2003).

***Third***, Defendants challenge presumption of reliance under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), by contending that Plaintiff's claims are supposedly not "primarily" based on omissions. Opp. at 17-19. This is wrong. As this Court recognized, Defendants themselves have argued that "Plaintiff relies ***primarily*** on Defendants' failure to disclose Musk's ownership stake in Twitter." MTD Order at 26.[1] Significantly, Defendants fail to challenge the materiality of Defendants' illegal concealment of Musk's Twitter stake at all. The Class is thus entitled to the *Affiliated Ute* presumption.

***Fourth***, Defendants do not challenge market efficiency, conceding that Plaintiff is entitled to the class-wide presumption of reliance under *Basic v. Levinson*, 485 U.S. 224 (1988). Defendants' efforts to rebut the presumption (Opp. at 19-22) fail, because they cannot prove that Defendants' fraudulent scheme and misrepresentations had ***no*** impact on the prices of Twitter securities. █████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

---

[1] Unless noted, all emphasis is added, and all internal citations and internal quotations are omitted.



Further, the uncontroverted presence of "back-end" price impact—that Twitter's stock price soared nearly 30% after the alleged disclosures—nullifies Defendants' attempt to rebut the *Basic* presumption.

***Fifth***, Defendants recycle long-rejected challenges under *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), in a failed attempt to attack Plaintiff's proposed damages methodology. Opp. at 22, 25. The law is well-established that Plaintiff's event study model and deflation ribbon method is "the standard operating procedure in federal securities litigation." *In re Vivendi, S.A. Secs. Litig.,* 838 F.3d 223, 253 (2d Cir. 2016). Defendants' arguments are otherwise premature and incorrect merits-based arguments that have no bearing on class certification.

Plaintiff respectfully submits that the Motion should be granted in full.

## II.  ARGUMENT

### A.  Oklahoma Firefighters Satisfies Predominance

As explained in Plaintiff's Motion and as set forth below, Oklahoma Firefighters has satisfied the predominance requirement of Rule 23—and class-related discovery has confirmed this conclusion. *See* Mot. at 13-15. ███████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

3

███████████████████████████████████████████████████████████████████████

It is well-established that market price is the most important factor in establishing class-wide reliance. *E.g.*, *Halliburton II*, 573 U.S. at 274 (the presumption of reliance only requires that investors "trade stock based on the belief that the ***market price*** will incorporate public information within a reasonable period").

In response, Defendants repeatedly claim that Oklahoma Firefighters would have sold Twitter securities at the same price "even if it had been aware of the alleged fraud." Opp. at 2, 10, 11-14. Courts require defendants challenging predominance on this basis to prove that a plaintiff is "completely indifferent" to market price before they can defeat reliance. *Levy v. Gutierrez*, 448 F. Supp. 3d 46, 63 (D.N.H. 2019). Defendants' argument that the "plaintiff does not care about fraud" carries a "heavy burden" and appears in only "unusual case[s]." *In re Smith Barney Transfer Agent Litig.*, 290 F.R.D. 42, 49 (S.D.N.Y. 2013). This is not such a case.

***First,*** Defendants' argument rests on a fundamental mischaracterization of ██████s testimony. ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ In reality, had the information been public, ███████ would not have been able to sell Twitter stock at $39.09 at all, since the stock price would have immediately shot up 30%, as shown by the price reaction when the truth was revealed.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Defendants' misleading effort to fabricate testimony to defeat class certification should be ignored.

Notably, courts have rejected similar challenges in securities class actions involving quantitative traders—including ███████ *itself*. *See City of Livonia Emps.' Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 179 (S.D.N.Y. 2012) (Sullivan, J.) (certifying class and rejecting defendants' claim that plaintiff "and its investment managers," including ███████ "did not rely on the stock's market price or on Wyeth's alleged misstatements and omissions"); *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 134 (S.D.N.Y. 2008) (Rakoff, J.) (both plaintiff and ███████ "which placed all of the class period trades, deny they had any knowledge of the Lie study at the time . . . and Monster has offered no evidence to the contrary"); *In re Par Pharm. Secs. Litig.*, No. 06-cv-3226, ECF No. 286 at 12 (D.N.J. July 23, 2012) (rejecting attempt to rebut the presumption of reliance because defendants "have not suggested that ███████" had non-public information or that ███████ did not rely upon the information in the market as an indicator of Par's value").[2]

---

[2] *See also Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 282 F.R.D. 607, 614-15, n.7 (N.D. Ala. 2012) (holding that ██████s trading strategy was irrelevant because "defendants' alleged prior misrepresentations impacted the price of the stock," and thus regardless of strategy, the "alleged harm remains the same"), *aff'd and remanded on unrelated grounds*, 762 F.3d 1248, 1260 (11th Cir. 2014) ("[N]either representative's use of investment advisers warrants reversal . . . . Even sophisticated investment advisers (like those involved in this



This testimony readily satisfies the presumption of reliance. *See, e.g.*, *Pub. Emps.' Ret. Sys. of Miss. v. TreeHouse Foods, Inc.*, 2020 WL 919249, at *5 (N.D. Ill. Feb. 26, 2020) (granting class certification because there was "no evidence that [plaintiff] employed a trading strategy independent of market price"). This is fatal to Defendants' argument.

Defendants' cases involved value investors, not quantitative traders for which market price is a key input, and are entirely inapposite. In *In re Vivendi Universal, S.A. Sec. Litig.*, 183 F. Supp. 3d 458, 465-67 (S.D.N.Y. 2016), "undisputed facts" demonstrated that "market price" was "not important" to plaintiff's "calculation of their intrinsic value." Further, the investment advisor there had "regular meetings and telephone conversations with Vivendi's senior management throughout the Class Period." *Id.*; *GAMCO Invs., Inc. v. Vivendi, S.A.*, 927 F. Supp. 2d 88, 102 (S.D.N.Y. 2013) (recognizing "this holding is sharply limited to its unusual facts" that plaintiffs "did not rely on the market price of [defendant's] securities as an accurate measure of their intrinsic value").[3]

---

case) rely on the integrity of the market. This is true even if they do not incorporate particular informational disclosures into their investment strategies.").

[3] Defendants' other cases fare no better. *In re Overstock Sec. Litig.*, 119 F.4th 787, 800 (10th Cir. 2024) (plaintiff admitted that issuer's "looming crypto dividend," not the alleged misstatements, "caused it to buy its [] stock"); *McGuinness v. Parnes,* 1988 WL 66214, at *3 (D.D.C. June 17, 1988) (plaintiff "did not believe that the market price reflected the market value of the stock"); *In*

*Second*, Defendants contend that Plaintiff's deposition "demonstrates conclusively" that



Opp. at 11. Plaintiff's Executive Director, Mr. Rankin, testified just the opposite. Mr. Rankin repeatedly testified that Oklahoma Firefighters would have sold its shares "at a much higher price" had "the whole truth and [] omissions [] been brought to light." Ex. R (Rankin Tr.) at 8:19-24, 194:23-195:3 ("had a Schedule 13G or D been filed, before [March 28], as was required by the SEC, that that price would have probably been higher than $39"). Indeed, once Musk admitted to his interest in Twitter, the stock price predictably shot up, and

*Compare* ECF No. 10-1 at 4 (March 28, 2022 sale at $39.09 per share), *with* ECF No. 165-6 at 25 (                                            ). Again, this testimony eviscerates Defendants' attacks.

*Finally*, Defendants' suggestion that Oklahoma Firefighters failed to "investigate" its investment manager and its trading strategy before seeking appointment as Lead Plaintiff is baseless. Opp. at 13-14 n.9. Courts have routinely certified classes where plaintiffs use ▮ as their third-party investment manager—including Judge Sullivan and Judge Rakoff—and courts routinely accept quantitative trading strategies as valid for predominance purposes. *See, e.g.*, *Wyeth*, 284 F.R.D. at 179; *Monster*, 251 F.R.D. at 139; *Grae v. Corr. Corp. of Am.*, 2021 WL

---

re Nat'l Century Fin. Enters., Inc._, 846 F. Supp. 2d 828, 888 (S.D. Ohio 2012) (no discussion of reliance in case precluding blue-sky law claims in plaintiffs' states); *Villella v. Chem. & Mining Co. of Chile Inc.,* 333 F.R.D. 39, 58 (S.D.N.Y. Sept. 24, 2019) ("appropriate rule" was whether plaintiff would have purchased "at the then-market price, not *any* price"—***supporting*** reliance here given that ▮ would have sold at a higher price). *DuPont v. Brady*, 828 F.2d 75 (2d Cir. 1987) (*cited at* Opp. 12), merely concerned the District Court's incorrect application of the "burden of persuasion" for reliance (*DuPont*, 828 F.2d at 78-79)—and on remand, the District Court held that "***defendant has not sustained his burden of overcoming the presumption of reliance***" (*DuPont v. Brady*, 680 F. Supp. 613, 614-16 (S.D.N.Y. 1988)).

1100799, at *24 (M.D. Tenn. Mar. 23, 2021) (certifying class where investment manager used "quantitative methods" for investments).

### B. Oklahoma Firefighters Is Typical

Discovery has reaffirmed that Oklahoma Firefighters is typical and will fairly and adequately protect the interests of the Class. *See* Mot. at 9-12.[4] As Mr. Rankin testified, Oklahoma Firefighters and other "investors nationwide sold shares at []artificially deflated prices," because once [Musk] did announce [his ownership stake and activist interest], the stock price shot up a significant amount." Ex. R (Rankin Tr.) at 8:11-18. Importantly, Defendants do not dispute that Plaintiff's claims arise from the same alleged course of conduct as the rest of the proposed class. Nor could they, as Mr. Rankin testified that Oklahoma Firefighters "could have sold at a much higher price had the truth, the whole truth and omissions been brought to light," including the fact that Musk was "misleading investors though tweets at the same time." *Id.* at 11:25-12:19.

Defendants' attacks fail. *First,* Defendants argue that Oklahoma Firefighters is subject to a unique defense because it supposedly did not rely on the "misstatements or omissions" when it made its investment decision. Opp. at 15. As discussed *supra*, Defendants' argument—and efforts to distinguish this case from the myriad other cases rejecting typicality challenges to quantitative trading strategies—is wrong. Courts have consistently held that the use of quantitative or algorithmic trading strategies, such as the one at issue here, do not render a class representative atypical or subject to unique defenses that would preclude class certification. *See, e.g., In re Oxford*

---

[4] Defendants' claim that Oklahoma Firefighters may be subject to unique defenses—which they are not—is not a basis to deny class certification. *WorldCom,* 219 F.R.D. at 281. The "unique defense" rule, which is "not rigidly applied in this Circuit . . . is intended to protect plaintiff class—not to shield defendants from a potentially meritorious suit." *In re Parmalat Sec. Litig.*, 2008 WL 3895539, at *5 (S.D.N.Y. Aug. 21, 2008). In fact, "it is beyond reasonable dispute that a representative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him that would not impact other class members." *Id.*

*Health Plans, Inc. Secs. Litig.*, 191 F.R.D. 369, 376 (S.D.N.Y. 2000) (rejecting defendants' argument that "proprietary trading methodology" rendered representative atypical because "[n]o purchaser of securities regardless of trading methodology or strategy would knowingly trade where material information has been misstated or withheld by an issuer'"); *WorldCom,* 219 F.R.D. at 281-82 ("swiftly reject[ing]" defendants' argument that plaintiffs "cannot be presumed to have relied [] on the market price" and thus were atypical where plaintiffs' trading methods were "used by many other investors," and reflected "an evaluation of the publicly available information about [defendant], whether by the named plaintiff, the advisor, or a computer model"); *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 72 (S.D.N.Y. 2009) (that proposed class representative "relie[d] on a particular benchmark to evaluate trades" and used "a particular trading strategy" did not render it atypical); *In re Nortel Networks Corp. Sec. Litig.,* 2003 WL 22077464, at *3 (S.D.N.Y. Sept. 8, 2003) (indexed trading strategy did not defeat typicality).

Defendants' reliance on decades-old cases that predate the modern era of trading and otherwise concern "unique defenses" not at issue here highlights the lack of legal support for their argument. *E.g., Cohen v. Laiti*, 98 F.R.D. 581, 583 (E.D.N.Y. 1983) (plaintiff testified that "many investment decisions were based on tips supplied by friends and business associates," which included "inside information") (*cited at* Opp. 15); *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 903 F.2d 176, 179-80 (2d Cir. 1990) (plaintiff "ha[d] notice of, and ha[d] investigated, the alleged fraud") (*cited at* Opp. 16).[5]

---

[5] *See also Weintraub v. Texasgulf Inc*., 564 F. Supp. 1466, 1471 (S.D.N.Y. 1983) (plaintiff seeking to represent seller class prior to announcement of tender offer was inadequate because plaintiff *purchased* shares prior to the announcement of the tender offer) (*cited at* Opp. 15); *Kline v. Wolf*, 88 F.R.D. 696, 699 (S.D.N.Y. 1981) (plaintiff's testimony indicated that "his purchases and sales did not depend upon either the financial statement or the *market's reaction* thereto") (*cited at* Opp. 15-17); *Rocco v. Nam Tai Elecs., Inc*., 245 F.R.D. 131, 136 (S.D.N.Y. 2007) (plaintiff made

*Second*, Defendants attempt to use Oklahoma Firefighters' algorithmic trading to cleanse Defendants' secret trading strategy. Opp. at 16-17. Defendants' cynical attempt should be rejected. Plaintiff does not allege that Defendants' algorithmic trading was *per se* unlawful. Rather, Defendants' secret trading strategy allowed Defendants to keep Musk's ownership interest secret and Twitter's stock price low—which turned into an illegal scheme when Defendants violated Section 13 at the start of the Class Period by deceiving investors regarding Musk's true interest in Twitter. *See* MTD Order at 27-30. Defendants' attempt to excuse their conduct that the Court expressly credited in sustaining Plaintiff's Section 10(b) claims is irrelevant to whether a class should be certified, because Defendants' conduct impacted all Class members uniformly and, thus, is a class-wide issue. *In re Avon Sec. Litig.*, 1998 WL 834366, at *5 (S.D.N.Y. Nov. 30, 1998) ("[d]ecisions regarding class action certification are . . . not [an] inquiry into the merits of the plaintiffs' claims").

## C.    The Class Is Entitled To The *Affiliated Ute* Presumption of Reliance

As set forth in Plaintiff's Motion, because Defendants illegally concealed highly material information regarding Musk's interest in Twitter, the Class is entitled to a presumption of reliance under *Affiliated Ute*. *See Gruber v. Gilbertson*, 2019 WL 4439415, at *6 (S.D.N.Y. Sept. 17, 2019); Mot. at 14-15. ███████████████████████████████████████████████

████████████████████████████████████████████████ and Defendants do not

---

"numerous post-class purchases" after "revelation of an alleged fraud") (*cited at* Opp. 16); *Kamerman v. Ockap Corp.*, 112 F.R.D. 195, 196-98 (S.D.N.Y. 1986) (plaintiff "learned of the alleged omissions and misstatements of fact before the merger vote") (*cited at* Opp. 16); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 430-31 (7th Cir. 2015) (allowing discovery into class members who affirmatively stated they would have purchased the company's stock even if they had they known about the company's fraud) (*cited at* Opp. 16); *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 153 (S.D.N.Y. 2010) ("corrective disclosure addressed alleged misstatements issued after [plaintiff's] purchases") (*cited at* Opp. 10, 16); *IBEW Loc. 90 Pension Fund v. Deutsche Bank AG*, 2013 WL 5815472, at *22 (S.D.N.Y. Oct. 29, 2013) (plaintiffs were indisputably "in-and-out-traders") (*cited at* Opp. 12).

contest materiality in their Opposition. The Class is thus entitled to the *Affiliated Ute* presumption of reliance. *Puddu v. NYGG (Asia) Ltd.*, 2022 WL 2304248, at \*4 (S.D.N.Y. June 27, 2022) (applying *Affiliated Ute* presumption where defendants "fail[ed] to disclose [individual defendant's] relationship with [company]" because "[t]hese omissions are material").

Defendants' challenges to the *Affiliated Ute* presumption fail. **First,** Defendants argue that Plaintiff must choose between the *Affiliated Ute* and *Basic* presumptions of reliance. Opp. at 17-18. This is wrong. Courts in this District have applied both presumptions of reliance in cases involving claims that are "primarily" omissions-based, but also involve misstatements. *See, e.g., Bank of America*, No. 09-cv-00580, ECF No. 203 at 16-19 (S.D.N.Y. Feb. 6, 2012) (plaintiffs entitled to both *Basic* and *Affiliated Ute* presumption of reliance where defendant omitted and misstated material information); *Strougo v. Barclays PLC*, 312 F.R.D. 307, 319 (S.D.N.Y. 2016) (plaintiffs were entitled to both the *Affiliated Ute* and *Basic* presumption of reliance where "the material omissions [and] not the affirmative statements [] are [at] the heart of this case"); *Fogarazzo v. Lehman Bros., Inc*., 263 F.R.D. 90, 102, 104-06 (S.D.N.Y. 2009) (certifying class and applying both *Basic* and *Affiliated Ute* presumptions where plaintiffs "demonstrate[d] that material misrepresentations were publicly disseminated and that [] shares traded in an efficient market," and where plaintiffs "are alleging claims based on the omissions themselves"); *see also St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc.*, 2022 WL 4598044, \*5 (M.D. Tenn. Sept. 30, 2022) ("under the *Basic* and *Affiliated Ute* presumptions, for purposes of class certification, reliance will be presumed as to [p]laintiffs' claims, including the scheme claims").[6]

**Second**, Defendants contend that *Affiliated Ute* does not apply because Plaintiff's "omissions" claim is "indistinguishable" from its misstatement claims. Opp. at 18. This argument

---

[6] Regardless, the *Basic* presumption applies to Musk's misstatements. Mot. at 16-17; Section II.D.

likewise fails. In making this argument, Defendants ignore this Court's finding that Plaintiff "alleges that—in addition to the dissemination of tweets—Defendants engaged in **separate, additional acts** to perpetuate the scheme." MTD Order at 27-30, 42. Moreover, this Court sustained Defendants' misstatements independent of the scheme claim. *Id.* at 38-42. Accordingly, this case is in line with other scheme liability cases in which the plaintiffs alleged other deceptive acts in addition to misstatements, and the courts applied the *Affiliated Ute* presumption. *In re DiDi Glob. Inc. Secs. Litig.*, 2025 WL 1909295, at *16 (S.D.N.Y. July 7), *adopted* 2025 WL 2345696 (Aug. 13, 2025) (failure to disclose investigation and ban on company's acceptance of new users was "distinct from the false or misleading statements themselves"); *WorldCom*, 219 F.R.D. at 297-98 (scheme "to misrepresent WorldCom's financial condition").

Unlike Defendants' cases, the alleged deceptive acts here—including Defendants' trading strategy to secretly build up Musk's stake in Twitter—are not "simply the inverse" of Defendants' misstatements. *Waggoner v. Barclays PLC*, 875 F.3d 79, 96 (2d Cir. 2017); *In re FirstEnergy Corp. Sec. Litig.*, 149 F.4th 587, 619 (6th Cir. Aug. 13, 2025) (alleged omissions did not have "standalone impact apart from the alleged misrepresentations"); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2 F.4th 1199, 1206 (9th Cir. 2021) (primarily a misstatement case given "more than nine pages of affirmative misrepresentations" in complaint).

***Third***, Defendants contend that because reliance is not "impossible to prove as a practical matter," *Affiliated Ute* cannot be invoked. Opp. at 11, 19. Defendants misstate the law. The *Affiliated Ute* presumption applies in cases "involving primarily a failure to disclose," like this one. 406 U.S. at 153; *see, e.g.*, *Smith Barney*, 290 F.R.D. at 47 (Opp. at 11) (*Affiliated Ute* applies "[w]hen a defendant's fraud consists ***primarily of omissions***"); *Waggoner*, 875 F.3d at 93 (Opp. at 11) ("element of reliance to be presumed in cases involving ***primarily omissions***, rather than

12

affirmative misstatements, because proving reliance in such cases is, in many situations, virtually impossible"). Like other typical omissions cases, Plaintiff is entitled to the *Affiliated Ute* presumption **precisely because** of the problem in proving direct reliance in the **absence** of information. *Smith Barney*, 290 F.R.D. at 48; *Waggoner*, 875 F.3d at 93.[7]

### D.    The Class Is Entitled To The *Basic* Presumption of Reliance

Plaintiff's Motion establishes that it has readily satisfied the relevant tests for market efficiency. Mot. at 17-23; Mason Report Section VI (establishing all *Cammer* and *Krogman* factors are satisfied). "Having satisfied *Basic*'s three prerequisites, Plaintiff is entitled to a [class-wide] presumption of reliance." *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at *11 (S.D.N.Y. July 10, 2019). Notably, Defendants do not challenge market efficiency. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ferrell Rebuttal ¶35; Ex. I (Ferrell Tr.) at 37:23-38:12, 46:19-48:10. Given Defendants' admissions, "the Court can presume that the misrepresentation affected the stock price, and that the plaintiff bought the stock in reliance on the defendant's misrepresentation." *Signet*, 2019 WL 3001084, at *11.

In response, Defendants attempt to rebut the *Basic* presumption of reliance by contending that Musk's misrepresentations and Defendants' fraudulent scheme had **no** impact on the price of Twitter securities. Opp. at 19-21. "[I]t is [d]efendants' burden to show the **absence** of price impact – not merely to challenge [p]laintiff on the persuasiveness of its own price impact claim – once *Basic*'s presumption of reliance attaches." *Signet*, 2019 WL 3001084, at *17. To do so, a

---

[7] Defendants' reliance on *Waggoner v. Barclays PLC* is misplaced. 875 F.3d at 96 (plaintiffs "focus[ed] their claims" and class certification arguments on "numerous affirmative misstatements," and plaintiffs' alleged omissions were "related to the **earlier** statements [p]laintiffs also claim are false"—unlike Musk's misstatements here, which were made **after** Musk violated his obligation to timely file a Schedule 13D).

defendant cannot "merely [] offer evidence that, if believed, would support a finding of a lack of price impact." *Goldman Sachs Grp. v. Ark. Teacher Ret. Sys.*, 594 U.S. 113, 125–26 (2021). As the Supreme Court explained, "*Basic* and *Halliburton II* plainly require more: The defendant must in fact sever the link between a misrepresentation and the price paid by the plaintiff—and a defendant's mere production of *some* evidence relevant to price impact would rarely accomplish that feat." *Id.* (cleaned up) (emphasis in original). Defendants have utterly failed to "carry that burden by a preponderance of the evidence." *Id.* at 126 (citing *Waggoner*, 875 F.3d at 99).

### a.    Defendants' Arguments Do Not "Fit" This Case

As an initial matter, Defendants' expert has admitted that



Ex. I (Ferrell Tr.) at 86:19-87:7, 104:13-105:24, 108:18-109:16, 112:14-113:11. These admissions are fatal to Defendants' price impact challenge.

Plaintiff's allegations are clear that Musk's misrepresentations "misdirect[ed] the public" so "Musk could continue purchasing Twitter without relaying to the public that he had acquired over 5%"—thereby maintaining the artificially deflated price of Twitter's securities during the Class Period. MTD Order at 39-40 ("Musk's ['giving serious thought'] tweet can be reasonably read as an affirmative representation that Musk had no interest in Twitter."); ¶¶17, 159-161, 229-31 (alleging that Musk's misrepresentations "conceal[ed] that he was pursuing an active role at Twitter," omitted that he "already owned over 7.9% of Twitter's outstanding stock," and were thus "***keeping the price of Twitter's securities artificially depressed***"). Dr. Mason extensively opined that Musk's misrepresentations "maintained what was viewed as his existing position on Twitter" and "support[ed] the status quo," and thus "maintained the deflation" in the prices of Twitter

14

securities. Mason Report ¶3, Section VIII; Ex. J (Mason Tr.) at 61:22-64:21, 174:17-176:12, 180:2-6 ("I've seen evidence to support plaintiff's interpretation of these tweets as maintaining the status quo, misstating [Musk's] position at the time").

█████████████████████████████████████████ Defendants' refusal to credit Plaintiff's own allegations and to instead attack allegations of their own creation must be rejected.

### b. The Presence Of Substantial "Back-End" Price Impact Undercuts Any Claimed Lack Of Price Impact

The price impact challenges Defendants do make can easily be rejected. Focusing exclusively on the "front end," Defendants contend there is no price impact for the March 26 tweets, because the price of Twitter stock did not decline by a statistically significant amount on the next trading day. Opp. at 20. Defendants misstate both the law and the facts.

*First*, there is no economic (or other) reason why Musk's misrepresentations would have resulted in a statistically significant price reaction on the next day. As discussed *supra*, Defendants' argument ignores Plaintiff's sustained theory of fraud—*i.e.*, that Musk's misrepresentations served to "confirm the status quo regarding thoughts about his involvement in Twitter" and "maintained the deflation" in the price of Twitter stock. Ex. J (Mason Tr.) at 61:22-64:21, 176:6-176:12. ████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████ *See* Ex. I (Ferrell Tr.) at 44:25-45:21. Because Musk's misrepresentations

██████████████████████████████████████████████████

██████████████████████████ (Ex. H (Mason Reply) at ¶11), there is no reason why Musk's misrepresentations would cause any reaction in the prices of Twitter's securities.

*Second*, it is well-established that "securities-fraud defendants cannot avoid liability for an alleged misstatement merely because the misstatement is not associated with an uptick in inflation"—or, here, an uptick in deflation. *Vivendi*, 838 F.3d at 259; *see also, e.g.*, *Barclays PLC,* 310 F.R.D. at 95 ("The failure of an event study to find price movement does not prove lack of price impact with scientific certainty."); *Waggoner,* 875 F.3d at 104-05 (agreeing that "the lack

of price movement on the dates of the alleged misrepresentations does not rebut the *Basic* presumption" given "post–disclosure drop in stock price").



*Finally*, while Musk's misrepresentations maintained the "status quo" of Twitter's securities on the front-end, there is uncontroverted evidence of substantial "back-end" price impact. Twitter's stock price soared nearly 30% after investors finally learned of Musk's massive ownership in Twitter on April 4 and his activist intentions on April 5. ¶¶176-89; Mason Report ¶¶25-27. Both Dr. Mason and Dr. Ferrell *agree* ███████████████████████ ██████████████████████████████ Mason Report ¶71; Ex. I (Ferrell Tr.) at 64:6-64:9 (█████████████████████████████████ ████████████████████). Market participants noted that Musk's March 26 tweets—in particular his tweet regarding starting a competing social media platform—were contradicted by Musk's revelation of a massive interest in Twitter. *See infra* 18-19. Defendants clearly "have not established an absence of backend price impact by a preponderance of the evidence," which is fatal

17

to any price impact challenge. *Signet*, 2019 WL 3001084, at \*18 n.8.

### c.    The Corrective Disclosures Addressed Exactly The Same Subject Matter As Musk's Misrepresentations

Defendants claim there is a "mismatch" between Musk's misrepresentations and the corrective disclosures, because supposedly "there is no evidence that the market linked the April 4 disclosure to the [March 26] Tweets." Opp. at 20-21. This is "simply a loss causation argument in disguise, because it tests the causal relationship between the alleged misstatements and the price decline." *Signet*, 2019 WL 3001084, at \*20 (rejecting a similar argument from Dr. Ferrell because it "goes beyond the Rule 23 inquiry"); *Pirnik v. Fiat Chrysler Auto., N.V.*, 327 F.R.D. 38, 47 (S.D.N.Y. 2018) ("plaintiffs are not required to establish loss causation on class certification.").

Moreover, Defendants' claim is a stunning misrepresentation of the facts. The record is *replete* with analysts and other commentators "linking" the April 4 and 5 disclosures to the March 26 tweets—███████████████████████████████. By way of example only:



(i)    April 4, 2022 The Guardian article: "[r]egulatory filings show that Musk hit the mark on 14th March, days before he criticised Twitter's online moderation for not protecting free speech, *saying that he was 'giving serious thought' to building a new platform*." (Ex. K);

(ii)    April 4, 2022 Barron's report: "[Mr. Musk's] stake in Twitter does appear to remove one small risk for Twitter — that Musk would start his own social media platform" (Ex. L);

(iii)    ███████████████████████████████████████████████████████████

(iv)    ███████████████████████████████████████████████████████████

(v)    April 4, 2022 article from The Deal entitled "Musk Becomes Twitter's Largest Holder" acknowledged reports that "*Musk has given serious thought to building a new social media platform rival to Twitter*" (Ex. O); and

(vi)    ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████ But a disclosure need not "take the

form of a 'flashing neon light,' with an explicit message stating that it is intended to cure an earlier

fraudulent statement, in order for it to qualify as corrective." *Signet*, 2019 WL 3001084, at *14-17

(rejecting Dr. Ferrell's interpretation of whether a disclosure was corrective and the market's

attendant knowledge as "simply not correct"); *Jaeger v. Zillow Group, Inc.*, No. 24-6605, ECF

No. 41.1 at 4 (9th Cir. Sept. 26, 2025) (alleged misstatements concerning pricing models and

curative disclosures concerning company's inability to forecast home prices "are matched enough

under *Goldman*").

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

19

██████ Defendants' claimed "mismatch" is purely illusory.[8]

In an attempt to manufacture a "mismatch," Defendants have reframed Plaintiff's Complaint as alleging the tweets were unfavorable news for Twitter. Opp. at 20-21; Ferrell Rebuttal ¶31. ██████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████ Ex. I (Ferrell Tr.) at 100:25-101:15, 113:21-116:14, 123:15-125:2. And for good reason: Plaintiff alleged—and the Court sustained—that "Musk's tweets were false and misleading as they gave the impression that he was contemplating building a new social media platform to serve as an alternative to Twitter—when in truth, Musk was secretly engaged in purchasing Twitter outright." ¶¶155-65; MTD Order at 37-40. Defendants cannot rewrite Plaintiff's allegations and the Court's ruling—that alone warrants rejection of this argument.

### d.    The *Basic* Presumption Applies To Defendants' Scheme

Because Defendants have failed to show the absence of price impact of the March 26 Tweets ████████████████████████████████████ Defendants' claim that the *Basic* presumption does not apply to the scheme claim fails. Opp. at 21. Courts regularly find that the *Basic* presumption applies where defendants failed to disclose material information in violation of their regulatory obligations and also issued misstatements, as noted *supra*.

Defendants' argument that Musk's trading strategy—in which he sought to secretly acquire billions of dollars of Twitter stock in violation of his regulatory obligations—did not have a price impact defies a basic understanding of the scheme. Defendants' entire purpose in the algorithmic

---

[8] *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.,* 77 F.4th 74, 102 (2d Cir. 2023) (*cited at* Opp. at 21) involved completely different circumstances. There, the District Court acknowledged that statements such as "integrity and honesty are at the heart of our business" did "present as platitudes when read in isolation." *Id.* at 93. However, the alleged corrective disclosures concerning conflict-in-interest management did not "align in genericness with the alleged misrepresentation" and "look[ed] nothing like the original" misstatements. *Id.* at 100.

20

trading scheme was to "not [] push [the] price" (¶¶93, 103)—*i.e.*, to maintain the price at the level it would have been absent Defendants' purchases. Defendants' claim that there was a purported lack of market commentary about the "speed with which Musk accumulated his stake in Twitter" or "having participated in an undisclosed scheme" is a non sequitur. Opp. at 22. Plaintiff does not allege that the April 4 disclosure had anything to do with the *speed* of Musk's acquisition. MTD Order at 16 (the erroneous Schedule 13G Defendants filed on April 4 is "when the public first learned that Musk was Twitter's largest shareholder").[9] Defendants' improper reframing of the Complaint's allegations and "contentions about what can or cannot cause a price drop are arguments about loss causation," and can be easily rejected. *Barclays PLC*, 310 F.R.D. at 99-100; *NYSE Specialists*, 260 F.R.D. at 78 (finding that *Basic* presumption applies to "market manipulation case" involving "illicit trading" and agreeing that "individual proof of reliance is not required").[10]

### E.    Plaintiff's Proposed Damages Methodology Satisfies *Comcast*

*Comcast* "simply does not impose a high hurdle" in securities class actions such as this (*In re Teva Sec. Litig.,* 2021 WL 872156, at *41 (D. Conn. Mar. 9, 2021)), which—unlike the antitrust claims in *Comcast*—concern publicly available stock prices derived from trading in an efficient market in response to alleged public misstatements. The Second Circuit has repeatedly confirmed

---

[9] ██████████████████████████████████████████████████████████████

[10] Given Defendants' failure to rebut the *Basic* presumption as to the affirmative misstatements, Defendants reliance on *Desai v. Deutsche Bank Secs. Ltd.*, 573 F.3d 931 (9th Cir. 2009) and other cases outside of this Circuit is irrelevant and in any event not binding on this Court. *See In re UBS Auction Rate Sec. Litig.*, 2010 WL 2541166, at *26 (S.D.N.Y. June 10, 2010) ("the Second Circuit has not adopted [*Desai*'s] holding. This court agrees with the analysis of this issue as explained in *In re Initial Public Offering,* 671 F. Supp. 2d 467 (S.D.N.Y. 2009), in which defendants set forth and the court rejected the same argument"). Similarly, given Defendants' public misrepresentations, *Stoneridge Inv. Partners v. Sci.-Atlanta*, 552 U.S. 148 (2008) and Defendants' cases relying on *Stoneridge* are inapposite. Opp at 21-22.

that *Comcast* only requires that Plaintiff "show that their damages stemmed from the defendant's actions that created the legal liability." *Sykes v. Mel S. Harris & Assocs., LLC*, 780 F.3d 70, 88 (2d Cir. 2015); *Waggoner*, 875 F.3d at 106 (same); *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 402, 407 (2d Cir. 2015) ("*Comcast* does not mandate that certification pursuant to Rule 23(b)(3) requires a finding that damages are capable of measurement on a class-wide basis."). Certification is proper even in cases "involving individualized damages calculations." *Id.* at 408; *Strougo*, 312 F.R.D. at 313 ("Issues and facts surrounding damages have rarely been an obstacle to establishing predominance in section 10(b) cases.").

As explained in Plaintiff's Motion and Dr. Mason's initial report, Plaintiff will measure class-wide damages using an event study model and deflation ribbon. Mot. at 23-24; Mason Report at ¶¶61-64, 106-20. Dr. Mason's event study methodology matches Plaintiff's theory of injury because it assesses the artificial deflation in the price of Twitter securities stock price caused by Defendants' scheme and Musk's misrepresentations. Mason Report ¶¶113-22; Ex. H (Mason Reply) at ¶¶12-16. This is the "standard operating procedure in federal securities litigation" that "has been sustained by many circuits." *See Vivendi*, 838 F.3d at 253-54. Nothing more is required.

Defendants' recycled *Comcast* challenges should be rejected—as they have been rejected by virtually every court to hear them. *See* Ex. Q (citing 113 cases rejecting *Comcast* arguments).

***First***, Defendants posit that Plaintiff's proposed methodology does not "account for the differences in deflation relating to Musk's intentions concerning Twitter" and Musk's increasing ownership stake in Twitter. Opp. at 23-24. This argument has been rejected by the Second Circuit and every other court to consider it. Class certification is appropriate "even accepting" the premise that "inflation [or deflation] would have varied during the class period in this case and that such variation could not be accounted for." *Waggoner*, 875 F.3d at 106; *e.g.*, *In re Waste Mgmt. Sec.*

*Litig.*, 775 F. Supp. 3d 742, 764–65 (S.D.N.Y. 2025) ("a common methodology can be used to calculate the inflated amount for each Note and for each day during the Class Period"); *Pirnik*, 327 F.R.D. at 47 ("The Second Circuit has held, however, that *Comcast* does not require [p]laintiffs to account for variations in inflation throughout the class period at the class certification stage."). Dr. Ferrell attempted to make this same argument in *Signet*, and Judge McMahon rejected it as "unpersuasive," noting that the Second Circuit's opinion in *Waggoner* had "explicitly rejected the notion that *Comcast* requires that damage calculations be so precise as to account for variations in inflation over time." *Signet*, 2019 WL 3001084, at *20. The same outcome applies here.

In any event,



Moreover, by the start of the Class Period on March 25, Musk had already spent over $2.1 billion to accumulate 59.97 million shares of Twitter common stock and violated his disclosure obligations (¶91)—that is more than sufficient to capture the market's full reaction to Musk's massive acquisition of Twitter stock. While Defendants are free to present a different calculation to the jury, *Comcast* does not preclude certification here.

*Second*, Defendants wrongly claim that Dr. Mason's methodology is insufficient because he has not yet identified and disaggregated any confounding information. Opp. at 24. Courts are

---

[11] ████████████████████████████████████████████████████████ Ex. H (Mason Reply) at ¶¶25-26.

clear that disaggregation is a merits issue, and "plaintiffs are not required to demonstrate either loss causation or damages for purposes of class certification." *Barclays*, 310 F.R.D. at 99 (rejecting argument that confounding information precluded certification); *Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 328 F.R.D. 86, 99 (S.D.N.Y. 2018) (failure to rule out "any alternative causes or contributing factors" did not defeat predominance); *Pirnik*, 327 F.R.D. at 46 ("[p]laintiffs are not required at this stage to demonstrate that any price impact was due to the prior misrepresentations alone").

Moreover, Dr. Mason's methodology rests on ███████████████████████ including an event study and a deflation ribbon, to "disaggregate the price impact of such confounding information" from the price impact of the fraud-related information. Ex. H (Mason Reply) at ¶¶12, 14-16, 26, 30; Ex. J (Mason Tr.) at 96:19-97:11; Mason Report at ¶¶110-22. As part of his "preliminary analysis," Dr. Mason determined that there were no "other releases around that time of information relating to Twitter that would constitute confounding information." Ex. J (Mason Tr.) at 87:10-88:12. There is "no reason" why Dr. Mason's "event study—the generally accepted method for measuring damages in a securities fraud class action—cannot work in this case." *Signet*, 2019 WL 3001084, at *20 (rejecting Dr. Ferrell's "suggestion that an event study is incapable of disaggregating the effects of confounding information").

Defendants claim that Musk's board ownership is additional information disclosed on April 5, the impact of which would need to be disaggregated. Not only is this premature, ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

24

***Third***, Defendants' argument that market participants did not "link" the disclosures on April 4 and April 5, 2022 to Musk's misstatements is nonsense, as discussed *supra*.

***Fourth***, Defendants claim that, because there were "curative disclosures over multiple days," Dr. Mason was required to explain how each corrective disclosure "would have changed the total mix of information." Opp. at 25. Defendants appear to be arguing that the market understood Musk's disclosure of his ownership interest on April 4 as also disclosing his activist interest; and thus his Schedule 13D the next day confirming his activist interest did not convey any new information. But under Defendants' own logic, the stock price reaction on April 4 (and the ongoing response on April 5 and thereafter) was ***solely*** in response to Musk's ownership interest. Defendants' argument makes calculating damages simpler, not harder.[12]

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████

## III.   CONCLUSION

Plaintiff respectfully requests that the Court certify this Action as a class action under Rule 23, appoint Plaintiff as the Class Representative, and appoint Bernstein Litowitz as Class Counsel.

---

[12] Defendants' out-of-Circuit cases carry no weight. *Jaroslawicz v. M&T Bank Corp.,* 2024 WL 2975766, at \*9 (D. Del. June 13, 2024) (expert's report did "***not comment in any way or provide any methodological options to address intervening or confounding factors regarding price impact or the potential for price impact to vary throughout the class period***"); *Kottaras v. Whole Foods Mkt., Inc.,* 281 F.R.D. 16, 25-26 (D.D.C. 2012) (expert in antitrust case "could not even tell the Court the precise analyses he intended to undertake"); *Loritz v. Exide Tech.,* 2015 WL 6790247, \*22 (C.D. Cal. July 21, 2015) (*cited at* Opp. at 25) ("[p]laintiffs failed to set forth any model of damages (let alone one tied to their theory of liability) in their opening brief," and plaintiffs' rebuttal report only "discusses general techniques for computing damages" and "fail[ed] to tie these theories to the facts of this case or to each other").

25

Dated: October 7, 2025

**BERNSTEIN LITOWITZ BERGER**
 **& GROSSMANN LLP**

*/s/ Katherine M. Sinderson*
Salvatore J. Graziano
Katherine M. Sinderson
Jeremy P. Robinson
Jonathan G. D'Errico
Emily A. Tu
Rebecca S. Temkin
1251 Avenue of the Americas
New York, NY 10020
Phone: (212) 554-1400
Fax: (212) 554-1444
salvatore@blbglaw.com
katie@blbglaw.com
jeremy@blbglaw.com
jonathan.derrico@blbglaw.com
emily.tu@blbglaw.com
rebecca.temkin@blbglaw.com

*Lead Counsel for Lead Plaintiff Oklahoma Firefighters Pension and Retirement System, Lead Counsel for the Class, and Proposed Class Counsel*

**BISHOP PARTNOY LLP**

Frank I. Partnoy
1717 K Street, NW Suite 900
Washington, DC 20006
Telephone: (202) 787-5769
frank@bishoppartnoy.com

*Additional Counsel for Lead Plaintiff Oklahoma Firefighters Pension and Retirement System*

26

## ATTORNEY CERTIFICATION PURSUANT TO LOCAL RULE 7.1(c)

I, Katherine M. Sinderson, an attorney duly admitted to practice before this Court, hereby certify pursuant to Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, that the foregoing Reply Memorandum of Law contains 8,645 words in accordance with the Court's Order granting Plaintiff's Letter Motion for Leave to File Excess Pages on September 12, 2025 (ECF No. 180). In making this calculation, I have relied on the word count of the word-processing program used to prepare this Memorandum.

*/s/ Katherine M. Sinderson*
Katherine M. Sinderson