# Exhibit R

**In the Matter Of:**

Oklahoma Firefighters vs Musk

1:22-CV-03026-ALC-GWG

**CHASE RANKIN**

*July 15, 2025*

*30b6*



800.211.DEPO (3376)
EsquireSolutions.com

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

No. 1:22-CV-03026-ALC-GWG

Class Action

-----------------------------------------------x

OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT

SYSTEM,

                    Plaintiff,

v.


ELON R. MUSK, ELON MUSK REVOCABLE TRUST DATED

JULY 22, 2003, EXCESSION LLC, AND JARED

BIRCHALL,

                  Defendants.

-----------------------------------------------x


DATE:  JULY 15, 2025


   Video-recorded 30(b)(6) Deposition of

       Plaintiff, by Chase Rankin


Stenographically Reported By:

Mark Richman, CSR, CCR, RPR, CM

Job No. J13133847



Tuesday, July 15, 2025

9:03 a.m.

Video-recorded 30(b)(6) Deposition of Oklahoma Firefighters Pension and Retirement System by its Corporate Designee Chase Rankin, held at the offices of Quinn Emanuel Urquhart & Sullivan LLP, 295 Fifth Avenue, New York, New York, before Mark Richman, a Certified Shorthand Reporter, Certified Court Reporter, Registered Professional Reporter, and a Notary Public within and for the State of New York.



A P P E A R A N C E S:

BERNSTEIN LITOWITZ BERGER & GROSSMAN LLP

Attorneys for the Witness and the Class

1251 6th Avenue

New York, NY 10020


BY:    KATHERINE M. SINDERSON, ESQ.

       EMILY A. TU, ESQ.


QUINN EMANUEL URQUHART & SULLIVAN LLP

1300 I Street NW #900

Washington, DC 20005

            -

295 Fifth Avenue

New York, New York 10016


BY:    SARAH HEATON CONCANNON, ESQ.

       AMY ELIZABETH SHEHAN, ESQ.


ALSO PRESENT:

JONATHAN POPHAM, VIDEOGRAPHER



C. RANKIN - 7.15.25

THE VIDEOGRAPHER:  Good morning. We are now on the record.  The time is 9:03 a.m. on July 15th, 2025.

This begins Media 1 of the video recorded deposition of Chase Rankin taken in the matter of Oklahoma Firefighters Pension and Retirement System versus Elon R. Musk, et al., in the United States District Court for the Southern District of New York, case number 1:22-CV-03026-ALC-GWG.

This deposition is taking place at Quinn Emanuel, 295 Fifth Avenue, New York, New York.

My name is Jonathan Popham and I'm your videographer today.  The court reporter is Mark Richman.  We are representing Esquire Deposition Solutions.

Counsel, will you please introduce yourselves and state your affiliations for the record.

MS. CONCANNON:  So I'm Sarah



C. RANKIN - 7.15.25

Heaton Concannon of Quinn Emanuel Urquhart & Sullivan, I represent the defendants in this case, Elon Musk, the Elon Musk Revokable Trust Excession, LLC and Jared Birchall.  09:05

With me is my colleague Amy Shehan.

MS. SINDERSON:  Katie Sinderson of Bernstein Litowitz Berger & Grossman, on behalf of the witness and Class, and with me is my colleague Emily Tu.  09:05

MS. CONCANNON:  And, Mr. Rankin is being deposed under Rule 30(b)(6) as the corporate designee for Oklahoma Firefighters.  09:05

THE VIDEOGRAPHER:  Will the court reporter please swear in the witness.

CHASE RANKIN, called as a witness, having been first duly sworn by the Notary Public (Mark Richman), was examined and testified as follows:

//



C. RANKIN - 7.15.25

So, when he reached that, when he reached that 5 percent holding in Twitter approximately March 24th, the next day he should have disclosed to the public that he was not only buying shares as a passive investor but he was actively seeking to control Twitter as evidenced by conversations to -- with the board to take a seat.

During that class period, while -- after the ten days and before the disclosure, we at Oklahoma Fire and I'm sure many investors nationwide sold shares at those artificially deflated prices because once he did announce, very predictably, the stock price shot up a significant amount.

So during that, during that class period when we sold the 14,000 shares we could have, we could have sold it at a much higher price had the, had the truth, the whole truth and un-- and omissions been, been brought to light.

Q.    How did the alleged scheme, as



C. RANKIN - 7.15.25

He could file a 13G if you are not seeking.  That has to come with a certification which he did not even include in the 13G. 09:11

Once the Twitter board announced that he was taking a seat, the full truth then came out and he filed a 13D immediately after.

So there was a lot of things that 09:11 led up to, to this, including really well known that, you know, that if someone like Elon Musk who is very influential in the marketplace makes some kind of announcement, the 09:12 expectation of the marketplace would be that the stock price would go up.

Mr. Musk and Mr. Birchall both, in the complaint we outlined that even both of them understood that the most 09:12 likely scenario that if they were, if they were to disclose their 5 percent holding that the stock price would likely go up.

Q.    In your prior response you said 09:12



C. RANKIN - 7.15.25

that Oklahoma Firefighters could have sold at a much higher price had the truth, the whole truth and omissions been brought to light.                    09:12

What omissions were you referring to there?

A.    Well, I mean specifically a couple of different things.

One, the fact that he was buying,    09:12 buying an ownership interest in it that exceeded 5 percent as required by the SEC, after ten days of passing the 5 percent.

And two, that he was talking to    09:12 the board, that he was seeking to take an activist role when he was really misleading investors through tweets at the same time.

And, and also by filing of a 13D    09:13 which appropriately suggested that he was taking an active role, not a 13G which would -- which would show that he does not intend to influence the board.

Q.    How many times have you been    09:13



C. RANKIN - 7.15.25

MS. SINDERSON:  Objection, misstates testimony.

A.    What -- the issue at hand is that the scheme continued past a disclosure period by Mr. Musk which happened in, as we talked about, lapsed on March 24th.

So the shares that we sold on 3/28, whether we would have sold them or not, if we had of sold them, it's my belief that the share price would have been higher as reflected by what exactly happened.

After he did file his 13G and 13D, the stock price rose.

Q.    But you don't know whether or not the INTECH quantitative algorithm would have triggered a sale on March 28th if a 13, Schedule 13D filing had been made on March 24, 2022?

MS. SINDERSON:  Objection, form.

A.    I know that we did sell and we sold at $39.  And it is my belief that had a Schedule 13G or D been filed, before that date, as was required by the

12:44
12:44
12:44
12:45
12:45



C. RANKIN - 7.15.25

SEC, that that price would have probably been higher than $39.

Q.    But you don't know one way or the other whether the algorithm would have      12:45
triggered a sale on March 28th if a Schedule 13D filing had been made on March 24th?

        MS. SINDERSON:  Objection to form.      12:45

A.    I do not know.

        (Exhibit 9, Lead Plaintiff's initial disclosures pursuant to the Federal Rule of Civil Procedure 26(a)(1) was marked for      12:45
identification.)

Q.    Court reporter has handed you what's been marked as Exhibit 9, which is a copy of Lead Plaintiff's initial disclosures pursuant to the Federal Rule      12:46
of Civil Procedure 26(a)(1).

        Do you see that?

A.    I do.

Q.    And this is dated November 1st, 2023.  On the final page 7 it has the      12:47

