UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
OKLAHOMA FIREFIGHTERS PENSION AND
RETIREMENT SYSTEM,                                                :

               Plaintiff,                                 :

         -v.-                                           <u>OPINION AND ORDER</u>
                                :    22 Civ. 3026 (ALC) (GWG)

ELON R. MUSK, ELON MUSK REVOCABLE
TRUST DATED JULY 22, 2003,                                       :
EXCESSION, LLC, and JARED BIRCHALL,
                                :

               Defendants.
-----------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, United States Magistrate Judge:**

      Plaintiff Oklahoma Firefighters Pension and Retirement System moves the Court for an

order requiring defendants — Elon R. Musk, the Elon Musk Revocable Trust dated July 22,

2003, Excession, LLC, and Jared Birchall — "to decide whether they will rely on counsel as an

affirmative defense."[1]  We grant the motion as set forth below.

I.     <u>The Complaint and Defendants' Legal Obligations</u>

      Plaintiff brought this federal securities class action against defendants alleging that they

---

[1] <u>See</u> Notice of Plaintiff's Motion to Require Defendants to Decide Whether They Will Rely on
Counsel as an Affirmative Defense, filed Sept. 5, 2025 (Docket # 172) ("Mot."); Plaintiff's
Memorandum of Law in Support of Its Motion to Require Defendants to Decide Whether They
Will Rely on Counsel as an Affirmative Defense, filed Sept. 5, 2025 (Docket # 173) ("Mem.");
Declaration of Katherine M. Sinderson in Support of Plaintiff's Motion to Require Defendants to
Decide Whether They Will Rely on Counsel as an Affirmative Defense, filed Sept. 5, 2025
(Docket # 174) ("Pl.'s Decl."); Defendants' Memorandum of Law in Opposition to Plaintiff's
Motion to Require Defendants to Decide Whether They Will Rely on Counsel as an Affirmative
Defense, filed Sept. 19, 2025 (Docket # 183) ("Opp."); Declaration of Sarah Heaton Concannon
in Support of Defendants' Opposition to Plaintiff's Motion to Require Defendants to Decide
Whether They Will Rely on Counsel as an Affirmative Defense, filed Sept. 19, 2025 (Docket
# 184); Plaintiff's Reply Memorandum of Law in Support of Its Motion to Require Defendants
to Decide Whether They Will Rely on Counsel as an Affirmative Defense, filed Sept. 26, 2025
(Docket # 186) ("Reply").

committed securities fraud by failing to timely disclose their intent to take control of Twitter, Inc. when they bought stock in the company in 2022.  See Okla. Firefighters Pension & Ret. Sys. v. Musk, 779 F. Supp. 3d 396, 403 (S.D.N.Y. 2025).  Plaintiff alleges that, beginning in January 2022, defendants "devised a scheme to secretly acquire a massive active ownership interest in Twitter."  Amended Complaint, filed Apr. 30, 2024, ¶ 82 (Docket # 99) ("Am. Compl.").  Plaintiff contends that this alleged scheme violated § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), Rule 10b-5 promulgated thereunder, and § 20(a) of the Exchange Act.  Id. ¶¶ 247-262.  Specifically, plaintiff alleges that defendants deliberately failed to comply with their obligations under § 13 of the Exchange Act, which "requires investors who surpass ownership of 5% of a company's shares to file a Schedule 13D disclosure detailing their interest in, and intentions for, the company within 10 days."  Musk, 779 F. Supp. 3d at 405.  "As an exception to this rule, passive investors may file a Schedule 13G form, but they must certify their status as passive investors."  Id.  On March 14, 2022, defendants' acquisition of Twitter stock crossed the 5% ownership threshold.  Am. Compl. ¶ 137.  Defendants did not file any disclosure forms within 10 days, however, id. ¶ 139, and did not file a form of any kind until April 4, 2025, id. ¶ 179.

Plaintiff alleges that during the period defendants were buying Twitter stock, defendants did not consult with counsel even though their banker repeatedly asked them to obtain legal advice with regard to SEC filing obligations.  See Am. Complaint ¶¶ 114-17, 119, 121, 123-28. Plaintiff asserts that defendant Musk's wealth manager, defendant Birchall, falsely told the banker that counsel had approved their conduct.  See id. ¶¶ 111, 124, 213-14.  Plaintiff alleges that defendants did not seek or obtain legal advice on the issue of the filings until April 1, 2022, long after the § 13 deadline.  See id. ¶¶ 111, 127-28, 189.  On April 1, 2022, "Defendants for the

first time [sought] legal counsel concerning their disclosure obligations" from the law firm McDermott Will & Emery LLP.  <u>Id.</u> at 64 tbl. 3; <u>see id.</u> ¶ 189.

Defendants did not file any disclosure forms until they filed a 13G form on April 4, 2022. <u>Id.</u> ¶ 179.  Plaintiff alleges that this form was itself deceptive both because its format was altered to omit a required certification and because it falsely implied that defendants were mere passive investors.  <u>See id.</u> ¶¶ 181-84.  Defendants did not file a 13D form until April 5, 2022.  <u>Id.</u> ¶ 189.

To prove that defendants violated § 10(b) and Rule 10b-5, plaintiff must demonstrate, <u>inter alia</u>, that defendants acted with the requisite scienter.  <u>See Musk</u>, 779 F. Supp. at 421.  "The scienter required under Section 10(b) and Rule 10b–5 is 'an intent to deceive, manipulate or defraud.'"  <u>Id.</u> (quoting <u>ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.</u>, 553 F.3d 187, 198 (2d Cir. 2009)).  For purposes of § 10(b) and Rule 10b-5, "[g]ood faith is scienter's opposite."  <u>Veleron Holding, B.V. v. Morgan Stanley</u>, 694 F. App'x 858, 863 (2d Cir. 2017); <u>see also United States v. Scully</u>, 877 F.3d 464, 476 (2d Cir. 2017) (noting that good faith, which may be established through an advice of counsel defense, is not an affirmative defense when raised to defeat proof of scienter).  Thus, defendants here may defend against the allegation of scienter by showing they acted in good faith.

To prove that defendants violated § 20(a), plaintiff must demonstrate, <u>inter alia</u>, that defendants were "in some meaningful sense culpable participants in the fraud perpetrated by controlled persons."  <u>Gordon v. Burr</u>, 506 F.2d 1080, 1085 (2d Cir. 1974).  "Once the plaintiff makes out a prima facie case of § 20(a) liability, the burden shifts to the defendant[s] to show that [they] acted in good faith."  <u>S.E.C. v. First Jersey Sec., Inc.</u>, 101 F.3d 1450, 1473 (2d Cir. 1996).  Here, defendants' Answer interposes an affirmative defense of good faith.  <u>See</u> Answer, filed May 7, 2025, at 50 (Docket # 128).

Whether it defeats proof of scienter or operates as an affirmative defense, good faith may be shown through a party's reliance on the advice of counsel.  See Howard v. S.E.C., 376 F.3d 1136, 1147 (D.C. Cir. 2004) ("reliance on the advice of counsel . . . is simply evidence of good faith"); accord S.E.C. v. O'Meally, 2010 WL 3911444, at *4 (S.D.N.Y. Sept. 29, 2010) ("Advice of counsel is but one factor that may be taken into account in evaluating whether one accused of fraud acted in good faith.").  "The good faith reliance defense is available when the person asserting it can show that (i) he made a complete disclosure of the relevant facts to counsel; (ii) he received advice from counsel that the conduct in question was legal; and (iii) he relied on that advice in good faith."  S.E.C. v. Leffers, 289 F. App'x 449, 451 (2d Cir. 2008).  But by mounting an advice of counsel defense, a party impliedly waives the attorney-client privilege that ordinarily protects from disclosure the party's communications with counsel.  See In re County of Erie, 546 F.3d 222, 228 (2d Cir. 2008) ("The assertion of an 'advice-of-counsel' defense has been properly described as a 'quintessential example' of an implied waiver of the privilege.") (citing In re Kidder Peabody Sec. Litig., 168 F.R.D. 459, 470 (S.D.N.Y. 1996)).  Nonetheless, as the Second Circuit made clear in United States v. Bilzerian, 926 F.2d 1285 (2d Cir. 1991), an implied waiver of privileged communications — sometimes called "at issue" waiver — arises not merely when a party intends to rely on advice given by counsel in aid of its defense.  It also arises in other situations, such as where a party "asserts a claim that in fairness requires examination of protected communications."  Id. at 1292.  The reasoning behind this rule is that "the attorney-client privilege cannot at once be used as a shield and a sword."  Id.

II.    Timing of Defendants' Election

The proper time to determine whether fairness requires disclosure of privileged material is before the discovery period concludes. As we held in In re Buspirone Antitrust Litig., 208 F.R.D. 516 (S.D.N.Y. 2002):

> Because our rules for civil litigation presume the availability of discovery of all non-privileged factual matters that are relevant to claims or defenses, Fed. R. Civ. P. 26(b)(1), a party must disclose during the discovery period whether it intends to rely on factual assertions or corresponding defenses that would require a waiver of the attorney-client privilege.

Id. at 522.

Defendants' opposition to plaintiff's motion does not dispute their obligation to make an election at this stage of the litigation. Document discovery is underway, and depositions are expected to happen soon. Defendants have all the information they need to make an informed decision as to whether they will assert any advice of counsel or good faith defense. Thus, to the extent plaintiff's motion seeks to require defendants to make an election now regarding its assertion of good faith, plaintiff's motion is meritorious on this point.

III.    Nature of Defendants' Election

Before plaintiff filed this motion, it made inquiries of defendants as to whether they would be asserting reliance on advice of counsel as a defense. See Mem. at 8-9. Defendants responded by stating that that they "are not asserting an advice-of-counsel defense in this action" and that they "do not intend to rely on attorney-client privileged communications or documents in the defense of this action." Letter from Alex Spiro, dated Aug. 5, 2025, annexed to Pl.'s Decl. as Ex. 11 (Docket # 174-11), at 1. At the same time, defendants stated that they "do not waive, and expressly reserve, all rights with regard to the presentation of evidence at summary judgment and trial, consistent with established law." Id. Then, making matters even more unclear, the

5

defendants in their opposition brief asserted that they intended to offer evidence that they "followed . . . counsel's guidance in making proper disclosures." Opp. at 11.

A more subtle issue still lurked in the background. While plaintiff had framed its motion as a request to require defendants to elect whether they will "rely on counsel as an affirmative defense," see Mot., their brief actually seeks to determine not only whether defendants intend to mount an advice of counsel defense but also whether they intended to assert that they acted in "good faith." See, e.g., Mem. at 11 (referring to plaintiff's effort to obtain "a binding election as to Defendants' assertion of any reliance on counsel or good faith defense") (emphasis added); id. at 26 (seeking "clear election as to any reliance on counsel or good faith defense"); id. at 27 (same). id. at 28 (same); see also id. at 29 (seeking to "block[]" defendants "from asserting any good faith defense").

Because defendants were not contesting their obligation to make an election on these questions at this stage of the litigation, the Court issued an order directing defendants to explain the statement in their opposition brief that they would offer evidence that they "followed . . . counsel's guidance in making proper disclosures." Order, dated Oct. 7, 2025(Docket # 189), at 1. In response, defendants withdrew this statement. Letter from Sarah Heaton Concannon, dated Oct. 10, 2025 (Docket # 196) ("Oct. 10 Let."), at 1.

Secondly, the Court directed defendants to address the "good faith" issue by stating "whether or not they intend to offer evidence or argue that they had a good faith belief in the lawfulness of their actions (or omissions) in the period after they consulted counsel." Order, dated Oct. 7, 2025 (Docket # 189), at 1. While defendants initially failed to respond to this directive, see Order, dated Oct. 10, 2025 (Docket # 197), defendants eventually filed a letter stating that they "intend to assert their good faith belief in the lawfulness of their actions (or

omissions) after they first consulted with counsel on April 1, 2022." Letter from Alex Spiro, dated Oct. 13, 2025 (Docket # 198) ("Oct. 13 Let."). This assertion came with a caveat that will be discussed in Section V below. Before we address that caveat, we discuss the effect of defendants' election to assert good faith on plaintiff's efforts to obtain communications between defendants and counsel beginning on April 1, 2022. Specifically, we address whether defendants' intent to offer argument or evidence of their good faith effectuates an implied or "at issue" waiver of the attorney-client privilege.

IV.    Effect of Defendants' Election

Courts have found implied or "at issue" waiver of the attorney-client privilege "when a client testifies concerning portions of the attorney-client communication, . . . when a client places the attorney-client relationship directly at issue, . . . and when a client asserts reliance on an attorney's advice as an element of a claim or defense." In re County of Erie, 546 F.3d at 228 (quoting Sedco Int'l S.A. v. Cory, 683 F.2d 1201, 1206 (8th Cir. 1982)).

"The waiver doctrine, however, does not apply exclusively to situations where a party explicitly relies — or states that it intends to rely — on attorney-client communications." Parneros v. Barnes & Noble, Inc., 332 F.R.D. 482, 501. The "at issue" or implied waiver doctrine has also found waiver "even where there is no intention to rely on attorney-client communications." McGowan v. JPMorgan Chase Bank, N.A., 2020 WL 1974109, at *6 (S.D.N.Y. Apr. 24, 2020). Bilzerian is a perfect example where such a waiver occurred. In Bilzerian, a trial court ruled that if a defendant testified about his own good faith regarding the legality of certain actions, he would open the door to cross-examination into communications with his attorney on that subject. See 926 F.2d at 1291-94. In affirming the trial court, the Second Circuit explained that "the attorney-client privilege cannot at once be used as a shield

and a sword." Id. at 1292. "Thus, the privilege may implicitly be waived when defendant

asserts a claim that in fairness requires examination of protected communications." Id. Bilzerian

reasoned that a finding of wavier was appropriate because any testimony that the defendant

"thought his actions were legal would have put his knowledge of the law and the basis for his

understanding of what the law required in issue." Id. Therefore, "[h]is conversations with

counsel regarding the legality of his schemes would have been directly relevant in determining

the extent of his knowledge and, as a result, his intent." Id. In other words, Bilzerian found

waiver even though there was no effort by the defendant to actually offer into evidence his

attorney's advice. See id.

In keeping with this principle, case law has consistently recognized that an implied

waiver "may be found even if the privilege holder does not attempt to make use of a privileged

communication." In re Kidder Peabody Sec. Litig., 168 F.R.D. at 470. Where a party asserts

that it acted in good faith, an implied waiver is routinely found. See, e.g., Abromavage v.

Deutsche Bank Sec. Inc., 2019 WL 6790513, at *3 (S.D.N.Y. Dec. 11, 2019) ("[A] defendant

invoking his good faith may place his privileged communications at issue even if he does not

specifically plead or argue that he relied on an attorney's advice."); La. Mun. Police Emps.' Ret.

Sys. v. Green Mountain Coffee Roasters, Inc., 2017 WL 3037414, at *6 (D. Vt. Apr. 17, 2017)

("Since Bilzerian, the Second Circuit has reiterated the principle that a good-faith defense

involves an inquiry into state of mind, which typically calls forth the possibility of implied

waiver of the attorney-client privilege. Courts have held that this principle applies even where a

party does not reference specific communications with counsel.") (citation and internal quotation

marks omitted); Scott v. Chipotle Mexican Grill, Inc., 67 F. Supp. 3d 607, 611 (S.D.N.Y. 2014)

("[C]ourts within this Circuit, relying on Bilzerian, have reaffirmed the broader principle that

forfeiture of the privilege may result where the proponent asserts a good faith belief in the lawfulness of its actions, even without expressly invoking counsel's advice.") (quoting Favors v. Cuomo, 285 F.R.D. 187, 199 (E.D.N.Y. 2012)) (collecting cases); Leviton Mfg. Co. v. Greenberg Traurig LLP, 2010 WL 4983183, at *3 (S.D.N.Y. Dec. 6, 2010), ("[A]dvice of counsel may be placed in issue where, for example, a party's state of mind, such as his good faith belief in the lawfulness of his conduct, is relied upon in support of a claim of defense") objections overruled by 2011 WL 2946380 (S.D.N.Y. July 14, 2011).

The lack of any requirement to actually offer the advice of counsel into evidence is consistent with the waiver doctrine's goal to achieve "fairness." See John Doe Co. v. United States, 350 F.3d 299, 302 (2d Cir. 2003); Bilzerian, 926 F.2d at 1292. "It would be unfair for a party who has asserted facts that place privileged communications at issue to deprive the opposing party of the means to test those factual assertions through discovery of those communications." Windsor Sec., LLC v. Arent Fox LLP, 273 F. Supp. 3d 512, 518 (S.D.N.Y. 2017).

For their part, defendants take the position that the only situation where an implied or "at issue" waiver occurs is where a party intends to argue that it actually relied on counsel's advice. As they state in their brief,

> Courts have consistently held that to waive privilege, "a party must rely on privileged advice from his counsel to make his claim or defense." Where defendants do not do so, no waiver occurs.

Opp. at 13 (quoting In re County of Erie, 546 F.3d at 229) (emphasis added); see also id. at 8 (repeating nearly identical language); id. at 14 (arguing no waiver because defendants "do not seek to put their knowledge of the law or understanding of legal requirements at issue through counsel involvement") (emphasis added).

We reject defendants' characterization of the law on "at issue" or implied waiver. As the numerous citations above make clear, courts have routinely and uniformly found that the assertion of a defense that a party had a good faith belief in the lawfulness of its conduct may impliedly waive the attorney-client privilege even where the party does not assert an advice of counsel defense. The quotation from In re County of Erie seized upon by defendants does not reflect that the Second Circuit sub silentio overruled or even retreated from its decision in Bilzerian. In re County of Erie involved a party that had consulted its attorney about the conduct challenged in the lawsuit, see 546 F.3d at 225, and was also taking the position that its conduct had been lawful, see id. at 229. The lower court had held that these two facts alone were enough to effectuate an implied waiver of the attorney-client privilege. See id. at 227. In re County of Erie reversed that decision, holding that it was not enough to effectuate a waiver that the party had claimed its actions were lawful. See id. at 229. It was in this context that the Second Circuit stated that for a waiver to occur "a party must rely on privileged advice from his counsel to make his claim or defense." Id. Far from questioning its holding in Bilzerian, however, the Second Circuit in In re County of Erie actually cited Bilzerian at length as a foundation of its reasoning. See id. at 228. In re County of Erie specifically pointed out that the facts of its case did not involve "a good faith or state of mind defense." Id. at 229. Indeed, it went out of its way to note that a good faith defense "involves an inquiry into state of mind, which typically calls forth the possibility of implied waiver of the attorney-client privilege." Id. at 228-29 (emphasis added). Further, In re County of Erie cited with approval case law noting that waiver can occur not only "when a client asserts reliance on an attorney's advice as an element of a claim or defense" but also "when a client places the attorney-client relationship directly at issue." Id. at 228 (quoting Sedco Int'l S.A., 683 F.2d at 1206). A claim of a good faith belief in the lawfulness of one's

conduct is, as <u>In re County of Erie</u> and <u>Bilzerian</u> recognize, just such a situation.  Thus, it is frivolous to suggest that <u>In re County of Erie</u> held that implied waiver occurs only when a party relies on advice of counsel in making a claim or defense.

None of the cases cited by defendants, <u>see</u> Opp. at 14-15, suggest otherwise, since none involved an assertion by a party of a good faith belief in the lawfulness of its conduct.  Indeed, the first case cited by defendants, <u>AngioDynamics, Inc. v. Biolitec, Inc.</u>, 2010 WL 11541926, at *4 (N.D.N.Y. May 25, 2010), found — to quote the language used by defendants — "no waiver where defendant had not asserted a good faith defense" and that a good faith defense in fact "places in issue whether his attorney made him aware that his acts were unlawful."  Opp. at 14-15 (internal quotation marks omitted).

Here, it would obviously be unfair for defendants to be permitted to offer evidence or argue that they had a good faith belief that their alleged conduct was lawful while at the same time barring plaintiff from examining the evidence that would most obviously put that claim to the test: the advice defendants' attorneys gave them about that very conduct.  Accordingly, by stating their intention to offer such evidence, defendants waive attorney-client privilege as to their communications with counsel.

V.    <u>Preclusion</u>

As noted above, defendants' assertion that they "intend to assert their good faith belief in the lawfulness of their actions (or omissions) after they first consulted with counsel on April 1, 2022," came with a caveat.  <u>See</u> Oct. 13 Let.  The caveat was that defendants would assert this good faith belief "only if the Court determines that Defendants may do so without waiver of the attorney-client privilege under <u>United States v. Bilzerian</u>, 926 F.2d 1285 (2d Cir. 1991)."  <u>Id.</u> They reiterated, "If this Court concludes that such evidence or argument requires a waiver of the

attorney-client privilege under the facts and circumstances of this case, then — while preserving all appellate rights — Defendants do not intend to present it and will preserve their privilege." Id.

Because we have now ruled that a waiver would be effectuated through the presentation of the good faith defense, we will accept — and, of course, enforce — defendants' choice not to present that defense. Thus, defendants are now precluded from offering argument or evidence that they had a good faith belief in the lawfulness of their conduct after they consulted with counsel on April 1, 2022.

VI.    Specific Evidence That Defendants Seek to Offer

What remains is the issue that became the focus of the briefing on plaintiff's motion: whether defendants will be permitted to offer evidence of the "involvement" of their attorneys beginning on April 1, 2022. See Mem. at 1; Opp. at 11. During the briefing on the motion, defendants stated that they seek to "present factual evidence that when they learned of disclosure obligations for the first time on April 1st, they immediately contacted counsel." Opp. at 11; accord id. at 13-14 ("Defendants seek only to present factual evidence about timing of counsel contact."). They noted that "[t]he fact that counsel was contacted on a specific date does not implicate the attorney-client privilege." Id. at 2. They argued that they are "entitled to respond with factual evidence" about counsel's involvement because plaintiff "makes counsel involvement integral to its complaint." Id. at 11. "It makes no sense and would be fundamentally unfair," defendants maintained, "to permit Plaintiff to argue that defendants failed to involve counsel and lied about counsel's involvement prior to April 1, but not to permit Defendants to correctly identify that counsel was involved post-April 1." Id.

For its part, plaintiff contended that defendants "must be precluded from introducing any testimony, argument, or evidence concerning counsel's involvement in drafting and approving the 13G, 13D, or any other disclosures[;] the Parties must redact attorney names from trial exhibits[;] and any references creating the inference of a legal blessing must be barred." Reply at 15-16. Plaintiff argued that any evidence of attorney involvement would "influenc[e] the trier of fact to find that Defendants had an innocent state of mind." Mem. at 21.

These arguments were made before the Court's ruling in this Opinion and Order that defendants are precluded from offering argument or evidence that they had a good faith belief in the lawfulness of their conduct after they contacted counsel on April 1, 2022. The arguments were also made at a time when defendants were asserting that they would offer evidence that defendants followed counsel's "guidance." Thus, defendants argued, "Having placed this timeline squarely at issue . . . Plaintiff cannot now claim prejudice when Defendants seek to present the complete and accurate factual record — that when disclosure requirements were first identified on April 1st, Defendants immediately contacted appropriate legal counsel and followed that counsel's guidance." Opp. at 11. In other words, the basis for defendants' offering of the "involvement" evidence was apparently to support an inference that they acted in good faith.

Before the Court's ruling of preclusion, the prejudice to plaintiff from testimony about the involvement of counsel starting April 1, 2022, was that the jury might draw the inference that defendants' attorneys told defendants that their conduct was legal. As plaintiff stated, it sought assurance that no evidence submitted by defendants would "create[e] the inference of a legal blessing." Reply at 16.

The landscape has significantly changed since the briefing, however. Defendants have now withdrawn their statement that they will offer evidence that they "followed . . . counsel's

guidance," Oct. 10 Let. at 1, and they have been precluded from offering the good faith defense to the extent described, see Section V above. With these changes, it is unclear whether defendants are still seeking to offer evidence of counsel's involvement.

More to the point, with the preclusion order now in effect, the issue of whether defendants will be permitted to offer evidence of counsel's involvement is no longer a waiver or discovery question. Instead, it is a question of whether such evidence will be admissible at trial in light of the preclusion order. At the moment, however, there is no motion in limine before the Court. Accordingly, we will not address the issue of admissibility.

Nonetheless, we do note that before the preclusion order, plaintiff was rightly concerned that evidence of counsel's involvement might create an inference that defendants' attorneys had given their "blessing" to defendants' future course of action. Drawing such an inference is no longer permissible, however. Any evidentiary ruling on the admission of "involvement" evidence will be consistent with defendants' being precluded from arguing their good faith belief in the lawfulness of their conduct in this period. Additionally, we note that the potential relevance of this evidence now stands on a different footing. Before the preclusion order, evidence of counsel's involvement would certainly have been relevant to, as defendants put it, rebutting "Plaintiff's 'absence of advice' argument." Opp. at 2. But that rebuttal presupposes that defendants were permitted to argue that they had a good faith belief in the lawfulness of their conduct after April 1, 2022. With this issue now excised from the case, defendants' consulting with counsel would not seem to be relevant to any issue in the case. Indeed, even if the evidence were somehow permitted for purposes unrelated to good faith, plaintiff would likely be entitled to a jury instruction that the evidence could not be used to infer that counsel's advice on April 1,

14

2022, resulted in defendants' having a good faith belief in the lawfulness of their subsequent conduct.

The Court makes no rulings at this time, however, because this motion arising from discovery practice is not the right vehicle for determining the admissibility of evidence at trial. The parties are free to make a motion in limine at an appropriate time. What we can definitively say now is that because evidence of attorney involvement would be admitted, if at all, in a context where defendants are barred from arguing that they had a good faith belief in the legality of their conduct after April 1, 2022, there is no possibility that its admission (should it occur) would result in a waiver of attorney-client privilege. And, as a consequence, there is no danger that plaintiff will be unfairly deprived of discovery into attorney-client communications.

VII.    Conclusion

For the foregoing reasons, plaintiff's motion to require an election by defendants as to any advice of counsel or good faith defense is granted as set forth above. Following the briefing on this motion, defendants made that election and, as a result, defendants are precluded from offering evidence or argument that they relied on the advice of counsel or had a good faith belief in the lawfulness of their conduct after they consulted counsel on April 1, 2022.

Dated: October 23, 2025
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge