**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM,<br><br>Plaintiff,<br><br>v.<br><br>ELON R. MUSK, ELON MUSK REVOCABLE TRUST DATED JULY 22, 2003, EXCESSION, LLC, and JARED BIRCHALL,<br><br>Defendants. | Case No. 1:22-cv-03026-ALC-GWG<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' SUR-REPLY MEMORANDUM OF LAW IN OPPOSITION TO**
**<u>LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION</u>**

Defendants respectfully submit this Sur-Reply in support of Defendants' Opposition ("Opposition" or "Opp.") to OKF's[1] Motion for Class Certification ("Motion" or "Mot.").

## PRELIMINARY STATEMENT

The 30(b)(6) deposition of OKF's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, makes clear that ▮▮▮ (and therefore OKF) did not rely on the allegedly fraudulent misrepresentations or omissions. Opp. 10-17. ▮▮▮ testified unequivocally that it would have sold the same number of Twitter shares, on the same day, at the same price on behalf of OKF "even had [it] been aware that the stock's price was tainted by fraud." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 269 (2014). This defeats any presumption of reliance, which means individual issues of reliance will predominate, and that OKF is atypical of the putative class, since OKF itself cannot state a claim under Section 10(b). *See*, *e.g.*, Opp. 2. OKF's Motion should be denied for either or both reasons.

In its Reply, OKF belatedly tries to undo this irreparable damage by introducing new evidence from ▮▮▮ (the "Declaration" or "Decl.") that seeks to walk back ▮▮▮ deposition testimony. This Court should not consider OKF's new evidence, but even if it does, the Court should still deny OKF's Motion. *Cf. Rincon v. Covidien*, 2017 WL 2242969, at *2 (S.D.N.Y. May 22, 2017) (Furman, J.) (new allegations in an opposition "serve only to illustrate the deficiencies" in a complaint). ▮▮▮ late-filed Declaration leaves untouched ▮▮▮ key admission that ▮▮▮ would have made the same Class-Period sale of Twitter stock even if it had known about the alleged fraud. Plaintiff also cannot avoid the import of ▮▮▮ testimony by relying on the Declaration to claim that, where ▮▮▮ possessed material non-public information ("MNPI") about Musk's Twitter trading, ▮▮▮ could not have traded due to insider trading restrictions. This novel argument apparently seeks, without authority, improperly to modify *Halliburton*. And, regardless,

---

[1] Capitalized terms have the same meaning as in the Opposition.

consistent with this Court's prior dismissal of insider trading claims against Musk, ECF No. 49 at 39-41, such information would not have precluded ███ from trading. ███ has stated, under oath, that it would have made the same Class Period sale of Twitter shares even if it had been aware of the fraud. OKF's Motion should be denied.

PROCEDURAL BACKGROUND

**A.      Defendants Depose ███ 30(b)(6) Designee on July 17, 2025**

Defendants deposed ███ 30(b)(6) designee, ███████, on July 17, 2025. ███ ███ testified that he is ███████ and ███████ with respect to ███████

████████████████████████████████

███ *See* ███ 30(b)(6) Depo. Tr., July 17, 2025 (███ Tr.") (Defs. Ex. 3), at 18:1-17.

███ testimony affirmed it would have made the same sale, on the same day, at the same price, even if ███ were aware of the alleged fraud, offering the following unqualified answers:

| Question | Answer | Cite |
|---|---|---|
| ████████████████████ ████████████████████ ██████████████ | ██████. | 96:2-6 |
| ████████████████████ ████████████████████ ████████████ | ██. | 131:2-7 |
| ████████████████████ ████████████████████ ██████████ | ██. | 131:17-22 |
| ████████████████████ ████████████████████ █████████ | ██. | 135:8-13 |
| ████████████████████ ████████████████████ ████████ | ██. | 135:15-20 |

---

[2] Plaintiff's counsel attended and participated in the ███ deposition, objecting to the form of each of these questions. ███ counsel did not object to these questions, but sought clarification wherever he felt necessary. *See, e.g.,* ███ Tr. at 9:19-22; 55:8-10; 60:23-61:8. Plaintiff's counsel conducted a cross examination without seeking to clarify the questions Plaintiff now claims were unclear. *See id.* at 138:7-141:4.

**B.      Defendants File Their Opposition and Then Plaintiff Files the Declaration**

On August 22, 2025, Defendants filed their Opposition to the Motion.  ECF Nos. 164-67.  The Opposition relies, in part, on ███████ admissions to show that Plaintiff cannot rely on any presumption of class-wide reliance, and thus that individual issues of reliance predominate, and that OKF is atypical of the Class because it did not rely on the alleged fraud.  *See* Opp. at 10-17.

On October 7, 2025, OKF filed its Reply.  ECF Nos. 190-91, 193-94.  OKF included, as Exhibit E to the Reply, the Declaration, executed on September 30, 2025.[3]  In the Declaration, ██████ ███████ claims, for the first time, that ████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ████████████████████  *Id.* at 2.  The Declaration adds that ███████████████████████ ███████████████████.  *Id.*  In its Reply, Plaintiff relies on the new evidence in the Declaration in support of its class certification arguments.  *See, e.g.*, Reply at 1, 4, 5.

## II.      THE DECLARATION CANNOT SAVE PLAINTIFF'S BID TO CERTIFY A SHAREHOLDER CLASS

██████ testified that ██████ would have made the same Twitter sale *even if it had known about the fraud*.  This defeats the presumption of reliance and renders OKF atypical of the class.

---

[3] To Defendants' knowledge, ███████████████ did not submit errata within the time prescribed by Fed. R. Civ. P. 30(e), or make any effort to modify his testimony before the September 30 Declaration.  The timeline above strongly suggests ███████████ and ██████ understood the questions asked and were satisfied with the testimony until the Opposition was filed.  This Court may disregard the Declaration for the independent reason that it is an untimely attempt to modify ██████ testimony.  *See Cameron Indus., Inc. v. Mothers Work, Inc.*, 2007 WL 1649856, at *5 (S.D.N.Y. June 6, 2007) ("[T]he Rules establish the procedures to be used to clarify or correct testimony" and "neither counsel nor the court are simply [] free to ignore them and create new procedures"); *Ivison v. Extend Fertility, LLC*, 2025 WL 2782306, at *7 (S.D.N.Y. Sept. 30, 2025) (declining to consider a "supplemental expert declaration" to "clarif[y]" testimony after the 30-day deadline).

Critically, the Declaration does not recant this testimony, and this Court therefore can and should deny certification regardless of whether it considers the Declaration. Rather, ███ claims that (i) ████████████████████████████████████████████████████ ████████████████████████ (ii) ██████████████████████████████████████████████████████, Decl. at 2; *see also* Reply at 5 ("Defendants ***did not ask*** whether ███ would have traded on" MNPI, but "would have learned that ███ cannot and does not trade on material nonpublic information.") (citing Declaration) (emphasis original)). The Declaration does *not* claim, however, that if ███ had possessed non-public information concerning the alleged fraud, that ██████ algorithm would have considered it. The Declaration therefore leaves intact ██████ key admission that it would have made the same sale of Twitter shares on the same day at the same price regardless of whether it knew about Musk's intentions for Twitter, and therefore Plaintiff's Motion should be denied. *See supra* Section A.

In its Reply, OKF leans heavily on the notion that the questions above were "unclear" and that, "to the extent that sense could be made of" them, they appeared to concern "***public*** information available to the market." Reply at 4 (emphasis in original). Despite Plaintiff's objection, ██████████ answered these questions unequivocally. Regardless, this Court looks unfavorably on *post hoc* attempts to introduce ambiguity into clear testimony that counsel did not feel required clarification at the time. *See Orellana v. Lopez*, 2025 WL 2733642, at *6 n.3 (S.D.N.Y. Sept. 24, 2025) ("Remarkably, Plaintiff attempts to criticize Defendants' counsel's conduct of the deposition, sarcastically asserting that '[c]onveniently,' counsel 'did not question him further to clarify the discrepancies.' This argument is meritless—Plaintiff's counsel was present for the deposition, and if he thought it was important to clarify some aspect of his client's testimony, he could have done so."). Here, the witness, ██████ counsel, and Plaintiff's counsel

did not seek to clarify questions they now claim were confusing, and ████████ responded clearly and simply to each of them under oath.

This Court also should reject OKF's irrelevant, *post hoc* MNPI argument. ████████ unsurprising assertion that it does not engage in illegal insider trading does not change ████ testimony that knowledge of the fraud would have had no impact on its decision to sell Twitter during the Class Period. OKF appears to be trying, without authority, to add a caveat to *Halliburton* that, even where a lead plaintiff's investment decisions would have ignored the fraud, lead plaintiff nevertheless may benefit from the presumption of reliance if the fraud *also* constitutes MNPI. This is not the law. Notably, Plaintiff concedes that OKF would have made the same trade, at the same price, as long as it was legal (which it was, *infra* at 6). *See Halliburton*, 573 U.S. at 269; *see also Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 430-31 (7th Cir. 2015) (excluding from recovery class members who would have purchased the stock at issue even if they were aware that its price was inflated due to alleged fraud).[4] If anything, ████ ████████ assertion that ██████ would not trade on MNPI further shows OKF's atypicality, since a typical class member is unlikely to consider MNPI issues in determining whether or not to trade.[5]

---

[4] Plaintiff cites another non-existent test, claiming, based on *Levy v. Gutierrez*, 448 F. Supp. 3d 46 (D.N.H. 2019), that Defendants must "prove that a plaintiff is 'completely indifferent' to market price before they can defeat reliance." Reply at 4. In fact, *Levy* (which in any case cannot abrogate *Halliburton*) explains that defendant failed to defeat the presumption of reliance because defendant failed to show *either* non-reliance on the market price *or* that plaintiff "would have invested . . . *regardless of whether they knew the defendants' representations were in fact false*." *Id.* at 63 (emphasis added). Here, ██████ testified that ██████, and thus OKF, would have done so.

[5] Plaintiff accuses Defendants of engaging in a "misleading effort to fabricate testimony." Reply at 5. Plaintiff does not (and cannot) cite a single instance in which Defendants even misquote, much less fabricate, ████████ testimony. By contrast, the Declaration impermissibly seeks to revise sworn testimony after that defeats class certification. *See Schuh v. Druckman & Sinel, L.L.P.*, 2010 WL 11590042, at *7 (S.D.N.Y. June 29, 2010) (Gorenstein, J.) ("[T]o allow [plaintiff's] changes [on defendant's motion for summary judgment] would permit him to tailor his testimony to meet specific deficiencies in his evidence.") (alterations in original) (quoting *Desulma v. City of N.Y.*, 2001 WL 798002, at *5 (S.D.N.Y. July 6, 2001)).

5

Further, even if Plaintiff's MNPI assertions were relevant, neither OKF nor the Declaration actually claims that information about Musk's trading was in fact MNPI for purposes of insider trading. Nor could they. This Court previously dismissed OKF's Section 20A cause of action alleging that Musk's awareness of his own purchases constituted insider trading. *See* ECF No. 49 at 39-41. And neither Plaintiff nor ▮▮▮ explains why, in their hands, the same information would have become MNPI that precluded trading in Twitter, particularly since they offer no facts suggesting that (i) Musk was a Twitter insider, (ii) ▮▮▮ was a Twitter insider, or (iii) ▮▮▮ somehow owed Musk a duty of trust that might obligate ▮▮▮ not to execute Twitter trades while in possession of information about Musk's Twitter trades. *See In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 176 (S.D.N.Y. 2021) (noting "classical theory" where a "corporate insider is prohibited from trading shares of that corporation based on [MNPI]") (quotation omitted); *SEC v. AT&T, Inc.*, 626 F. Supp. 3d 703, 752 n.53 (S.D.N.Y. Sept. 8, 2022) (noting "misappropriation theory," where a "corporate outsider breaches a duty of trust owed to the source of confidential information").[6]

Further, by walking back ▮▮▮ admissions, Plaintiff tries to bring itself within the ambit of various authorities concerning reliance. But each of *In re Monster Worldwide, Inc. Securities Litigation*, 251 F.R.D. 132 (S.D.N.Y. 2008) (Rakoff, J.), *City of Livonia Empl. Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 179 (S.D.N.Y. 2012), and *In re Par Pharma. Sec. Litig.*, 2:06-cv-03226-ES-SCM (D.N.J. 2012)—which Plaintiff cites under the proposition that "courts have rejected similar

---

[6] Plaintiff incorrectly claims OKF's 30(b)(6) testimony "eviscerates Defendants' attacks," Reply at 7, whereas the cited testimony merely parrots Plaintiff's theory of damages and has nothing to do with ▮▮▮ algorithm. *See also* Pltf. Ex. R at 195:4-11.

challenges in securities class actions involving quantitative traders," Reply at 5[7]—is inapposite because each pre-dates the Supreme Court's recognition in *Halliburton* that a plaintiff like OKF who would have traded regardless of the fraud cannot invoke presumptions of reliance. 573 U.S. at 269. Nor can Plaintiff's other cases support their Motion. *See Local 703, I.B. of T. Grocery and Food Empl. Welfare Fund v. Regions Fin. Corp.*, 282 F.R.D. 607, 615 n.7 (N.D. Ala. 2012) (defendant's criticism of Intech is "*vastly different* from one that had INTECH known those numbers were manipulated *it would not have considered that to be relevant information*") (emphasis added); *Public Emps. Ret. Sys. of Miss. v. Treehouse Foods, Inc.*, 2020 WL 919249, at *5 (N.D. Ill. Feb. 26, 2020) (addressing whether plaintiff's use of a broker or post-Class Period purchases resulted in unique defenses that made lead plaintiff atypical).

Finally, OKF's repeated insistence that ▇▇▇ relied on the market price of Twitter does not salvage certification. Reply at 6. ▇▇▇ testimony is clear that, even if ▇▇▇ and OKF had been aware of the fraud—and therefore understood that the fraud was *not* reflected in the market price▇▇▇ would have executed the same trade on the same day at the same price. Indeed, ▇▇▇ testified that it would have sold OKF's shares of Twitter stock despite being aware that the "stock's price was tainted by fraud." *Halliburton*, 573 U.S. at 269.

## CONCLUSION

Defendants respectfully request that the Court deny OKF's Motion for Class Certification.

DATED:  New York, New York
        October 24, 2025

Respectfully submitted,

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

---

[7] Notably, Defendants do not argue that OKF is subject to unique defenses because it relied on "quantitative or algorithmic trading strategies," Reply at 8, but because Plaintiff *did not rely* on the misstatements and omissions at issue as detailed herein.

/s/ Alex Spiro
Alex Spiro
Sarah Heaton Concannon
Jesse Bernstein
Jacob J. Waldman
Brenna Nelinson
295 Fifth Avenue
New York, New York 10016
Telephone: (212) 849-7000
alexspiro@quinnemanuel.com
sarahconcannon@quinnemanuel.com
jessebernstein@quinnemanuel.com
jacobwaldman@quinnemanuel.com
brennanelinson@quinnemanuel.com

Nathan Goralnik
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (212) 849-7049
nathangoralnik@quinnemanuel.com

Rachel G. Frank (*pro hac vice*)
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
rachelfrank@quinnemanuel.com

*Attorneys for Defendants Elon R. Musk, the Elon Musk Revocable Trust Dated July 22, 2003, Excession, LLC, and Jared Birchall*

8

## CERTIFICATE OF COMPLIANCE

I hereby certify that this memorandum of law complies with the length limit requirements of Local Rule 7.1(c) because it contains 2,485 words (based on the Microsoft Word word count function) excluding the parts exempted by the Local Rules.

*/s/ Jacob J. Waldman*
Jacob J. Waldman