# BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

### ATTORNEYS AT LAW

### NEW YORK ● CALIFORNIA ● ILLINOIS ● LOUISIANA ● DELAWARE

KATHERINE M. SINDERSON
(212) 554-1392
KATIEM@BLBGLAW.COM

December 3, 2025

**VIA ECF**

Hon. Gabriel W. Gorenstein
Southern District of New York
40 Foley Square
New York, NY 10007

Re:    *Okla. Firefighters Pens. and Ret. Sys. v. Musk*, 1:22-cv-03026 (S.D.N.Y.)

Dear Judge Gorenstein:

We write on behalf of Plaintiff Oklahoma Firefighters Pension and Retirement System ("Plaintiff") in accordance with Local Rule 37.2 and Rule 2.A of Your Honor's Individual Practices. Plaintiff respectfully requests a pre-motion conference regarding its anticipated motion to compel Defendants to produce documents showing and explaining Defendant Jared Birchall's ownership interests in Musk-affiliated companies and his Musk-related compensation. These documents are highly relevant to Birchall's close personal and financial relationship with Musk, his motive to carry out the scheme at the heart of this Action, and his bias and credibility. To date, Defendants have produced only three compensation-related documents, which do not explain the nature or basis of Birchall's compensation. Defendants have not produced any ownership-related documents at all—and in fact back-tracked on their agreement to do so.

## I.    RELEVANT BACKGROUND

**Birchall's Relationship With Musk Is Central To The Complaint**. The Complaint alleges that Musk and his "right hand man" Birchall engaged in a scheme to buy Twitter stock at depressed prices by deceiving investors regarding Musk's ownership and activist interests in the Company. ¶¶36-39, 82-175. Since 2016, Birchall has been Musk's wealth manager and managing director of Musk's family office, Defendant Excession LLC. ¶36. Birchall also has power of attorney over Defendant The Elon Musk Revocable Trust and all of Musk's trading accounts, including Musk's trading accounts that purchased Twitter shares in 2022. ¶¶36, 39. Birchall holds various leadership positions within Musk-related entities. ¶36. For example, he is a director at the Boring Company; CEO of Neuralink; CFO and board Secretary of xAI; and secretary, treasurer, and director of the Musk Foundation (Musk's personal charity). *Id*. Birchall is "devoutly loyal to Musk" and has repeatedly gone to extraordinary lengths to serve Musk's interests. ¶38. In return, Musk places "absolute trust … in Birchall's devoted loyalty." ¶39.

Birchall's unique business and financial relationship with Musk has direct bearing on

Honorable Gabriel W. Gorenstein
December 3, 2025
Page 2

Birchall's motive to participate in the securities claims sustained by the Court, including the key element of scienter. ECF No. 118 at 33-36 ("MTD Order") (finding scienter for Birchall and noting his role "as an intermediary between Musk and Advisor A in the trading strategy").

**The Parties' Extensive Meet And Confer Process**. On March 26, 2024, Plaintiff served document requests. Ex. A. Document Request No. 1 required Defendants to produce documents concerning Birchall's Musk-related ownership interests and compensation ("RFP 1"). *Id.* at 8-9. On April 25, 2024, Defendants responded to RFP 1 with an offer to meet and confer. Ex. B at 5.

On May 28, 2024, Plaintiff filed its Amended Complaint (ECF No. 99), which stayed discovery while Defendants moved to dismiss. On March 28, 2025, the Court sustained the bulk of the Amended Complaint, including Plaintiff's claim that Musk and Birchall engaged in a scheme to deceive investors regarding Musk's ownership and activist interests in Twitter. MTD Order at 25-36. The Parties then resumed their discussions regarding RFP 1.

On May 5, 2025, in response to Defendants' request for clarity on the documents sought by RFP 1, Plaintiff explained that it is not seeking "net worth" discovery and specified that responsive documents include (but are not limited to):

a. Birchall's compensation arising from his relationship with Musk, including any cash compensation and share-based compensation (as well as documents sufficient to understand the value of any share-based compensation);
b. Birchall's ownership interest and role in Musk's corporate entities; and
c. Birchall's performance-based or "bonus" compensation arising from his working relationship with Musk, including the basis and underlying business performance for such compensation.

*See* Ex. C at 99-100. On May 12, 2025, Defendants wrote that Plaintiff was "free to ask Mr. Birchall at his deposition" about the facts sought in RFP 1. *Id.* at 97. On May 15, 2025, Plaintiff explained that it needed the documents before taking Birchall's deposition. *Id.* at 91.

On May 21, 2025, from approximately 9:30 a.m. to 10:00 a.m., Katie M. Sinderson, Jeremy Robinson, Jonathan D'Errico, and Emily Tu from Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") (on behalf of Plaintiff) conferred telephonically with Nathan Goralnik of Quinn Emanuel (on behalf of Defendants) regarding, *inter alia*, RFP 1. Defendants requested to narrow the scope of the request by producing "documents sufficient" to show Birchall's compensation and ownership interest in Musk's entities.

On June 19, 2025, in an effort to compromise and while reserving all rights, Plaintiff accepted Defendants' offer to produce "documents sufficient to show Birchall's compensation (including performance-based compensation and any basis for such performance-based compensation), ownership interest, and role(s)" in the relevant corporate entities. *Id.* at 73, 77, 82.

On August 21, 2025, Defendants produced three (3) documents, ███████████████
████████████████████████████████████████████
████████████████ Exs. D, E, F. In the cover email for this production, Defendants also stated that

Honorable Gabriel W. Gorenstein
December 3, 2025
Page 3

███████████████████████████████████████████████████ Ex. G at 1. None of these documents explain the basis for Birchall's compensation or provide comfort that the production is sufficient. Defendants did not produce any documents at all regarding Birchall's ownership interests in Musk-related entities.

On August 22, 2025, Plaintiff objected to Defendants' three-document production as deficient. Ex. C at 50-51. Defendants again told Plaintiff to ask Birchall about these issues at his deposition. *Id.* at 47. On September 3, Plaintiff attempted to cure Defendants' production deficiencies and requested ████████████████████████████████████████ ████████████████████████████████████████████████ *Id.* at 45. On September 11, counsel for Defendants asserted that ██████████████████ but offered no additional documents. *Id.* at 42.

On November 3, 2025, from approximately 4:30 p.m. to 5:00 p.m., Jeremy Robinson, Jonathan D'Errico, Emily Tu, and Rebecca Temkin from BLB&G (on behalf of Plaintiff) conferred telephonically with Nathan Goralnik and Dillon Carlin of Quinn Emanuel (on behalf of Defendants) regarding, *inter alia*, the ownership and compensation documents. Defendants acknowledged that there were additional relevant documents but insisted that the three documents they produced were sufficient. Plaintiff explained that even in the unlikely case that the documents reflected Birchall's total compensation, these documents provided no explanation of the basis for Birchall's compensation, despite Defendants' written assurance to provide those documents. *Id.* at 14-15, 22-24.

During the same meet and confer, Defendants again asked for examples of documents sought by Plaintiff. Plaintiff explained that it was at a significant informational disadvantage, but Birchall's tax returns were one possible example of a document that might supply additional needed information regarding Birchall's ownership interests and compensation. Plaintiff invited Defendants to provide an alternative proposal given that Birchall must have all the relevant information and knows what documents exist. Plaintiff also explained that Defendants had produced ***nothing at all*** regarding Birchall's ownership interests, despite their agreement to do so. Defendants acknowledged that they had agreed to produce ownership documents but said that they had subsequently changed their minds. Defendants said they would consider any proposal on ownership but were now reluctant to produce anything. *Id*. at 11.

On November 14, 2025, in an attempt to compromise, Plaintiff requested that Defendants start by producing Birchall's tax returns from 2021 and 2022 and produce the responsive and relevant hits from a single proposed search string concerning his compensation. Ex. C at 10-11.[1] On November 20, 2025, Defendants refused this compromise offer, did not provide a counteroffer, and stood on their three-document production. *Id*. at 7-8.

In a further effort to reach a compromise, on November 25, 2025, from approximately 11:00 a.m. to 11:30 a.m., Katie Sinderson, Jeremy Robinson, Jonathan D'Errico, and Emily Tu from BLB&G (on behalf of Plaintiff) conferred telephonically with Nathan Goralnik and Dillon Carlin

---

[1] The requested search string is ("cash" OR "stock" OR "share!" OR "$") w/10 ("bonus" OR "comp!" OR "pay" OR "salary") for the period from 2021 to 2022.

Honorable Gabriel W. Gorenstein
December 3, 2025
Page 4

of Quinn Emanuel (on behalf of Defendants). Defendants confirmed that they did not run Plaintiff's proposed search string and refused Plaintiff's November 14 proposal. Defendants instead offered to produce an unredacted version of one of the emails they had already produced, to consider producing additional compensation documents, and to produce a document showing only Birchall's "unvested equity" in Musk-related entities (not his total ownership interests). Plaintiff explained that Defendants' proposal was inadequate, the Parties were at an impasse (Defendants agreed), and that Plaintiff intended to move to compel. Nevertheless, as a final effort to compromise and to encourage Defendants to engage, Plaintiff asked that Defendants make their "best and final proposal" by November 28, 2025. Defendants agreed to do so. *Id.* at 4-5. Plaintiff also requested the search strings and custodial sources Defendants used for their investigation into Birchall's compensation-related records. *Id.* at 5. Defendants did not respond by the Parties' agreed November 28, 2025 deadline.

On December 1, 2025, Defendants belatedly responded, and again refused to address the deficiencies in their existing production, refused to provide an adequate counterproposal, and refused to provide any of the parameters for their investigation into Mr. Birchall's custodial records. *Id.* at 3-4. On December 3, 2025, Plaintiff further confirmed the Parties' impasse. *Id.* at 1-2. Throughout this process, in a transparent effort to delay producing documents responsive to RFP 1 and avoid motion practice, Defendants have repeatedly claimed that they are willing to continue to confer. Tellingly, however, Defendants have rejected all of Plaintiff's compromises and have continued to withhold responsive documents. With the Parties indisputably at an impasse, Plaintiff now moves to compel.

## II.  <u>DEFENDANTS SHOULD PRODUCE THE REQUESTED DOCUMENTS</u>

**<u>Birchall's Ownership And Compensation Documents Are Highly Relevant</u>**. Documents concerning Birchall's Musk-related ownership interests and compensation bear directly on Birchall's motive to engage in the alleged scheme and, thus, his scienter, which is a key element of Plaintiff's securities claims. Courts routinely accept that compensation and related financial interests are "relevant to [a defendant's] motive." *United States v. Quattrone*, 441 F.3d 153, 187 (2d Cir. 2006); *United States v. Connolly*, 2018 WL 2411216, at *7 (S.D.N.Y. May 15, 2018) ("Evidence concerning the defendants' compensation is plainly relevant to motive[.]"); *Shenwick v. Twitter, Inc.*, 2021 WL 1232451, at *11 (N.D. Cal. Mar. 31, 2021) (denying motion to exclude evidence of "individual defendants' compensation and ownership of Twitter stock" because "[d]efendants' compensation is relevant to motive and scienter").

Evidence of compensation and financial relationships is also relevant to Mr. Birchall's bias and credibility. *E.g.*, *United States v. M/Y Amadea*, 770 F. Supp. 3d 558, 576-77 (S.D.N.Y. 2025), ("Relationships between a party and a witness are always relevant to a showing of bias, whether the relationship is based on ties of ... business, friendship, enmity, or fear."); *Ray v. Bauman*, 326 F. Supp. 3d 445, 470 (E.D. Mich. 2018) (bias includes "employment or business relationships with a party and is always relevant in assessing a witness's credibility"); *Fisher v. Household Life Ins. Co.*, 2012 WL 966043, at *3 (D. Kan. Mar. 21, 2012) (compelling production of "all compensation records" because "compensation and performance incentives [go to] motive[]" and "credibility").

**<u>Defendants' Inadequate Productions</u>**. Defendants have not produced any documents at all

Honorable Gabriel W. Gorenstein
December 3, 2025
Page 5

evidencing Birchall's ownership interest in Musk-related entities, in defiance of their agreement to do so. They subsequently offered to produce unidentified documents showing Birchall's "unvested" interests—but they have resolutely refused to produce a complete and accurate picture of Birchall's full ownership interests. Similarly, none of the three documents that Defendants produced explains the basis for Birchall's compensation, which Defendants agreed to provide.

Defendants repeatedly insisted that Plaintiff can ask questions about Birchall's compensation and ownership at deposition. But courts are clear that "a deposition is not an adequate substitute for the information that may be obtained from [producing the underlying discovery]." *Gonzales v. Nat'l Broad. Co., Inc.,* 194 F.3d 29, 36 (2d Cir. 1999); *Hirschman v. Agraria Ins. Co.*, 2024 WL 4068745, at *10 (D.S.D. Sept. 5, 2024) ("Deposition testimony does not substitute for the production of documents under Rule 34."); *Fisher*, 2012 WL 966043, at *4 (same and compelling production of compensation documents). Without the underlying documents, Plaintiff will be unable to refresh or cross-examine Birchall about his Musk-related compensation and ownership.

**<u>The Court Should Order Production</u>**. The Court should compel production of documents responsive to Plaintiff's RFP 1. Courts routinely order the production of compensation and ownership-related documents. *E.g.*, *S.E.C. v. Sassano*, 274 F.R.D. 495, 497-98 (S.D.N.Y. 2011) (Gorenstein, J.) (compelling production of financial information and payments made by defendant); *Axos Bank v. 64-03 Realty LLC*, 2022 WL 20718481, at *4 (E.D.N.Y. Oct. 24, 2022) (compelling documents "related to any entities in which defendants had an ownership interest").

Defendants' refusal to offer an alternative source of this information heightens the compelling need for Birchall's tax returns and other compensation materials, because tax returns list all sources of taxable income, including investment income. Courts routinely order the production of tax returns under these circumstances. *S.E.C. v. Collector's Coffee Inc.*, 464 F. Supp. 3d 665, 670 (S.D.N.Y. 2020), *objections overruled*, 2020 WL 4496764 (S.D.N.Y. Aug. 4, 2020) (Gorenstein, J.) ("compelling need" for discovery of tax returns where defendant did not "produce any other contemporaneous documents"); *Dunkin Donuts Franchised Rest. LLC, v. Grand Central Donuts, Inc.*, 2009 WL 973363, at *2 (E.D.N.Y. Apr. 9, 2009) (compelling production of non-parties' tax returns to show whether they held any interest in the defendant); *Gov't Emps. Ins. Co. v. Lenex Servs., Inc.*, 2018 WL 1368024, at *12 (E.D.N.Y. Mar. 16, 2018) (compelling production of tax returns where defendants did not "attempt[] to demonstrate that there are alternative sources for the information or that the protective order is not sufficient to safeguard against private information"). Birchall should further be required to produce any other ownership-related documents necessary to provide a complete and accurate picture of his financial ties to Musk and Musk-related entities.

Further, a targeted search of Birchall's custodial records, as requested by Plaintiff, will elicit responsive documents about the basis for Birchall's compensation. *E.g.*, Ex. E ██████████ ████████████████████████████████████████████.

In closing, Plaintiff respectfully requests that the Court compel Defendants to produce documents responsive to RFP 1. Plaintiff also requests the ability to reply to any opposing letter.

Honorable Gabriel W. Gorenstein
December 3, 2025
Page 6

Dated: December 3, 2025

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**

*/s/ Katherine M. Sinderson*
Salvatore J. Graziano
Katherine M. Sinderson
Jeremy P. Robinson
Jonathan G. D'Errico
Emily A. Tu
Rebecca S. Temkin
1251 Avenue of the Americas
New York, NY 10020
Phone: (212) 554-1400
Fax: (212) 554-1444
salvatore@blbglaw.com
katie@blbglaw.com
jeremy@blbglaw.com
jonathan.derrico@blbglaw.com
emily.tu@blbglaw.com
rebecca.temkin@blbglaw.com

*Lead Counsel for Plaintiff Oklahoma
Firefighters Pension and Retirement System
and the Class*

**BISHOP PARTNOY LLP**

Frank I. Partnoy
1717 K Street, NW Suite 900
Washington, DC 20006
Telephone: (202) 787-5769
frank@bishoppartnoy.com

*Additional Counsel for Lead Plaintiff
Oklahoma Firefighters Pension and
Retirement System*

Honorable Gabriel W. Gorenstein
December 3, 2025
Page 7

## <u>MEET AND CONFER CERTIFICATION</u>

Pursuant to Rule 2.A of Your Honor's Individual Practices, I, Jeremy P. Robinson, certify that counsel for Plaintiff has in good faith conferred with counsel for Defendants on the dates and times set forth above regarding the production of Jared Birchall's compensation and ownership-related documents.

Dated: December 3, 2025                    */s/ Jeremy P. Robinson*
                                           Jeremy P. Robinson