# BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

### ATTORNEYS AT LAW

NEW YORK • CALIFORNIA • ILLINOIS • LOUISIANA • DELAWARE

KATHERINE M. SINDERSON
(212) 554-1392
KatieM@blbglaw.com

December 10, 2025

**VIA ECF**
Hon. Gabriel W. Gorenstein
Southern District of New York
40 Foley Square
New York, NY 10007

Re:   *Okla. Firefighters Pens. and Ret. Sys. v. Musk*, 1:22-cv-03026 (S.D.N.Y.)

Dear Judge Gorenstein:

Pursuant to the Court's December 8, 2025 order (ECF No. 227), Plaintiff respectfully submits this reply to Defendants' letter (ECF No. 225, "D-Ltr") opposing Plaintiff's opening letter (ECF No. 222, "P-Ltr").[1]

## I.   Defendants Should Be Required To Produce Birchall's Ownership Documents

First, on June 9, 2025, Defendants agreed to produce documents showing Birchall's ownership interests in Musk-affiliated entities. Ex. C at 77. Defendants later backtracked on their agreement. *Id.* at 11; P-Ltr at 3. Defendants do not dispute, and thus concede, their reversal. *E.g.*, D-Ltr at 4. Defendants should be held to their discovery agreement.

Second, Defendants have offered to produce a subsection of the ownership documents limited to only Birchall's ▮▮▮▮▮▮ in Mr. Musk's companies." D-Ltr at 4. This proposal is insufficient. Indeed, Defendants' offer on its face will provide only a ***partial*** view of Birchall's ownership interests and financial ties to Musk. Defendants fail to justify their attempt to artificially limit their production to only part of the full story.

Defendants assert that it is only Birchall's ▮▮▮▮▮▮ interests that have a "link to Mr. Birchall's compensation." *Id*. This is an artificial limitation. Separate and apart from his Musk-related compensation, Birchall's ownership interests in Musk-related companies establish the nature and depth of Birchall's financial ties to Musk and, thus, his motive to further Musk's interests, as well as Birchall's bias and credibility. P-Ltr at 4. Birchall's ▮▮▮▮▮▮ ▮▮▮▮▮▮ will also illuminate the extent of his control over his co-Defendants, The Elon Musk Revocable Trust and Excession, LLC.

---

[1] Unless otherwise noted, all emphasis is added and internal citations are omitted. "Ex. _" refers to the exhibits appended to Plaintiff's opening letter (ECF No. 222) and this reply letter.

Honorable Gabriel W. Gorenstein
December 10, 2025
Page 2

Third, Defendants will not face any prejudice or undue burden in producing the ownership documents. Defendants do not argue otherwise, effectively conceding this point. Indeed, it does not appear that Defendants made any effort to quantify or even investigate the number of documents implicated by their agreement to produce ownership documents.

In sum, Defendants should be compelled to produce documents establishing Birchall's full ownership interests in Musk-affiliated companies.

## II.     Defendants Should Be Required To Produce The Compensation Documents

First, in their December 5 letter, Defendants for the first time offer to provide a "verified summary" of Birchall's "all-in compensation for 2022." D-Ltr at 1, 3, 5. This is a telling acknowledgement by Defendants that Birchall's compensation information must be produced and that their existing three-document production is insufficient, as Plaintiff repeatedly explained during the Parties' lengthy meet-and-confer process. P-Ltr at 3-4.

Second, Defendants' offer, however, is insufficient. To start, it is not remotely clear what exact information will be included in Defendants' proffered "verified summary." For example, Defendants do not state whether it will provide the "basis" for Birchall's compensation, whether the compensation will be broken out by entity, and whether it will reflect any compensation paid for services rendered in 2022 but received after 2022.

More fundamentally, a lawyer-drafted "summary" is not a valid substitute for the underlying documents. *Full Circle Villagebrook GP, LLC v. Protech 2004-D, LLC*, 2022 WL 2339947, at *7-8 (N.D. Ill. June 29, 2022) (rejecting defendants' offer to *inter alia* "provide a detailed account of the disposition of proceeds from Plaintiff's Option exercise" in lieu of producing the underlying financial statements and ordering production). Indeed, this would deprive Plaintiff of critical details found only in the **contemporaneous** documents and communications that are necessary to refresh and cross-examine Birchall.

Third, Defendants assert that they have conducted "extensive" searches for compensation-related documents. D-Ltr at 3, n.2. Tellingly, Defendants refused to disclose their searches during the meet-and-confer process (notwithstanding Plaintiff's request, *see* Ex. C at 4-5)—and nor do they even disclose their searches to the Court. Defendants also fail to explain how their purportedly extensive searches yielded only three documents. Under such circumstances, Defendants' unsupported assurances cannot be credited.

Defendants assert that Birchall has no "formal performance metrics" or "written compensation agreements." D-Ltr at 3. But, even if true, this does not excuse Defendants from producing other relevant information concerning Birchall's Musk-related compensation. Indeed, Defendants conceded during the meet-and-confer process that other compensation-related documents exist. *E.g.*, Ex. C at 10. Defendants' assertion is further undermined by the two communications they produced, which reference ███████████████████████ (Ex. F) and ███████████████████████████████████████████ (Ex. E).

In sum, Defendants should be compelled to produce Birchall's compensation documents responsive to the search parameters proposed by Plaintiff. P-Ltr at 3 n.1.

### III. Defendants' Remaining Arguments Fail

First, Defendants try to avoid production of Birchall's tax returns by claiming that his "compensation is discoverable by less intrusive means." D-Ltr at 4. But Defendants refused for months to explain what other documents exist, and they rejected every one of Plaintiff's attempts to obtain this information through alternative means. Plaintiff does not know what documents Birchall possesses and, thus, labors under an unfair informational disadvantage. Defendants cannot "hide the ball" by shifting their obligation to identify responsive compensation documents onto Plaintiff. *Electrified Discounters, Inc. v. MI Techs., Inc.*, 2015 WL 2383618, at *4 (D. Conn. May 19, 2015) ("A party answering discovery requests has an affirmative duty to furnish any and all information available to the party."). As detailed in Plaintiff's opening letter, Defendants' refusal to offer an alternative source heightens the compelling need for Birchall's tax returns.[2] P-Ltr at 5.

Second, Defendants argue that Plaintiff has not demonstrated the relevance of the specific pages of Birchall's tax returns outside ▮▮▮▮▮▮▮▮▮▮▮▮. The Federal Rules do not require litigants to be clairvoyant to obtain discovery. Further, RFP 1 identified the specific Musk-related entities for which Plaintiff is seeking compensation and ownership-related information. P-Ltr at 2-3; Ex. A at 8-9.

Third, Defendants' authorities are inapposite and/or support Plaintiff's position. For example, the non-precedential summary order in *Xiao Hong Zheng v. Perfect Team Corporation* concerned a "motion to compel [plaintiff] to answer deposition questions regarding her tax forms" solely in an effort to attack the plaintiff's credibility. 739 F. App'x 658, 660-61 (2d Cir. 2018). In *Malinowski v. Wall St. Source, Inc.*, the requesting party "fail[ed] to demonstrate that they were unable to obtain the information through less intrusive means"—unlike here, where Defendants rejected all of Plaintiff's compromises and continue to withhold relevant documents. 2011 WL 1226283, at *4 (S.D.N.Y. Mar. 18, 2011).

Defendants' reliance on *Nielsen v. Soc'y of N.Y. Hosp.*, 1989 WL 52316, at *1 (S.D.N.Y. May 8, 1989) (D-Ltr at 4) is particularly misplaced as it supports Plaintiff. There, the court compelled production of a party's tax returns "showing the amounts and sources of [a party's] income from wages, salaries, tips, and other earned income" and rejected the "proffer of [a] sworn statement as to his earnings [because it was] not an appropriate substitute" for the requested information from the tax returns. *Id.* at *1-4.[3]

---

[2] Defendants' claim that Birchall's 2021 tax return is irrelevant likewise fails. D-Ltr at 3-4. Without Birchall's 2021 tax return, and given the gaps in Defendants' three-document production, Plaintiff has no ability to assess the extent to which Birchall was rewarded in excess of his typical compensation for carrying out the fraudulent scheme in 2022.

[3] Defendants' attempts to distinguish Plaintiff's cases fail. Defendants do not address the fact that the courts in each of Plaintiff's cited cases ordered the production of tax returns where, as here, the producing party failed to offer any alternative contemporaneous documents to tax returns. *See Dunkin' Donuts Franchised Rests. LLC v. Grand Central*

Honorable Gabriel W. Gorenstein
December 10, 2025
Page 4

Fourth, after previously refusing to run Plaintiff's proposed search string or provide a hit report, Defendants now challenge the search string because it yields "at least 6,800 documents in Mr. Birchall's inbox alone." D-Ltr at 3 n.3. But a review of that size will be no burden for Musk or his lawyers. Indeed, Musk is the wealthiest person in recorded history and Quinn Emanuel is a prominent 1,200+ attorney law firm. If anything, the fact that Plaintiff's proposed search string hit on 6,800 documents only reinforces that Defendants are continuing to withhold responsive documents.

Fifth, in a last-ditch bid to avoid producing relevant compensation and ownership documents, Defendants attack the scope of RFP 1. D-Ltr at 4-5. Defendants' newfound challenges are mooted by the Parties' meet-and-confer process over the last several months and Defendants' (now-violated) agreement to produce documents in response to this request. Plus, Defendants' new claim that RFP 1 is "facially overbroad" (D-Ltr at 4-5) is particularly meritless because Defendants themselves included the same or broader phrasing in at least 24 of their own document requests. Ex. H at 5, 6, 8, 9 (Defendants' February 13, 2024 RFP Nos. 1, 8, 20, 21, 24 requesting "All Documents, without regard to time period. . ."); see also, e.g., id. at 5-11 (Defendants' RFP Nos. 1-6, 8-9, 11, 12, 17-22, 24-25, 27-32 requesting "All Documents" and/or "All Communications").

For the reasons set forth in its opening and reply letters, Plaintiff respectfully requests that the Court compel Defendants to produce documents responsive to RFP 1.

---

*Donuts, Inc.*, 2009 WL 973363, at *2 (E.D.N.Y. Apr. 9, 2009) (ordering production of tax returns where non-parties "have thus far refused to provide any other potentially relevant documentation," and "plaintiffs have little alternative"); *S.E.C. v. Collector's Coffee Inc.*, 464 F. Supp. 3d 665, 670 (S.D.N.Y. 2020) ("compelling need" for tax returns where defendant was "not offering to produce any other contemporaneous documents"); *GEICO v. Lenex Servs., Inc.*, 2018 WL 1368024, at *10–12 (E.D.N.Y. Mar. 16, 2018) (defendants failed to offer "alternative sources for the information").

Dated: December 10, 2025

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

<u>/s/ Katherine M. Sinderson</u>
Salvatore J. Graziano
Katherine M. Sinderson
Jeremy P. Robinson
Jonathan G. D'Errico
Emily A. Tu
Rebecca S. Temkin
1251 Avenue of the Americas
New York, NY 10020
Phone: (212) 554-1400
Fax: (212) 554-1444
salvatore@blbglaw.com
katie@blbglaw.com
jeremy@blbglaw.com
jonathan.derrico@blbglaw.com
emily.tu@blbglaw.com
rebecca.temkin@blbglaw.com

*Lead Counsel for Plaintiff Oklahoma Firefighters Pension and Retirement System and the Class*

**BISHOP PARTNOY LLP**

Frank I. Partnoy
1717 K Street, NW Suite 900
Washington, DC 20006
Telephone: (202) 787-5769
frank@bishoppartnoy.com

*Additional Counsel for Lead Plaintiff Oklahoma Firefighters Pension and Retirement System*