UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

OKLAHOMA FIREFIGHTERS PENSION    :
AND RETIREMENT SYSTEM,    :

    :    **1:22-cv-03026 (ALC)**

    Plaintiff,    :

    :    <u>**OPINION & ORDER**</u>

    -against-    :

    :

ELON R. MUSK ET AL.    :

    :

    Defendants.    :
------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Oklahoma Firefighters Pension and Retirement System brings this putative class

action alleging violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange

Act") and Rule 10b-5 against all Defendants and alleging violations of Section 20(a) of the

Exchange Act against Defendants Elon Musk and Jared Birchall. Plaintiff now seeks to certify

the class.

For the reasons that follow, the Court finds that the proposed class meets the

requirements of Rule 23(a) and the relevant requirements of Rule 23(b) of the Federal Rules of

Civil Procedure. Plaintiff's motion to certify is granted. Accordingly, Plaintiff's Motions to

appoint Plaintiff as the Class Representative and to appoint Bernstein Litowitz as Class Counsel

are granted.

## BACKGROUND

### A. Factual Background[1]

Plaintiff is a public pension fund that provides retirement allowances and other benefits to firefighters in Oklahoma. Amended Complaint, ECF No. 74 ¶10. Plaintiff currently manages approximately $3.4 billion in assets on behalf of over 26,000 participants. *Id.* Plaintiff sold more than 14,000 shares of Twitter[2] stock on the New York Stock Exchange during the proposed Class Period, March 25, 2022 through April 4, 2022, and alleges Defendants violated federal securities laws during this period. *Id.*

Defendant Elon Musk is the owner of what was known as Twitter (now X). *Id.* ¶32. Defendant Elon Musk Revocable Trust ("Musk Trust") is a trust that is controlled by Musk and holds Twitter common stock. *Id* at ¶34. Defendant Excession LLC is Musk's family office and is responsible for Musk's purchases of Twitter stock and ultimately Twitter itself. *Id.* ¶35. Defendant Jared Birchall is a former banker and is known as Musk's "right hand man." *Id.* ¶36. Since 2016, he has been Musk's wealth manager and managing director of Excession LLC. Birchall also has power of attorney over the Musk Trust. *Id.*

Plaintiff alleges that starting in January 2022, the Defendants devised a scheme for Elon Musk to secretly acquire a massive activist interest in Twitter at the lowest prices possible through an elaborate trading strategy. *Id.* ¶¶82-87, 111, 153, 170, 175, 200-02, tbl. 3. The Class Period starts on March 25, 2022—the first day after Defendants allegedly violated their disclosure obligations regarding Musk's ownership and activist interests in Twitter. *Id.* ¶141, tbl. 3. Over the next ten days, Plaintiff asserts Musk continued to secretly amass over 13 million

---

[1] The following facts are taken from Plaintiff's Amended Complaint and are presumed true for the purposes of this action.

[2] The Court, in following Plaintiff's Amended Complaint, will refer to the company as Twitter, the name at the time of the allegations.

additional Twitter shares. *Id*. ¶¶141-46, 174-75, tbl. 3. Defendants' refusal to disclose Musk's

interests artificially deflated the prices of Twitter's stock, which allowed Musk to secretly

maximize his ownership stake during the Class Period and saved him over $200 million. *Id*.

¶¶83-96, 141-46, 157, 159, 174-75. Investors who sold during the Class Period were cheated out

of the true value of those securities. *Id*. ¶¶146-47.

## B.  Procedural History

Plaintiff filed a Complaint against Defendants on November 21, 2022, asserting causes of

action under Sections 10(b) and 20(a) of the Exchange Act. ECF No. 33. On April 12, 2024, the

United States Supreme Court published *Macquarie Infrastructure Corp. v. Moab Partners, L.P.,*

601 U.S. 257 (2024), which held that "[p]ure omissions are not actionable under Rule 10b–5(b)."

Id. at 260. In light of *Macquarie*, the Parties agreed that Plaintiff could file an Amended

Complaint. ECF No. 69. On April 30, 2024, Plaintiff filed its Amended Complaint. ECF No. 99.

On March 28, 2025, this Court granted in part, and denied in part, Defendants' Motion to

Dismiss the Amended Complaint. ECF No. 118. The Court denied the Motion to the extent the

10(b)-5(a) and (c) claims are predicated on the following acts: (1) the improper Schedule 13G

filing; (2) Musk's misleading tweets about Twitter's future, and (3) the carrying out of a

coordinated trading strategy to silently build up Musk's position in Twitter. *Id.* at 42. The Court

denied the Motion to the extent the 10(b)-5(b) claim is predicated on the following statements:

(1) Musk's March 26, 2022 "Haha that would [be] sickkk"; and (2) Musk's March 26, 2022 "Am

giving serious thought to this" tweet. *Id.* The Court also denied the motion as to Plaintiff's

Section 20(a) claims. *Id.* The Court granted the Motion to the extent the 10(b)-5(a) and (c) claims

are predicated on the allegedly deceptive act of Defendants making false statements of legal

blessing as to their trading strategy. *Id.*  The Court also granted the Motion to the extent the

10(b)-5(b) claim is predicated on the following statements: (1) Musk's March 25, 2022 Twitter poll; (2) Musk's March 26, 2022 "What should be done?" tweet; and (3) Musk's March 26, 2022 "Is a new platform needed?" tweet. *Id.*

On June 23, 2025, Plaintiff filed a Motion to Certify a Class and moved to appoint Plaintiff as the Class Representative and Bernstein Litowitz as Class Counsel. ECF No. 140. On August 22, 2025, Defendants filed their Motion in Opposition. ECF No. 164. On October 7, 2025, Plaintiff filed its Reply. ECF No. 193. On October 14, 2025, Defendants filed a letter motion seeing permission to file a Proposed Sur-Reply. ECF No. 201. On October 16, 2025, Plaintiff filed its response to this letter motion. ECF No. 203. On October 23, 2025, the Court granted leave for Defendants to file their Proposed Sur-Reply. ECF No. 211. On October 24, 2025, Defendants filed their Sur-Reply. ECF No. 214.

## C. Proposed Class Definition

Plaintiff seeks to certify the following class:

All persons or entities who sold Twitter common stock and/or call options and/or purchased put options between March 25, 2022 and April 4, 2022, inclusive (the 'Class Period') and were damaged thereby (the "Class"). ECF No. 40 at 1.

## DISCUSSION

### I.    Class Certification

#### A.  Legal Standard

Rule 23 of the Federal Rules of Civil Procedure governs class certification. That is, plaintiffs must demonstrate that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4)

the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). To meet the requirements of Rule 23(a), "plaintiffs in the proposed class must demonstrate that they satisfy four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244 (2d Cir. 2007).

In addition to the requirements of Rule 23(a), plaintiffs must demonstrate that a class is maintainable under Rule 23(b). Under Rule 23(b)(3), the court must decide whether "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and whether a class action "is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b).

### B. Numerosity

The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,* 504 F.3d 229, 244–45 (2d Cir. 2007). Although, there is no bright line rule setting a requisite number of class members for certification, "numerosity is presumed for classes larger than forty members.*" Pa. Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.,* 772 F.3d 111, 120 (2d Cir. 2014). Plaintiff's proposed class composes of thousands of investors, which is significantly above the 40-plaintiff threshold. Defendants do not argue against numerosity. Therefore, the numerosity requirement is easily satisfied.

### C. Adequacy

Adequacy requires that the class representatives "will fairly and adequately protect the interests of the class." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 267 (2d Cir. 2006) (internal

quotation marks omitted). To determine adequacy, courts evaluate "whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). "Class certification may properly be denied where the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072, 1077–78 (2d Cir. 1995) (quotation marks and alterations omitted). Courts may also consider "the honesty and trustworthiness of the named plaintiff." *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).

Plaintiff contends that its interests are aligned with those of other Class members because it suffered the same harm as a result of Defendants' alleged scheme. Pl's Mot. at 10. Plaintiff does not have any conflicts with other Class members. *Id.* Per Executive Director Chase Rankin's Declaration, Plaintiff understands the fiduciary duties it will owe the rest of the Class throughout the pendency of the case. Ex. B ¶3. Plaintiff has actively prosecuted the case so far, retaining attorneys who have vigorously defended the Class's interests. Sinderson Declaration ¶3; Ex. C. Defendants do not challenge the adequacy requirement. This requirement is satisfied.

### D. Commonality

"The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact," *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007), "truth or falsity [of which] will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. at 350. Plaintiffs need only "demonstrate that the class members 'have

suffered the same injury." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (internal quotation marks and alterations omitted). In securities cases, commonality is satisfied where plaintiffs allege that class members have been injured by similar material misrepresentations and omissions. *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 276 (S.D.N.Y. 2008).

Plaintiff asserts that there are numerous common questions of facts and law including: (i) whether Musk's statements were materially misleading when made; (ii) whether Defendants engaged in a scheme to deceive Twitter investors; (iii) whether Defendants acted with scienter; (iv) whether the prices of Twitter securities were artificially depressed during the Class Period due to Defendants' scheme and misstatements; (v) whether Defendants' scheme and Musk's misrepresentations caused Class members to suffer economic losses when the truth was revealed; and (vi) whether Musk and Birchall were "control persons" within the meaning of Section 20(a) of the Exchange Act. Pl. Mot. at 8. Defendants do not specifically attack the commonality requirement of Rule 23(a). The Court finds that Plaintiff has satisfied commonality.

### E. Implied Requirement of Ascertainability

To certify a class, the Second Circuit has some implicit requirements beyond Rule 23, including ascertainability. Ascertainability "demands that a class be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017) (internal quotation marks omitted). Ascertainability is satisfied where a class is "identified by subject matter, timing, and location." *Id.* at 269-70. Plaintiff asserts that "this requirement is readily met in securities class actions, where class 'membership is based on objective, definite criteria'—here, the dates of shareholders' transactions of Twitter common stock." Pl's Mot. at 13. Defendants do not address

7

ascertainability. This Court finds that the implicit requirement of ascertainability is satisfied given the concrete timeframe for the Class Period.

### F. Superiority Under Rule 23(b)(3)

Plaintiff must also demonstrate "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In determining superiority, a court examines Rule 23(b)(3)'s nonexclusive list of factors for consideration. The manageability of a class action is the most important of these factors. Fed. R. Civ. P. 11 23(b)(3)(D). As Plaintiff points out, securities fraud suits are "particularly well suited to class treatment." *In re Allergan PLC Sec. Litig.*, 2021 WL 4077942, at *1 (S.D.N.Y. Sept. 8, 2021); *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2020 WL 1329354, at *2 (S.D.N.Y. Mar. 23, 2020) ("Courts have consistently held that claims alleging violations of Sections 10(b) and 20(a) of the Exchange Act are especially amenable to class certification.")

Defendants do not take issue with superiority. As Plaintiff points out, "a class action is easily manageable, provides redress to investors who would otherwise be unable to pursue individual claims, and is least taxing on judicial resources." Pl. Mot. at 3. The Court finds this prong of 23(b)(3) satisfied.

### G. Predominance

"The predominance requirement of Rule 23(b)(3) tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (internal quotation marks and citations omitted). Plaintiffs must demonstrate that "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and [that] these particular issues are *more substantial* than the issues subject only to individualized proof."

*Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1252 (2d Cir.2002). Predominance does not require the absence of individualized damages, but plaintiff's damages methodology "must actually measure damages that result from the class's asserted theory of injury." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015).

Defendants contend that Plaintiff cannot satisfy the predominance requirement for two reasons: 1) because Plaintiff is unable to establish the requisite reliance needed for a securities fraud claim under Section 10(b) and 2) because Plaintiff has not proposed a common damages methodology that can reliably calculate class-wide damages. The Court will take each of Defendants' arguments in turn.

1. Reliance

To support a claim under Section 10(b), a plaintiff must prove "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) *reliance* upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 462-63 (2013) (internal citation omitted) (emphasis added).

There are three ways to establish reliance. The traditional and most direct way of showing reliance is establishing that the plaintiff was aware of the statement and traded in the stock based on the misrepresentation. The other two ways rely on presumptions established by the Supreme Court, the *Affiliated Ute* presumption and the *Basic*/fraud on the market presumption. *See Waggoner v. Barclays PLC*, 875 F.3d 79, 93 (2d Cir. 2017) The *Affiliated Ute* presumption "allows the element of reliance to be presumed in cases involving primarily omissions, rather than affirmative misstatements, because proving reliance in such cases is, in many situations, virtually impossible." *Id*. The fraud on the market presumption "permits reliance to be presumed in cases based on misrepresentations if the plaintiff satisfies certain requirements." *Id*.

The Plaintiff relies on the presumptions in his putative class action. Both presumptions can be rebutted by Defendants where a preponderance of evidence shows that Plaintiff would have bought the stock at the same price "even had [the plaintiff] been aware that the stock's price was tainted by fraud." *Basic Inc. v. Levinson*, 485 U.S. 224, 269 (1988).

        a) *Affiliated Ute* Presumption

Under *Affiliated Ute,* a presumption of reliance exists where a plaintiff's trading action arises "primarily" from a "failure to disclose" and as a result, reliance would be impossible to prove as a practical matter. 406 U.S. at 153. *Affiliated Ute* "does not apply to . . . half-truths, nor does it apply to misstatements whose only omission is the truth that the statement misrepresents." *Waggoner v. Barclays PLC*, 875 F.3d 79, 96 (2d Cir. 2017); *accord In re DiDi Glob. Inc. Sec. Litig.*, 2025 WL 1909295, at *12 (S.D.N.Y. July 7, 2025).

Defendants contend that Plaintiff amended its complaint to make clear it was *no*t relying mainly on omissions, to avoid the impact of *Macquarie*, 601 U.S. 257 (2024). To support this, Defendants cite to the section of Plaintiff's Amended Complaint outlining the alleged scheme as one in which "Musk[] steadily increase[ed] ownership in Twitter and misled investors through misdirection and half-truths," Am. Compl. at ¶ 227. Defendants argue that Plaintiff is trying to "have it both ways" by now trying to certify a class using the *Affiliated Ute* presumption. Defendants' Opposition ("Deft. Opp.") at 18. Defendants acknowledge that Courts have addressed that it can sometimes be difficult to determine whether a scheme is based primarily on omissions or misstatements/misrepresentations. *See Waggoner*, 875 F.3d at 96; *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2 F.4th 1199, 1205 (9th Cir. 2021). In these "mixed" cases, Courts analyze whether the scheme is primarily one of nondisclosure or affirmative misstatements. *Id.* at 1204 (internal citations omitted).

Although a Plaintiff does not have to choose between the *Affiliated Ute* and *Basic* presumptions,[3] deciding the difficult question of whether the scheme primarily involves omissions is unnecessary because the *Basic* presumption clearly applies.

Plaintiff responds to Defendants' arguments by pointing out that Defendants do not address the materiality of the omission of Musk's interest in Twitter. Assuming Plaintiff's allegations are true, for several months, Musk did not disclose his interest in Twitter. This is analogous to the omission the Court found in *Puddu v. NYGG (Asia) Ltd.,* 2022 WL 2304248, at *4 (S.D.N.Y. June 27, 2022) ("Claims are based on the defendants' failure to disclose Wey's relationship with [the company that had stock at issue]"). This Court's Opinion, denying in part Defendants' Motion to Dismiss, held that Plaintiff has sufficiently plead that Defendants engaged in separate acts, besides just misstatements, in perpetuating their scheme. Order at 27-30, 42. For these reasons, the Court finds that Plaintiff meets the *Allied Ute* presumption, so there are common questions of law and fact that predominate over individual ones.

b) *Basic*/Fraud-on-the-Market Presumption

Having already determined that the predominance requirement of Rule 23(b)(3) is satisfied, the Court will only briefly address the Parties' positions on the fraud-on-the-market presumption. Plaintiff also argues it can rely on the fraud-on-the-market presumption of reliance outlined in *Basic Inc. v. Levinson*, 485 U.S. 224, 242 (1988):

> In an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business.... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.... The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations. *Id.* (quoting *Peil v. Speiser,* 806 F.2d 1154, 1160–1161 (CA3 1986)).

---

[3] *See In re Credit Suisse Sec. Fraud Class Actions*, 350 F.R.D. 425, 450 (S.D.N.Y. 2025) (finding that the Second Circuit has not adopted an "either/or" rule requiring plaintiffs to choose between Basic and Affiliated Ute).

Plaintiff goes through the various factors courts analyze to show that the market it was operating in was efficient. *See* the five "*Cammer* factors" (*Cammer v. Bloom*, 711 F. Supp. 1264, 1286 (D.N.J. 1989)) as well as the "*Krogman* factors" (*Krogman v. Sterritt*, 202 F.R.D. 467, 477-78 (N.D. Tex. 2001).

Defendants attempt to rebut the fraud-on-the-market presumption by primarily pointing to testimony from their expert, Dr. Allen Ferrell, who stated that the alleged misrepresentations in Musk's two March 26, 2022 Tweets were not value-relevant information. *See* Ferrell Rep. ¶¶ 47-49. The Defendants assert that this means the Tweets did not impact the price of the Twitter stock. Defts' Opp. at 20.

The Basic presumption can be rebutted, even at the class certification stage. "For example, if a defendant could show that the alleged misrepresentation did not, for whatever reason, actually affect the market price, or that a plaintiff would have bought or sold the stock even had he been aware that the stock's price was tainted by fraud, then the presumption of reliance would not apply." *Halliburton Co. v. Erica P. John Fund, Inc.,* 573 U.S. 258, 269, 134 S. Ct. 2398, 2408, 189 L. Ed. 2d 339 (2014). The Defendants must rebut the presumption by a preponderance of the evidence. *See* Waggoner v. Barclays PLC, 875 F.3d 79, 85 (2d Cir. 2017). Defendants attempt to rebut the presumption, arguing that Plaintiff never relied on the alleged fraud when making investment decisions and that this non-reliance subjects Plaintiff to unique defenses, which weigh against class certification. Defendants point to deposition testimony of Plaintiff's investment manager, Intech, who stated  that information about Musk's statements did not affect the algorithm's decision to trade in the stock. This argument mischaracterizes the testimony and mischaracterizes the presumptions. The witness stated repeatedly that an important factor in the trading decision is market price.  The algorithm does not receive information about public statements and make a determination as to whether those statements are true or false. Rather, the algorithm assumes that the information in the

marketplace that affects a stock's price is true. Nothing presented by Defendants in rebuttal demonstrates that Intech would have traded in a stock whose price was tainted by fraud.

Defendants have not done enough to rebut the *Basic* presumption, which holds that "when a stock trades in an efficient market and with defendant's alleged material misrepresentations publicly known, the Court can presume that the misrepresentation affected the stock price, and that the plaintiff bought the stock in reliance on defendant's misrepresentation." *In re Signet Jewelers Ltd. Sec. Litig.,* 2019 WL 3001084, at *11 (S.D.N.Y. July 10, 2019). Plaintiff's contention that Defendants never address market efficiency is persuasive combined with the Defendants' choice of testimony from Dr. Ferrell. As Plaintiff notes, Dr. Ferrell also stated that it would be difficult to see the effect of Musk's Tweet on the market the very next day. "A front-end analysis typically is not a sufficient basis standing alone for a price impact opinion." Ex. I, (Ferrell Tr.) at 78:2-80:20, 100:8-100:24. The Court finds the back-end effect of Musk's Tweets to satisfy the fraud-on-the-market presumption.

2.  Common Damages Methodology

The Second Circuit has held that *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) "does not preclude[] class certification where damages are not capable of measurement on a classwide basis." *Roach v. T.L. Cannon Corp.,* 778 F.3d 401, 409 (2d Cir. 2015). Plaintiffs need only "show that their damages stemmed from the defendant's actions that created the legal liability." *Sykes v. Mel S. Harris & Assocs.*, LLC, 780 F.3d 70, 88 (2d Cir. 2015); *Waggoner*, 875 F.3d at 106 (same). Plaintiff does not even need to lay out its damages methodology in a motion for certification under Rule 23. *Roach* at 402. Therefore, the Court will not address Defendants' arguments on this issue when assessing the predominance requirement.

Because the Court finds that Plaintiff can use the *Allied Ute* and *Basic* presumptions, predominance is satisfied.

**G. Typicality**

Now turning to typicality, the Parties strongly disagree as to whether this requirement is satisfied. Typicality "requires that the claims of the class representatives be typical of those of the class." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). A putative class satisfies this requirement "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.* "Class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000). But "[A] representative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him that would not impact other class members." *Natural Gas*, 231 F.R.D. at 184 (quoting *In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 95 (S.D.N.Y. 1998)).

Plaintiff argues that it satisfies the typicality requirement because, like other Class members, it suffered damages by being cheated out of the true value of its Twitter securities by trading at prices that were artificially deflated by Defendants' scheme and material misrepresentations. Meanwhile, Defendants contend that Plaintiff is subject to unique defenses in that it did not rely on Musk's misstatements or omissions when making its sale of Twitter stock.

Notably, Courts in this Circuit do not apply the unique defenses rule rigidly. *See Hasthantra v. CleanSpark, Inc.,* No. 21-CV-511 (LAP), 2025 WL 2717308 (S.D.N.Y. Sept. 24, 2025) (citing other cases to support that this rule should be flexible and not an impediment for Plaintiffs to certify classes). In *Hasthantra,* as in this case, Defendants argued that the Plaintiff was atypical because it was not subject to reliance presumptions. But as the *Hasthantra* Court concluded, the Plaintiff was *not* atypical because "it is well established that where ... [a]

14

plaintiff[] allege[s] that [his] losses were the result of a sustained course of conduct that propped up defendant's stock price throughout the class period, the class may be represented by an individual who purchased his shares prior to the close of the class period." Id. at 6 (quoting *In re Vivendi Universal, S.A.,* 242 F.R.D. 76, 87 (S.D.N.Y. 2007), aff'd sub nom. *In re Vivendi, S.A. Sec. Litig.,* 838 F.3d 223 (2d Cir. 2016)). Here, Plaintiff transacted during the Proposed Class Period and the purported losses suffered were the result of Musk's fraudulent scheme. Therefore, Plaintiff's claims are typical enough to satisfy this requirement.

CONCLUSION

For the reasons stated above, Plaintiff's Motion for Class Certification is granted. Plaintiff's Motion to Appoint Plaintiff as Class Plaintiff and Motion to Appoint Bernstein Litowitz as Class Counsel are granted.

Plaintiff's Motion for Oral Argument is DENIED. All pending Motions to Seal are GRANTED.

The Clerk of the Court is respectfully directed to terminate ECF Nos. 140, 144, 163, 192, 200, 201, 202, and 213.

**SO ORDERED.**

**Dated:** March 31, 2026

           New York, New York

                                       **ANDREW L. CARTER, JR.**
                                       **United States District Judge**